| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Leonard M. Shulman – Bar No. 126349<br>James C. Bastian – Bar No. 175415<br>Alan J. Friedman – Bar No. 132580<br>Max Casal – Bar No. 342716<br>SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: (949) 340-3400 - Facsimile: (949) 340-3000<br>Email: lshulman@shulmanbastian.com;<br>mcasal@shulmanbastian.com<br><br>☐ *Debtor(s) appearing without an attorney*<br>☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>SIMBA IL HOLDINGS, LLC., a Delaware limited liability company, | CASE NO.: 8:25-bk-12616-MH<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION**<br><br>**[LBR 9013-1(o)]** |
| Debtor(s). | [No hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1. Movant(s) SIMBA IL HOLDINGS, LLC, a Delaware limited liability company _____,
   filed a motion or application (Motion) entitled Debtor's Application and Order Authorizing Employment of Steven Shane of Compass Colorado, LLC as the Debtor's Real Estate Broker _____.

2. Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

3. The Motion is based upon the legal and factual grounds set forth in the Motion. (*Check appropriate box below*):

   ☒ The full Motion is attached to this notice; or

   ☐ The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4. **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a.  If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b.  If you fail to comply with this deadline:

(1)  Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

(2)  Movant will lodge an order that the court may use to grant the Motion; and

(3)  The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

Respectfully submitted,

Date:  09/25/2025

/s/ Max Casal
Signature of Movant or attorney for Movant

Max Casal
Printed name of Movant or attorney for Movant

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  Leonard M. Shulman – Bar No. 126349
   James C. Bastian – Bar No. 175415
2  Alan J. Friedman – Bar No. 132580
   Max Casal – Bar No. 342716
3  **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
   100 Spectrum Center Drive, Suite 600
4  Irvine, California 92618
   Telephone:  (949) 340-3400
5  Facsimile:   (949) 340-3000
   Email:          lshulman@shulmanbastian.com
6                   jbastian@shulmanbastian.com
                    afriedman@shulmanbastian.com
7                   mcasal@shulmanbastian.com

8  Proposed Attorneys for Debtor and Debtor in Possession

9
                    **UNITED STATES BANKRUPTCY COURT**
10
                **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**
11

12

| In re | Case No. 8:25-bk-12616-MH |
|---|---|
| **SIMBA IL HOLDINGS, LLC., a Delaware limited liability company,**<br><br>            Debtor. | Chapter 11 (Sub V)<br><br>**DEBTOR'S APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF STEVEN SHANE OF COMPASS COLORADO, LLC AS THE DEBTOR'S REAL ESTATE BROKER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF STEVEN SHANE IN SUPPORT THEREOF**<br><br>[No Hearing Set Pursuant to Local Bankruptcy Rule 2014-1] |

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

Simba IL Holdings, LLC, the debtor and debtor in possession herein (the "<u>Debtor</u>"), hereby brings this application (the "<u>Application</u>") for an order authorizing the employment of Steven Shane (the "<u>Broker</u>") of Compass Colorado, LLC dba Compass (the "<u>Brokerage Firm</u>" and collectively

1

with the Broker, "<u>Compass</u>"), a licensed real estate broker, to assist in the marketing and sale of the real property located at 1220 Red Butte Drive, Aspen, Colorado 81611-1053 (the "<u>Property</u>"). In support of the Application, the Debtor respectfully represents as follows:

**I.    <u>APPLICATION</u>**

**A.    <u>Case Commencement and Background Information</u>**

On September 16, 2025 (the "<u>Petition Date</u>"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), commencing this chapter 11, subchapter v case (the "<u>Case</u>").

The Debtor is continuing in possession of its property, and operating and managing its business, as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.  No committee or examiner has been appointed in the Case. On September 18, 2025, the United States Trustee appointed John-Patrick M. Fritz as the subchapter v trustee in the Case. Dkt. No. 11.

As of the Petition Date, former management of the Debtor irrevocably transferred all power to manage the Debtor and liquidate assets to Richard Marshack of Marshack Hays Wood LLP as chief restructuring officer (the "<u>Chief Restructuring Officer</u>"). *See*, Dkt. No. 18.

**B.    <u>The Property</u>**

The Property consists of an approximately 5,319 square foot single-family residence with 4 beds and 4.5 baths in Aspen, Colorado. The legal description of the Property is attached to the Declaration of Steven Shane (the "<u>Shane Declaration</u>") as **Exhibit 1**.

The Property is owned by the Debtor and has an estimated value of $30,000,000. The Debtor believes that the sale of the Property will result in significant proceeds that will fund a subchapter v plan, and therefore requires the assistance of a real estate broker to market and sell the Property for the benefit of the Debtor's creditors.

The Property is encumbered by: (i) a first deed of trust held for the benefit of Citibank, N.A. to secure an indebtedness in the original principal amount of $11,537,500; and (ii) a second deed of trust held for the benefit of White Mountain Capital Inc. to secure an indebtedness in the original principal amount of $6,750,000. On or about July 24, 2025, a lis pendens was recorded against the Property by Avina LLC and Global Innovations, LLC relating to a state court action pending against

2

affiliates of the Debtor in Orange County Superior Court, Case No. 30-2025-01495834. On or about June 23, 2025, a prejudgment writ of attachment in the amount of $14,630,634.60 was granted against the Property in favor of Bryan Gadol and Darren Testa. The Debtor believes that such prejudgment writ of attachment is void by operation of law under California Code of Civil Procedure § 493.030 and/or avoidable under 11 U.S.C. § 547.

**C.** **Services to be Performed**

After significant research and interviewing people in the Aspen real estate community, the Chief Restructuring Officer selected the Broker based upon his unparallelled experience in selling property in that region for prices in excess of $20 million to high net worth people. Attached to the Shane Declaration as **Exhibit 2** is a true and correct copy of the Exclusive Right-to-Sell Listing Contract for the Property (the "Listing Agreement").

Pursuant to the Listing Agreement, Compass will offer the Property at an initial listing price of $30,000,000 and has agreed to: (i) provide the Debtor with current market conditions along with a competitive market analysis, (ii) show the Property to prospective buyers, (iii) negotiate and prepare contracts on behalf of the Debtor, and (iv) guide the Debtor through any contractual obligations and deadlines.

Any sale of the Property will be conducted in accordance with 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004 upon a noticed motion to be filed in the Debtor's Case.

**D.** **Compensation Procedure**

In consideration for its services, and subject to Court approval, Compass will receive, upon consummation of the sale of the Property, commission in the amount of 4% of the gross purchase price if there is a cooperating broker (2% each) or 3.5% if Compass also represents the buyer and becomes a transaction broker. If there are one or more overbids and an auction is held, an additional consultant fee of .2% shall be paid to Clarence Yoshikane, Berkshire Hathaway Home Services , to assist with the auction.

Compass has been informed and understands that the Listing Agreement and sale of the Property are subject to Court approval. Compass further understands that a commission is not earned

until: (i) Court approval of a purchase agreement, and (ii) escrow on the Court approved transaction on the Property has closed.

Compass is aware of the provisions of section 328(a) of the Bankruptcy Code and understands that the Court may allow compensation different from the compensation provided herein, notwithstanding the terms and conditions of employment set forth in the Application or Listing Agreement.

**E.    <u>Compass is Disinterested</u>**

To the best of the Debtor's knowledge, and as set forth in the Shane Declaration, the Broker and Brokerage Firm:  (a) do not hold or represent any interest adverse to the Debtor, its creditors and the estate; and (b) are disinterested persons as that term is defined in section 101(14) and as modified by section 1107(b) of the Bankruptcy Code.

Neither the Broker nor any of the employees employed by the Brokerage Firm:  (i) is a creditor, equity security holder, or insider of the Debtor, (ii) is a director, officer, or employee of the Debtor, or (iii) holds an interest materially adverse to the interests of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, for any reason.

The Debtor is further advised that Compass has no connections with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any bankruptcy judge presiding in the United States Bankruptcy Court for the Central District of California.

The Debtor is informed and believes, and on that basis submits, that employment of Compass on the terms and conditions provided for in the Listing Agreement is in the best interest of the estate.

///

///

///

///

///

///

**WHEREFORE**, the Debtor requests that it be authorized to employ Compass on the terms and conditions set forth herein, and that the Debtor be authorized to execute the Listing Agreement attached as **Exhibit 2** to the Shane Declaration.

Dated:  September 24, 2025     **SIMBA IL HOLDINGS, LLC**

Richard Marshack
Chief Restructuring Officer

## II.    MEMORANDUM OF POINTS AND AUTHORITIES

**A.    The Bankruptcy Code Authorizes a Debtor to Employ Professionals**

Section 327 of the Bankruptcy Code, which governs employment of professional persons, provides, in pertinent part, as follows:

> . . . the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Except for certain limitations not applicable here, a debtor in possession has all of the rights and powers of, and performs all of the functions and duties of, a trustee in a chapter 11 case.  11 U.S.C. § 1107(a).

**B.    Compass is Disinterested**

Regarding section 327's requirement that any professional person employed by a debtor in possession be disinterested, section 101(14) of the Bankruptcy Code provides that:

> The term "disinterested person" means a person that –
>
> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason.

11 U.S.C. § 101(14); *but see*, 11 U.S.C. § 1107(b) ("Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because   of such person's employment by or representation of the debtor before the commencement of the case").

Here, Compass is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Neither the Broker nor any of the employees employed by the Brokerage Firm (i) is a creditor, equity security holder, or insider of the Debtor, (ii) is a director, officer, or employee of the Debtor, or (iii) holds an interest materially adverse to the interests of the estate or any class

of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, for any reason.

Based upon the foregoing, the Debtor respectfully submits that section 327(a) of the Bankruptcy Code permits it to hire Compass as the Debtor's real estate broker.

**C.    The Application Complies with Bankruptcy Rule 2014**

Rule 2014 of the Federal Rules of Bankruptcy Procedure requires that an application for retention must state "specific facts showing: (A) the need for employment; (B) the name of the person to be employed; (C) the reasons for the selection; (D) the professional services to be rendered; and (E) any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a)(2). Further, an application for employment must state specific facts showing all the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, and any person employed in the United States trustee's office. *Id.*

The Debtor submits that the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application, the Shane Declaration, and the Listing Agreement. Accordingly, the Debtor respectfully requests that Court grant the Application.

### III.    CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court enter an order authorizing the employment of Compass as the Debtor's real estate broker on the terms and conditions set forth herein and in the Listing Agreement and authorizing the Debtor to enter into the Listing Agreement.

Dated:  September 24, 2025          Respectfully submitted,

                                   **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

                                   /s/ Max Casal
                                   _____
                                   Leonard M. Shulman
                                   James C. Bastian, Jr.
                                   Alan J. Friedman
                                   Max Casal
                                   Proposed Counsel for the Debtor

7

## DECLARATION OF STEVEN SHANE

I, Steven Shane, hereby declare and state as follows

1.     The matters stated herein are true and correct and within my personal knowledge.  If called as a witness, I could and would competently testify thereto.  I am a real estate agent, duly licensed in the State of Colorado and associated with Compass Colorado, LLC dba Compass (the "Brokerage Firm") located at 230 E Hopkins Avenue, Aspen, CO 81611.   I make this declaration in support of the Debtor's Application for Order Authorizing Employment of Steven Shane of Compass Colorado, LLC as the Debtor's Real Estate Broker (the "Application"). Capitalized terms not defined herein shall have the same meaning as those defined in the Application.

