1  Christopher J. Harney, Esq. (State Bar No. 322306)
   charney@tocounsel.com
2  THEODORA ORINGHER PC
   535 Anton Boulevard, Ninth Floor
3  Costa Mesa, California 92626-7109
   Telephone: (714) 549-6200
4  Facsimile: (714) 549-6201

5  *Counsel for Bryan Gadol, an individual, and
   Darren Testa, an individual*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>SIMBA IL HOLDINGS, LLC,<br><br>    Debtor and Debtor in Possession. | Case No. 8:25-bk-12616-MH<br>Chapter 11<br><br>Assigned to Hon. Mark D. Houle<br><br>**OBJECTION TO WHITE MOUNTAIN CAPITAL INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)**<br><br>Date:    October 21, 2025<br>Time:    2:30 p.m.<br>Dept:    6C |

In its Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 (the "Motion"), White Mountain Capital Inc. ("WMC") argues that it should be granted relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) and (d)(4) to proceed with its state-court foreclosure action against the real property located at 1220 Red Butte Drive, Aspen, Colorado (the "Aspen Property"). MWC requests stay relief because it argues that the debtor has no equity in the property and it is unnecessary to the Simba IL Holdings, LLC's ("Simba" or "Debtor") reorganization and the Debtor's bankruptcy filing was part of a scheme to hinder, delay or defraud WMC.

Creditors Gadol and Testa, will be uniquely prejudiced if WMC's Motion is granted and therefore file this Objection.[1]  Gadol and Testa are two of only four known creditors of the Debtor

---

[1] This Objection is timely because WMC granted all the parties an extension until October 9, 2025 to respond to its Motion.

1336514.2/82189.05002

**OBJECTION TO WHITE MOUNTAIN CAPITAL INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)**

with direct contract claims based on breaches of guaranty agreements entered into by the Debtor.[2] Specifically, on June 18, 2025, Gadol and Testa filed a Complaint against Mordechai Ferder, the Debtor, and the Haim Family Trust for breach of their guaranties of the underlying agreements they had with Lugano Diamonds & Jewelry ("Lugano"), Case Number 2025CV30067. Gadol and Testa then immediately began pre-judgment writ of attachment proceedings to interrupt Moti's efforts to fraudulently transfer assets, which included writs of attachment against the Debtor's assets, including its financial and investment accounts. They also obtained a Default Judgment against the Debtor on September 16, 2025, just prior to the Debtor filing this bankruptcy case later that same day, in the amounts of $7,929,072.00 and $6,377,794.84, respectively.

On June 23, 2025, Gadol and Testa obtained a Writ of Attachment that included the Aspen Property, owned by the Haim Family Trust. The Writ of Attachment was recorded on June 23, 2025, securing a lien on the Aspen Property. Moti as Trustee of the Haim Family Trust transferred the Property to Debtor on or about September 11, 2025. Gadol and Testa are therefore in a third lien position on the Aspen Property, assuming the first lien held by Citibank, N.A. and second lien held by WMC are each deemed valid and enforceable prior liens. The validity of WMC's lien, in particular, is in question for reasons discussed in more detail below.

As creditors of the Debtor and secured creditors of the Aspen Property, Gadol and Testa hereby request that WMC's Motion be denied or deferred for each of the reasons discussed below.

1. **Gadol, Testa and the Creditors of the Estate Will Be Harmed if Relief From Stay Is Granted**

Given their direct creditor status and secured creditor status against the Property, Gadol and Testa will be uniquely impacted by this Court's decision on WMC's Motion. If WMC's Motion is allowed to proceed, then the Aspen Property will be sold at an under-the-market value pursuant to a foreclosure sale which will drastically reduce the likelihood that Gadol and Testa's will receive payment of significant proceeds towards their lien. Conversely, if the Aspen Property is sold in this

---

[2] The other two creditors believed to have direct guaranty claims against the Debtor are Kristopher Winters and Cedric Channels.

bankruptcy case pursuant to a Section 363 sale, as the Debtor has indicated in its Status Report that it intends to do, then it is significantly more likely with fair and reasonable marketing efforts that a greater sale price will be realized for the benefit of the estate and benefit of Gadol and Testa.

The estate stands to benefit from selling the Aspen Property pursuant to a Section 363 sale in two primary ways.  One, if the Debtor is permitted to sell the property and proceeds are paid out to Gadol and Testa, then any proceeds received by Gadol and Testa will reduce their claims against the Debtor.  The higher the sale price, the more significant the reduction will be to Gadol and Testa's claims against the Debtor.[3]  Second, Gadol and Testa are in settlement negotiations with Debtor and it is anticipated that any settlement reached will include a carveout from Gadol and Testa's lien in favor of the Debtor and its CRO for the payment of administrative expenses.  If WMC's Motion is granted before those settlement discussions are permitted to run their course, then it is very possible that the estate will be robbed of potential carveout proceeds that could be used to administer the estate's other assets for the benefit of the creditor base.

