| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Leonard M. Shulman – Bar No. 126349<br>James C. Bastian, Jr. – Bar No.<br>Alan J. Friedman – Bar No.  132580<br>Max Casal – Bar No. 342716<br>SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone:  (949) 340-3400 - Facsimile:   (949) 340-3000<br>Email: lshulman@shulmanbastian.com<br>  jbastian@shulmanbastian.com<br>  afriedman@shulmanbastian.com<br>  mcasal@shulmanbastian.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Debtor | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>SIMBA IL HOLDINGS, LLC., a Delaware limited liability company, | CASE NO.: 8:25-bk-12616-MH<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>ORDER APPROVING SETTLEMENT; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT THEREOF<br><br><br><br>**(*Specify name of Motion*)** |
| | DATE: 11/18/2025<br>TIME:  2:30 pm<br>COURTROOM: 6C<br>PLACE: 411 West Fourth Street, Santa Ana, CA 92701 |
| Debtor(s). | |

1.  TO (*specify name*):  ALL CREDITORS, OFFICE OF THE U.S. TRUSTEE, AND ALL PARTIES-IN-INTEREST

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                   Page 1                                   **F 9013-1.1.HEARING.NOTICE**

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.


Date:   10/28/2025

Shulman Bastian Friedman Bui & O'Dea LLP
Printed name of law firm


/s/ Max Casal
Signature


Max Casal
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                           Page 2                           F 9013-1.1.HEARING.NOTICE

Leonard M. Shulman – Bar No. 126349
James C. Bastian, Jr. – Bar No.
Alan J. Friedman – Bar No. 132580
Max Casal – Bar No. 342716
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email:      lshulman@shulmanbastian.com
            jbastian@shulmanbastian.com
            afriedman@shulmanbastian.com
            mcasal@shulmanbastian.com

Proposed General Counsel for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:25-bk-12616-MH |
| **SIMBA IL HOLDINGS, LLC., a Delaware limited liability company,**<br><br>                      Debtor. | Chapter 11<br><br>**MOTION FOR ORDER APPROVING SETTLEMENT; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT THEREOF**<br><br>**Hearing Date**:<br>Date:   November 18, 2025<br>Time:   2:30 p.m.<br>Place:  6C<br>           411 West Fourth Street<br>           Santa Ana, CA 92701 |

   **TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

   Simba IL Holdings, LLC, the debtor and debtor in possession herein (the "Debtor"), hereby brings this motion (the "Motion") for entry of an order, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  Procedure (the "Bankruptcy Rules"), approving the Settlement Agreement dated October 20, 2025

2  (the "Agreement") entered into by and between the Debtor, the Haim Family Trust, Mordechai

3  Ferder and Edit Ferder (collectively, the "Debtor Parties"), on the one hand, and Bryan Gadol

4  ("Gadol"), Darren Testa ("Testa" and collectively with Gadol, the "Gadol Creditors"), and

5  Kristoffer Winters ("Winters" and collectively with the Gadol Creditors, the "Prejudgment

6  Lienholders"), on the other (the Debtor Parties and the Prejudgment Lienholders shall collectively

7  be referred to as, the "Parties"). In support of the Motion, the Debtor respectfully submits as follows:

8                          **I.    INTRODUCTION**[1]

9         The Debtor commenced this Case primarily as a result of the prepetition and anticipated

10  actions of the Prejudgment Lienholders, which created significant uncertainty regarding the

11  Debtor's ability to preserve and maximize the value of its assets for the benefit of its creditors.

12         Consequently, the Debtor has engaged in good-faith negotiations with the Prejudgment

13  Lienholders since the Petition Date which have culminated in the Agreement. The Agreement paves

14  a clear path forward in this Case and provides a fair resolution of the complex issues between the

15  Parties currently pending in multiple jurisdictions. Specifically, the Agreement eliminates costly

16  and time-consuming litigation, clarifies the respective rights and obligations of the Debtor and the

17  Prejudgment Lienholders, and enables the Debtor to accomplish its primary goal in filing the Case

18  – to effectuate the disposition of its assets for the benefit of creditors.

19         For these reasons which are set forth in further detail below, the Debtor respectfully requests

20  that the Court grant the Motion and approve the Agreement.

21                          **II.    RELEVANT FACTUAL BACKGROUND**

22  **A.    The Case**

23         On September 16, 2025 (the "Petition Date"), the Debtor filed its voluntary petition for relief

24  under chapter 11 of the Bankruptcy Code, commencing this chapter 11 case (the "Case"). The

25  Debtor is continuing in possession of its property and operating and managing its business as debtor

26

27

28  _____
[1] All capitalized terms in this section shall have the meaning set forth below.

1 in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No committee or

2 examiner has been appointed in the Case.

3      The Debtor is a limited liability company organized under the laws of the State of Delaware.

4 The Debtor is a holding company and its main assets are a 40% stake (the "Lugano Stock") in an

5 entity that owns the entirety of Lugano Diamonds & Jewelry Inc. ("Lugano"), a portfolio of

6 investment accounts (the "Alternative Investments"), and a valuable property (worth approximately

7 $30,000,000) located at 1220 Red Butte Dr, Aspen, Colorado 81611 (the "Real Property").

8      As of the Petition Date, the managing member of the Debtor, Mr. Ferder, irrevocably

9 transferred all power to manage the Debtor and this Case to Richard Marshack of Marshack Hays

10 Wood LLP as chief restructuring officer of the Debtor (the "Chief Restructuring Officer"). *See*, Dkt.

11 No. 18. In such capacity, the Chief Restructuring Officer will oversee the liquidation of the Debtor's

12 assets for the benefit of creditors.

13 **B.**     **Prejudgment Lienholders**

14     **1.**     **Existing Actions**

15      Prior to the Petition Date, the Prejudgment Lienholders brought the following actions against

16 the Debtor Parties (collectively, the "Existing Actions"): (i) *Gadol, et al. v. Ferder, et al.* (Orange

17 County Superior Court Case No. 30-2025 01488102-CU-BC-CJC) filed on June 6, 2025; (ii) *Gadol,*

18 *et al. v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) filed on June 18,

19 2025; (iii) *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW)

20 filed on July 2, 2025; (iv) *Gadol, et al. v. Simba IL Holdings, LLC* (Delaware Superior Court Case

21 No. N25J-01759) filed on July 2, 2025; (v) *Winters v. Ferder, et al*. (US Dist. Court, Central Dist.

22 of CA Case No. 8:25-cv-01202) filed on June 3, 2025; (vi) *Winters v. Ferder* (Delaware Superior

23 Court Case No. N25J-02464) filed on September 12, 2025; (vii) *Winters v. Simba IL Holdings, LLC*

24 (Delaware Superior Court Case No. N25J- 02463) filed on September 12, 2025; and (viii) *Winters*

25 *v. Lugano Diamonds and Jewelry*, (Delaware Superior Court Case No. N25J-02465) filed on

26 September 12, 2025.

27      The Existing Actions each arose from agreements between the Prejudgment Lienholders and

28 Lugano regarding a loan by the Prejudgment Lienholders to Lugano for the purchase of diamonds

for the creation of custom jewelry (collectively, the "<u>Prejudgment Lienholders' Diamond Contracts</u>"). Each of the Prejudgment Lienholders' Diamond Contracts contained: (i) a guaranty by the Debtor of Lugano's performance of its obligations, (ii) "put right" clauses which allowed the Prejudgment Lienholders to request at any time that Lugano purchase their interest in the diamonds and provided that Lugano would pay the Prejudgment Lienholders with a specified return within five days of the request, and (iii) California choice-of-law provisions.

In May 2025, each of the Prejudgment Lienholders exercised their put rights but Lugano failed to pay the amounts provided for in the Prejudgment Lienholders' Diamond Contracts. The Existing Actions followed.

2. **<u>Attachment Orders, Defaults, and Judgments</u>**

In the Existing Actions, the Prejudgment Lienholders obtained certain attachment orders which granted them liens against the Debtor's property:

i.   Ex Parte Right to Attach Order and Order for Issuance of Writ of Attachment (Resident) dated June 12, 2025, as to Ferder, an individual and as trustee of the Haim Family Trust and the Debtor filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BCCJC);

ii.  Temporary Protective Order dated June 18, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, filed in *Winters v. Lugano Diamonds et al* (US Dist. Court, Central Dist. of CA Case No. 8:25-01202);

iii. Writ of Attachment dated June 20, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, and as to the Debtor, filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC);

iv.  Order: Proposed Order re Plaintiffs' Immediate Disposition and Ex Parte Motion for Prejudgment Writ of Attachment dated June 23, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, and Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) (the "<u>Aspen Writ of Attachment</u>");

v.    Recording of the Aspen Writ of Attachment on June 23, 2025 at Reception No. 710102 (the "Aspen Lien");

vi.    Writ of Attachment dated July 1, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, and Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102- CU-BC-CJC);

vii.    Writ Issued for Out-of-State dated July 10, 2025 as to Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) (the "Delaware Writ of Attachment");

viii.    Writ of Attachment dated July 25, 2025 as to Ferder as trustee of the Haim Family Trust filed in *Winters v. Ferder, et al.* (US Dist. Court, Central Dist. of CA Case No. 8:25-cv-01202);

ix.    Writ of Attachment dated July 25, 2025 as to Ferder, an individual filed in *Winters v. Ferder, et al.* (US Dist. Count, Central Dist. of CA Case No. 8:25-cv-01202);

x.    Writ of Attachment dated July 28, 2025 as to Simba IL Holdings, LLC filed in *Winters v. Ferder, et al.* (US Dist. Court, Central Dist. of CA Case No. 8:25- cv-01202); and

xi.    Order Granting Plaintiff's Ex Parte Motion for Mesne Writ of Attachment dated August 18, 2025 as to Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) (the "Delaware Mense Writ of Attachment"; the Aspen Writ of Attachment, the Aspen Lien, Delaware Writ of Attachment, and Delaware Mense Writ of Attachment are collectively referred to as "Gadol Creditors' Liens").

xii.    Foreign Judgment dated September 12, 2025 as to Simba IL Holdings, LLC filed in Winters v. Ferder (Delaware Superior Court Case No. N25J-02463 );

xiii.    Foreign Judgment dated September 12, 2025 as to Mordechai Ferder filed in *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02464);

xiv.    Foreign Judgment dated September 12, 2025 as to Mordechai Ferder Haim Family Trust filed in *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02465);

1   Moreover, on September 16, 2025, Gadol and Testa obtained a default judgment against the

2   Debtor in Delaware Superior Court in the aggregate amount of $14,306,866.84,[2] with a judgment

3   effective date of August 27, 2025 (the "<u>Default Judgment</u>").[3] Further, on August 20, 2025, default

4   was entered against the Debtor in the U.S. District Court, Case No. 8:25-cv-01202 in favor of

5   Winters in the amount of $9,450,258.90 (through the date of the filing of the default judgment

6   motion and subject to prove up) (the "<u>Winters Default</u>") .

7   The aggregate claims asserted by the Prejudgment Lienholders against the Debtor are

8   therefore in the amount of no less than $23,757,125.74.

9   **C.    <u>The Agreement</u>[4]**

10   The Debtor believes that it has valid and meritorious defenses and counterclaims to the

11   Existing Actions and that certain of the liens may be avoidable under applicable law.

12   Notwithstanding such defenses and claims, the Debtor believes that settlement is in the best interest

13   of its estate and creditors for the reasons set forth herein.

14   Accordingly, the Parties have reached a compromise with respect to all claims by and

15   between the Parties subject to approval from the Court. The material terms of the Agreement, a true

16   and correct copy of which is attached to the Declaration of Richard Marshack as **Exhibit A**, are:[5]

17   1.   <u>Dismissal of the Existing Actions</u>: Within ten business days of the later of the

18   Effective Date or the date of payment of the Aspen Proceeds Distribution, the

19

20   [2] The amount of the Default Judgment is as follows: (i) $7,929,072.00 in favor of Gadol and (ii)

21   $6,377,794.84 in favor of Testa.