2.     I am familiar with the foregoing Application and the residential real property located at 1220 Red Butte Drive, Aspen, Colorado 81611-1053 (the "Property").  Attached hereto as **Exhibit 1** is the legal description of the Property.

3.     The Property will be listed at an initial listing price of $30,000,000.00. Attached hereto as **Exhibit 2** is a true and correct copy of the Exclusive Right-to-Sell Listing Contract for the Property (the "Listing Agreement").

4.     I believe that I am qualified to represent the Debtor in this bankruptcy case in connection with the marketing and sale of the Property.  I have significant experience in the marketing and sale of real property of the type that is similar to the Property.  I have over 30 years' experience in negotiating sales transactions and have been a cornerstone of Aspen's real estate market.  Attached hereto as **Exhibit 3** is a copy of my biography.

5.     Compass has examined the Property and has agreed to: (i) provide the Debtor with current market conditions along with a competitive market analysis, (ii) show the Property to prospective buyers, (iii) negotiate and prepare contracts on behalf of the Debtor, and (iv) guide the Debtor through any contractual obligations and deadlines.

6.     I understand that any sale of the Property will be conducted in accordance with 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004 upon a noticed motion to be filed in the Debtor's Case.

7.    In consideration for the real estate agent services, and subject to Court approval, Compass has agreed to be employed whereby compensation shall be commission in the amount of 4% of the gross purchase price if there is a cooperating broker (2% each) or 3.5% if Compass also represents the buyer and becomes a transaction broker.

8.    I have been informed and understand that: (i) the Listing Agreement and sale of the Property are subject to Court approval, (ii) a commission is not earned until: (a) Court approval of a purchase agreement, and (b) escrow on the Court approved transaction on the Property has closed, and (iii) the Court may allow compensation different from the compensation provided for in the Listing Agreement.

9.    Compass has no pre-petition claim against the Debtor and has received no retainer for the services to be performed pursuant to the Listing Agreement. To the best of my knowledge, Compass has no connections with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any bankruptcy judge presiding in the United States Bankruptcy Court for the Central District of California.

10.   To the best of my knowledge after full investigation, the Brokerage Firm and its principals, employees, agents and I:

a.    do not hold or represent any interest adverse to the Debtor, the Debtor's creditors or its estate;

b.    are "disinterested" as that term is defined in Bankruptcy Code Section 101 (14) and used in Bankruptcy Code Section 327(a) because neither the Brokerage Firm nor any of the employees or agents of the Firm:

i.    is a creditor, equity security holder, or insider of the Debtor;

ii.   is a director, officer, or employee of the Debtor; or

iii.  holds an interest materially adverse to the interests of the estate or any class of creditors or equity security holders, by reason of any direct of indirect relationship to, connection with, or interest in the Debtor, for any reason.

1

2       I declare under penalty of perjury under the laws of the United States of America that the

3   foregoing is true and correct. Executed on September 24, 2025, at _Aspen_____, Colorado.

4

            Steven Shane

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"
# LEGAL DESCRIPTION OF THE PROPERTY

## LEGAL DESCRIPTION OF PROPERTY

The Land referred to herein below is situated in the County of Pitkin, State of Colorado, and is described as follows:

Parcel A:
Lot 4, GAYLORD SUBDIVISION, County of Pitkin, State of Colorado.

PARCEL B:
An Undivided 1/5th interest in the open space parcel, GAYLORD SUBDIVISION, County of Pitkin, State of Colorado.

# EXHIBIT "2"
# LISTING AGREEMENT

**COMPASS**
Compass Colorado, LLC dba Compass
Steven D. Shane
Ph: (970) 948-6005
Fax: (970) 925-6064

> The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (LC50-8-24) (Mandatory 8-24).

**THIS IS A BINDING CONTRACT. THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

**Compensation charged by brokerage firms is not set by law and is fully negotiable.**

**DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE BUYER AGENCY, SELLER AGENCY, OR TRANSACTION-BROKERAGE.**

# EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT

☒ SELLER AGENCY    ☐ TRANSACTION-BROKERAGE

Date: _9/17/2025_

**1.   AGREEMENT.** Seller and Brokerage Firm enter into this exclusive, irrevocable contract (Seller Listing Contract) and agree to its provisions. Broker, on behalf of Brokerage Firm, agrees to provide brokerage services to Seller. Seller agrees to pay Brokerage Firm as set forth in this Seller Listing Contract.

**2.   BROKER AND BROKERAGE FIRM.**

☒  **2.1.   Multiple-Person Firm.** If this box is checked, Broker (as defined below) is the individual designated by Brokerage Firm to serve as the broker of Seller and to perform the services for Seller required by this Seller Listing Contract. If more than one individual is so designated, then references in this Seller Listing Contract to Broker include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm, or to any other brokers employed or engaged by Brokerage Firm who are not so designated.

☐  **2.2.   One-Person Firm.** If this box is checked, Broker (as defined below) is a brokerage firm with only one licensed person. References in this Seller Listing Contract to Broker or Brokerage Firm mean both the licensed person and brokerage firm who serve as the Broker of Seller and perform the services for Seller required by this Seller Listing Contract.

**3.   DEFINED TERMS.**

**3.1.   Seller:** _Simba Holdings IL LLC_

**3.2.   Brokerage Firm:** _Compass Colorado, LLC dba Compass_

**3.3.   Broker:** _Steven D. Shane_

**3.4.   Property.** The Property is the following legally described real estate in the County of _Pitkin_, Colorado:

_Subdivision: GAYLORD Lot: 4_

known as No. _1220 Red Butte Drive Aspen, CO 81611_ ,

together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

☐  **3.5.   Affordable Housing.** If this box is checked, Seller represents, to the best of Seller's actual knowledge, the Property **IS** part of an affordable housing program. If this box is **NOT** checked, Seller represents that Property is **NOT** part of an affordable housing program.

**3.6.   Sale; Lease.**

**3.6.1.**   A "Sale" of the Property is the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease. It also includes an agreement to transfer any ownership interest in an entity which owns the Property.

☐  **3.6.2.**   If this box is checked, Seller authorizes Broker to negotiate a lease of the Property. "Lease of the Property" or "Lease" means any agreement between the Seller and a tenant to create a tenancy or leasehold interest in the Property.

**3.7.   Listing Period.** The Listing Period of this Seller Listing Contract begins on _9/17/2025_ , and continues through the earlier of (1) completion of the Sale or, if applicable, Lease of the Property or (2) _12/31/2025_ , and any written extensions (Listing Period). Broker must continue to assist in the completion of any Sale or Lease of the Property for which compensation is due and payable to Brokerage Firm under § 7 of this Seller Listing Contract.

**3.8.   Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation "N/A" or the word "Deleted" means not applicable. The abbreviation "MEC" (mutual execution of this contract) means the date upon which both parties have signed this Seller Listing Contract.

**3.9.   Day; Computation of Period of Days, Deadline.**

**3.9.1.   Day.** As used in this Seller Listing Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings as applicable).

**3.9.2.   Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified (e.g., three days after MEC), the first day is excluded and the last day is included. If any deadline falls on a Saturday, Sunday, or federal or Colorado state holiday (Holiday), such deadline ☒ Will ☐ Will Not be extended to the next day that is not a Saturday, Sunday, or Holiday. Should neither box be checked, the deadline will not be extended.

EXHIBIT "2" - PAGE 1

CTMeContracts.com - ©2025 MRI Software LLC

**4.  BROKERAGE RELATIONSHIP.**

**4.1.**  If the Seller Agency box at the top of page 1 is checked, Broker represents Seller as Seller's limited agent (Seller's Agent). If the Transaction-Brokerage box at the top of page 1 is checked, Broker acts as a Transaction-Broker.

**4.2.  In-Company Transaction – Different Brokers.** When Seller and buyer in a transaction are working with different brokers within the Brokerage Firm, those brokers continue to conduct themselves consistent with the brokerage relationships they have established. Seller acknowledges that Brokerage Firm is allowed to offer and pay compensation to brokers within Brokerage Firm working with a buyer.

**4.3.  In-Company Transaction – One Broker.** If Seller and buyer are both working with the same Broker, Broker must function as:

**4.3.1.  Seller's Agent.** If the Seller Agency box at the top of page 1 is checked, the parties agree the following applies:

**4.3.1.1.  Seller Agency Unless Brokerage Relationship with Both.** Broker represents Seller as Seller's Agent and must treat the buyer as a customer. A customer is a party to a transaction with whom Broker has no brokerage relationship. Broker must disclose to such customer the Broker's relationship with Seller. However, if Broker delivers to Seller a written Change of Status that Broker has a brokerage relationship with the buyer then Broker is working with both Seller and buyer as a Transaction Broker. If the box in § 4.3.1.2. (**Seller Agency Only**) is checked, § 4.3.1.2. (**Seller Agency Only**) applies instead.

☐ **4.3.1.2.  Seller Agency Only.** If this box is checked, Broker represents Seller as Seller's Agent and must treat the buyer as a customer.

**4.3.2.  Transaction-Broker.** If the Transaction-Brokerage box at the top of page 1 is checked, or in the event neither box is checked, Broker must work with Seller as a Transaction-Broker. A Transaction-Broker must perform the duties described in § 5 and facilitate sales transactions without being an advocate or agent for either party. If Seller and buyer are working with the same Broker, Broker must continue to function as a Transaction-Broker.

**5.  BROKERAGE DUTIES.** Broker, on behalf of Brokerage Firm as either a Transaction-Broker or a Seller's Agent, must perform the following **"Uniform Duties"** when working with Seller:

**5.1**  Broker must exercise reasonable skill and care for Seller, including, but not limited to the following:

**5.1.1.**  Performing the terms of any written or oral agreement with Seller;

**5.1.2.**  Presenting all offers to and from Seller in a timely manner regardless of whether the Property is subject to a contract for Sale.

**5.1.3.**  Disclosing to Seller adverse material facts actually known by Broker;

**5.1.4.**  Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond the expertise of Broker;

**5.1.5.**  Accounting in a timely manner for all money and property received; and

**5.1.6.**  Keeping Seller fully informed regarding the transaction.

**5.2.**  Broker must not disclose the following information without the informed consent of Seller:

**5.2.1.**  That Seller is willing to accept less than the asking price for the Property;

**5.2.2.**  What the motivating factors are for Seller to sell the Property;

**5.2.3.**  That Seller will agree to financing terms other than those offered;

**5.2.4.**  Any material information about Seller unless disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing; or

**5.2.5.**  Any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property.

**5.3.**  Seller consents to Broker's disclosure of Seller's confidential information to the supervising broker or designee for the purpose of proper supervision, provided such supervising broker or designee does not further disclose such information without consent of Seller, or use such information to the detriment of Seller.

**5.4.**  Brokerage Firm may have agreements with other sellers to market and sell their properties. Broker may show alternative properties not owned by Seller to other prospective buyers and list competing properties for sale.

**5.5.**  Broker is not obligated to seek additional offers to purchase the Property while the Property is subject to a contract for Sale.

**5.6.**  Broker has no duty to conduct an independent inspection of the Property for the benefit of a buyer and has no duty to independently verify the accuracy or completeness of statements made by Seller or independent inspectors. Broker has no duty to conduct an independent investigation of a buyer's financial condition or to verify the accuracy or completeness of any statement made by a buyer.

**5.7.**  Seller understands that Seller is not liable for Broker's acts or omissions that have not been approved, directed, or ratified by Seller.