**2.    The Motion is Premature and Will Halt On-Going Settlement Discussions**

The Motion is premature as the case is in its infancy.  The Debtor initiated this bankruptcy case on September 16, 2025, the 341 meeting of creditors was only recently held on October 6, 2025, and the Debtor's initial status conference has not yet occurred.   Moreover, the Debtor amended its Petition yesterday to revoke the Debtor's original election to proceed under Subchapter V.  As stated above, Gadol and Testa are engaged in settlement negotiations with the Debtor regarding their claims against the Debtor, and their liens against the Aspen House and the Debtor's other assets, namely the Debtor's investment and financial accounts, and stock in Lugano Holding, Inc. It is anticipated that any settlement, if one is reached, will provide clarity on the nature, scop and amount of Gadol and Testa's claims and grant the estate valuable administrative expense carveouts.

---

[3] Conversely, if the Aspen Property is sold outside of the bankruptcy estate, and/or a finding is made that the Aspen Property is not owned by the Debtor but instead that the Haim Family Trust is the true interest owner and titleholder, then Gadol and Testa will argue that any proceeds paid to them for the sale of the Aspen Property only reduces the debt owed to them by the Haim Family Trust, and does not reduce any debt owed to them by the Debtor.

Moreover, granting stay relief here would sanction the very "race to the courthouse" that the automatic stay and the collective bankruptcy process were designed to prevent.

### 3. There Is Significant Equity In the Property Beyond the First Lien and WMC's Purported Second Lien

In its Motion, WMC argues that it is entitled to relief under U.S.C § 362(d)(2) because "the Debtor has no equity and it is unnecessary for reorganization." (Dkt. 39, p. 6.) WMC argues that it has "shown" that the fair market value of the Aspen Property is $20,793,100.00 based solely on a printout from the Pitkin County Assessor's office assessing the value for tax purposes. This is not a reliable source for valuation. Conversely, in its Status Report the Debtor has estimated that the Aspen Property is worth approximately $30,000,000. The Debtor has also filed an Application to Employ Steven Shane, a highly respected and experienced real estate agent in the Aspen Colorado area, and Mr. Shane has determined to list the property for $30,000,000. If the Debtor's and Mr. Shane's estimated value of the property is accurate, with Citibank, N.A.'s first-priority lien at approximately $11,537,500 and White Mountain's alleged lien of $7,056,291.07 – a total of $18,593,791.10 – that leaves approximately **$11,406,208.90** in equity. Even if the property is worth somewhere in between WMC's and Shane's estimated value (so approximately $25,000,000), then there will be significant equity in the property above and beyond the first lien and WMC's alleged second lien.

Importantly, pursuant to § 362(g), the moving party has the burden of proof on the issue of debtor's equity. *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 869 (B.A.P. 9th Cir. 2012). White Mountain submitted an unauthenticated page from the Pitkin County Assessor that is not properly before this Court to satisfy its burden under Section 362(g). Furthermore, , a tax assessment is *not* reliable evidence of the fair market value of real property. For fair market value, a formal appraisal by a qualified, licensed appraiser and/or testimony by such an appraiser is needed, both of which White Mountain failed to submit.

Therefore, White Mountain is not entitled to relief under U.S.C § 362(d)(2) because White Mountain fails to establish the absence of equity, and filed to show that the Aspen Property is unnecessary to an effective administration (which will be discussed below).