22   [3] Gadol and Testa assert that while they obtained a default judgment by clerk in the aggregate

23   amount of $14,306,866.84, they sought this amount of judgment in order to obtain quick and certain
     judgment, but that if the default judgment was set aside by the Debtor, or otherwise, they their claims

24   against the Debtor would be significantly higher given the additional accrual of interest and fees, etc.

25   [4] All capitalized terms in this section not otherwise defined herein shall have the meaning set forth

26   in the Agreement.

27   [5] For the avoidance of doubt, the following is only a summary of certain of the material terms of the
     Agreement. In the event and to the extent of any inconsistency between the Agreement and the

28   summary herein, the terms of the Agreement shall control.

Prejudgment Lienholders shall dismiss each of the Existing Actions with prejudice. Agreement, § 12.

2. <u>Allowance of Secured Claims in Favor of the Gadol Creditors</u>: The Gadol Creditors shall be granted an allowed secured claim in the Case in the amount of $9,999,000 which shall be paid from the proceeds from the sale or disposition of: (a) the Lugano Stock; (b) the Real Property (subject to higher-priority liens); and (c) the Alternative Investments. Agreement, § 3.

3. <u>Allowance of Unsecured Claims</u>: The Gadol Creditors shall be granted an allowed unsecured claim in the amount of $1,500,000.00 and Winters shall be granted an allowed unsecured claim in the amount of $500,000.00. Agreement, § 4. Notably, these allowed unsecured claims are subject to a 55% payment threshold, such that they are only paid on a ratable basis if other general unsecured claims are paid amounts in excess of 55% (the "<u>55% Payment Threshold</u>"). Agreement, § 7.

4. <u>Releases</u>. The Parties are granted reciprocal releases of any and all claims by and between the Parties arising from the Existing Actions or relationship between the Parties. Agreement, §§ 17, 18.

5. <u>Cooperation</u>. The Parties shall work together in good faith, which will include the Prejudgment Lienholders: releasing their liens, as necessary, so that the Debtor can sell its assets, supporting all necessary motions to effectuate the same, and supporting the Debtor's reorganization efforts so long as they are consistent with the terms of the Agreement. Agreement, § 6.a.

## III.    ARGUMENT

### A.    Legal Standard

The power of a bankruptcy court to approve settlements is expressly recognized in Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

1   Fed. R. Bankr. Pro. 9019(a).

2         Except for certain limitations not applicable here, a debtor has all of the rights and powers

3   of, and performs all of the functions and duties of, a trustee in a chapter 11 case.   11 U.S.C. §

4   1107(a). In turn, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

5   order . . . that is necessary or appropriate to carry out the provision of this title."

6         Thus, upon motion and notice to creditors, the United States Trustee, debtor, and indenture

7   trustees, the Court may enter an order authorizing the compromise of a claim of the estate. The

8   approval of a settlement is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *In re Carla*

9   *Leather, Inc.,* 50 B.R. 764, 775 (S.D.N.Y. 1985).

10  **B.    The Court Should Approve the Agreement Pursuant to Federal Rule of Bankruptcy**

11        **Procedure 9019(a)**

12        The approval or disapproval of a settlement under Bankruptcy Rule 9019(a) falls within the

13  sound discretion of the bankruptcy court.   *See, In re Stein*, 236 B.R. 34, 37 (D. Or. 1999).   In

14  undertaking such consideration, "[t]he law favors compromise and not litigation for its own sake . .

15  . ."  *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den.,*

16  *Martin v. Robinson*, 479 U.S. 854 (1989). The bankruptcy court has great latitude in approving

17  compromise agreements as long as it finds that the compromise is fair and equitable. *Id.* at 1382;

18  *see also, Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

19  The court should exercise its discretion "in light of the general public policy favoring settlements."

20  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *Nellis v. Shugrue*, 165

21  B.R. 115, 23 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact,

22  encouraged…").

23        Generally, the benchmark in determining the propriety of a settlement is whether the

24  settlement is in the best interest of the estate and its creditors. *In re Energy Cooperative, Inc.*, 886

25  F.2d 921, 927 (7th Cir. 1989). To be approved, the settlement need not represent the highest possible

26  return to the estate, but must not fall below the "range of reasonableness." *In re Walsh Construction,*

27  *Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1992).

28

"In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises." *A&C Properties*, 784 F.2d at 1381.

The court must weigh the foregoing factors "to determine whether the compromise is in the best interest of the bankrupt estate." *A&C Properties*, 784 F.2d at 1382. A "settlement can satisfy the *A&C Properties* test even if the evidence supporting one or more of the four factors is relatively weak." *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst.)*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022). "All four factors must be considered as a whole, and not individually in a vacuum to ascertain whether the settlement is a good deal compared to litigation." *Id.*

In considering the merits of the Agreement, the third factor – the difficulties to be encountered in the matter of collections – is inapplicable in this Case. Consequently, the Debtor focused on the benefits to the estate and the complexity, costs and uncertainty of litigation, and submits that the *A&C Properties* factors weigh in favor of approval of the Agreement.

1. **Complexity of Litigation and Probability of Success Factors**

The first and third *A&C Properties* factors regarding litigation favor settlement. While further litigation might result in a reduction in the claims of the Prejudgment Lienholders, the Debtor believes that the complexity, costs and uncertainty associated with litigation likely outweigh any benefits that might be achieved. *See*, *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997) ("When assessing a compromise, courts need not rule upon disputed facts and questions law, but rather only canvass the issues…A mini trial on the merits is not required.").

First, proceeding with litigation rather than approving the proposed settlement presents substantial risks and uncertainties for the Debtor and its estate. As previously noted, the Prejudgment Lienholders have already obtained the Default Judgment and Winters Default against the Debtor. Therefore, before the Debtor can even litigate the merits of the Existing Actions and challenge the amount of the Prejudgment Lienholders' claims, it would first need to seek relief from the automatic

stay to pursue vacating the Default Judgment and setting aside the Winters Default. These preliminary hurdles would not only delay the administration of this Case but also expose the Debtor to the risk of the Default Judgment and/or Winters Default remaining in place, thereby fixing the Prejudgment Lienholders' claims at amounts substantially higher than those contemplated under the Agreement.

Second, assuming that the Debtor is able to overcome those initial hurdles, the Debtor would then be required to litigate the substantive merits of the Prejudgment Lienholders' claims in connection with the Existing Actions. Such litigation would be highly complex, fact-intensive, and time-consuming. As relevant to the Debtor, the Existing Actions assert claims against the Debtor for breach of guaranty pursuant to the Prejudgment Lienholders' Diamond Contracts entered into by and between Lugano and the Prejudgment Lienholders. Under California law, the elements for a breach of guaranty cause of action are: (1) the guarantor guaranteed payment of a third party's indebtedness; (2) the third party defaulted; (3) the guarantor was notified of the default and payment was demanded; and (4) the guarantor did not make payment. *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1546-47. Therefore, litigating the Existing Actions would necessarily entail a detailed examination of the underlying Prejudgment Lienholders' Diamond Contracts, the performance and conduct of Lugano, and the involvement of multiple third parties.

Third, litigating with the Prejudgment Lienholders would impose substantial financial and administrative burdens on the Debtor and its estate. Such litigation would require the Debtor to incur a significant amount of time and expense by, *inter alia*: (i) seeking relief from the automatic stay and seeking to set aside the Default Judgment and Winters Default, (ii) litigating the merits of the Prejudgment Lienholders' claims, currently pending in four different jurisdictions: the Central District of California, and California, Delaware, and Colorado state courts, and (iii) engaging in contested motion practice and discovery, including retaining local counsel for the out-of-state matters. The time and expense necessary to accomplish the foregoing would divert resources from the Debtor's primary objective – maximizing value for creditors through the disposition of the Debtor's assets.

1    Because approval of the Agreement would eliminate these risks, the first and third *A&C*

2 *Properties* factors weigh heavily in favor of settlement. Accordingly, this Court should grant the

3 Motion.

4    2.    <u>**The Paramount Interest of Creditors and the Proper Deference to Their**</u>

5         <u>**Reasonable Views**</u>

6    Approval of the Agreement is clearly in the best interest of creditors. As noted above, the

7 Prejudgment Lienholders' aggregate claims asserted against the Debtor equal at least

8 $23,757,125.74. Specifically, by virtue of the Default Judgment and the Gadol Creditors' Liens, the

9 Gadol Creditors currently have a secured claim against the Debtor's estate in the amount of

10 $14,306,866.84. By the Agreement, the Gadol Creditors will be granted an allowed secured claim

11 is the amount of $9,999,000, and an allowed unsecured claim in the amount of $1,500,000 (subject

12 to the 55% Payment Threshold ), thereby potentially freeing up millions of dollars of potential value

13 in the Debtor's assets available for the payment of unsecured creditors. Moreover, Winters is

14 compromising the Winters Default in the approximate amount of $9,450,258.90 for an allowed

15 $500,000 unsecured claim (subject to the 55% Payment Threshold) and participation in the Gadol

16 Creditors' allowed secured claim as set forth in the Agreement.  Accordingly, with this Agreement,

17 the estate is compromising over $23 million of aggregate debt, at least $14 million of which is fully

18 secured, for a $9,999,000 secured claim and an aggregate $2.0 million unsecured claim (subject to

19 the 55% Payment Threshold). That is a nearly 30% reduction of the amount of secured claims and

20 a nearly 50% reduction of the total claims against the estate asserted by the Prejudgment

21 Lienholders.

22    Further, settlement avoids the costs, complexities, and risks set forth above. Therefore,

23 approval of the Agreement is in the best interest of creditors because settlement avoids the accrual

24 of substantial administrative expenses associated with litigating the claims of the Prejudgment

25 Lienholders. *See*, *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 833 Fed. Appx. 116, 120

26 (9th Cir. 2020) (holding that settlement is in the best interest of creditors where it would avoid the

27 estate's limited assets from being consumed by further administrative costs).

28

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    Finally, approval of the Agreement will provide certainty and stability to the Debtor's estate,

2    Case, and creditors. As discussed herein, the actions of the Prejudgment Lienholders were a primary

3    factor leading to the filing of this Case. Under the Agreement, however, the Debtor and Prejudgment

4    Lienholders will cooperate in good faith, which will facilitate the timely liquidation of the Debtor's

5    assets and resolution of the Case. Moreover, the Agreement establishes fixed, agreed upon amounts

6    for each of the Prejudgment Lienholders' claims. This eliminates uncertainty as all parties-in-

7    interest will be able to ascertain the universe of claims against the Debtor and understand how much

8    money will be available for the benefit of creditors upon liquidation of the Debtor's assets.

9    In sum, approval of the Agreement is in the best interest of creditors because it eliminates

10   the inherent costs and risks of litigation, provides certainty as to the claims of the Prejudgment

11   Lienholders, and enables the Debtor to liquidate its assets and resolve the Case. Therefore, this Court

12   should grant the Motion.

## IV.    <u>CONCLUSION</u>

14   For the reasons set forth herein, the Debtor respectfully requests that the Court grant the

15   Motion and enter an order: (i) approving the Agreement, (ii) authorizing and directing the Debtor,

16   through its the Chief Restructuring Officer or any authorized agent, and any party to the Agreement,

17   to take any and all actions to effectuate the terms of the Agreement, and (iii) granting any other and

18   further relief as the Court may deem as just and proper.