**5.8.**  When asked, Broker ☒ **Will** ☐ **Will Not** disclose to prospective buyers and cooperating brokers the existence of offers on the Property and whether the offers were obtained by Broker, a broker within Brokerage Firm, or by another broker. If Broker wishes to disclose the terms of any offer, Broker must first obtain the Seller's written consent.

**6.  ADDITIONAL DUTIES OF SELLER'S AGENT.** If the Seller Agency box at the top of page 1 is checked, Broker is Seller's Agent, with the following additional duties:

**6.1.**  Promoting the interests of Seller with the utmost good faith, loyalty and fidelity;

**6.2.**  Seeking a price and terms that are set forth in this Seller Listing Contract; and

**6.3.**  Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.

**7.  COMPENSATION TO BROKERAGE FIRM; COMPENSATION TO BUYER BROKERAGE FIRM.** Seller agrees that any Brokerage Firm compensation that is conditioned upon the Sale of the Property will be earned by Brokerage Firm as set forth herein without any discount or allowance for any efforts made by

EXHIBIT "2" - PAGE 2

CTMeContracts.com - ©2025 MRI Software LLC

Seller or by any other person in connection with the Sale of the Property.

**7.1.**   **Amount.** In consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows:

**7.1.1.**   **Sale Compensation.** (1) **4** % of the gross purchase price or (2) **n/a**, in U.S. dollars.

**7.1.1.1.**   If buyer's brokerage firm: (i) procures a buyer; and (ii) the transaction results in a closing of the Sale of the Property to such buyer, Seller's Brokerage Firm may enter into a compensation agreement with buyer's brokerage firm to contribute from the Sale Compensation an amount of **2**% of the gross purchase price or **$n/a**, in U.S. dollars to buyer's brokerage firm.

**7.1.1.2.**   If Seller agrees to pay the buyer's brokerage firm pursuant to the contract between buyer and Seller, Seller's compensation to Seller's Brokerage Firm will be reduced by that amount not to exceed the buyer's brokerage firm compensation set forth in §7.1.1.1.

**7.1.2.**   **Lease Compensation.** If the box in § 3.6.2. is checked, Brokerage Firm will be paid a fee equal to (1) **n/a** % of the gross rent under the lease, or (2) **n/a**, in U.S. dollars, payable as follows: **n/a**. Brokerage Firm agrees to contribute from the Lease Compensation to tenant's brokerage firm an amount of **n/a** % of the gross rent or **n/a**, in U.S. dollars if: (i) tenant's brokerage firm procures the tenant; and (ii) the tenant enters into a lease with owner or owner's agent for the Property.

**7.1.3.**   **Other Compensation.**

*If listing broker brings the buyer and becomes a transaction broker the sale compensation is reduced to 3.5% of the gross purchase price.*

**7.2.**   **When Earned.** Such compensation is earned upon the occurrence of any of the following:

**7.2.1.**   Any Sale of the Property within the Listing Period by Seller, by Broker or by any other person;

**7.2.2.**   Broker finding a buyer who is ready, willing and able to complete the Sale or Lease as specified in this Seller Listing Contract; or

**7.2.3.**   Any Sale (or Lease if § 3.6.2. is checked) of the Property within **60** calendar days after the Listing Period expires (Holdover Period) (1) to anyone with whom Broker negotiated and (2) whose name was submitted, in writing, to Seller by Broker during the Listing Period (Submitted Prospect). However, Seller ☒ **Will** ☐ **Will Not** owe the compensation to Brokerage Firm under this § 7.2.3. if a compensation is earned by another licensed brokerage firm acting pursuant to an exclusive agreement entered into during the Holdover Period and a Sale or Lease to a Submitted Prospect is consummated. If no box is checked in this § 7.2.3., then Seller does not owe the compensation to Brokerage Firm.

**7.3.**   **When Applicable and Payable.** The compensation obligation applies to a Sale made during the Listing Period or any extension of such original or extended term. The compensation described in § 7.1.1. is payable at the time of the closing of the Sale, or, if there is no closing (due to the refusal or neglect of Seller) then on the contracted date of closing, as contemplated by § 7.2.1. or § 7.2.3., or upon fulfillment of § 7.2.2. where the offer made by such buyer is not accepted by Seller.

**8.**   **LIMITATION ON THIRD-PARTY COMPENSATION.** Neither Broker nor Brokerage Firm, except as set forth in § 7, will accept compensation from any other person or entity in connection with the Property without the written consent of Seller. Additionally, neither Broker nor Brokerage Firm is permitted to assess or receive mark-ups or other compensation for services performed by any third party or affiliated business entity unless Seller signs a separate written consent for such services.

**9.**   **OTHER BROKERS' ASSISTANCE, MULTIPLE LISTING SERVICES (MLS) AND MARKETING.** Seller has been advised by Broker of the advantages and disadvantages of various marketing methods, including advertising and the use of multiple listing services (MLS) and various methods of making the Property accessible by other brokerage firms (e.g., using lock boxes, by-appointment-only showings, etc.) and whether some methods may limit the ability of another broker to show the Property. After having been so advised, Seller has chosen the following:

**9.1.**   **MLS/Information Exchange.**

**9.1.1.**   The Property ☒ **Will** ☐ **Will Not** be submitted to one or more MLS and ☒ **Will** ☐ **Will Not** be submitted to one or more property information exchanges. If submitted, Seller authorizes Broker to provide a copy of this Seller Listing Contract to the MLS or information exchange, if requested, timely provide notice of any listing status change (e.g.: active, under contract, pending, sold) to such MLS and information exchanges, and, upon transfer of deed from Seller to buyer, provide all required sales information to such MLS and information exchanges.

**9.1.2.**   Seller authorizes the use of electronic and all other marketing methods except: *n/a*

**9.1.3.**   Seller further authorizes use of the data by MLS and property information exchanges, if any.

**9.1.4.**   The Property Address ☐ **Will** ☒ **Will Not** be displayed on the Internet.

**9.1.5.**   The Property Listing ☐ **Will** ☒ **Will Not** be displayed on the Internet.

**9.2.**   **Property Access.**

**9.2.1.**   Broker may access the Property by:

☐ Electronic Lock Box   ☐ Manual Lock Box

☒ *Appointment with Listing Broker*

Other instructions:
*Seller to provide access instructions.*

**9.2.2.**   Other than Broker, Seller further authorizes the following persons to access the Property using the method described in § 9.2.1.

☐ Actively Licensed Real Estate Brokers ☐ Licensed Appraisers
☐ Unlicensed Broker Assistants ☐ Unlicensed Inspectors
☒ Other: *Steven Shane`s broker associates Karla Beth Spence, Stefanie Duch, Mary Kate Lee and Audrey Cummins*

**9.3.**   **Broker Marketing.**

CTMeContracts.com · ©2025 MRI Software LLC

**9.3.1.** The following specific marketing tasks will be performed by Broker: *Provide Seller with current market conditions along with competitive market analysis, show property to prospective buyers, negotiate and prepare contracts on behalf of Seller, communicate with Seller periodically, and guide Seller through the contractual obligations and deadlines.*

**9.3.2.** Seller authorizes videos and pictures of both the interior and exterior of the Property except: *n/a*

**9.4. Marketing Termination.** Broker and Brokerage Firm may discontinue using any marketing materials if, in Brokerage Firm's sole discretion, Broker or Brokerage Firm receives a credible threat of litigation or a complaint regarding the use of such marketing material. Upon expiration of the Listing Period and request from Seller, Broker will use reasonable efforts to remove information submitted to the MLS and/or information exchanges. Seller understands that information submitted to either the MLS or information exchanges may be difficult, if not impossible, to remove from syndicators and the Internet and releases Broker from any liability for Broker's inability to remove the information.

**10. SELLER'S OBLIGATIONS TO BROKER; DISCLOSURES AND CONSENT.**

**10.1. Negotiations and Communication.** Seller agrees to conduct all negotiations for the Sale or Lease of the Property only through Broker and to refer to Broker all communications received in any form from real estate brokers, prospective buyers, tenants, or any other source during the Listing Period of this Seller Listing Contract.

**10.2. Advertising.** Seller agrees that any advertising of the Property by Seller (e.g., Internet, print, and signage) must first be approved by Broker.

**10.3. No Existing Listing Agreement.** Seller represents that Seller ☐ **Is** ☒ **Is Not** currently a party to any listing agreement with any other broker to sell the Property. Seller further represents that Seller ☐ **Has** ☒ **Has Not** received a list of "Submitted Prospects" pursuant to a previous listing agreement to sell the Property with any other broker.

**10.4. Ownership of Materials and Consent.** Seller represents that all materials (including all photographs, renderings, images, videos, or other creative items) supplied to Broker by or on behalf of Seller are owned by Seller, except as Seller has disclosed in writing to Broker. Seller is authorized and grants to Broker, Brokerage Firm, and any MLS (that Broker submits the Property to) a nonexclusive irrevocable, royalty-free license to use such material for marketing of the Property, reporting as required as well as the publishing, display, and reproduction of such material, compilation, and data. This license survives the termination of this Seller Listing Contract. Unless agreed to otherwise, all materials provided by Broker (photographs, renderings, images, videos, or other creative items) may not be used by Seller for any reason.

**10.5. Colorado Foreclosure Protection Act.** The Colorado Foreclosure Protection Act (Act) generally applies if (1) the Property is residential, (2) Seller resides in the Property as Seller's principal residence, (3) buyer's purpose in purchase of the Property is not to use the Property as buyer's personal residence, and (4) the Property is in foreclosure or buyer has notice that any loan secured by the Property is at least thirty (30) days delinquent or in default. If all requirements 1, 2, 3, and 4 are met and the Act otherwise applies, then a contract between buyer and Seller for the sale of the Property that complies with the provisions of the Act is required. If the transaction is a Short Sale transaction and a Short Sale Addendum is part of the Contract between Seller and buyer, the Act does not apply. It is recommended that Seller consult with an attorney.

**11. PRICE AND TERMS.** The following Price and Terms are acceptable to Seller:

**11.1. Price.** U.S. $ *30,000,000*

**11.2. Terms.** ☒ Cash ☐ Conventional ☐ FHA ☐ VA ☒ Other: *Any terms acceptable to the seller*

**11.3. Loan Discount Points.** *n/a*

**11.4. Buyer's Closing Costs (FHA/VA).** Seller must pay closing costs and fees, not to exceed $ *n/a*, that Buyer is not allowed by law to pay, for tax service and *n/a*.

**11.5. Earnest Money.** Minimum amount of earnest money deposit U.S. $ *Any terms acceptable to the seller* in the form of *Good Funds*

**11.6. Seller Proceeds.** Seller will receive net proceeds of closing as indicated: ☐ **Cashier's Check** at Seller's expense; ☒ **Funds Electronically Transferred (Wire Transfer)** to an account specified by Seller, at Seller's expense; or ☐ **Closing Company's Trust Account Check** . Wire and other frauds occur in real estate transactions. Any time Seller is supplying confidential information such as social security numbers or bank account numbers, Seller should provide the information in person or in another secure manner.

**11.7. FIRPTA.** Pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA), the Internal Revenue Service (IRS) may require a substantial portion of Seller's proceeds be withheld after Closing when Seller is a foreign person. If the box in this Section is checked, Seller represents that Seller ☐ **IS** a foreign person for purposes of U.S. income taxation and authorizes Broker to disclose such status. If the box in this Section is not checked, Seller represents that Seller is not a foreign person for purposes of U.S. income taxation.