**4.    WMC Has Not Established that the Aspen Property Is Unnecessary for Reorganization**

Even if Movant could establish that the Debtor lacks equity in the Aspen Property (which it cannot), WMC has not met its burden with respect to the second prong of the standard (Section 362(d)(2)(B)). WMC provides no support beyond stating that the Aspen Property is "unnecessary for reorganization." A property in Chapter 11 is necessary if it benefits the estate or creditors. *See Timbers of Inwood Forest*, 484 U.S. 365, 626–636 (1988). Here, all creditors, including WMC, Gadol and Testa, would benefit from a sale of the Aspen Property by the estate. Importantly, the Debtor has not yet filed its proposed plan of reorganization in this case, and it is simply premature for Gadol and Testa to take a position regarding whether the Aspen Property will be necessary to an effective reorganization.  It is certainly possible that the Debtor will propose a liquidating plan, which arguably qualifies as a "plan of reorganization" for purposes of 11 U.S.C. § 362(d)(2)(B). *See In re Kadlubek Fam. Revocable Living Tr.*, 545 B.R. 660, 666 (Bankr. D.N.M. 2016) ("Either liquidation or rehabilitation plans may be an 'effective reorganization' under § 362(d)(2)(B)."); *In re EM Lodgings, LLC*, 580 B.R. 803, 813–14 (Bankr. C.D. Ill. 2018) (assumes without deciding that "a liquidation may be an effective reorganization"); *In re EM Lodgings, LLC*, 580 B.R. 803, 814 (Bankr. C.D. Ill. 2018) ("A lack of equity in the property in question is not necessarily fatal so long as the secured creditor is adequately protected and the debtor is making demonstrable and timely progress toward a successful liquidation.").  In sum, it is premature to determine whether the Aspen Property will be necessary for an effective reorganization of the Debtor and WMC's Motion should be denied or deferred until the Debtor is afforded more time to develop a plan. [4]

Therefore, as the Aspen Property currently appears to be a key assets in the administration of the estate and has certainly been treated as one during settlement negotiations, WMC fails to meet its burned under Section 362(d)(2)(B).

///

---

[4] Gadol and Testa reserve all rights to argue that the Aspen Property is not property of the Debtor's Estate and/or that it is not necessary for the reorganization of the Debtor.

### 5. WMC's Request For Relief Under Section 362(d)(4) Should Be Denied or Deferred

Gadol and Testa do not disagree that the transfer of the Aspen Property to the Debtor within days of the bankruptcy filing is concerning and problematic. For the reasons set forth above, however, Gadol and Testa request that this Court either deny WMC's request for relief under Section 362(d)(4) without prejudice or defer its ruling to provide the Debtor time to try to sell the property for the greatest possible value and to provide the Debtor and Gadol and Testa, time to continue with their settlement negotiations. Granting WMC relief under Section 362(d)(4) at this early stage of the bankruptcy case will cause irreparable harm Gadol and Testa and possibly to the estate and will be in furtherance of the proverbial "race to the courthouse."

This is particularly true given that WMC has not established the validity of its lien. It is very suspicious why WMC, who participated in underlying diamond contracts with Lugano, was also purportedly acting as a "lender" to the Haim Family Trust whereby it was granted security in the Aspen House. While WMC has provided certain loan documents in support of its Motion, there is no evidence submitted that WMC actually made payment on the purported loan, or that said payment went to the owner of the property at the time – the Haim Family Trust. Before WMC is granted the extraordinary relief requested by its Motion, it should provide basic proof regarding its purported funding of the loan and/or subject itself to discovery regarding same.

For the reasons set forth in this Objection, and because it is in the best interests of the estate and its creditors Gadol and Testa respectfully requests that the Court deny or defer the Motion and grant such other and further relief that it deems just and proper.

DATED: October 9, 2025                         THEODORA ORINGHER PC

                                               By:    */s/ Christopher J. Harney*
                                                      Christopher J. Harney

                                                      *Counsel for Bryan Gadol, an individual, and*
                                                      *Darren Testa, an individual*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
535 Anton Blvd., 9th Floor, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): OBJECTION TO WHITE MOUNTAIN CAPITAL INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/9/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com, docket@bklwlaw.com
- Greg P Campbell    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Max Casal    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- Karol K Denniston    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com; sarah.conley@squirepb.com; karol-k-denniston-9025@ecf.pacerpro.com
- Alan J Friedman    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- John-Patrick McGinnis Fritz (TR)    jpftrustee@lnbyg.com, jpf@trustesolutions.net
- George Gerro    george@gerrolaw.com
- Christopher J Harney    charney@tocounsel.com, kmanson@tocounsel.com
- Steven J. Katzman    skatzman@bklwlaw.com, 1193516420@filings.docketbird.com, docket@bklwlaw.com
- Tobias S Keller    tkeller@kellerbenvenutti.com
- Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Richard A Marshack    rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com; rmarshack@ecf.courtdrive.com; alinares@ecf.courtdrive.com
- Leonard M. Shulman    lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com; yrivera@shulmanbastian.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/9/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Queenie K Ng
411 West Fourth St.
Suite 7160
Santa Ana, CA 92701

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/9/25, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via Overnight Courier: The Honorable Mark Houle, USBC, 411 W. Fourth Street, Suite 6135, Santa Ana, CA 92701

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/9/2025 | Desiree Funsch | /s/ Desiree Funsch |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**