19                        Respectfully submitted,

20   Dated:  October 28, 2025            **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

21

22                        _____/s/ *Max Casal*_____
                         Leonard M. Shulman

23                        James C. Bastian, Jr.
                         Alan J. Friedman

24                        Max Casal
                         Proposed General Counsel for the Debtor

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare and state as follows:

1.      I am the chief restructuring officer of the Debtor, an attorney and the managing partner of Marshack Hays Wood LLP. I make this declaration in support of the Motion for Order Approving Settlement (the "<u>Motion</u>") entered into by and between Simba IL Holdings, LLC, the debtor and debtor in possession herein (the "<u>Debtor</u>"), the Haim Family Trust, Mordechai Ferder and Edit Ferder (collectively, the "<u>Debtor Parties</u>"), on the one hand, and Bryan Gadol ("<u>Gadol</u>"), Darren Testa ("<u>Testa</u>" and collectively with Gadol, the "<u>Gadol Creditors</u>"), and Kristoffer Winters ("<u>Winters</u>" and collectively with the Gadol Creditors, the "<u>Prejudgment Lienholders</u>"), on the other (the Debtor Parties and the Prejudgment Lienholders shall collectively be referred to as, the "<u>Parties</u>"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

2.      Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by other former members of the Debtors' management or the Debtors' professionals that I believe in good faith to be reliable; (c) my review of relevant documents; or (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

3.      On September 16, 2025 (the "<u>Petition Date</u>"), the Debtor filed its voluntary petition for relief under the Bankruptcy Code, commencing this Case.

4.      The Debtor is a limited liability company organized under the laws of the State of Delaware. The Debtor is a holding company and its main assets are a 40% stake (the "<u>Lugano Stock</u>") in an entity that owns the entirety of Lugano Diamonds & Jewelry Inc. ("<u>Lugano</u>"), a portfolio of investment accounts (the "<u>Alternative Investments</u>"), and a valuable property (worth approximately $30,000,000) located at 1220 Red Butte Dr, Aspen, Colorado 81611 (the "<u>Real Property</u>").

5.      As of the Petition Date, I was appointed as the Debtor's chief restructuring officer and was irrevocably delegated all power and authority to manage the Debtor's business and this

Case. The Debtor's managing member, Mordechai Ferder, holds no further management or decision-making role and no longer has any decision-making authority or ability to control or manage the Debtor or this Case.

6.    Prior to the Petition Date, the Prejudgment Lienholders brought the following actions against the Debtor Parties (collectively, the "Existing Actions"): (i) *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025 01488102-CU-BC-CJC) filed on June 6, 2025; (ii) *Gadol, et al. v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) filed on June 18, 2025; (iii) *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) filed on July 2, 2025; (iv) *Gadol, et al. v. Simba IL Holdings, LLC* (Delaware Superior Court Case No. N25J-01759) filed on July 2, 2025; (v) *Winters v. Ferder, et al*. (US Dist. Court, Central Dist. of CA Case No. 8:25-cv-01202) filed on June 3, 2025; (vi) *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02464) filed on September 12, 2025; (vii) *Winters v. Simba IL Holdings, LLC* (Delaware Superior Court Case No. N25J- 02463) filed on September 12, 2025; and (viii) *Winters v. Lugano Diamonds and Jewelry*, (Delaware Superior Court Case No. N25J-02465) filed on September 12, 2025.

7.    The Existing Actions each arose from agreements between the Prejudgment Lienholders and Lugano regarding a loan by the Prejudgment Lienholders to Lugano for the purchase of diamonds for the creation of custom jewelry. Each of the Prejudgment Lienholders' Diamond Contracts contained "put right" clauses which allowed the Prejudgment Lienholders to request at any time that Lugano purchase their interest in the diamonds and provided that Lugano would pay the Prejudgment Lienholders with a specified return within five days of the request.

8.    In May 2025, each of the Prejudgment Lienholders exercised their put rights but Lugano failed to pay the amounts provided for in the Prejudgment Lienholders' Diamond Contracts, which led to the Existing Actions.

9.    The Prejudgment Lienholders obtained certain attachment orders in the Existing Actions, which granted them liens against certain of the Debtor's property as set forth fully in the Motion.

10.     On September 16, 2025, Gadol and Testa obtained a clerk's default judgment against the Debtor in Delaware Superior Court in the aggregate amount of $14,306,866.84,[1] with a judgment effective date of August 27, 2025 (the "Default Judgment").

11.     On August 20, 2025, default was entered against the Debtor in the U.S. District Court, Case No. 8:25-cv-01202 in favor of Winters in the amount of $9,450,258.90 (through the date of the filing of the default judgment motion and subject to prove up) (the "Winters Default").

12.     The aggregate claims asserted by the Prejudgment Lienholders against the Debtor are no less than $23,757,125.74.

13.     I believe that the Debtor has valid and meritorious defenses and counterclaims to the Existing Actions and that certain of the liens may be avoidable under applicable law. Notwithstanding such defenses and claims, I believe that settlement is in the best interest of Debtor and its creditors.

14.     Accordingly, the Parties have reached a compromise with respect to all claims by and between the Parties subject to approval from the Court. The material terms of the Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, are:

- Dismissal of the Existing Actions: Within ten business days of the later of the Effective Date or the date of payment of the Aspen Proceeds Distribution, the Prejudgment Lienholders shall dismiss each of the Existing Actions with prejudice. Agreement, § 12.

- Allowance of Secured Claims in Favor of the Gadol Creditors: The Gadol Creditors shall be granted an allowed secured claim in the Case in the amount of $9,999,000 which shall be paid from the proceeds from the sale or disposition of: (a) the Lugano Stock; (b) the Real Property (subject to higher-priority liens); and (c) the Alternative Investments. Agreement, § 3.

- The Gadol Creditors shall be granted an allowed unsecured claim in the amount of $1,500,000.00 and Winters shall be granted an allowed unsecured claim in the amount of $500,000.00. Agreement, § 4. Notably, these allowed unsecured claims are subject to a 55% payment threshold, such that they are only paid on a ratable basis if other general unsecured claims are paid amounts in excess of 55% (the "55% Payment Threshold"). Agreement, § 7.

---

[1] The amount of the Default Judgment is as follows: (i) $7,929,072.00 in favor of Gadol and (ii) $6,377,794.84 in favor of Testa.

- Releases. The Parties are granted reciprocal releases of any and all claims by and between the Parties arising from the Existing Actions or relationship between the Parties. Agreement, §§ 17, 18.

- Cooperation. The Parties shall work together in good faith, which will include the Prejudgment Lienholders: releasing their liens, as necessary, so that the Debtor can sell its assets, supporting all necessary motions to effectuate the same, and supporting the Debtor's reorganization efforts so long as they are consistent with the terms of the Agreement. Agreement, § 6.a.

15. Under the circumstances of this Case, I believe that the complexity, costs and uncertainty associated with litigation likely outweigh any benefits that might be achieved.

16. First, proceeding with litigation rather than approving the proposed settlement presents substantial risks and uncertainties for the Debtor and its estate. The Prejudgment Lienholders have already obtained the Default Judgment and Winters Default against the Debtor. Therefore, before the Debtor can even litigate the merits of the Existing Actions and challenge the amount of the Prejudgment Lienholders' claims, it would first need to seek relief from the automatic stay to pursue vacating the Default Judgment and setting aside the Winters Default. These preliminary hurdles would not only delay the administration of this Case but also expose the Debtor to the risk of the Default Judgment and/or Winters Default remaining in place, thereby fixing the Prejudgment Lienholders' claims at amounts substantially higher than those contemplated under the Agreement.

17. Second, assuming that the Debtor is able to overcome those initial hurdles, the Debtor would then be required to litigate the substantive merits of the Prejudgment Lienholders' claims in connection with the Existing Actions. Such litigation would be highly complex, fact-intensive, and time-consuming.

18. Third, litigating with the Prejudgment Lienholders would impose substantial financial and administrative burdens on the Debtor and its estate. Such litigation would require the Debtor to incur a significant amount of time and expense by, *inter alia*: (i) seeking relief from the automatic stay and seeking to set aside the Default Judgment and Winters Default, (ii) litigating the merits of the Prejudgment Lienholders' claims, currently pending in four different jurisdictions: the Central District of California, and California, Delaware, and Colorado state courts, and (iii) engaging in contested motion practice and discovery, including retaining local counsel for the out-

of-state matters. The time and expense necessary to accomplish the foregoing would divert resources from the Debtor's primary objective – maximizing value for creditors through the disposition of the Debtor's assets.

19.     I believe that approval of the Agreement is in the best interest of creditors considering that the Prejudgment Lienholders' aggregate claims asserted against the Debtor equal at least $23,757,125.74. Specifically, by virtue of the Default Judgment and the Gadol Creditors' Liens, the Gadol Creditors currently have a secured claim against the Debtor's estate in the amount of $14,306,866.84. By the Agreement, the Gadol Creditors will be granted an allowed secured claim is the amount of $9,999,000, and an allowed unsecured claim in the amount of $1,500,000 (subject to the 55% Payment Threshold ), thereby freeing up millions of dollars of potential value in the Debtor's assets available for the payment of unsecured creditors.

20.     Moreover, by the Agreement, Winters is compromising the Winters Default in the approximate amount of $9,450,258.90 for an allowed $500,000 unsecured claim (subject to the 55% Payment Threshold) and participation in the Gadol Creditors' allowed secured claim as set forth in the Agreement.

21.     Accordingly, with the Agreement, the estate is compromising over $23 million of aggregate debt, at least $14 million of which is fully secured, for a $9,999,000 secured claim and an aggregate $2.0 million unsecured claim (subject to the 55% Payment Threshold). That is a nearly 30% reduction of the amount of secured claims and a nearly 50% reduction of the total claims against the estate asserted by the Prejudgment Lienholders.

22.     Finally, I believe that approval of the Agreement will provide certainty and stability to the Debtor's estate, in that the Debtor and Prejudgment Lienholders will cooperate in good faith to  liquidate the Debtor's assets and resolve the Case. Moreover, the Agreement establishes fixed, agreed upon amounts for each of the Prejudgment Lienholders' claims, which eliminates uncertainty as all parties-in-interest will be able to ascertain the universe of claims against the Debtor and understand how much money will be available for the benefit of creditors upon liquidation of the Debtor's assets.

1     23.    Therefore I believe that approval of the Agreement is in the best interest of Debtor's

2 creditors because it eliminates the inherent costs and risks of litigation, provides certainty as to the

3 claims of the Prejudgment Lienholders, and enables the Debtor to liquidate its assets and resolve the

4 Case. On these grounds, I believe that this Court should grant the Motion.

5     I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7     Executed on October 28, 2025.

8

9

10          Richard A. Marshack

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

# EXHIBIT "A"

# SETTLEMENT AGREEMENT

This settlement (the "**Agreement**") is entered into by, between, and among:

(i)    Richard Marshack, in his capacity as the Chief Restructuring Officer ("**CRO**") of the bankruptcy estate (the "**Estate**") of Simba Il Holdings, LLC ("**Debtor**" or "**Simba**"), Case No. 8:25-bk-12616-MH (the "**Bankruptcy Case**"), pending in the Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**");

(ii)    Mordechai Ferder, Edit Ferder (with respect to Article 3 only) and the Haim Family Trust ("**Haim Trust**") (collectively, with Simba, the "**Ferder Parties**"), and

(iii)    Messrs. Bryan Gadol ("**Gadol**"), Darren Testa ("**Testa**") (collectively with Gadol, the "**Gadol Creditors**"), and Kristoffer Winters ('**Winters**") (collectively, the "**Creditors**").

The persons and entities defined in paragraphs (i) through (iii) above are periodically referred to in this Agreement as a "Party" and collectively as the "Parties."

In consideration for the execution of this Agreement, and the performance of the terms and conditions herein, the Parties agree as follows:

## RECITALS

A.    On September 16, 2025, (the "**Petition Date**"), the Debtor filed a voluntary chapter 11 petition under title 11 of the United States Code in the Bankruptcy Court.

B.    Prior to the Petition Date, Creditors have brought the following suits, collectively referred to as the "Existing Actions," against the Ferder Parties, among others:

i.    *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC) filed on June 6, 2025;

ii.    *Gadol, et al. v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) filed on June 18, 2025;

iii.    *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) filed on July 2, 2025;

iv.    *Gadol, et al. v. Simba IL Holdings, LLC* (Delaware Superior Court Case No. N25J-01759) filed on July 2, 2025;

v.    *Winters v. Ferder, et al.* (US Dist. Court, Central Dist. of CA Case No. 8:25-cv-01202) filed on June 3, 2025;

vi.    *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02464) filed on September 12, 2025;

vii.    *Winters v. Simba IL Holdings, LLC* (Delaware Superior Court Case No. N25J-02463) filed on September 12, 2025; and

       viii.   *Winters v. Lugano Diamonds and Jewelry*, (Delaware Superior Court Case No. N25J-02465) filed on September 12, 2025.