**11.8. Colorado Withholding.** If Seller is not exempt, the Colorado Department of Revenue may require a portion of the Seller's proceeds be withheld after Closing when Seller will not be a Colorado resident after Closing.

**12. DEPOSITS.** Brokerage Firm is authorized to accept earnest money deposits received by Broker pursuant to a proposed contract for the Sale of the Property. Brokerage Firm is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the contract for the Sale of the Property.

**13. INCLUSIONS AND EXCLUSIONS.**

**13.1.    Inclusions.** The Purchase Price includes the following items (Inclusions):

**13.1.1.    Inclusions – Attached.** If attached to the Property on the date of this Seller Listing Contract, the following items are included unless excluded under §13.2. (Exclusions): lighting, heating, plumbing, ventilating and air conditioning units, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories) and garage door openers (including *n/a* remote controls). If checked, the following are owned by the Seller and included (leased items should be listed under §13.1.6. (Leased Items): ☐ None ☐ Solar Panels ☐ Water Softeners ☐ Security Systems ☐ Satellite Systems (including satellite dishes). If any additional items are attached to the Property after the date of this Seller Listing Contract, such additional items are also included.

**13.1.2.    Inclusions – Not Attached.** If on the Property, whether attached or not, on the date of this Seller Listing Contract, the following items are included unless excluded under §13.2. (Exclusions): storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings and treatments, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, carbon monoxide alarms, smoke/fire detectors, and all keys.

**13.1.3.    Other Inclusions.** The following items, whether fixtures or personal property, are also included in the Purchase Price:

*Per the inventory list of inclusions and exclusions.*

**13.1.4.    Encumbered Inclusions.** Any Inclusions owned by Seller (e.g., owned solar panels) must be conveyed at Closing by Seller free and clear of all taxes (except personal property and general real estate taxes for the year of Closing), liens and encumbrances, except:
*n/a*

**13.1.5.    Personal Property Conveyance.** Conveyance of all personal property will be by bill of sale or other applicable legal instrument.

**13.1.6.    Leased Items.**

**13.1.6.1.    ** The following leased items are part of the transaction:
*n/a*

**13.1.6.2.    Lease Documents.** Seller agrees to supply to buyer, as will be set forth in the final contract between Seller and buyer, the documents between Seller and Seller's lessor regarding the lease, leased item, cost, and other terms including requirements imposed upon a buyer if buyer is assuming the leases.

**13.2.    Exclusions.** The following are excluded (Exclusions):
*Per the inventory list of inclusions and exclusions.*

**13.3.    Trade Fixtures.** The following trade fixtures are included:
*n/a*

The Trade Fixtures to be conveyed at closing must be conveyed by Seller, free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except *n/a*. Conveyance will be by bill of sale or other applicable legal instrument.

**13.4.    Parking and Storage Facilities.** The use or ownership of the following parking facilities:
*all those appurtenant to the property* ; and the use or ownership of the following storage facilities:
*all those appurtenant to the property*

**13.5.    Water Rights/Well Rights**

☐ **13.5.1.    Deeded Water Rights.** The following legally described water rights:
*n/a*

Seller agrees to convey any deeded water rights by a good and sufficient *n/a* deed at Closing.

☐ **13.5.2.    Other Rights Relating to Water.** The following rights relating to water not included in §§ 13.5.1., 13.5.3., and 13.5.4.:
*n/a*

☐ **13.5.3.    Well Rights.** The Well Permit # is *n/a*.

☐ **13.5.4.    Water Stock Certificates.** The water stock certificates are as follows:
*n/a*

**13.6.    Growing Crops.** The following growing crops:
*n/a*

**14.    TITLE AND ENCUMBRANCES.**

**14.1.    Seller Representation.** Seller represents that title to the Property is solely in Seller's name.

**14.2.    Delivery of Documents.** Seller must deliver to Broker true copies of all relevant title materials, leases, improvement location certificates and surveys in Seller's possession and must disclose all easements, liens, and other encumbrances, if any, on the Property, of which Seller has knowledge.

**14.3.    Conveyance.** In case of Sale, Seller agrees to convey the Property, by a good and sufficient ☐ special warranty deed ☐ general warranty deed ☒ quit claim deed ☐ personal representative's deed ☐ *n/a* deed. If title will be conveyed using a special warranty deed or a general warranty deed, unless otherwise specified in § 28 (Additional Provisions) below, title will be conveyed "subject to statutory exceptions" as defined in § 38-30-113, C.R.S. Seller's conveyance of the Property to a buyer will convey only that title Seller has in the Property.

**14.4.    Monetary Encumbrances.** Property must be conveyed free and clear of all taxes, except the general taxes for the year of closing. All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) must be paid by Seller and released except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows:
*n/a*
If the Property has been or will be subject to any governmental liens for special improvements installed at the time of signing a contract for the Sale of the Property, Seller is responsible for payment of same, unless

otherwise agreed.

**14.5.   Tenancies.** The Property will be conveyed subject to the following leases and tenancies for possession of the Property:
*n/a*

**15.   EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense unless the parties agree in writing to a different arrangement, a current commitment and an owner's title insurance policy in an amount equal to the Purchase Price as specified in the contract for the Sale of the Property, or if this box is checked, ☐ **An Abstract of Title** certified to a current date.

**16.   ASSOCIATION ASSESSMENTS.** Seller represents that the amount of the regular owners' association assessment is currently payable at approximately $*n/a* per *n/a* and that there are no unpaid regular or special assessments against the Property except the current regular assessments and except *n/a*. Seller agrees to promptly request the owners' association to deliver to buyer before date of closing a current statement of assessments against the Property.

**17.   POSSESSION.** Possession of the Property will be delivered to buyer as follows: *as set forth in a sales contract with a buyer*, subject to leases and tenancies as described in § 14.

**18.   MATERIAL DEFECTS, DISCLOSURES AND INSPECTION.**

**18.1.   Broker's Obligations.** Colorado law requires a broker to disclose to any prospective buyer all adverse material facts actually known by such broker including but not limited to adverse material facts pertaining to the title to the Property and the physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which are required by law to be disclosed. These types of disclosures may include such matters as structural defects, soil conditions, violations of health, zoning or building laws, and nonconforming uses and zoning variances. Seller agrees that any buyer may have the Property and Inclusions inspected and authorizes Broker to disclose any facts actually known by Broker about the Property.

**18.2.   Seller's Obligations.**

**18.2.1.   Seller's Property Disclosure Form.** Seller ☒ **Agrees** ☐ **Does Not Agree** to provide on or before the sale contract's respective deadline a Seller's Property Disclosure form completed to Seller's current, actual knowledge. Colorado law requires Seller to disclose certain facts regardless of whether Seller is providing a Seller's Property Disclosure form. Typically, the contract requires disclosure of adverse material facts actually known by Seller.

**18.2.2.   Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings for which a building permit was issued prior to January 1, 1978, a completed Lead-Based Paint Disclosure (Sales) form must be signed by Seller and the real estate licensees, and given to any potential buyer in a timely manner.

**18.2.3.   Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater or appliance, a fireplace, or an attached garage and one or more rooms lawfully used for sleeping purposes (Bedroom), Seller understands that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code, prior to offering the Property for sale or lease.

**18.2.4.   Condition of Property.** The Property will be conveyed in the condition existing as of the date of the contract for Sale or Lease of the Property, ordinary wear and tear excepted, unless Seller, at Seller's sole option, agrees in writing to any repairs or other work to be performed by Seller.

**19.   DEFAULT; RIGHT TO CANCEL.** If any obligation is not performed timely as provided in this Contract or waived, the non-defaulting party has the following remedies:

**19.1.   If Broker is in Default.** In the event the Broker fails to substantially perform under this Seller Listing Contract, Seller has the right to cancel this Seller Listing Contract, including all rights of Brokerage Firm to any compensation. Any rights of Seller to damages, if any, that accrued prior to cancellation will survive such cancellation.

**19.2.   If Seller is in Default.** In the event the Seller fails to substantially perform under this Seller Listing Contract to include Seller's or occupant's failure to reasonably cooperate with Broker, Brokerage Firm may cancel this Seller Listing Contract upon written notice to Seller. Any rights of Brokerage Firm that accrued prior to cancellation will survive such cancellation, to include Brokerage Firm's damages, if any.

**19.3.   Additional Rights of Brokerage Firm to Cancel.** Brokerage Firm may cancel this Seller Listing Contract upon written notice to Seller that title is not satisfactory to Brokerage Firm. Although Broker has no obligation to investigate or inspect the Property and no duty to verify statements made, Brokerage Firm has the right to cancel this Seller Listing Contract if any of the following are unsatisfactory: (1) the physical condition of the Property or Inclusions, (2) any proposed or existing transportation project, road, street or highway, (3) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants, or (4) any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property. In the event Brokerage Firm exercises its right to cancel under this provision, Brokerage Firm waives all rights to pursue damages.

**20.   FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received will be: (1) ☒ paid to Seller in its entirety; (2) ☐ divided between Brokerage Firm and Seller, one-half to Brokerage Firm but not to exceed the Brokerage Firm compensation agreed upon herein, and the balance to Seller; (3) ☐ Other: If no box is checked in this Section, choice (1), paid to Seller in its entirety, applies. Any forfeiture of payment under this Section will not reduce any Brokerage Firm compensation owed, earned and payable under § 7.

**21.   COST OF SERVICES AND REIMBURSEMENT.** Unless otherwise agreed upon in writing, Brokerage Firm must bear all expenses incurred by Brokerage Firm, if any, to market the Property and to compensate buyer's brokerage firms, if any. Neither Broker nor Brokerage Firm will obtain or order any other products or

services unless Seller agrees in writing to pay for them promptly when due (e.g., surveys, radon tests, soil tests, title reports, engineering studies, property inspections). Unless otherwise agreed, neither Broker nor Brokerage Firm is obligated to advance funds for Seller. Seller must reimburse Brokerage Firm for payments made by Brokerage Firm for such products or services authorized by Seller.

**22. DISCLOSURE OF SETTLEMENT COSTS.** Seller acknowledges that costs, quality, and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors, and title companies).

**23. MAINTENANCE OF THE PROPERTY.** Neither Broker nor Brokerage Firm is responsible for maintenance of the Property nor are they liable for damage of any kind occurring to the Property, unless such damage is caused by their negligence or intentional misconduct.

**24. NONDISCRIMINATION.** The parties agree not to discriminate unlawfully against any prospective buyers because of their inclusion in a "protected class" as defined by federal, state, or local law. "Protected classes" include, but are not limited to, race, creed, color, sex, sexual orientation, gender identity, marital status, familial status, physical or mental disability, handicap, religion, military status, hair style/texture, national origin, or ancestry of such person. Seller authorizes Broker to withhold any supplemental information about the prospective buyer if such information would disclose a buyer's protected class(es). However, any financial, employment or credit worthiness information about the buyer received by Broker will be submitted to Seller. Seller understands and agrees that the Broker may not violate federal, state, or local fair housing laws.

**25. RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Seller acknowledges that Broker has advised that this document has important legal consequences and has recommended consultation with legal and tax or other counsel before signing this Seller Listing Contract.