C.      On July 11, 2025*,* Serenade Newport, LLC filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code, before the United States Bankruptcy Court, Central Dist. of CA Case No. 8:25-bk-11898-MH.

D.      The Creditors have applied for and obtained the following attachment orders, (collectively referred to as the "Liens") via the Existing Actions against the Ferder Parties and their property:

       i.   <u>Ex Parte Right to Attach Order and Order for Issuance of Writ of Attachment (Resident)</u> dated June 12, 2025, as to Ferder, an individual and as trustee of the Haim Family Trust and Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC);

      ii.   <u>Temporary Protective Order</u> dated June 18, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, filed in *Winters v. Lugano Diamonds et al* (US Dist. Court, Central Dist. of CA Case No. 8:25-01202);

     iii.   <u>Writ of Attachment</u> dated June 20, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC);

     iv.   <u>Order: Proposed Order re Plaintiffs' Immediate Disposition and Ex Parte Motion for Prejudgment Writ of Attachment</u> dated June 23, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, and Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) (the "**Aspen Writ of Attachment**");

      v.   <u>Recording of the Aspen Writ of Attachment</u> on June 23, 2025 at Reception No. 710102 (the "**Aspen Lien**")

     vi.   <u>Writ of Attachment</u> dated July 1, 2025 as to Ferder, an individual and as trustee of the Haim Family Trust, and Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC);

     vii.   <u>Temporary Restraining Order</u> dated July 3, 2025 as to Serenade Newport, LLC, filed in *Winters v. Lugano Diamonds et al* (US Dist. Court, Central Dist. of CA Case No. 8:25-01202);

    viii.   <u>Temporary Restraining Order</u> dated July 3, 2025 as to Serenade Newport, LLC, filed in *Gadol, et al. v. Ferder, et al.* (Orange County Superior Court Case No. 30-2025-01488102-CU-BC-CJC);

     ix.   <u>Writ Issued for Out-of-State</u> dated July 10, 2025 as to Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) (the "**Delaware Writ of Attachment**");

x.    <u>Writ of Attachment</u> dated July 25, 2025 as to Ferder as trustee of the Haim Family Trust filed in *Winters v. Ferder, et al.* (US Dist. Court, Central Dist. of CA Case No. 8:25-cv-01202);

xi.    <u>Writ of Attachment</u> dated July 25, 2025 as to Ferder, an individual filed in *Winters v. Ferder, et al.* (US Dist. Count, Central Dist. of CA Case No. 8:25-cv-01202);

xii.    <u>Writ of Attachment</u> dated July 28, 2025 as to Simba IL Holdings, LLC filed in *Winters v. Ferder, et al.* (US Dist. Court, Central Dist. of CA Case No. 8:25-cv-01202);

xiii.    <u>Order Granting Plaintiff's Ex Parte Motion for Mesne Writ of Attachment</u> dated August 18, 2025 as to Simba IL Holdings, LLC filed in *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) (the "**Delaware Mense Writ of Attachment**"; the Aspen Writ of Attachment, the Aspen Lien, Delaware Writ of Attachment, and Delaware Mense Writ of Attachment are collectively referred to as "**Gadol Creditors' Perfected Liens**");

xiv.    <u>Foreign Judgment</u> dated September 12, 2025 as to Mordechai Ferder filed in *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02464);

xv.    <u>Foreign Judgment</u> dated September 12, 2025 as to Mordechai Ferder Haim Family Trust filed in *Winters v. Ferder* (Delaware Superior Court Case No. N25J-02465); and

xvi.    <u>Default Judgment</u> with the effective date of August 27, 2025 in favor of Gadol and Testa and against Simba entered in *Gadol, et al. v. Ferder, et al*. (Delaware Superior Court Case No. N25C-07-026 PAW).

E.    The Creditors have also obtained the following default and judgment in the Existing Actions:

i.    On September 16, 2025, and before Simba filed its Bankruptcy Petition, default judgment was entered in Delaware, Case No. N25C-07-026 PAW in favor of Bryan Gadol and Darren Testa and against Simba, in the amounts of $7,929,072.00 and $6,377,794.84, respectively, with a judgment effective date of August 27, 2025.

ii.    On August 20, 2025, default was entered against Simba in in the U.S. District Court, Case No. 8:25-cv-01202 in favor of Kristoffer Winters, and on September 5, 2025, Kristoffer Winters filed a motion for default judgment in that action seeking entry of judgment against Simba in the amount of $9,315,000 plus prejudgment interest, which motion was scheduled to be heard October 6, 2025 until Simba filed its Bankruptcy Petition.

F.    The Ferder Parties contend they have valid defenses and counterclaims to the Creditors' claims as alleged in the Existing Actions as well as claims to be asserted against third parties (Collectively referred to as the "**Ferder Claims**.").

G.     The Ferder Parties assert that Simba is the record owner of certain real property, including a house located at 1220 Red Butte Drive, Aspen, Colorado (the "**Aspen House**").

H.     The Ferder Parties are owners of other financial and investment accounts, including accounts previously managed by David Emmes and Beacon Pointe Advisors, as more particularly set forth in the schedule listed on the schedules filed in the Bankruptcy Case on September 30, 2025, Dkt No. 42, on Attachment A/B – 15.2, pdf page 11 (collectively, and together with any other financial and investment accounts belonging to Simba but not yet scheduled, the "**Alternative Investments**").

     i.     The Parties are unaware of whether the Debtor has similar investment accounts or securities and their investigation is continuing.

I.     Mr. Ferder has also established two Irrevocable Trusts for his children, specifically the TF 2021 Irrevocable Trust and RF 2021 Irrevocable Trust (the "**Irrevocable Trusts**"). The Parties dispute whether and to what extent, the Liens apply to the Irrevocable Trusts.

J.     At least one of the Creditors have or had Liens that apply to each of the following: the Aspen House, Alternative Investments, and Simba's stock and ownership interest in Lugano Holdings, Inc. ("**Lugano Stock**"). The Ferder Parties dispute the validity of the Liens.

     i.     Aside from the Liens of the Creditors, the Aspen House is encumbered with the following: (a) Deed of Trust from The Haim Family Trust U/D/T February 24, 2009 to the Public Trustee of Pitkin County for the use of Citibank, N.A., to secure $11,537,500.00, dated January 13, 2022, and recorded January 18, 2022 at Reception No. 684382, and (b) Deed of Trust from The Haim Family Trust, U/D/T February 24, 2009 to the Public Trustee of Pitkin County for the use of White Mountain Capital Inc., to secure $6,750,000.00, dated March 10 2025, and recorded March 11, 2025 at Reception No. 708201. (The "**Aspen Deeds of Trust**").

     ii.     Other than asserted Liens of the Creditors, the Parties are unaware of any other liens against Alternative Investments or Lugano Stock.

K.     In consideration of the mutual covenants, terms, representations and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereto agree as follows:

## ARTICLE 1
## COURT APPROVAL

1.    **Binding Effect and Entry of Final Order**.  This Agreement will be effective and binding only upon the entry by the Bankruptcy Court of a final order (the "**Final Order**") granting a motion for compromise of controversy under Federal Rule of Bankruptcy Procedure 9019 that reflects the Parties' Agreement (the "**Motion**"). The term "**Final Order**" means an order granting the Motion and from which no appeal has been taken, and the time for taking such appeal has expired under the Federal Rules of Appellate Procedure, or, if any appeal has been taken, then: (i) no timely notice of appeal was filed, or (ii) if a notice of appeal was timely filed, then no stay pending appeal has been issued or is otherwise in effect. The date the Final Order takes effect will be the effective date of this Agreement ("**Effective Date**").

2.    **No Inconsistent Actions**.  No Party shall take any action inconsistent with this Agreement pending the entry of the Final Order and the resolution of any appeal of the Final Order, or the termination of this Agreement.

## ARTICLE 2
## TERMS OF THE AGREEMENT

3.    **Allowed Secured Claims and Settlement Payment**. The Gadol Creditors shall be paid an amount up to $9,999,000 (the "**Settlement Amount**") and as of the Effective Date, are granted an Allowed Secured Claim in the amount of $9,999,000 (the "**Allowed Secured Claim**"). The Allowed Secured Claim shall be paid from the proceeds from the sale or disposition of the (a) the Lugano Stock; (b) the Aspen House subject only to the Aspen Deeds of Trust; and (c) the Debtor's Alternative Investments, (collectively, the "**Collateral**") and be paid as set forth in the Asset Liquidation section, below.  All payments on the Allowed Secured Claim shall be made to counsel for the Gadol Creditors, to be distributed in accordance with Section 8, below.

    a.    **Additional Collateral**. Creditors' Perfected Liens cover all of the assets of Simba, as described in the orders giving rise to those liens. The Creditors are unsure whether Simba owns assets beyond the Collateral, but if it does, then those will also constitute collateral for the Gadol Creditors ("**Additional Collateral**").

4.    **Creditors Allowed Unsecured Claim.**  As of the Effective Date: the Gadol Creditors shall also be granted an allowed unsecured claim in the amount of $1,500,000 (the "Gadol Allowed Unsecured Claim") and Winters shall be granted an allowed unsecured claim in the amount of $500,000 ("Winters Unsecured Claim," collectively the Gadol and Winters Unsecured Claims are the "Allowed Unsecured Claims").

    a.    **Limitation on collective payment**. In no event shall any amounts in excess of the Allowed Secured Claim be paid to the Gadol Creditors in the Bankruptcy Case, except as otherwise provided in connection with the Allowed Unsecured Claims, and the Deficiency Allowed Unsecured Claim and Section 6.c.ii.

5.    **Allowed Secured Claim Status and Priority**.  The Allowed Secured Claim shall be secured by the Gadol Creditors' Perfected Liens. The Gadol Creditors' Perfected Liens are valid, perfected, and unavoidable liens on the Collateral and Additional Collateral as set forth below, and shall continue to secure the Allowed Secured Claim, subject only to the Aspen Deeds of Trust, as applicable:

       i.    The Gadol Creditors have a valid, perfected and unavoidable lien as to the Aspen House as of June 23, 2025.

       ii.    The Gadol Creditors have valid, perfected and unavoidable liens as to all of the Collateral other than the Aspen House, and Additional Collateral including Debtor's accounts and investment assets and including the Alternative Investment accounts, as of July 10, 2025

       b.    **Effect of Gadol Creditors' Perfected Liens in Bankruptcy Case.** The Gadol Creditors' Perfected Liens shall continue to secure the Allowed Secured Claim, notwithstanding conversion, dismissal, or the commencement of any subsequent bankruptcy case involving the Debtor. Nothing in this paragraph shall be construed to create a new lien in violation of the Bankruptcy Code but rather constitutes recognition and approval of the Gadol Creditors' Perfected Liens existing as of the Petition Date.

       i.    **Mandatory language on Effect of Gadol Creditors' Perfected Liens**.

 The Final Order shall include the following language: "For purposes of this Chapter 11 case, any subsequent bankruptcy case of the Debtor, and any proceeding in any forum, the Debtor and the Estate stipulate and the Court hereby finds that the Gadol Creditors hold an Allowed Secured Claim in the amount of $9,999,000. The Allowed Secured Claim is secured by the Gadol Creditors' Perfected Liens, which are valid, perfected, enforceable, and unavoidable liens and security interests in the Collateral. The Gadol Creditors' Liens shall be deemed valid, perfected, enforceable, and unavoidable against the Collateral as of no later than the Petition Date and shall continue to secure the Allowed Secured Claim, notwithstanding conversion, dismissal, or the commencement of any subsequent bankruptcy case involving the Debtor. Nothing in this paragraph shall be construed to create a new lien in violation of the Bankruptcy Code but rather constitutes recognition and approval of the liens existing as of the Petition Date." The enforceability of this Settlement Agreement is contingent on the Bankruptcy Court's order containing the aforementioned language, or similar language that is agreed to by the Parties and is approved by the Gadol Creditors, in their sole discretion.