**26. MEDIATION.** If a dispute arises relating to this Seller Listing Contract, prior to or after closing, and is not resolved, the parties must first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, will terminate in the event the entire dispute is not resolved within 30 calendar days of the date written notice requesting mediation is delivered by one party to the other at the other party's last known address.

**27. ATTORNEY FEES.** In the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court must award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

**28. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)
_1. Broker`s licensed associates Karla Beth Spence, Stefanie Duch, Mary Kate Lee and Audrey Cummins, as well as the Compass transaction Coordinator will have access to confidential Seller information._

**29. ATTACHMENTS.** The following are a part of this Seller Listing Contract:
_n/a_

**30. NO OTHER PARTY OR INTENDED BENEFICIARIES.** Nothing in this Seller Listing Contract is deemed to inure to the benefit of any person other than Seller, Broker, and Brokerage Firm.

**31. NOTICE, DELIVERY AND CHOICE OF LAW.**
**31.1. Physical Delivery and Notice.** Any document or notice to Brokerage Firm or Seller must be in writing, except as provided in § 31.2. and is effective when physically received by such party, or any individual named in this Seller Listing Contract to receive documents or notices for such party.
**31.2. Electronic Notice.** As an alternative to physical delivery, any notice may be delivered in electronic form to Brokerage Firm or Seller, or any individual named in this Seller Listing Contract to receive documents or notices for such party, at the electronic address of the recipient by facsimile, email or **internet**.
**31.3. Electronic Delivery.** Electronic Delivery of documents and notice may be delivered by: (1) email at the email address of the recipient, (2) a link or access to a website or server provided the recipient receives the information necessary to access the documents, or (3) facsimile at the facsimile number (Fax No.) of the recipient.
**31.4. Choice of Law.** This Seller Listing Contract and all disputes arising hereunder are governed by and construed in accordance with the laws of the state of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for real property located in Colorado.

**32. MODIFICATION OF THIS SELLER LISTING CONTRACT.** No subsequent modification of any of the terms of this Seller Listing Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**33. COUNTERPARTS.** This Seller Listing Contract may be executed by each of the parties, separately, and when so executed by all the parties, such copies taken together are deemed to be a full and complete contract between the parties.

**34. ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties and any

prior agreements, whether oral or written, have been merged and integrated into this Seller Listing Contract.

**35.    COPY OF CONTRACT.** Seller acknowledges receipt of a copy of this Seller Listing Contract signed by Broker, including all attachments.

Brokerage Firm authorizes Broker to execute this Seller Listing Contract on behalf of Brokerage Firm

**Seller:**

_____ Date: _____
Seller: *Simba Holdings IL LLC*
        *By: Richard Marshack, Chief Restructuring Officer*

**Brokerage Firm:**

_____ Date: _*9/17/2025*_

 Broker's Name: *Steven D. Shane*
Brokerage Firm's Name: *Compass Colorado, LLC dba Compass*
Brokerage Firm Address: *230 E Hopkins Avenue Aspen, CO 81611*
Broker Phone No.: *(970) 948-6005*   Broker Fax No.: *(970) 925-6064*
Broker Email Address:
*steven.shane@compass.com;kbspence@compass.com;stefanieduch@compass.com;marykate.lee@compass.com;audrey.cu*

**LC50-8-24 EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT**

CTM eContracts - ©2025 MRI Software LLC - All Rights Reserved

CTMeContracts.com - ©2025 MRI Software LLC

# ADDENDUM
## LISTING AGREEMENT
### 1220 RED BUTTE DRIVE, ASPEN, CO

The following terms and conditions of this Addendum ("Addendum") are hereby incorporated in and made a part of the Exclusive Right-to-Sell Listing Contract dated September 17, 2025 ("Listing Agreement") entered into by and between Compass Colorado, LLC dba Compass ("Compass"), Steven Shane, Broker (collectively with Compass "Agent") and Simba IL Holdings LLC ("Seller"), a Chapter 11 Subchapter V debtor in possession in the case entitled *In re: Simba IL Holdings LLC* ("Debtor")*, Case No.: 8:25-bk-12616 ("Case") currently pending in the United States Bankruptcy Court, in the Central District of California ("Court"), regarding 1220 RED BUTTE DRIVE, ASPEN, CO. ("Property"):

In addition to the terms and conditions in the Listing Agreement, Agent and Seller agree:

1. Dispute Resolution. Paragraph 26, Mediation, and any other provisions for mediation or arbitration of disputes, are deleted in its/their entirety and replaced with: Any and all disputes relating to the Property, Debtor, CRO, this Addendum or the Listing Agreement are subject to the exclusive jurisdiction and venue of the Bankruptcy Court in the Central District of California, Santa Ana Division. If for any reason the matter cannot proceed in the Bankruptcy Court then it shall be heard in the District Court of Central District of California. The Listing Agreement and this Addendum shall be construed pursuant to the laws of the State of Colorado as applied by the Bankruptcy Court.

2. CRO Capacity and Liability. Agent acknowledges that in selling the Property, Richard A. Marshack acting as the Chief Restructuring Officer ("CRO") of the Seller is acting in an official capacity only. No personal liability shall be sought or enforced against CRO or any of his professionals (including Marshack Hays Wood LLP) with regard to the Listing Agreement, this Addendum, the Property, any agreement, offer, counteroffer, any financial statements or disclosures related to the Property, the sale of the Property, the physical condition of the Property, or any other matter.

3. No Representations or Warranties. To the extent that the Listing Agreement contains disclosure, representation or warranty provisions, Agent acknowledges that CRO will not make any representations, warranties or disclosures concerning the Property, and if any disclosures are made, CRO shall not have any personal liability.

4. Bankruptcy Court Approval. The Listing Agreement and the sale of the Property are subject to Bankruptcy Court approval. Agent acknowledges that the sale to a buyer may be subject to overbid.

5. Compensation. Compensation specified to Agent and any cooperating broker is subject to any restrictions imposed by the Court and is subject to the approval and determination of the Court. Subject to Court approval, the commission shall be as follows: 4% if there is a cooperating broker (2% each) and 3.5% if the Agent also represents the buyer, unless otherwise agreed in writing by all agents and Seller and approved by the Court. If there are one or more overbids, and an auction is held, an additional consultant fee of .2% shall be paid to Clarence Yoshikane, Berkshire Hathaway Home Services, to assist Seller with the auction.  No commission or consultant fee shall be due and payable except from the cash proceeds of an actual sale of the Property to a third-party buyer, and upon closing of such sale after Court approval of such sale and the commission and consultant fee.

1

6. <u>Right to Terminate</u>. Seller may decline, at its option and sole discretion, to consummate a sale for any reason, including without limitation: (a) the dismissal of the Case; (b) the inability to administer the Case; (c) the inability to obtain approval of the sale by the Court; (d) liens, claims or co-owners, or other encumbrances against the Property, if any, make the sale infeasible or unprofitable to the Estate; or (d) the inability to sell the Property on the terms and conditions set forth in any sales agreement. Seller reserves the right, in its sole discretion, to terminate the Listing Agreement by serving a notice of such termination on Agent. This Listing Agreement shall automatically terminate in the event the Case is dismissed, or the Court does not approve the employment of Agent. No liability or obligations shall accrue to Seller, Debtor or CRO on any such termination and Agent agrees to fully and completely release Seller, Debtor and CRO from any obligations under the Listing Agreement.

7. <u>Date Preservation for Potential Overbid</u>. Agent shall provide Seller a list of all agents and individuals without and agent, who have made an inquiry on the Property, and provide their names, email addresses and phone numbers, on the 1st and 15th of each month. The list shall include whether the people have toured the Property. The list may be used by CRO once an acceptable offer is received to notify them that they have an opportunity to submit an overbid. The list should be sent to rmarshack@marshackhays.com, kthagard@marshackhays.com and pkraus@marshackhays.com.

8. <u>Conflicts</u>. To the extent that the Listing Agreement conflicts with this Addendum, this Addendum shall control and the conflicting provisions the Listing Agreement are superseded. Without waiving the generality of the foregoing, the following paragraphs of the Listing Agreement are specifically deleted: 5.5, 7.3, and 26.

9. <u>Addendum</u>. Agent acknowledges and agrees that any offers for the Property shall include an addendum executed by any buyer and all agents with the following terms and conditions, which are subject to modification and supplementation by Seller:

   a. <u>Court Approval Overbid and Closing</u>. All offers/sales are subject to Court confirmation and overbid ("Sale Motion"). The sale shall close, with Buyer tendering the full Purchase Price (less the Deposit), the first business day that is not more than fifteen (15) calendar days after entry of an order of the Court confirming the sale (the "Sale Order").

   b. <u>Waiver of Contingencies</u>. The sale agreement shall have no loan, appraisal contingency or due diligence contingency. Buyer represents that it has had the opportunity prior to entering into the sale agreement to do physical inspections, environmental review (including a phase 1 report) review of city and county documents and permits (Buyer's research), review of any lease, preliminary title report, statutory reports, if any, and any other due diligence it deems necessary or advisable. Buyer based solely on its own review and investigation will waive all contingencies.

   c. <u>Escrow and Title</u>. Escrow and Title shall be selected by Seller.

   d. <u>Property Sold "As is" "Where is"</u>.

      i. Buyer acknowledges that Seller is a Debtor in Bankruptcy represented by CRO. CRO has not, and will not, inspect the Property or determine its condition, fitness or use for any particular purpose, nor will he provide any

2

written disclosures, guarantees or warranties of any kind. Seller does not warrant or guarantee the accuracy of any financial statements, disclosures, legal documents or governmental approvals (plans, entitlements, permits and certificates of occupancy) relating to the Property. The sale shall be "as-is" and "where is" with no warranty or recourse whatsoever.