6.    **Asset Liquidation**. The Debtor, by and through its CRO or any other person approved by the Bankruptcy Court to act on the Debtor's behalf in this regard, will oversee and control the asset liquidation process described in this section and will distribute the liquidated assets per the terms of this Agreement in accordance with the provisions of Title 11, United States Code. The proceeds of the liquidation shall be paid to the Gadol Creditors as soon as reasonably possible following the entry of any Bankruptcy Court orders authorizing the sale or disposition of the Collateral.

a.    **Cooperation.** The Parties and CRO shall work together in good faith to liquidate the Aspen House and Alternative Investments as soon as commercially practicable to maximize their value. Such good faith cooperation will include: the Parties executing all necessary documents to implement the liquidation including the release of Liens as necessary to allow for sales to proceed, supporting all necessary motions in the Bankruptcy Court to effectuate the same, supporting any chapter 11 which terms are consistent with this Agreement, and seeking any appropriate orders of the courts in the Existing Actions.

i.    **Reservation of rights to contest manner of liquidation.** The Creditors reserve the right to contest to any motions or plan by the Debtor to sell or liquidate assets to the extent the Creditors believe the requested relief violates this Agreement or otherwise fails to realize the best and fair value of the Collateral.

b.    **Disposition of Proceeds on the Sale of Aspen House.**  The Aspen House shall be sold pursuant to a motion to sell property pursuant to 11 U.S.C. Section 363. The proceeds from the sale of the Aspen House be used only to pay the commercially reasonable costs of sale (inclusive of all fees required to be paid to the United States Trustee on account of disbursements made attributable to the proceeds from the sale ("Closing Costs")) and the undisputed, unobjected amounts securing the Aspen Deeds of Trust.  The net proceeds, if any, will then be paid as follows without any further Court Order necessary: to the CRO, in the amount of $250,000 to be allocated as the maximum carve out from the sale of the Aspen House to fund administrative expenses for the estate; the balance payable to the attorneys of record for the Gadol Creditors on account of the Gadol Creditors' Perfected Liens and Allowed Secured Claim (the "Aspen Proceeds Distribution").

i.    **Reservation of Rights to Object to the Aspen Deeds of Trust**. The Creditors expressly reserve the right to object to the Aspen Deeds of Trust and claims underlying the same.

ii.    **Termination of Settlement in event of disposition outside of bankruptcy**.  In the event that relief from the automatic stay is granted to one of the holders of the Aspen Deeds of Trust, and the Aspen House is either: 1) sold outside of the Bankruptcy Case or 2) foreclosed upon, then the Agreement is null and void at the Creditors' sole discretion.

c.    **Disposition of Alternative Investments.** The Alternative Investments shall be sold or otherwise liquidated pursuant to 11 U.S.C. Section 363, or transferred or assigned to the Creditors as discussed in section 6.c.i below. Any distributions received from the Alternative Investments and any proceeds from the disposition  of the Alternative Investments shall be used only to pay the Closing Costs, then the net proceeds, if any, will then be paid as follows without any further Court Order necessary: to the CRO, in the amount of $250,000 to be allocated as the maximum carve out from the disposition of the Alternative Investments to fund administrative expenses for the estate; the balance payable to the attorneys of record for the Gadol Creditors  on account of the Gadol Creditors' Perfected Liens and Allowed Secured Claim.

i.    **Transfer of Alternative Investments to Creditors in alternative**. Because of the speculative nature of the Alternative Investments, that they may be subject to

existing capital calls, and their illiquidity, it may be difficult to gauge the value of the Alternative Investments and the Parties recognize they may face impediments in the marketability of these assets. Accordingly, the Gadol Creditors reserve the right to accept an assignment of the Debtor's interest in the Alternative Investments (including the right to receive distributions) or a transfer of the Alternative Investments or of Additional Collateral at a discount taking into account the illiquidity and any other restrictions and barriers to a free-market disposition in lieu of payment of a portion or all of the Allowed Secured Claim. Such exercise of right would be on a noticed motion before the Bankruptcy Court. The amount that the Allowed Secured Claim shall be reduced shall be negotiated in good faith between Simba (or its CRO) and the Gadol Creditors, subject to Court approval. The Ferder Parties agree to work in good faith with the Creditors with respect to any reasonable requests for information and documentation required to determine the status of the current and or exiting value of the Alternative Investments, existence of and need to satisfy any capital calls, all contingencies and requirements needed to satisfy any capital calls and execute any transfer or liquidation of the Alternative Investments.  Ferder Parties will promptly advise the Creditors of any correspondence or requests for capital calls received from the Alternative Investment funds.

   ii. **Capital Calls and Preservation of the Alternative Investments**. In the event that capital calls have been made as to the Alternative Investments that have not been paid by Simba pre-petition, or capital calls are made post-petition, or in the event that any default has occurred, and/or that penalties or interest related to said default has occurred, then the Gadol Creditors may, in their sole discretion, make payment of the capital calls and/or of the penalties and interest or any other amount owed by the Debtor related to the Alternative Investments in order to cure any defaults and to preserve the value of the Alternative Investments. Any payment by the Gadol Creditors of such Capital Calls will result in an increase in the amount of the Gadol Creditors' Allowed Secured Claim equal to the amount of payment made in satisfaction of the capital calls, to cure any defaults or to otherwise preserve the value of the Alternative Investments.

   d. **Disposition of Lugano Stock.**  The Allowed Secured Claim also remains secured by Lugano Stock. Should the Lugano Stock be liquidated by the Estate, and should any proceeds become available after satisfaction of any senior liens on those proceeds, if any such senior liens exist, then the proceeds shall be used to pay any portion of the Allowed Secured Claim remaining unpaid at the time of liquidation, after payment of Closing Costs, with payment to the attorneys of record for the Gadol Creditors on account of the Gadol Creditors' Perfected Liens and Allowed Secured Claim

   e. **Deficiency Allowed Unsecured Claim.**  To the extent that the disposition of the Collateral is insufficient to pay the Allowed Secured Claim in full, the Gadol Creditors shall have an allowed general unsecured, non-subordinated claim in the amount of any deficiency remaining after liquidation of the Collateral, not subject to the Payment Threshold set forth in section 8, below, separate and apart from the Allowed Unsecured Claim.  Any payment made towards the Deficiency Allowed Unsecured Claim shall be made payable to the attorneys of record for the Gadol Creditors.

   f. **Payment of Settlement Amount as funds become available**. The CRO shall expeditiously liquidate the Collateral and pay the Creditors' Secured Claim forthwith and

without further Bankruptcy Court Order, as funds from the liquidation of the Collateral and Additional Collateral become available, until the Allowed Secured Claim is paid in full.

        g.      **Prohibition on Priming Liens**.  The Debtor acknowledges and agrees that the Creditors' liens, security interests, and rights in and to the Collateral and Additional Collateral are valid, perfected, and enforceable, and are not subject to avoidance, subordination, or priming under any provision of the Bankruptcy Code or other applicable law, including, without limitation, sections 364(d), 510, 544, 547, 548, or 549 of the Bankruptcy Code.  The Debtor agrees not to seek, support, or consent to any order or relief that would grant a lien senior to, or *pari passu* with, the liens of the Creditors in the Collateral and Additional Collateral, without the Creditors' prior written consent.

      7.      **Payment on Account of the Allowed Unsecured Claim**. In the event as part of any chapter 11 plan or other distribution in connection with the Chapter 11 case, general unsecured creditors receive distributions such that their recovery is greater than 55% of their allowed unsecured claims (the "Payment Threshold"), the Allowed Unsecured Claim  shall also be paid, on a ratable basis, an amount equal to the amounts paid on account of general unsecured claims in excess of the Payment Threshold. Unless and until the Payment Threshold is reached, there shall be no distribution on account of the Allowed Unsecured Claim.

      8.      **Internal Allocation of Creditors' Payments**: The Creditors agree to distribute payments on the Allowed Secured Claim as follows:

        a.      First $2 million liquidated is allocated to Gadol/Testa;

        b.      Next $3 million liquidated is divided between Gadol and Testa, on one hand, and Winters, on the other hand; 2/3 and 1/3, respectively;

        c.      Next $1 million liquidated is allocated to Winters; and

        d.      Everything above $6 million is divided between Gadol and Testa, on one hand, and Winters, on the other hand; 2/3 and 1/3, respectively, except that once $9,927,000 is received as payment on the Allowed Secured Claim, then the remaining $72,000 shall be allocated to Winters.

The Gadol Creditors are responsible for providing Winters his share of the Settlement Payment, which will be the subject of a separate agreement with Mr. Winters. Should any dispute arise among the Creditors about that allocation, that dispute is not cause to invalidate or rescind this Agreement.

        e.      The Parties recognize that Winters, along with the Gadol Creditors, is an intended beneficiary of the Allowed Secured Claim and is releasing his rights and claims set forth in the recitals in exchange for his participation in the Allowed Secured Claim and other provisions set forth in this Agreement.

      9.      **Release of Irrevocable Trusts**. Upon entry of a Final Order, the Irrevocable Trusts will be released from the Liens, and the Parties will take all reasonable action necessary to ensure the performance of any tasks needed to effectuate this relief.

10.    **The Due Diligence Period**. The Parties agree to a "Due Diligence Period," which shall be the time period between execution of this Agreement and the entry of an order by the Bankruptcy Court approving this Agreement, which the Parties agree shall be no less than 20 days. The purpose of this Due Diligence Period is for the Creditors to have sufficient time to investigate the value of the Collateral to ensure that it is sufficient to pay the Allowed Secured Claim in full. The Ferder Parties and the Creditors agree to work together and in good faith with respect to any reasonable requests for information and documentation any of them may have with respect to the Collateral including, without limitation as follows:

a.    With respect to the Aspen House, documentary proof of the validity and amount of White Mountain Capital Inc.'s ("WMC") purported lien against the Aspen House, including, without limitation, proof of payment of any loan funds from WMC.

b.    With respect to the Alternative Investments, the Parties understand and acknowledge that the best source of information regarding those assets may be in the possession of third parties, including David Emmes and Beacon Pointe. The Creditors as part of their due diligence, seek to obtain documents and information from third parties, or the Ferder Parties, to the extent any of them possess such information, regarding (1) current value of partnership interest; (2) schedule of capital contributions, distributions since inception; (3) schedule of unfunded capital commitments, approximate due dates, and any unfunded capital calls to date, including current penalties or interest; (4) impact on investment value if required capital commitments are not made; (5) remaining term of investment fund and estimated distribution schedule; and (6) copies of investment agreements. The Debtor shall request such information from the Alternative Investment funds within 2 business days of execution of this Agreement and shall promptly provide all responses received to the Creditors.

If, prior to the expiration of the Due Diligence Period, the Creditors determine, in their sole discretion, that the Collateral value does not sufficiently secure payment of the Allowed Secured Claim, then the Creditors may, in their sole discretion, upon written notice to the Ferder Parties by email served on Simba's counsel in the Bankruptcy Case, on the CRO, and on Mr. Ferder's counsel, terminate and rescind this Agreement as if it were never entered into and all provisions herein shall be deemed null and void ("Termination Notice"). Upon receipt of Termination Notice, Simba shall take appropriate action to withdraw any motion filed seeking approval of this Agreement and shall take action necessary to take any hearings for approval of the Agreement off-calendar.