ii.   BUYER DOES HEREBY ACKNOWLEDGE AND AGREE THAT BUYER IS PURCHASING THE PROPERTY IN AN "AS-IS, WHERE IS, WITH ALL FAULTS" CONDITION AS OF THE CLOSE OF ESCROW. EXCEPT AS SET FORTH IN THE AGREEMENT AND ANY COUNTEROFFER, SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES REGARDING THE PROPERTY; AND PRIOR TO ENTERING INTO THE AGREEMENT AND/OR COUNTER OFFER, BUYER HAS UNDERTAKEN ALL SUCH INSPECTIONS AND EXAMINATIONS IN CONNECTION WITH THE PROPERTY AS BUYER DEEMS NECESSARY OR APPROPRIATE UNDER THE CIRCUMSTANCES (INCLUDING THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, THE ZONING OF THE PROPERTY, THE PROPERTY'S COMPLIANCE WITH APPLICABLE LAWS, THE CONDITION OF ANY IMPROVEMENTS ON THE PROPERTY, AND THE AVAILABILITY OR LACK THEREOF OF UTILITIES FOR THE USE AND OCCUPANCY OF THE PROPERTY), AND THAT BASED UPON THE SAME, BUYER IS AND WILL BE RELYING STRICTLY AND SOLELY UPON SUCH INSPECTIONS AND EXAMINATIONS AND THE ADVICE OF ITS AGENTS, CONSULTANTS, CONTRACTORS, VENDORS AND REPRESENTATIVES. EXCEPT AS SET FORTH IN THIS AGREEMENT, NEITHER SELLER NOR, ANY REPRESENTATIVE, MEMBER, AGENT, EMPLOYEE, PROPERTY MANAGER, BROKER, PRINCIPAL, PARTNER, AFFILIATE OR CONSULTANT OF SELLER IS MAKING OR HAS MADE ANY WARRANTY OR REPRESENTATION (EITHER EXPRESSED OR IMPLIED) WITH RESPECT TO ALL OR ANY PART OF THE PROPERTY AS AN INDUCEMENT TO BUYER TO ENTER INTO THE AGREEMENT AND THEREAFTER TO PURCHASE THE PROPERTY OR, FOR ANY OTHER PURPOSE. BUYER HEREBY EXPRESSLY DISCLAIMS (ON BEHALF OF ITSELF AND ANY PARTY AFFILIATED WITH OR RELATED TO BUYER) ANY AND ALL SELLER REPRESENTATIONS AND WARRANTIES (EITHER EXPRESSED OR IMPLIED), EXCEPT TO THE EXTENT EXPRESSLY PROVIDED FOR IN THE AGREEMENT AND/OR COUNTEROFFER. BY REASON OF ALL OF THE FOREGOING, BUYER SHALL ASSUME THE FULL RISK OF ANY LOSS OR DAMAGE OCCASIONED BY ANY FACT, CIRCUMSTANCE, CONDITION, OR DEFECT IN CONNECTION WITH THE PROPERTY AND THE CONSUMMATION OF THE CLOSING SHALL CONCLUSIVELY EVIDENCE AND CONSTITUTE BUYER'S RELEASE OF SELLER FROM ALL LOSS, DAMAGE AND LIABILITY FOR CLAIMS THAT MAY ARISE AFTER THE CLOSING WITH RESPECT TO ACTS OR OMISSIONS THAT OCCURRED, OR CONDITIONS THAT EXISTED, AT OR PRIOR TO THE CLOSING. WITHOUT LIMITING THE FOREGOING, BUYER SPECIFICALLY RELEASES SELLER AND SELLER'S AFFILIATES FROM ANY CLAIMS BUYER MAY HAVE AGAINST SELLER AND/OR SELLER'S AFFILIATES NOW OR IN THE FUTURE ARISING FROM

THE ENVIRONMENTAL CONDITION OF THE PROPERTY OR THE PRESENCE OF HAZARDOUS SUBSTANCES OR CONTAMINATION ON OR EMANATING FROM THE PROPERTY. THE FOREGOING WAIVERS AND RELEASES BY BUYER SHALL SURVIVE EITHER (I) THE CLOSING DATE AND SHALL NOT BE DEEMED MERGED INTO THE PROVISIONS OF ANY DEED OR CLOSING DOCUMENTS, OR (II) ANY TERMINATION OF THIS AGREEMENT.

THE ABOVE RELEASE IS INTENDED TO WAIVE ALL KNOWN OR UNKNOW CLAIMS. ANY COLORADO STATUE WHICH PROVIDES THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY, ARE WAIVED.

Buyer acknowledges that it has read, is familiar with, the releases set forth above and agrees to all of the provisions of this Section.

_____                          _____
Initial                                    Initial

e. <u>No Repairs</u>. If any state or local ordinance or laws require that the Property be brought into compliance or retrofitted, Buyer, at Buyer's sole expense, shall comply with and pay for any such requirements including for all necessary governmental repairs, corrections or additions.

f. <u>Capacity</u>. CRO is selling the Property as a representative of Seller and is signing any agreement, offers or counteroffers solely in his capacity as CRO and under no circumstances will CRO or any of his professionals (including Marshack Hays Wood LLP) have any liability with regard to the Property, any agreement, offer, counteroffer, disclosure, or the financial statements related to the Property, the sale of the Property, the physical condition of the Property, or any other matter.

g. <u>Transfer of Property.</u> Transfer of the Property by Seller shall be by Bankruptcy Trustee's Deed or Quitclaim Deed at CRO's option. Seller shall convey and Buyer shall accept the marketable title to the Property that will be insured by a national title company, without material exception, subject only to the terms herein, any further documentation of the sale and any additional terms of Seller in any offer/counteroffer.

h. <u>Liens, Claims, Encumbrances and Interests</u>. The sale shall be free and clear of monetary liens, except property taxes not yet due.

i. <u>Assessments, Taxes and Escrow fees</u>. The following assessments, taxes and other costs shall be allocated as follows: (a) all allowable assessments and real property taxes shall be prorated through the closing date of the sale to the applicable accounts of Seller and Buyer, such that the amounts applicable to the account of Buyer shall not be deducted from the Purchase Price; (b) escrow fees shall be paid 50% by

4

Buyer and 50% by Seller, such that the amount applicable to the account of Buyer shall not be deducted from the Purchase Price; (c) Buyer shall pay real property transfer tax; (d) Seller shall pay the costs of a standard issue title insurance policy; and (d) the Buyer shall pay for any additional costs for the title policy and any state mandated reports such that the amount applicable to the account of Buyer shall not be deducted from the Purchase Price. All other costs are at Buyer's sole expense and are not to be deducted from the Purchase Price

j.   <u>Appliances and Personal Property</u>. All appliances and personal property at the Property are included with the sale, unless specified in the sale agreement.

k.   <u>Brokers and Commissions</u>. Subject to Court approval, Seller shall pay a real estate broker commission through escrow pursuant to the terms of the Listing Agreement unless otherwise agreed in writing by all agents. No commission shall be due and payable except from the cash proceeds of an actual sale of the Property to Buyer and upon closing of such sale after Court approval of such sale and the commission. Except as provided for in the sale agreement, Buyer represents that no broker, salesman or finder has been engaged by it in connection with any of the transactions contemplated by the sale agreement or, to their knowledge, is in any way connected with any of such transactions. In the event of any claim for broker's, consultant's or finder's fees or commissions in connection with the negotiation, execution or consummation of the sale agreement, Buyer shall indemnify, save harmless and defend Seller from and against such claim if it shall be based upon any statement, representation or agreement made by Buyer.

l.   <u>Seller Right to Terminate</u>. Seller may decline, at its option and sole discretion, to consummate the sale for any reason, including without limitation: (a) the dismissal of the Case; (b) the inability to obtain approval of the sale by the Court; (c) liens, claims or co-owners, or other encumbrances against the Property, if any, make the sale infeasible or unprofitable to the Estate; or (d) the inability to sell the Property on the terms and conditions set forth herein. Seller reserves the right, in its sole discretion, to determine not to consummate, and to terminate, the sale of the Property by serving a notice of such termination on any Buyer. No liability or obligations shall accrue to Seller, CRO or Debtor on any such termination. Buyer's sole remedy, in the event that escrow fails to close as a result of Seller's inability to close escrow, shall be a refund of the Deposit in full.

m.   <u>Non-Refundability and Forfeiture of Deposit</u>.  Except as otherwise provided in any agreement, the entirety of the Deposit shall be absolutely non-refundable and forfeited to Seller. Notwithstanding the immediately preceding sentence, in the event: (a) the Court enters an order that does not authorize Seller to sell the Property to Buyer; or (b) the Court enters an order that authorizes the sale to another bidder and Buyer is not a backup bidder, Seller shall refund the entire Deposit to Buyer within ten (10) business days following entry of such order of Court. In the event Buyer is overbid and is a backup bidder, Seller shall refund the entire Deposit to Buyer only if the sale closes to the winning bidder and within ten (10) business days following such closing.

n.   <u>Escrow Instructions</u>. Escrow instructions shall be signed by Buyer and Seller within three (3) calendar days after execution the final agreement/counteroffer. In the event that Buyer is unable to close escrow on the first business day that is at not more than fifteen (15) calendar days after entry of the Sale Order (the "Closing

5

Date"), Buyer shall compensate Seller, One Thousand dollars ($1,000.00) per day for each day beyond the Closing Date that the sale does not close for a total extended period of no more than ten (10) calendar days. Thereafter, Seller shall have absolute discretion to either: (a) provide further extensions of the Closing Date at the same rate of compensation; or (b) terminate the sale to Buyer and retain the entirety of the Deposit as liquidated damages.

o.  <u>Dispute Jurisdiction</u>. Irrespective of any term of any agreement, any terms related to "Dispute Resolution, Mediation and/or Arbitration" are deleted in their entirety and shall be replaced with: Any and all disputes relating to the Property, Debtor, CRO, this Addendum or any purchase agreement are subject to the exclusive jurisdiction and venue of the Bankruptcy Court in the Central District of California, Santa Ana Division. If for any reason the matter cannot proceed in the Bankruptcy Court then it shall be heard in the District Court of Central District of California. Any offers or agreements shall be construed pursuant to the laws of the State of Colorado as applied by the Bankruptcy Court.

p.  <u>Conflicts</u>. To the extent that any agreement conflicts with this Addendum, this Addendum shall control, and the conflicting provisions of any other agreement are superseded.

q.  <u>Multiple Offers (if applicable)</u>. Buyer recognizes that multiple offers and/or counteroffers (in addition to the instant Counteroffer) may be pending and Seller reserves the right to choose which contract to execute and submit to the Court for approval.

**AGENT**

DATED:  September __, 2025                COMPASS COLORADO, LLC, DBA COMPASS

By:_____
     STEVEN D. SHANE

DATED: September __, 2025                **SELLER**

SIMBA IL HOLDINGS, LLC

By:_____
     RICHARD A. MARSHACK
     CHIEF RESTRUCTURING OFFICER

6

# EXHIBIT "3"
# BIO FOR STEVEN SHANE



PREPARED FOR

# SIMBA IL HOLDINGS, LLC
# 1220 RED BUTTE DRIVE





# Steven Shane

Managing Director 970.948.6005
steven.shane@compass.com

For the past 30 years, Steven has been a cornerstone of Aspen's real estate market, blending unparalleled business acumen with an unwavering commitment to integrity. As the founder of Shane Aspen Real Estate, Steven quickly established it as the top independent brokerage in the region—an achievement driven by his relentless work ethic, creative vision, and a team of elite support brokers dedicated to client success.

In April 2016, Steven made a strategic move to partner with Compass, aligning with a cutting-edge firm renowned for its innovative technology and exceptional marketing strategies. This collaboration has further propelled his success, as Compass has grown into the nation's #1 real estate brokerage, with Steven consistently ranking among Colorado's top brokers—whether number one, two, or three.

A passionate advocate for Aspen, Steven firmly believes in the power of "giving back" and is dedicated to sharing his deep love and appreciation for this community with others. His mission is simple: to help clients experience the extraordinary lifestyle that Aspen offers, while offering unmatched expertise and support every step of the way.

Compass is a licensed real estate broker, licensed to do business as Compass RE in Delaware, Idaho, New Jersey, Pennsylvania and Tennessee, Compass Realty Group in Kansas and Missouri, Compass South Carolina, LLC in South Carolina, and Compass Real Estate in Washington, DC., Idaho and Wyoming and abides by Equal Housing Opportunity laws.

COMPASS









# Unparalleled Expertise

# Unrivaled Execution



"We have a clear understanding of the local market and will execute our marking and advertising accordingly."