11.    **Stay of Existing Actions**. Immediately following execution of this Agreement, in order to avoid unnecessary costs and fees, the Parties agree to cooperate in good faith to stay or otherwise suspend the Existing Actions pending the Effective Date and the Aspen Proceeds Distribution.  The Creditors agree to seek an order staying the Existing Actions, including requesting that all pending motions brought by or against the Ferder Parties be taken off calendar.  The stay of the Existing Actions shall remain in effect unless and until the Bankruptcy Court denies approval of this Agreement, the Existing Actions are dismissed in accordance with the terms of this Agreement, or this Agreement is terminated pursuant to the terms of this Agreement.  The Parties agree that no prejudice shall be suffered by any party as a result of the stay, such that no argument can be made that a party did not diligently or timely seek entry of

default or judgment as a result time period of the stay or that a party did not diligently act to set aside any default or default judgment.

a. **Alternative to Stay if Necessary**. In the event that the any court(s) presiding over any Existing Action(s) declines to enter a stay order, the Parties shall confer in good faith to propose appropriate alternatives to a stay order, such as continuing motions, refraining from issuing any discovery, and other actions to avoid additional litigation to preserve the Parties respective rights while also continuing to avoid unnecessary costs and fees.

b. **Orders in Aid of Agreement**. Nothing in this section prevents the Parties from seeking any court orders to aid in the liquidation of the Collateral and the Alternative Collateral per the terms of this Agreement.

c. **Recourse on Existing Actions**. In the event a Final Order is not entered, or in the event that or in the event that the Aspen House is foreclosed upon or determined not to be property of the Estate, the Parties may seek to lift and/or extinguish the stay of the Existing Actions and proceed with litigation of the Existing Actions, and/or pursue any additional claims and/or litigation they may have.

12. **Dismissal of All Existing Actions**. Within ten business days of the later of the Effective Date or the date of the Aspen Proceeds Distribution, the Creditors shall file forms, as appropriate per jurisdiction, dismissing each of the Existing Actions with prejudice as to the Ferder Parties only ("**Dismissal Requests**").

13. **Release of All Liens on non-Simba Collateral**. Other than the Irrevocable Trusts (*see* Section 9), within  ten business days of the later of the Effective Date or the date of payment of Aspen Proceeds Distribution,  the Creditors shall take all necessary actions to immediately release and extinguish all Liens that currently exist against the Ferder Parties other than those liens against assets owned by Simba (which will be dealt with as needed in the liquidation of Simba's assets in the Bankruptcy Case). This includes executing any required lien release forms, withdrawals of lis pendens, and signing stipulations or requests for court orders to rescind the orders or expunge the Liens,

### ARTICLE 3
### RELEASE OF CLAIMS

14. **Definition of Claims.** "Claims" will mean any and all claims, allegations, assertions, demands, rights, duties, obligations, contracts, agreements, covenants, promises, understandings, debts, demands, encumbrances, liens, damages, injuries, losses, actions, causes of action, costs, expenses, charges, attorneys' fees, judgments, orders, levies, and liabilities of any kind, whether in law or equity, known or unknown, and concealed or revealed.

15. **Effective Release Date**. The releases set forth in this Article 3 shall not be effective unless and until the later to occur of: 1) the Effective Date; or 2) the date of the Aspen Proceeds Distribution (the "Release Date"). The releases shall automatically and irrevocably become effective as of that date.

16.    **Ferder Parties' Release of Holland & Knight LLP**. Except for the obligations arising under this Agreement or at law, on the Release Date, the Ferder Parties, individually and as Trustees of the Haim Trust, each covenant and agree that they will forever refrain from instituting, prosecuting, maintaining, proceeding on, or advising to be commenced or maintained against Bryan Gadol, Holland & Knight LLP, or any other attorney or employee of Holland & Knight LLP (the "Holland & Knight Parties") in any action or proceeding which arises out of, or is or may be, in whole or in part, based upon, related to, or connected with any legal advice and legal representation to Lugano any of its parents, subsidiaries, or affiliates, or the Ferder Parties, or the claims released herein. The Ferder Parties,  do hereby release, cancel, and forever discharge Holland & Knight Parties, and each of its directors, officers, employees, subsidiaries, affiliates, agents, attorneys, and representatives of and from any and all Claims, causes of action, actions, judgments, trust deeds, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, which the Ferder Parties, had or may have against the Holland & Knight Parties related to any legal advice and legal representation of Lugano any of its parents, subsidiaries, or affiliates, and of the Ferder Parties, which have accrued from the beginning of time to the Effective Date.

17.    **Release of Ferder Parties**. Except for the obligations arising under this Agreement, on the Release Date, the Creditors, their family members, including Felicia Testa, their related trusts, including the Gadol Family Trust and the Testa Family Trust, do hereby release, cancel, and forever discharge each of the Ferder Parties and their directors, officers, employees, subsidiaries, affiliates, agents, attorneys, trustees, immediate family members, and representatives of and from any and all Claims, causes of action, actions, judgments, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, arising out of or related in any way to any of the claims asserted in the Existing Actions or any other matter or claim arising out of the relationship between or among the Creditors, on the one hand, and the Feder Parties on the other, whether known or unknown, suspected or unsuspected, existing or prospective, which have accrued from the beginning of time to the Effective Date.

18.    **Release of Creditors**. Except for the obligations arising under this Agreement, on the Release Date, the Ferder Parties and their family members, do hereby release, cancel, and forever discharge each of the Creditors and their directors, officers, employees, subsidiaries, affiliates, agents, attorneys, trustees, immediate family members, and representatives of and from any and all Claims, causes of action, actions, judgments, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, arising out of or related in any way to any of the claims asserted in the Existing Actions or any other matter or claim arising out of the relationship between or among the Creditors, on the one hand, and the Ferder Parties on the other, whether known or unknown, suspected or unsuspected, existing or prospective, which have accrued from the beginning of time to the Effective Date.

19.    **Specific Exclusion of Release**. For the avoidance of any doubt, nothing in this Agreement releases any Claims causes of action, actions, judgments, trust deeds, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, against any of the following entities, their directors, officers, employees, subsidiaries, affiliates, agents, attorneys, trustees, immediate family members, and representatives: Lugano; Lugano Diamonds & Jewelry, Inc., its parent companies and subsidiaries; Joshua Gaynor,

Compass Group Diversified Holdings, LLC (NYSE: CODI); Beacon Pointe Financial; Luxe Maison Properties, Inc. d/b/a The Daftarian Group; Serenade Newport, LLC.; Paul Daftarian; Lili Daftarian; Michael Gerro; Sahand Zargari; Jacob Wolf; David Emmes; and any party not specifically released herein. To the extent there is any ambiguity or inconsistency with any other provision of the Agreement, this provision controls.

20.    **Release of Claims and California Civil Code Section 1542 Waiver.**    Except for the obligations arising under this Agreement, as of the Release Date, the Creditors on the one hand, and the Ferder Parties and their directors, officers, employees, subsidiaries, affiliates, agents, attorneys, trustees, immediate family members, on the other, hereby forever mutually and generally release and discharge one another and each of their respective officers, directors, trustees, agents, employees, consultants, affiliates, divisions, subsidiaries, predecessors, successors, assigns, partners, shareholders, administrators, executors, principals, attorneys, insurers, and representatives from any and all Claims, causes of action, actions, judgments, trust deeds, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, arising in connection with any matter whatsoever, whether known or unknown, suspected or unsuspected, existing or prospective, which have accrued from the beginning of time to the Release Date.

Except for the obligations arising under this Agreement the Parties expressly waive and relinquish any and all rights and benefits of section 1542 of the California Civil Code ("**Section 1542**"), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Notwithstanding the provisions of Section 1542, the Parties expressly acknowledge this Agreement is intended to release Claims they do not know or suspect to exist in their favor at the time of the execution of this Agreement. The Parties further acknowledge that they later may discover facts different from or in addition to those they now know or believe to be true regarding the matters released or described in this Agreement, and even so they agree that the releases and agreements contained in this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts. The Parties expressly assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies released or described in this Agreement or with regard to any facts now unknown to them relating thereto. The Parties warrant that they have read this Agreement, including this waiver of Section 1542, and that they have consulted with or had the opportunity to consult with counsel of their choosing about this Agreement and specifically about the waiver of Section 1542, and that they understand this Agreement and the Section 1542 waiver, and so the Parties freely and knowingly enter into this Agreement.

21.    **Binding Effect.**    To the fullest extent permitted by law, the terms of this Agreement, including all benefits derived by any Party pursuant to the terms of this Agreement,

shall be binding on all of the Parties and their heirs, successors, assigns, administrators, conservators, and executors.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

22.    **Legal Capacity to Contract.**  Each Party represents that it has the requisite power, authority, and legal capacity to make, execute, enter into, and deliver this Agreement and to fully perform its duties and obligations under this Agreement, and that neither this Agreement nor the performance by such Party of any duty or obligation under this Agreement will violate any other contract, agreement, covenant, or restriction by which such Party is bound.

23.    **Mutual Non-Disparagement**. The Parties agree not to disparage one another. Disparaging statements are those that are intended to disparage or that a reasonable person would expect to materially harm the personal or professional reputation of another Party. For purposes of this Section, "disparaging statements" include oral, written, or electronic communications that go beyond ordinary differences of opinion and are reasonably likely to cause substantial reputational injury. Truthful statements made in good faith to regulators, taxing authorities, auditors, insurers, lenders, investors or professional advisors are not disparaging statements. Statements made under oath in a deposition, hearing or trial, in a pleading, motion, or other formal court filing, or in response to a subpoena or other compulsory legal process, are not disparaging statements as used herein, this includes, without limitation, any statements made to regulators, governmental agencies and investigators, and in the context of any governmental investigation or proceeding.  Statements between and amongst the Creditors, including their counsel, are not disparaging statements as used herein. A non-breaching Party is entitled to seek an injunction to stop any breach, without posting a bond. The prevailing party in any action to enforce this Section is entitled to recover its reasonable attorneys' fees and costs.

24.    **No Prior Assignments.**  Each Party represents that it has not pledged, transferred, or assigned to any third party any right, interest, claim, or cause of action being transferred, conveyed, released, or compromised pursuant to this Agreement.

25.    **No Undisclosed Inducements.** Each Party represents that it entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties, or promises other than those set forth in this Agreement were made by any Party or any employee, agent, or legal counsel of any Party to induce such Party to execute this Agreement.

26.    **No Admission of Liability.**  This Agreement was negotiated and executed for the purpose of settling the disputes described in the Agreement and effectuating the releases of Claims described in this Agreement. The execution of this Agreement by any Party does not constitute, infer, or evidence the truth of any claim, the admission of any liability, the validity of any defense, or the existence of any circumstance or fact which could constitute a basis for any claim, liability, or defense, other than for the purpose of enforcing the terms and provisions of this Agreement.

27.    **Representation by Counsel.**  Each Party represents that it has acted pursuant to the advice of legal counsel of its own choosing in connection with the negotiation, preparation, and execution of this Agreement, or was advised by the other to obtain the advice of legal counsel and had ample opportunity to obtain the advice of legal counsel or has knowingly and voluntarily agreed to proceed without legal counsel.

28.    **Truth and Accuracy of Representations and Warranties.**  Each of the representations, warranties, and covenants set forth in this Agreement shall be, and the Party making the same shall cause them to be, true and correct as of the time of execution of this Agreement and as of the time of the entry by the Bankruptcy Court of the Final Order.

29.    **Survival.**  Each of the statements, certifications, representations, warranties, covenants, disclosures, disclaimers, waivers, and other agreements contained in this Agreement shall survive the execution of this Agreement, the payment of any settlement consideration provided for in this Agreement, and the dismissal of any legal actions referenced in this Agreement.

## ARTICLE 5
## GENERAL TERMS AND PROVISIONS

30.    **No Limitation on Third Parties**.  This Agreement does not preclude or limit in any way any of the Parties' rights to pursue third parties, including but not limited to: Lugano; Lugano Diamonds & Jewelry, Inc,; Joshua Gaynor; Compass Group Diversified Holdings, LLC (NYSE: CODI); Beacon Pointe Financial; Luxe Maison Properties, Inc. d/b/a The Daftarian Group; Serenade Newport, LLC.; Paul Daftarian; Lili Daftarian; Michael Gerro; Sahand Zargari; Jacob Wolf; David Emmes, their respective officers, directors, trustees, agents, employees, consultants, affiliates, divisions, subsidiaries, predecessors, successors, assigns, partners, shareholders, administrators, executors, principals, attorneys, insurers, and representatives from any and all Claims, causes of action, actions, judgments, trust deeds, promissory notes, liens, indebtedness, damages, losses, claims for relief, liabilities and demands of every kind and character, arising in connection with any matter whatsoever, whether known or unknown, suspected or unsuspected, existing or prospective, which have accrued from the beginning of time to the Effective Date.