# #1
Compass Colorado Broker

# $266M
2024 sales volume

# $2B
in total sales volume for the past 10 years

# STEVEN SHANE SUCCESS



## FEATURED LISTINGS

125 Rooney Circle $125M
41 Popcorn Lane $59M
102 Wood Duck Lane $52.5M
395 E Reds Rd $45M - Under Contract
910 White Star $45M - Under Contract
864 Moore Dr $45M
411 Pearl Court $29.5M
Stage Road Lot 6 $29M
323 E Reds Rd $23.9M
3333 Snowmass Creek Rd $21M
605 W Bleeker $19.9M
155 Nighthawk Drive $18.95M
699 Eppley $18.2M
360 Wood Rd, Unit 501 $13.9M
408 Gerbaz Way $11.9M - Under Contract
360 Wood Rd, Unit 504 $9.9M
209 Larkspur $9.8M - Under Contract
130 Wood Rd #256+258 $7.7M
227 Sage Rim $6.95M
2959 County Rd 103 $6.4M
2345 Juniper Hill $5.1M
360 Wood Rd, Unit 503 $4.495M
360 Wood Rd, Unit 502 $4.495M
2227 Juniper Hill $3.55M - Under Contract
1050 Waters Ave 9 $3.2M
1436 Hooks Spur Rd $2.9M - Under Contract

## NOTABLE SALES

730 S Galena St $65M
550 Aspen Alps Rd $50M
439 Pearl Court $43M
2435 W Buttermilk $32M
931 N Hayden $28M
8720-8716 Castle Creek Rd $28M
861 Ute Ave $26M
864 Moore Dr $25M
916 Hunter Creek $24M
501 W Hallam $23M
428 E Hyman Ave $21.9M
1500 Owl Creek Ranch Rd $21.M
615 S Garmisch St $19.7M
189 Larson Rd $19.3M
191 Eastwood $14.7M
180 Wood Rd, Unit 304 $14.2M
415 Silverlode $13.2M
155 Lone Pine #12 $7.5M
516 Sinclair $6.5M
115 Harleston Green 58 $5.9M
2957 CR 103 $5M



Property of Aspen Glenwood MLS

COMPASS

# MY SUPPORT TEAM



### Karla Beth Spence - Director of Operations

Karla Beth Spence has been a professional in the Aspen real estate industry for 11 years. Originally from Texas, Karla moved to Aspen after receiving a BS in Economics from Baylor University. Prior to Compass, Ms. Spence worked for Shane Aspen Real Estate as a broker associate and closing specialist. Prior to Shane Aspen Real Estate, Karla Beth represented one of Aspen's premier luxury developers coordinating both sales and marketing.

### Stefanie Duch - Broker Associate and Marketing Coordinator

Originally from Chicago, Stefanie recently moved to Aspen after spending 5 years in New York City. She is a graduate of DePaul University where she majored in Marketing and International Business. Prior to joining Steven Shane, Stefanie worked in the start-up and technology scene in New York.

### Mary Kate Lee - Licensed Assistant

Born and raised in Philadelphia, Mary Kate began spending summers in Aspen in 2019 and quickly fell in love with the area. In 2022, she made the move full-time, drawn by Aspen's natural beauty and welcoming community. After two years as the Office Manager at Sotheby's, she joined Steven and his team, where she enjoys helping clients find their ideal homes in this scenic mountain town.

### Audrey Cummins - Licensed Assistant

Audrey Cummins grew up in Little Rock, Arkansas, and earned a biology degree from the University of Alabama. After college, she moved to Aspen. Audrey has worked in real estate ever since, known for her local knowledge, attention to detail, and easygoing, client-focused approach. When she's not working, you'll find her on the trails, skiing, or enjoying time with friends around town.

# CLIENT TESTIMONIALS



*"Steven Shane and his entire team are simply the best! They are professional, dedicated, available and have impeccable follow through on all aspects of your real estate transaction. We are incredibly grateful for all you did to sell our home.*

*"Steven and his team were an absolute pleasure to work with. They were professional, responsive, always available to help or answer any questions and provided wonderful guidance through the process. Thank you all very much!"*

*"Steven Shane did an excellent job selling an Aspen home for the family trust that I serve as trustee. When I called him to discuss the possible listing, he literally got in his car and started driving to view the house before we got off the phone. He's a man of action, backed by an impressive group of co-workers."*

*"Steven Shane and his team are an amazing bunch and I would have zero concerns recommending them. There is a reason Steven is constantly ranked as number 1……and I challenged them with getting a quick sale at a record high price per sq ft for the Snowmass area. They delivered and more importantly they made it painless for me. Well done to the team as we closed today and I would use them again and will use them again as my RE needs evolve."*

# COMPASS
# THE #1 REAL ESTATE BROKERAGE



# STEVEN'S MEMBERSHIPS REPRESENT HIS COMMITMENT TO LUXURY



### PRIVATE CLIENT NETWORK

A nationwide network of client-driven, results-oriented and supremely dedicated luxury residential brokerage professionals of the highest caliber. Only one Compass agent per market.

### SPORTS AND ENTERTAINMENT

Created to serve the distinct real estate needs of professional athletes and entertainers, the Compass
Sports and Entertainment Division is a national network of rigorously vetted, highly skilled agents who offer the attention of a boutique firm with the marketing and tech prowess of a national brokerage.

### REALM GLOBAL

Membership in RG is an exclusive privilege, representing the top 0.5% of real estate professionals worldwide. Through strategic wealth partnerships, members gain access to elite market data and connections with top wealth managers, ensuring unparalleled service and global exposure for properties.

### THE LUXURY DIVISION AT COMPASS

Developed to elevate the level of support, enhance the aesthetic of marketing elements, and provide exposure for exclusive properties. As commanded by elite properties, The Luxury Division takes all aspects of the preparation, promotion, and ultimate sale of a luxury property to the highest standard.

### MAROON CREEK CLUB

### ASPEN MOUNTAIN CLUB

### AM7 ASPEN

# STEVEN SHANE EXTENSIVE AFFILIATE NETWORK









# STEVEN'S MARKETING & ADVERTISING



**PRINT**

Aspen Magazine: various premier gatefolds
Aspen Times: weekly inserts & full page ads
Aspen Daily News: premier glossy full-page ads
Quarterly Newsletter: 5,000 recipients

**DIGITAL**

Targeted local banner ads on local newspaper
websites
Targeted geofencing ads reaching UHNW Aspen
buyers
Digital partnerships wih YouTube 3.6M followers
Highly acclaimed social media
Feeder market top-producing broker campaigns



# ASPEN ART MUSEUM & ARTCRUSH EXCLUSIVE REAL ESTATE SPONSOR









# Proprietary
# SFO, MFO, & RIA
# Outreach

Steven has obtained a proprietary database of RIAs, Single Family Offices, and Multi-Family Offices, which provides a unique opportunity to reach UHNW clients. The initial outreach will contact 33,000+ C-Suite and ownership RIAs, SFO, and MFOs.











# STEVEN SHANE IN THE PRESS

Steven Shane has received and continues to receive substantial press coverage and has been featured in a number of notable publications.

Robb Report

MANSION GLOBAL



DENVER BUSINESS JOURNAL

THE WALL STREET JOURNAL.

THE ASPEN TIMES

Aspen Daily News



Bloomberg





Luxury Market Insider: Call of the Luxury Mountain Town | Part I





# NEXT STEPS

## 01

### COMPLETE PAPERWORK

The listing agreement is a contract that explains our relationship and details the comprehensive service you will receive.

## 02

### PREPARE THE HOME

We'll work together to determine all necessary next steps.

## 03

### ALIGN ON STRATEGY

Once the home is ready to list, we will reassess market data and finalize our pricing approach a final time.

## 04

### LAUNCH THE PROPERTY

The property will be shared across a range of relevant channels pivotal to the sales process.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF STEVEN SHANE OF COMPASS COLORADO, LLC AS THE DEBTOR'S REAL ESTATE BROKER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF STEVEN SHANE IN SUPPORT THEREOF** (with Notice of Opportunity to Request Hearing on Motion) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 25, 2025 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) September 25, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 25, 2025 | Lori Gauthier | */s/ Lori Gauthier* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*　　　　　　　　　　　　　　　　　　**F 9013-3.1.PROOF.SERVICE**

<u>**ADDITIONAL SERVICE INFORMATION**</u> (if needed):

1.  <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Anthony Bisconti**    tbisconti@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Max Casal**    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- **Karol K Denniston**    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-
  9025@ecf.pacerpro.com
- **Alan J Friedman**    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **John-Patrick McGinnis Fritz (TR)**    jpftrustee@lnbyg.com, jpf@trustesolutions.net
- **George Gerro**    george@gerrolaw.com
- **Christopher J Harney**    charney@tocounsel.com, dfunsch@tocounsel.com
- **Steven J. Katzman**    skatzman@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Tobias S Keller**    tkeller@kellerbenvenutti.com
- **Leonard M. Shulman**    lshulman@shulmanbastian.com,
  bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

2.  <u>**SERVED BY U.S. MAIL**</u>

<u>**DEBTOR**</u>
SIMBA IL HOLDINGS, LLC
610 NEWPORT CENTER DRIVE, SUITE
950
NEWPORT BEACH, CA 92660-6473

<u>**RFN**</u>
LUGANO DIAMONDS & JEWELRY
C/O TOBIAS S. KELLER - KELLER
BENEVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

<u>**RFN**</u>
LUGANO DIAMONDS & JEWELRY
C/O TRACI SHAFROTH - KELLER
BENEVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

<u>**RFN**</u>
LUGANO DIAMONDS & JEWELRY
C/O SCOTT FRIEDMAN - KELLER
BENVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

<u>**RFN**</u>
COMPASS GROUP DIVERSIFIED
C/O KAROL DENNISTON-SQUARE
PATTON
555 CALIFORNIA STREET, SUITE 550
SAN FRANCISCO, CA 94104

<u>**RFN**</u>
COMPASS GROUP DIVERSIFIED
C/O PETER MORRISON, ESQ.
100 KEY TOWER, 127 PUBLIC SQUARE
CLEVELAND, OH 44114

<u>**RFN**</u>
COMPASS GROUP DIVERSIFIED
C/O S. LERNER & K. ARENDSEN
201 E. FOURTH ST., SUITE 1900
CINCINATI, OH 45202

<u>**COURT MAILING - UST**</u>
QUEENIE K. NG
411 WEST FOURTH STREET, SUITE
7160
SANTA ANA, CA 92701

<u>**COURT MAILING**</u>
EMPLOYMENT DEVELOPMENT DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

<u>**COURT MAILING**</u>
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

<u>**COURT MAILING**</u>
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

<u>**COURT MAILING**</u>
SECURITIES & EXCHANGE
COMMISSION
444 SOUTH FLOWER ST., SUITE 900
LOS ANGELES, CA 90071-2934

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**COURT MAILING**
ANTON, DURAID
1 ELK GROVE LN
LAGUNA NIGUEL, CA 92677-1012

**COURT MAILING**
ARONOFF, BARRY
C/O LANCE N JURICH/LOEB & LOEB LLP
10100 SANTA MONICA BLVD SUITE 2200
LOS ANGELES, CA 90067-4120

**COURT MAILING**
ARVIELO, RICK
C/O GABRIEL G GREEN - BUCHALTER APC
1000 WILSHIRE BLVD SUITE 1500
LOS ANGELES, CA 90017-1730

**COURT MAILING**
BACLET, CHARLES
1600 S OCEAN BLVD APT 2101
POMPANO BEACH, FL 33062-7710

**COURT MAILING**
BELGIUM NEW YORK LLC C/O PATRICK PAPALIA/ARCHER & GREINER PC
1211 AVENUE OF THE AMERICAS #2750
NEW YORK, NY 10036-8789