31.    **Entire Agreement.**  This Agreement shall constitute the sole and entire agreement between the Parties with respect to the settlement of disputes and release of claims provided for in the Agreement. Any and all prior or contemporaneous agreements and negotiations, whether oral or written, with respect to the subject matter of this Agreement, are hereby superseded. No employee or agent of any Party has authority to orally modify any term or condition of this Agreement, or to make any representation or agreement other than as contained in this Agreement. Unless any representation or agreement is contained in this Agreement or is added pursuant to a written amendment executed by all Parties, it shall not be binding nor otherwise affect the validity of this Agreement.

32.    **Amendment of Agreement.**  No modification of, deletion from, or addition to this Agreement shall be effective unless made in writing and executed by each Party to this Agreement.

33.    **Construction of Agreement.**  The provisions of this Agreement shall be liberally construed to effectuate the intended settlement and the release of all related claims. Section headings have been inserted for convenience only and shall not be given undue consideration in resolving questions of construction or interpretation. For purposes of determining the meaning of, or resolving any ambiguity with respect to, any word, phrase, term, or provision of this Agreement, each Party shall be deemed to have had equal bargaining strength in the negotiation of this Agreement and equal control over the preparation of this document, such that neither the Agreement nor any uncertainty or ambiguity in the Agreement shall be arbitrarily construed or resolved against any Party under any rule of construction.

34.    **Further Assurances.**  Each Party shall promptly execute any and all instruments and documents and take all other actions that may be required to effectuate the Agreement.

35.    **Gender and Quantitative Use.**  Wherever the context of this Agreement may so require, the gender shall include the masculine, feminine, and neuter, and the quantitative usage of any word, term, or phrase shall include the singular and plural.

36.    **Enforcement of Agreement.**  Each Party to this Agreement shall have the right to enforce by proceedings at law or in equity all of the terms and provisions of this Agreement, including, without limitation, the right to prosecute proceedings at law or in equity against the person(s) who have violated or who are attempting to violate any of such terms or provisions, to enjoin such person(s) from doing so, to cause such violation to be remedied, and/or to recover damages for such violation.

37.    **Waiver.**  The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision of the Agreement.  No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

38.    **Severability.**  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the Parties.

39.    **Litigation Costs and Attorneys' Fees.**  If any Party(s) shall commence legal proceedings against any other Party(s) to enforce the provisions of this Agreement or to declare any rights or obligations under this Agreement, then the prevailing Party(s) shall recover from the losing Party(s) its/their costs of suit, including reasonable attorneys' fees, as shall be determined by the court. Otherwise, each Party to this Agreement shall bear his, her or its own attorneys' fees and costs incurred in connection with the claims described, assigned, transferred, prosecuted or defended herein, as well as in connection with the negotiation, execution and approval of this Agreement.

40.    **Tax Matters**. Each party shall be solely responsible for any and all taxes consequences and/or taxes that may be owed to any federal, state, or local taxing authority as a result of the settlement payment received under this Agreement and the agreement set forth herein.

41.    **Governing Law.** This Agreement is made under and shall be construed in accordance with and governed under the Bankruptcy Code, and, if applicable, by the laws of the State of California.  All Parties consent to the jurisdiction of the United States Bankruptcy Court, Central District of California, for the purpose of resolving any disputes which may arise under or relate to this Agreement.

42.    **Retention of Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction to hear any actions relating to this Agreement, including any resolution for any dispute arising from the terms of this Agreement.

43.    **Counterparts.** This Agreement may be executed in any number of identical counterparts, each of which is an original, and all of which together constitute one and the same agreement. A facsimile or electronic image of a signature shall have the same force and effect as on original signature.

44.    **Inurement.** This Agreement shall inure to the benefit of and be fully binding upon each of the Parties and upon their respective heirs, executors, successors, assigns, and grantees.

45.    **Notices.**  Any payments to be made or any notices or other communications to be given pursuant to this Agreement shall be delivered to counsel for the appropriate Party as identified below

[Signature Page to Follow]

In witness whereof, the Parties hereto have executed this Agreement on the date set forth below.

DATED: October _____, 2025                    MORDECHAI FERDER

                                              _____
                                              Mordechai Ferder

DATED: , October _____, 2025                  MORDECHAI FERDER

                                              _____
                                              Mordechai Ferder, as trustee of the Haim
                                              Family Trust

DATED:, October _____, 2025                   RICHARD MARSHACK

                                              _____
                                              Richard Marshack, Chief Restructuring
                                              Officer of Simba IL Holdings, LLC

DATED: , October _____, 2025                  EDIT FERDER

                                              _____
                                              Edit Ferder, individually, and as trustee of
                                              the Haim Family Trust (with respect to Article 3
                                              only)

DATED: , October _____, 2025                  KRISTOFFER WINTERS

                                              _____
                                              Kristoffer Winters

In witness whereof, the Parties hereto have executed this Agreement on the date set forth below.

DATED: October _____, 2025                 MORDECHAI FERDER

                                            _____
                                                   Mordechai Ferder

DATED: , October _____, 2025                MORDECHAI FERDER

                                            _____
                                                   Mordechai Ferder, as trustee of the Haim
                                            Family Trust

DATED:, October 20, 2025                    RICHARD MARSHACK

                                            _____
                                                   Richard Marshack, Chief Restructuring
                                            Officer of Simba IL Holdings, LLC

DATED: , October _____, 2025                EDIT FERDER

                                            _____
                                                   Edit Ferder, individually, and as trustee of
                                            the Haim Family Trust (with respect to Article 3
                                            only)

DATED: , October _____, 2025                KRISTOFFER WINTERS

                                            _____
                                                   Kristoffer Winters

In witness whereof, the Parties hereto have executed this Agreement on the date set forth below.

DATED: October _____, 2025              MORDECHAI FERDER


                                        _____
                                        Mordechai Ferder

DATED: , October _____, 2025            MORDECHAI FERDER


                                        _____
                                        Mordechai Ferder, as trustee of the Haim
                                        Family Trust



DATED:, October _____, 2025             RICHARD MARSHACK


                                        _____
                                        Richard Marshack, Chief Restructuring
                                        Officer of Simba IL Holdings, LLC

DATED: , October _____, 2025            EDIT FERDER


                                        _____
                                        Edit Ferder, individually, and as trustee of
                                        the Haim Family Trust (with respect to Article 3
                                        only)

DATED: , October _____, 2025            KRISTOFFER WINTERS


                                        _____
                                        Kristoffer Winters

DATED: , 2025                    BRYAN GADOL

                                 _____
                                       Bryan Gadol


DATED: , 2025                    DARREN TESTA


                                 _____
                                       Darren Testa

EXHIBIT "A" - page 21

DATED: , 2025                          BRYAN GADOL


                                       _____
                                          Bryan Gadol



DATED: , 2025                          DARREN TESTA
10/18/25

                                       _____
                                          Darren Testa

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ORDER APPROVING SETTLEMENT; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT THEREOF [WITH HEARING NOTICE]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>October 28, 2025</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>October 28, 2025</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Mark M. Houle
U.S. Bankruptcy Court – Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C
Santa Ana, CA 92701-4593

☒ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state** <u>method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 28, 2025 | Lori Gauthier | */s/ Lori Gauthier* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Anthony Bisconti**    tbisconti@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Max Casal**    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- **Karol K Denniston**    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-
  9025@ecf.pacerpro.com
- **Don Fisher**    dfisher@ptwww.com, tblack@ptwww.com
- **Alan J Friedman**    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **George Gerro**    george@gerrolaw.com
- **Christopher J Harney**    charney@tocounsel.com, kmanson@tocounsel.com
- **Steven J. Katzman**    skatzman@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Tobias S Keller**    tkeller@kellerbenvenutti.com
- **Wendy A Locke**    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- **Richard A Marshack**    rmarshack@marshackhays.com,
  lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Stacy H Rubin**    shr@h2law.com, kmacelwain@howardandhoward.com
- **Leonard M. Shulman**    lshulman@shulmanbastian.com,
  bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- **Timothy J Silverman**    tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

## 2. SERVED BY U.S. MAIL

**DEBTOR**
SIMBA IL HOLDINGS, LLC
ATTN: RICHARD MARSHACK, CRO
870 ROOSEVELT
IRVINE, CA 92618

**RFN**
LUGANO DIAMONDS & JEWELRY
C/O TOBIAS S. KELLER - KELLER
BENEVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

**RFN**
LUGANO DIAMONDS & JEWELRY
C/O TRACI SHAFROTH - KELLER
BENEVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

**RFN**
LUGANO DIAMONDS & JEWELRY
C/O SCOTT FRIEDMAN - KELLER
BENEVENUTTI
101 MONTGOMERY STREET, SUITE
1950
SAN FRANCISCO, CA 94104

**RFN**
COMPASS GROUP DIVERSIFIED
C/O KAROL DENNISTON-SQUARE
PATTON
555 CALIFORNIA STREET, SUITE 550
SAN FRANCISCO, CA 94104

**RFN**
COMPASS GROUP DIVERSIFIED
C/O PETER MORRISON, ESQ.
100 KEY TOWER, 127 PUBLIC
SQUARE
CLEVELAND, OH 44114

**RFN**
COMPASS GROUP DIVERSIFIED
C/O S. LERNER & K. ARENDSEN
201 E. FOURTH ST., SUITE 1900
CINCINATI, OH 45202

**COURT MAILING - UST**
QUEENIE K. NG
411 WEST FOURTH STREET, SUITE
7160
SANTA ANA, CA 92701

**COURT MAILING**
EMPLOYMENT DEVELOPMENT
DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**COURT MAILING**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**COURT MAILING & POC**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

**COURT MAILING**
SECURITIES & EXCHANGE
COMMISSION
444 SOUTH FLOWER ST., SUITE 900
LOS ANGELES, CA 90071-2934

**COURT MAILING**
ANTON, DURAID
1 ELK GROVE LN
LAGUNA NIGUEL, CA 92677-1012

**COURT MAILING**
ARONOFF, BARRY
C/O LANCE N JURICH/LOEB & LOEB
LLP
10100 SANTA MONICA BLVD SUITE
2200
LOS ANGELES, CA 90067-4120

**COURT MAILING**
ARVIELO, RICK
C/O GABRIEL G GREEN -
BUCHALTER APC
1000 WILSHIRE BLVD SUITE 1500
LOS ANGELES, CA 90017-1730

AVINA LLC
C/O D. ENENSTEIN-ENENSTEN PHAM
3200 BRISTOL ST SUITE 500
COSTA MESA, CA 92626

**COURT MAILING**
BACLET, CHARLES
1600 S OCEAN BLVD APT 2101
POMPANO BEACH, FL 33062-7710

**COURT MAILING**
BELGIUM NEW YORK LLC C/O
PATRICK PAPALIA/ARCHER &
GREINER PC
1211 AVENUE OF THE AMERICAS
#2750
NEW YORK, NY 10036-8789

**COURT MAILING**
BENSON, JULIANNE
389 SOUTH LAKE DRIVE #4G
PALM BEACH, FL 33480-4540

**COURT MAILING**
BRANDES, ADRIENNE
919 GARDENIA WAY
CORONA DEL MAR, CA 92625-1547

**COURT MAILING**
BUCKSBAUM, GLENN
303 WHITEFISH HILLS LOOP
WHITEFISH, MT 59937-2256

**COURT MAILING**
CAMPF, ANNE AND DARREN
4428 IRISH HEIGHTS DRIVE
SUMMERSVILLE, WV 26651-1971

**PREFERRED ADDRESS**
CAVE, DERYK
1196 E COOPER AVENUE
ASPEN, CO 81611

**COURT MAILING**
CHAMPION FORCE
C/O LEIB M LERNER/ALSTON & BIRD
LLP
350 SOUTH GRAND AVE 51ST FLOOR
LOS ANGELES, CA 90071-3406