**COURT MAILING**
BENSON, JULIANNE
389 SOUTH LAKE DRIVE #4G
PALM BEACH, FL 33480-4540

**COURT MAILING**
BRANDES, ADRIENNE
919 GARDENIA WAY
CORONA DEL MAR, CA 92625-1547

**COURT MAILING**
BUCKSBAUM, GLENN
303 WHITEFISH HILLS LOOP
WHITEFISH, MT 59937-2256

**COURT MAILING**
CAMPF, ANNE AND DARREN
4428 IRISH HEIGHTS DRIVE
SUMMERSVILLE, WV 26651-1971

**COURT MAILING**
CAVE, DERYK
50 BIG SKY RESORT RD
BIG SKY, MT 59716

**COURT MAILING**
CHAMPION FORCE
C/O LEIB M LERNER/ALSTON & BIRD LLP
350 SOUTH GRAND AVE 51ST FLOOR
LOS ANGELES, CA 90071-3406

**COURT MAILING**
CHANNELS, CEDRIC
402 ESTHER ST
COSTA MESA, CA 92627-2323

**COURT MAILING**
COHEN, RAYMOND
C/O JONATHAN HERSEY/K&L GATES
1 PARK PLAZA TWELFTH FLOOR
IRVINE, CA 92614-5910

**COURT MAILING**
CONWAY, MARK
1221 W COAST HWY APT 114
NEWPORT BEACH, CA 92663-5051

**COURT MAILING**
COYNE, KAREN
KAREN BEDROSIAN PROPERTY TRUST
2934 N BEVERLY GLEN CIRCLE #347
LOS ANGELES, CA 90077-1724

**COURT MAILING**
DACUS, DEBBIE
5444 CANDLEWOOD DRIVE
HOUSTON, TX 77056-1603

**COURT MAILING**
DIAMONDS & JEWELRY INC C/O A KHAN
BROWN, NERI, SMITH & KHAN LLP
11601 WILSHIRE BLVD SUITE 2080
LOS ANGELES, CA 90025-0389

**COURT MAILING**
EMMES, DAVID
655 TOWN CENTER DRIVE
COSTA MESA, CA 92626-1918

**COURT MAILING**
FERDER, MORDECHAI AND EDIT
1501 SERENADE TER
CORONA DEL MAR, CA 92625-1753

**COURT MAILING**
FERRY, ANTHONY
20 PACIFICA STE 1000
IRVINE, CA 92618-7462

**COURT MAILING**
FLANDERS, SCOTT
1425 SANTA BARBARA DRIVE
NEWPORT BEACH, CA 92660-6373

**COURT MAILING**
FLANDERS, SCOTT
PO BOX 7859
AVON, CO 81620-7859

**COURT MAILING**
FREEDMAN, JAMES
11755 WILSHIRE BLVD
LOS ANGELES, CA 90025-1501

**COURT MAILING**
GADOL, BRYAN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
1900 AVENUE OF THE STARS 19TH FLOOR
LOS ANGELES, CA 90067-4410

**COURT MAILING**
GADOL, BRYAN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
824 N MARKET STREET SUITE 805
WILMINGTON, DE 19801-4918

**COURT MAILING**
GADOL, BRYAN C/O MICHELLE SCHINDLER
FERGUSON SCHINDLER LAW FIRM
119 SOUTH SPRING STREET SUITE 201
ASPEN, CO 81611-2082

**COURT MAILING**
GADOL, BRYAN-C/O TODD C THEODORA
THEODORA ORINGHER PC
535 ANTON BLVD NINTH FLOOR
COSTA MESA, CA 92626-7109

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**COURT MAILING**
GOLDSTEIN, ALON
22287 MULHOLLAND HWY, UNIT 254
CALABASAS, CA 91302-5157

**COURT MAILING**
HOLZER, RUSTY - C/O B
CAPITUMMINO
WOODS OVIATT GILMAN LLP
1900 BAUSCH & LOMB PLACE
ROCHESTER, NY 14604-2714

**COURT MAILING**
KRAUS, KEN C/O JEFF AUGUSTINI
LAW OFFICE OF JEFF AUGUSTINI
100 BAYVIEW CIRCLE SUITE 210
NEWPORT BEACH, CA 92660-8901

**COURT MAILING**
LI, PETER
19211 CROYDEN TER
IRVINE, CA 92603-3537

**COURT MAILING**
LUGANO BUYER, INC.
301 RIVERSIDE AVENUE, SECOND
FLOOR
WESTPORT, CT 06880-4806

**COURT MAILING**
MCMACKEN, RON
1660 SOUTH OCEAN BLVD
MANALAPAN, FL  33462-6210

**COURT MAILING**
N.B.S. DIAMONDS C/O GERALD L.
KROLL
KROLL LAW
970 W. BROADWAY, SUITE E-200
JACKSON, WY 83001-6402

**COURT MAILING**
PERL, DANIEL C/O OMAR J. YASSIN
YASSIN LAW APC
1010 E. UNION STREET SUITE 201
PASADENA, CA 91106-1756

**COURT MAILING**
RODAN, AMMON
21 ORINDA WAY, SUITE C-381
ORINDA, CA 94563-2530

**COURT MAILING**
HAZEN, CASSANDRA AND PAUL
C/O JOANNA MARIE MYERS
9465 WILSHIRE BLVD SUITE 300
BEVERLY HILLS, CA 90212-2624

**COURT MAILING**
KELSEY, KACI
110 WESTMINSTER ROAD
WEST PALM BEACH, FL 33405-1649

**COURT MAILING**
LEE, ROBERT
BBD 2012 GIFT TRUST
72-2763 ULUWEUWEU AKSUM PLACE
KAILUA KONA, HI 96740

**COURT MAILING**
LOCKSLEY, JOHN
185 WEST END AVENUE UNIT 9A
NEW YORK, NY 10023-5543

**COURT MAILING**
MCCALL, MARIANNE
188 LUDLOW STREET APT 21J
NEW YORK, NY 10002-1690

**COURT MAILING**
MOENS, LAWRENCE
2335 S OCEAN BLVD
PALM BEACH, FL 33480-5368

**COURT MAILING**
N.B.S. DIAMONDS C/O JOSEPH M. KAR
LAW OFFICE OF JOSEPH M. KAR PC
15250 VENTURA BLVD SUITE PH-1220
SHERMAN OAKS, CA 91403-3201

**COURT MAILING**
PHILLIPS, ANDY
2900 BRISTOL STREET
COSTA MESA, CA 92626-5981

**COURT MAILING**
ROTHSTEIN, ADAM
17 COVLEE DRIVE
WESTPORT, CT 06880-6407

**COURT MAILING**
HOEVEN, DREW
3 CAPE ANDOVER
NEWPORT BEACH, CA 92660-8401

**COURT MAILING**
KLEIN, BILL
60 LINDA ISLE
NEWPORT BEACH, CA 92660-7207

**COURT MAILING**
LEVASQUE, MATT
5893 LAKEVIEW
YORBA LINDA, CA 92886-5367

**COURT MAILING**
LOOK-MAZZA, MONA
344 WEST REDS ROAD
ASPEN, CO 81611

**COURT MAILING**
MCHENRY, TROY
10917 EARTH HUES
LAS VEGAS, NV 89135-9132

**COURT MAILING**
MOLER, BILL
10342 MOHAWK ROAD
LEAWOOD, KS 66206-2587

**COURT MAILING**
OCONNELL, KEVIN
1714 STARLIGHT CIR
NEWPORT BEACH, CA 92660-4340

**COURT MAILING**
PRESUTTI, DANA
424 PARK CIRCLE
ASPEN, CO 81611-3400

**COURT MAILING**
SHELLY, DAMON
9881 RESEARCH DRIVE
IRVINE, CA 92618-4304

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**COURT MAILING**
SHERLOCK, TINA & RUSS
1416 W MAIN STREET
CARMEL, IN 46032

**COURT MAILING**
SHERWOOD, STEVE
54 GOLDEN EAGLE
IRVINE, CA 92603-0309

**COURT MAILING**
SIMON, RON
620 NEWPORT CENTER DRIVE
NEWPORT BEACH, CA 92660-6420

**COURT MAILING**
SIMON, SCOTT
641 ST JAMES ROAD
NEWPORT BEACH, CA 92663-5854

**COURT MAILING**
SIMON, VONDA & SCOTT
29230 PASEO CARMONA
SAN JUAN CAPISTRANO, CA 92675-3654

**COURT MAILING**
SMITH, MIKE
1585 ATTOKA ROAD
MARSHALL, VA 20115-3505

**COURT MAILING**
SONI, ASHISH
1908 N FREMONT STREET
CHICAGO, IL 60614-5017

**COURT MAILING**
STACK, JEFF
3501 JAMBOREE ROAD, SUITE 6000
NEWPORT BEACH, CA 92660-2960

**COURT MAILING**
STRAWBRIDGE, GEORGE
3801 KENNET PIKE
WILMINGTON, DE 19807-2300

**COURT MAILING**
SUMMERS, JIM
282 LOCHA DRIVE
JUPITER, FL 33458-7733

**COURT MAILING**
SUTHERLAND, ANNE & GRANT
61070 MINARET CIRCLE
BEND, OREGON 97702-1903

**COURT MAILING**
SYDNEY HOLDINGS LIMITED
C/O B. CAPITUMMINO - WOODS
OVIATT
1900 BAUSCH & LOMB PLACE
ROCHESTER, NY 14604-2714

**COURT MAILING**
SYDNEY HOLDINGS LIMITED C/O J
LEVIN
GLASER WEIL FINK HOWARD
JORDAN ET AL
10250 CONSTELLATION BLVD 19TH
FLOOR
LOS ANGELES, CA 90067-6219

**COURT MAILING**
TEDORI, FRED
48 RITZ COVE DRIVE
DANA POINT, CA 92629-4228

**COURT MAILING**
TESTA, DARREN C/O M. SCHINDLER
FERGUSON SCHINDLER LAW FIRM
119 SOUTH SPRING STREET SUITE 201
ASPEN, CO 81611-2082

**COURT MAILING**
TESTA, DARREN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
1900 AVENUE OF THE STARS 19TH
FLOOR
LOS ANGELES, CA 90067-4410

**COURT MAILING**
TESTA, DARREN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
824 N. MARKET STREET, SUITE 805
WILMINGTON, DE 19801-4918

**COURT MAILING**
TESTA, DARREN C/O TODD C
THEODORA
THEODORA ORINGHER PC
535 ANTON BLVD NINTH FLOOR
COSTA MESA, CA 92626-7109

**PREFERRED ADDRESS**
US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

**COURT MAILING**
WAZANA, AVI C/O DARREN
ENENSTEIN
ENENSTEIN PHAM GLASS & RABBAT
8439 W SUNSET BLVD SUITE 300
LOS ANGELES, CA 90069-1925

**COURT MAILING**
WINTERS, KRISTOPHER C/O S.
KATZMAN
BIENERT KATZMAN LITTRELL
WILLIAMS LLP
903 CALLE AMANECER STE 350
SAN CLEMENTE, CA 92673-6253

**COURT MAILING**
WOLFE, BILL
525 S FLAGLER DRIVE PH2 C/D
WEST PALM BEACH, FL 33401-5922

**N/A**
SANTA ANA DIVISION
411 WEST FOURTH STREET, SUITE
2030,
SANTA ANA, CA 92701-4500
**N/A**

**COURT MAILING**
RUBERTI, LISA
**UNDELIVERABLE - INCOMPLETE
ADDRESS**

**COURT MAILING**
WANG, ANGI
**UNDELIVERABLE - INCOMPLETE
ADDRESS**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.