**COURT MAILING**
CHANNELS, CEDRIC
402 ESTHER ST
COSTA MESA, CA 92627-2323

CITIBANK, N.A.
1000 TECHNOLOGY DRIVE
O'FALLON, MO 63368-2240

**COURT MAILING**
COHEN, RAYMOND
C/O JONATHAN HERSEY/K&L GATES
1 PARK PLAZA TWELFTH FLOOR
IRVINE, CA 92614-5910

**COURT MAILING**
CONWAY, MARK
1221 W COAST HWY APT 114
NEWPORT BEACH, CA  92663-5051

**COURT MAILING**
COYNE, KAREN
KAREN BEDROSIAN PROPERTY
TRUST
2934  N BEVERLY GLEN CIRCLE #347
LOS ANGELES, CA 90077-1724

**COURT MAILING**
DACUS, DEBBIE
5444 CANDLEWOOD DRIVE
HOUSTON, TX 77056-1603

**COURT MAILING**
DIAMONDS & JEWELRY INC C/O A
KHAN
BROWN, NERI, SMITH & KHAN LLP
11601 WILSHIRE BLVD SUITE 2080
LOS ANGELES, CA 90025-0389

**COURT MAILING**
EMMES, DAVID
655 TOWN CENTER DRIVE
COSTA MESA, CA 92626-1918

**COURT MAILING**
FERDER, MORDECHAI AND EDIT
1501 SERENADE TER
CORONA DEL MAR, CA 92625-1753

**COURT MAILING**
FERRY, ANTHONY
20 PACIFICA STE 1000
IRVINE, CA 92618-7462

**COURT MAILING**
FLANDERS, SCOTT
1425 SANTA BARBARA DRIVE
NEWPORT BEACH, CA  92660-6373

**COURT MAILING**
FLANDERS, SCOTT
PO BOX 7859
AVON, CO  81620-7859

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**COURT MAILING**
FREEDMAN, JAMES
11755 WILSHIRE BLVD
LOS ANGELES, CA 90025-1501

**COURT MAILING**
GADOL, BRYAN C/O MICHELLE
SCHINDLER
FERGUSON SCHINDLER LAW FIRM
119 SOUTH SPRING STREET SUITE
201
ASPEN, CO 81611-2082

**PREFERRED ADDRESS**
HAZEN, CASSANDRA AND PAUL
PO BOX 7070
CARMEL, CA 93921

**COURT MAILING**
KELSEY, KACI
110 WESTMINSTER ROAD
WEST PALM BEACH, FL 33405-1649

**COURT MAILING**
LEE, ROBERT
BBD 2012 GIFT TRUST
72-2763 ULUWEUWEU AKSUM
PLACE
KAILUA KONA, HI 96740

**COURT MAILING**
LOCKSLEY, JOHN
185 WEST END AVENUE UNIT 9A
NEW YORK, NY 10023-5543

**COURT MAILING**
MCCALL, MARIANNE
188 LUDLOW STREET APT 21J
NEW YORK, NY 10002-1690

**COURT MAILING**
MOENS, LAWRENCE
2335 S OCEAN BLVD
PALM BEACH, FL 33480-5368

**COURT MAILING**
N.B.S. DIAMONDS C/O JOSEPH M.
KAR
LAW OFFICE OF JOSEPH M. KAR PC
15250 VENTURA BLVD SUITE PH-
1220
SHERMAN OAKS, CA 91403-3201

**COURT MAILING**
GADOL, BRYAN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
1900 AVENUE OF THE STARS 19TH
FLOOR
LOS ANGELES, CA 90067-4410

**COURT MAILING**
GADOL, BRYAN-C/O TODD C
THEODORA
THEODORA ORINGHER PC
535 ANTON BLVD NINTH FLOOR
COSTA MESA, CA 92626-7109

**COURT MAILING**
HOEVEN, DREW
3 CAPE ANDOVER
NEWPORT BEACH, CA 92660-8401

**COURT MAILING**
KLEIN, BILL
60 LINDA ISLE
NEWPORT BEACH, CA 92660-7207

**COURT MAILING**
LEVASQUE, MATT
5893 LAKEVIEW
YORBA LINDA, CA 92886-5367

**COURT MAILING**
LOOK-MAZZA, MONA
344 WEST REDS ROAD
ASPEN, CO 81611

**COURT MAILING**
MCHENRY, TROY
10917 EARTH HUES
LAS VEGAS, NV 89135-9132

**COURT MAILING**
MOLER, BILL
10342 MOHAWK ROAD
LEAWOOD, KS 66206-2587

**COURT MAILING**
OCONNELL, KEVIN
1714 STARLIGHT CIR
NEWPORT BEACH, CA 92660-4340

**COURT MAILING**
GADOL, BRYAN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
824 N MARKET STREET SUITE 805
WILMINGTON, DE 19801-4918

**COURT MAILING**
GOLDSTEIN, ALON
22287 MULHOLLAND HWY, UNIT 254
CALABASAS, CA 91302-5157

**COURT MAILING**
HOLZER, RUSTY - C/O B
CAPITUMMINO
WOODS OVIATT GILMAN LLP
1900 BAUSCH & LOMB PLACE
ROCHESTER, NY 14604-2714

**COURT MAILING**
KRAUS, KEN C/O JEFF AUGUSTINI
LAW OFFICE OF JEFF AUGUSTINI
100 BAYVIEW CIRCLE SUITE 210
NEWPORT BEACH, CA 92660-8901

**COURT MAILING /POC**
LI, PETER
19211 CROYDEN TER
IRVINE, CA 92603-3537

**COURT MAILING**
LUGANO BUYER, INC.
301 RIVERSIDE AVENUE, SECOND
FLOOR
WESTPORT, CT 06880-4806

**COURT MAILING**
MCMACKEN, RON
1660 SOUTH OCEAN BLVD
MANALAPAN, FL  33462-6210

**COURT MAILING**
N.B.S. DIAMONDS C/O GERALD L.
KROLL
KROLL LAW
970 W. BROADWAY, SUITE E-200
JACKSON, WY 83001-6402

**COURT MAILING**
PERL, DANIEL C/O OMAR J. YASSIN
YASSIN LAW APC
1010 E. UNION STREET SUITE 201
PASADENA, CA 91106-1756

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

**COURT MAILING**
PHILLIPS, ANDY
2900 BRISTOL STREET
COSTA MESA, CA 92626-5981

**COURT MAILING**
PRESUTTI, DANA
424 PARK CIRCLE
ASPEN, CO 81611-3400

RUBERTI, LISA
C/O GOGO & MOORE LLC
505 E HYMAN AVENUE
ASPEN, CO 81611

**COURT MAILING**
RODAN, AMMON
21 ORINDA WAY, SUITE C-381
ORINDA, CA 94563-2530

**COURT MAILING**
ROTHSTEIN, ADAM
17 COVLEE DRIVE
WESTPORT, CT 06880-6407

**COURT MAILING**
SHELLY, DAMON
9881 RESEARCH DRIVE
IRVINE, CA 92618-4304

**COURT MAILING**
SHERLOCK, TINA & RUSS
1416 W MAIN STREET
CARMEL, IN 46032

**COURT MAILING**
SHERWOOD, STEVE
54 GOLDEN EAGLE
IRVINE, CA 92603-0309

**COURT MAILING**
SIMON, RON
620 NEWPORT CENTER DRIVE
NEWPORT BEACH, CA 92660-6420

**COURT MAILING**
SIMON, SCOTT
641 ST JAMES ROAD
NEWPORT BEACH, CA 92663-5854

**COURT MAILING**
SIMON, VONDA & SCOTT
29230 PASEO CARMONA
SAN JUAN CAPISTRANO, CA 92675-3654

**COURT MAILING**
SMITH, MIKE
1585 ATTOKA ROAD
MARSHALL, VA 20115-3505

**COURT MAILING**
SONI, ASHISH
1908 N FREMONT STREET
CHICAGO, IL 60614-5017

**COURT MAILING**
STACK, JEFF
3501 JAMBOREE ROAD, SUITE 6000
NEWPORT BEACH, CA 92660-2960

**COURT MAILING**
STRAWBRIDGE, GEORGE
3801 KENNET PIKE
WILMINGTON, DE 19807-2300

**COURT MAILING**
SUMMERS, JIM
282 LOCHA DRIVE
JUPITER, FL 33458-7733

**PREFERRED ADDRESS**
SUTHERLAND, ANNE & GRANT
151 RANCH CREEK LANE
CARBONDALE, CO 91623

**COURT MAILING**
SYDNEY HOLDINGS LIMITED
C/O B. CAPITUMMINO - WOODS
OVIATT
1900 BAUSCH & LOMB PLACE
ROCHESTER, NY 14604-2714

**COURT MAILING**
SYDNEY HOLDINGS LIMITED C/O J
LEVIN
GLASER WEIL FINK HOWARD
JORDAN ET AL
10250 CONSTELLATION BLVD 19TH
FLOOR
LOS ANGELES, CA 90067-6219

**COURT MAILING**
TEDORI, FRED
48 RITZ COVE DRIVE
DANA POINT, CA 92629-4228

**COURT MAILING**
TESTA, DARREN C/O M. SCHINDLER
FERGUSON SCHINDLER LAW FIRM
119 SOUTH SPRING STREET SUITE
201
ASPEN, CO 81611-2082

**COURT MAILING**
TESTA, DARREN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
1900 AVENUE OF THE STARS 19TH
FLOOR
LOS ANGELES, CA 90067-4410

**COURT MAILING**
TESTA, DARREN C/O MARK ECKARD
RAINES FELDMAN LITTRELL LLP
824 N. MARKET STREET, SUITE 805
WILMINGTON, DE 19801-4918

**COURT MAILING**
TESTA, DARREN C/O TODD C
THEODORA & C. HARNEY
THEODORA ORINGHER PC
535 ANTON BLVD NINTH FLOOR
COSTA MESA, CA 92626-7109

**PREFERRED ADDRESS**
US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

WANG, ANGI
C/O GOGO & MOORE LLC
505 E HYMAN AVENUE
ASPEN, CO 81611

**COURT MAILING**
WAZANA, AVI C/O DARREN
ENENSTEIN
ENENSTEIN PHAM GLASS & RABBAT
8439 W SUNSET BLVD SUITE 300
LOS ANGELES, CA 90069-1925

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**COURT MAILING**
WINTERS, KRISTOPHER C/O S.
KATZMAN
BIENERT KATZMAN LITTRELL
WILLIAMS LLP
903 CALLE AMANECER STE 350
SAN CLEMENTE, CA 92673-6253

**COURT MAILING**
WOLFE, BILL
525 S FLAGLER DRIVE PH2 C/D
WEST PALM BEACH, FL 33401-5922

**NEF**
GEORGE GERRO
530 S. GLENOAKS BLVD, STE 200
BURBANK, CA 91502

**NEF**
WENDY LOCKE
ALDRIDGE PITE, LLP
3333 CAMINO DEL RIO SOUTH, STE.
225
SAN DIEGO, CA 92108

**NEF**
TIMOTHY J. SILVERMAN
SCHEER LAW GROUP, LLP
85 ARGONAUT, SUITE 202
ALISO VIEJO, CA 92656

**NEF**
MATTHEW D. PHAM
ALLEN MATKINS LECK GAMBLE
865 S. FIGUEROA STREET, SUITE 2800
LOS ANGELES, CA 90017-2543

**NEF**
DON FISHER
PALMIERI, TYLER, WIENER,
WILHELM
1900 MAIN STREET, SUITE 700
IRVINE, CA 92614

**NEF**
STACY H. RUBIN
HOWARD & HOWARD ATTORNEYS
9465 WILSHIRE BLVD SUITE 300
BEVERLY HILLS, CA 90212

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**