**SQUIRE PATTON BOGGS (US) LLP**

Karol K. Denniston, CA Bar #141667
555 California Street, Suite 550
San Francisco, CA 94104
Telephone: (415) 954-0200
Facsimile: (415) 393-9887
karol.denniston@squirepb.com

Scott A. Kane (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
scott.kane@squirepb.com

*Attorneys for: Compass Group Diversified Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re:<br>**SIMBA IL HOLDINGS, LLC.**<br><br><br><br><br><br>Debtor. | Case No.: 8:25-bk-12616-MH<br>Chapter: 11<br><br>**NOTICE OF CODI'S OPPOSITION AND REQUEST FOR A HEARING ON MOTION FOR ORDER APPROVING SETTLEMENT; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT THEREOF** |
|---|---|

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, DEBTOR'S COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

NOTICE IS HEREBY GIVEN that Compass Group Diversified Holdings LLC ("CODI") hereby opposes the motion [Dkt. No. 98] (the "Motion") of Simba IL Holdings LLC (the "Debtor") to approve a settlement with certain creditors and third parties (the "Settlement"). CODI also requests a hearing pursuant to Local Bankruptcy Rule 9013-1(o)(4) with respect to the Motion. As discussed in the Opposition, CODI opposes the Motion and proposed Settlement on the grounds that the settlement is premature, is neither fair and equitable for creditors nor in the best interests

of the estate under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and is an impermissible *sub rosa* plan.

The Opposition is based upon Bankruptcy Rule 9019, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, pleadings filed in this case, and such other evidence or argument as may be presented at any hearing on the Motion.

Attached hereto are the following documents in support of this opposition, which are admissible under the Federal Rules of Evidence:

- Memorandum of Points and Authorities
- Exhibit A: Complaint filed in the case *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, Case No. 30-2025-01492210-CU-CO-CJC (Sup. C. Cal. June 24, 2025).
- Exhibit B: Form 8-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC dated May 7, 2025.
- Exhibit C: Form 8-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC dated June 25, 2025.
- Exhibit D: Compass Diversified Holdings Announcement (November 3, 2025).

Total number of attached pages of supporting documentation: 32

Any reply to this opposition must be filed with the court and served on this opposing party not later than 7 days prior to the hearing on the motion.

WHEREFORE, the undersigned prays that this court deny the subject request and set this matter for a hearing.

Date: November 4, 2025

                        Respectfully Submitted,

                        **SQUIRE PATTON BOGGS LLP**

                        */s/ Karol Denniston*
                        Karol Denniston
                        Scott Kane (admitted *pro hac vice*)

                        *Attorney for Compass Group Diversified Holdings LLC*

# TABLE OF CONTENTS

I. Preliminary Statement .................................................................................................... 5

II. Statement of Facts ......................................................................................................... 7

   A. Case Commencement and Background. ................................................................... 7

   B. Lugano's Pending Fraud Suit Against Mr. Ferder. .................................................... 8

   C. Prepetition Actions and Attachments by Prejudgment Lienholders Against the Debtor. 9

   D. CODI's Claims Against Simba. ................................................................................. 9

III. Argument ..................................................................................................................... 10

   A. The Settlement Should Not Be Approved Pursuant to Bankruptcy Rule 9019. ........ 10

      1. Probability of the Debtors' Success Against the Prejudgment Lienholders May Be High if Mr. Ferder Committed Fraud Upon Execution of the Prejudgment Lienholders' Contracts. ........................................................................................................................ 12

      2. Difficulties of Collection is Inapplicable. ............................................................... 13

      3. Complexity, Expense, Inconvenience, and Delay in Adjudicating the Disputes is Proper and Justified. ........................................................................................................ 13

      4. The Paramount Interests of the Creditors is for the Court to Deny the Motion. ..... 14

   B. The Settlement is an Impermissible *Sub Rosa* Plan. .............................................. 15

   C. The Settlement's Third-Party Releases are Impermissible. ..................................... 16

   D. Before Approving Any Material Settlement, a Committee Should First Have the Opportunity to Review. .................................................................................................... 17

IV. Conclusion ................................................................................................................... 17

SQUIRE PATTON BOGGS (US) LLP
555 California Street, Suite 550
San Francisco, California 94104

# TABLE OF AUTHORITIES

**Cases**

*Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289 (9th Cir. 1996) .................................. 7

*Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020).............................................................. 16

*Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ........................................................... 16

*Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) ............................................................................ 7

*In re A & C Props.*, 784 F.2d 1377 (9th Cir. 1986) ................................................................ 11, 12

*In re AB Liquidation Corp.*, 2006 WL 6810956 (9th Cir. BAP Dec. 22, 2006).......................... 16

*In re Big Mac Marine*, 326 B.R. 150 (B.A.P. 8th Cir. 2005) ...................................................... 11

*In re DBSD North America, Inc.*, 634 F.3d 79 (2d. Cir. 2011)..................................................... 14

*In re Douglas J. Roger, M.D., Inc.*, APC, 393 F.Supp.3d 940 (C.D. Cal. 2019) ........................ 10

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. N.Y. 1983)................................................................ 15

*In re McClure*, 2015 WL 1607365 (Bankr. C.D. Cal. Apr. 2, 2015)..................................... 15, 16

*In re Michael*, 183 B.R. 230 (Bankr. D. Mont. 1995) .................................................................. 11

*In re Planned Protective Services, Inc.*, 130 B.R. 94 (Bankr. C.D. Cal. 1991)........................... 11

*In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990) .......................................................... 11

*Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983)............................................................................................................... 15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741 (9th Cir. 2006) ..................................... 7

*Smith v. Charter Comms., Inc.*, 2010 WL 11519549 (C.D. Cal. Apr. 29, 2010).......................... 16

*Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986)..................... 13

*YayYo, Inc. v. Hurst Capital, LLLC*, 2017 WL 10574249 (C.D. Cal. July 7, 2017) .................... 13

**Statutes**

11 U.S.C. § 1129(a) ...................................................................................................................... 15

**Rules**

Fed. R. Bankr. P. 9019.................................................................................................................. 10

SQUIRE PATTON BOGGS (US) LLP
555 California Street, Suite 550
San Francisco, California 94104

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Preliminary Statement**

The Debtor's bankruptcy case has been pending for only approximately six weeks. Important preliminary issues remain unresolved, including the proposed retention of professionals for the Debtor and whether the Office of the United States Trustee will appoint an official committee of unsecured creditors.

The Motion implicates significant and credible allegations of fraudulent conduct by third parties, including Mordechai Ferder ("Mr. Ferder"), Edit Ferder ("Ms. Ferder"), and the Haim Family Trust (the "Trust," collectively with Mr. Ferder and Ms. Ferder, the "Non-Debtor Ferder Parties"). As discussed below, they include allegations of fraud against Mr. Ferder during the period he was managing director of the Debtor with respect to the very types of agreements at issue in the litigation the Motion and Settlement seek to compromise. The Motion fails to mention, much less substantively address, any of these issues. It contains a bare bones statement that the Debtor believes it has defenses and counterclaims to the actions and that certain of the claimed liens may be avoidable but omits any discussion of these issues or how they bear on the proposed Settlement by the Debtor. *See* Motion at p. 6.

In exchange for the Debtor agreeing to provide millions of dollars of allowed secured claims and other material concessions, the proposed Settlement provides wide-ranging releases and benefits to the Non-Debtor Ferder Parties and other non-debtor third parties. One subset of releases is for creditors of the Debtor, Bryan Gadol ("Gadol"), Darren Testa ("Testa," together with Gadol, the "Gadol Creditors"), and Kristoffer Winters ("Winters," collectively, with the Gadol Creditors, the "Prejudgment Lienholders"), to release the Non-Debtor Ferder Parties from any and all liabilities. *See* Settlement at ¶ 18. The Settlement also provides for the release of liens

against two irrevocable trust accounts for Mr. Ferder's children (TF 2021 Irrevocable Trust and RF 2021 Irrevocable Trust, together, the "<u>Irrevocable Trusts</u>"). *See id.* at ¶ 9. Quixotically, the proposed Settlement also purports to release certain claims against one of the Prejudgment Lienholders and a non-party law firm related in any way to legal advice or legal representation of non-party Lugano Diamonds and Jewelry, Inc. ("<u>Lugano</u>"). *See id.* at ¶ 16. The Motion contains no discussion whatsoever of this issue (or the Irrevocable Trusts). While it is doubtful that the purported release would be binding on non-party Lugano, the presence of this extraneous, unexplained provision (pertaining to allegedly fraudulent agreements during a period where Mr. Ferder was CEO of Lugano) is emblematic of the deficient record and premature nature of the Motion and proposed Settlement.

In addition to non-debtor third-party releases and similar benefits, the proposed Settlement encompasses issues that go far beyond any settlement of litigation and that represent a *sub rosa* plan. For example, the Settlement establishes a process for the Debtor to liquidate substantially all of the Debtor's assets and subsequently distribute proceeds to certain secured creditors (the Gadol Creditors), a carve out for administrative expenses (*e.g.*, the Debtor's proposed professionals), and unsecured creditors (*i.e.*, Winters via gifting from the Gadol Creditors), all of which short circuits the requirements of Chapter 11 for confirmation of a reorganization plan. *See id.* at ¶ 6-8. In this respect, the Motion and proposed Settlement would circumvent the plan confirmation process and absolute priority rule at the very outset of this bankruptcy case for the benefit of the Non-Debtor Ferder Parties and select creditors.

Benefits to select non-debtors via releases, allowed claims, and/or non-plan distributions are not proper grounds for a court to approve a debtor's compromise under Bankruptcy Rule 9019(a). And nothing in the Motion suggests that the Settlement is in the best interest of the estate

or is fair and equitable to creditors. All the Motion contends is that, if not for the Settlement, the Debtor would be required to investigate and potentially challenge the claims and asserted liens of the Prejudgment Lienholders. That is exactly what should happen, especially given the significant allegations of fraudulent conduct related to the subject matter of the Settlement. All of these issues should be explored in depth, including with the input of any creditor's committee that may be appointed, rather than resolved in the context of an unnecessarily rushed Bankruptcy Rule 9019 motion.[1]

## II.   Statement of Facts

### A.   Case Commencement and Background.

On September 15, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's primary assets are alleged to be an indirect 40% stake in Lugano, a portfolio of investment accounts, a valuable home in Aspen, Colorado, and possibly the Irrevocable Trusts or the assets therein. *See* Settlement ¶ 6. Until his resignation in May of 2025, Mr. Ferder served as CEO of Lugano. *See* Exhibit A - Complaint, *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, Case No. 30-2025-01492210-CU-CO-CJC, Docket No. 1, ¶ 31 (Sup. C. Cal. June 24, 2025) (the "Lugano Complaint").[2]  CODI owns the remaining 60% equity interest in Lugano.

---

[1] Before filing this objection, CODI sought the Debtor's agreement to postpone the hearing on the Motion in order to facilitate discussion of these issues. Counsel for the Debtor declined, citing the desire of the Chief Restructuring Officer of the Debtor to proceed with a hearing on November 18, 2025.

[2] CODI requests that the Court take judicial notice of exhibits that are filings in other cases pursuant to Federal Rule of Evidence 201(b), (d). *See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record"); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of court records in prior, related state court proceeding); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 (9th Cir. 1996) (noting the district court was allowed to take judicial notice of facts drawn from "prior court orders and judgments").

SQUIRE PATTON BOGGS (US) LLP
555 California Street, Suite 550
San Francisco, California 94104

In a Form 8-K filed with the SEC on May 7, 2025, CODI disclosed that its previously issued financial statement related to the fiscal year ending December 31, 2024 required restatement and should no longer be relied upon. *See* Exhibit B - Form 8-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC dated May 7, 2025. Then on June 25, 2025, in a Form 8-K filed with the SEC, CODI disclosed that its previously issued financial statements related to the fiscal years ended December 31, 2022 and 2023 also required restatement and should no longer be relied upon. *See* Exhibit C - Form 8-K of Compass Diversified Holdings and Compass Group Diversified Holdings LLC dated June 25, 2025. Specifically, the accounting errors at Lugano were determined, during an internal investigation, to be a direct result of misconduct by Mr. Ferder, described in greater detail in Section II(B), below. As of November 3, 2025, "CODI continues to make progress toward completing the investigation into financial and accounting irregularities at its Lugano Holding Inc. subsidiary ("Lugano"), and the related restatement of its historical financial statements." *See* Exhibit D – Announcement of Compass Diversified Holdings dated November 3, 2025.

Prior to the Petition Date, Mr. Ferder was a managing member of the Debtor. *See* Dkt. No. 73 at 2. Prior to or on the Petition Date, Mr. Ferder allegedly transferred authority to manage the Debtor's operations and to conduct a liquidation of its assets to Richard Marshack of Marshak, Hays, Wood LLP, as the Debtor's Chief Restructuring Officer. *Id.*

**B.     Lugano's Pending Fraud Suit Against Mr. Ferder.**

On June 24, 2025, within one month of Mr. Ferder's resignation as CEO, Lugano sued Mr. Ferder individually and in his capacity as trustee of the Haim Family Trust. Lugano alleges that Mr. Ferder engaged in fraudulent schemes that exposed Lugano to over $100 million in potential liabilities and reputational harm. *Id*. at ¶ 2. The Lugano Complaint details Mr. Ferder's

fraudulent actions, including: (1) concealing and misrepresenting the nature of numerous financing transactions he entered into with third-party, high net worth individuals by creating potential liabilities for Lugano and disguising them as direct sales, (2) forging invoices and sale documents, (3) sending empty box shipments to mimic legitimate product deliveries, (4) falsely recording the money from the third-party individuals as revenue for Lugano, and (5) concealing the repayment obligations from Lugano's books. *Id.* at ¶ 2. An investigation into Lugano's accounts and the extent of Mr. Ferder's scheme is ongoing. *Id.* at ¶ 31.

### C. Prepetition Actions and Attachments by Prejudgment Lienholders Against the Debtor.

As further described in the Motion, the Debtor is a party in eight prepetition actions with one or more of the Prejudgment Lienholders arising from Mr. Ferder's purported diamond loan/sale transaction with the Prejudgment Lienholders and Lugano's subsequent default of the payment terms set forth therein. *See* Motion at p. 3-4. Prior to the Petition Date, the Prejudgment Lienholders obtained fourteen attachment orders purportedly granting them liens against the Debtor's assets and two separate default judgments. *See id.* at p. 4-6

### D. CODI's Claims Against Simba.

CODI has material claims against the Debtor, including claims arising from that certain Stock Purchase Agreement dated September 3, 2021 (the "SPA"). As shall be set forth in further detail in CODI's proof of claim against the Debtor, under the SPA CODI and its affiliates have indemnification claims against the Debtor for losses in amounts not yet determinable. CODI is expressly listed as a third-party beneficiary under the SPA and is entitled to directly enforce their indemnification rights arising from prepetition fraudulent activity.

### III. **Argument**

There is no purported emergency or legitimate justification for the Court to grant an overly broad, Bankruptcy Code-violating settlement without the Debtor first conducting a fulsome investigation into the Non-Debtor Ferder Parties' fraudulent activity. This is particularly true in light of the Debtor's statement that it believes that "certain of the liens [asserted by the Prejudgment Lienholders] may be avoidable under applicable law." *See* Motion at p. 6. In addition to requiring the Debtor to conduct a proper investigation into Mr. Ferder's prepetition activities, including those involving the Prejudgment Lienholders, there are at least four independent reasons why the Court should deny the Debtors' Motion. First, the Settlement does not satisfy Bankruptcy Rule 9019 because it is neither in the best interest of the estate nor fair and equitable to creditors. Second, the Settlement is an impermissible *sub rosa* plan that violates the Bankruptcy Code by seeking to liquidate the Debtor's assets, distribute the proceeds to certain secured and unsecured creditors, and release certain parties in interest and non-debtor third parties. Third, the Settlement includes improper third-party releases. Fourth, the Court should at the very least continue the hearing on the Motion until it is determined whether an official committee of unsecured creditors will be appointed. For these reasons, and as further discussed below, the Court should deny the Motion as presented.

#### A. **The Settlement Should Not Be Approved Pursuant to Bankruptcy Rule 9019.**

Pursuant to Bankruptcy Rule 9109(a), "[a] bankruptcy court may approve a compromise or settlement between the trustee and a creditor to the bankruptcy estate." *See In re Douglas J. Roger, M.D., Inc.*, APC, 393 F.Supp.3d 940, 961 (C.D. Cal. 2019); *see also* Fed. R. Bankr. P. 9019(a). In reviewing such motions, settlements should be approved if they are "fair and equitable for creditors" and in the "best interests of the estate." *See In re A & C Props.*, 784 F.2d 1377, 1381

(9th Cir. 1986); *see also In re Schmitt*, 215 B.R. 417, 424 (9th Cir. BAP 1997) ("In approving a compromise, a court is to determine whether it is in the best interests of the estate and whether it is fair and equitable for the creditors."); *In re MGS Marketing*, 111 B.R. 264, 267 (9th Cir. BAP 1990) ("Although the bankruptcy court has 'great latitude' in authorizing a compromise, it may only approve a proposal that is 'fair and equitable'" to the creditors) (quoting *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988)).

"Approval of a compromise under Bankruptcy Rule 9019 requires more than just a 'rubber-stamping' of an agreement which has been arrived at by good faith negotiations." *See In re Planned Protective Services, Inc.*, 130 B.R. 94, 96 (Bankr. C.D. Cal. 1991). In the Ninth Circuit, courts apply the following four-factor analysis in their determination of the "fairness, reasonableness and adequacy" of the proposed settlement: "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *See In re A & C Props.*, 784 F.2d at 1381; *see also In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995) (denying trustee's motion to approve settlement because "the terms of the settlement are not fair and equitable for the creditors as required for approval of settlements under F.R.B.P. 9019(a)" after applying the four-factor *A & C Props.* analysis). These factors "should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *In re W. Funding, Inc.*, 550 B.R. 841, 851 (9th Cir. BAP 2016).

The proponent of the compromise has the burden of persuading the court that the proposed compromise meets the fair and equitable test. *See In re A & C Props.*, 784 F.2d at 1381. The

Debtor has failed to meet its burden here. The Motion fails to demonstrate that the Settlement is "fair and equitable for creditors" and in the "best interests of the estate." *Id.* at 1381.

### 1. Probability of the Debtors' Success Against the Prejudgment Lienholders May Be High if Mr. Ferder Committed Fraud Upon Execution of the Prejudgment Lienholders' Contracts.

The Motion contains no meaningful discussion of the Debtor's probability of success. Instead, it merely summarizes in superficial fashion the nature of the dispute between (i) the Prejudgment Lienholders, (ii) the Debtor, and (iii) the Non-Debtor Ferder Parties: the Prejudgment Lienholders have asserted liens against the Debtor's assets arising from Lugano, at the direction of Mr. Ferder, breaching the repayment terms of "a loan by the Prejudgment Lienholders to Lugano for the purpose of diamonds for the creation of custom jewelry," and the Debtor was a guarantor of Lugano's performance of its obligations. *See* Motion at p. 1-6. The Prejudgment Lienholders have alleged claims against the Debtor as a guarantor under the purported loan diamond purchase scheme.

As the Court is aware, Mr. Ferder is the defendant in the Lugano Complaint, in which Mr. Ferder is alleged to have engaged in fraudulent schemes for his personal benefit at the detriment of Lugano and third parties (*e.g.*, the Prejudgment Lienholders, the Debtor) who were targeted by Mr. Ferder for certain "financial transactions" with high net worth individuals. *See* Lugano Complaint at p. 2. These allegations bear directly on the subject matter of the proposed Settlement. Fraudulent transactions entered into by Mr. Ferder with the Prejudgment Lienholders for his own benefit may be subject to avoidance under the Bankruptcy Code and applicable law. Fraud by Mr. Ferder in causing the Debtor to enter into these agreements likely provides further grounds to void the claimed obligations . *See, e.g.*, *Southern Cal. Counseling Center v. Great Am. Insurance Co.*, 162 F.Supp.3d 1045, 1052 (C.D. Cal. 2014) ("Fraud in the inducement arises when

a party is "induce[d] . . . to assent to something he otherwise would not have," which makes a transaction voidable) (internal citation omitted); *see also YayYo, Inc. v. Hurst Capital, LLLC*, 2017 WL 10574249, at *1 (C.D. Cal. July 7, 2017) (fraud in the inducement is grounds for a contract to be void); *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986) ("fraud in the inducement make the transaction merely voidable" and occurs when "[t]he former induces a party to assent to something he otherwise would not have").

Although the Motion discusses how the non-bankruptcy court litigation might be cumbersome, the Motion is silent with respect to the Debtor's ability to avoid the prepetition agreement with the Prejudgment Lienholders, disallow the Prejudgment Lienholders' claims against the estate, or otherwise consolidate the Prejudgment Lienholders' claims against the Debtor in a single adversary proceeding. *See* Motion at p. 9-11. At bottom, the Motion does not demonstrate that the Debtor appropriately considered the Non-Debtor Ferder Parties' fraudulent conduct or the Debtor's likelihood of prevailing on the claims that are the subject of the Settlement.

### 2. Difficulties of Collection is Inapplicable.

This factor is inapplicable for this dispute, as the Debtor would not be seeking to collect from the Prejudgment Lienholders.

### 3. Complexity, Expense, Inconvenience, and Delay in Adjudicating the Disputes is Proper and Justified.

As discussed above, more time is necessary for the Debtor to investigate the multi-year fraudulent schemes conducted by the Non-Debtor Ferder Parties. Indeed, as of the filing of this opposition, the Debtor's case was filed only 49 calendar days ago. It is unclear what level of diligence the Debtor performed, or was able to perform, in such a short timeframe, before executing the Settlement. The Motion is silent on this subject. Indeed, it is troubling to see that the Settlement includes a "Due Diligence Period" in which the Prejudgment Lienholders may

terminate the Settlement prior to approval by the Court. *See* Settlement at ¶ 10. Given that this case is in its infancy, and the Prejudgment Lienholders' own acknowledgment that more time is necessary to analyze the Settlement, it is reasonable for the Debtor to investigate the Non-Debtor Ferder Parties' fraudulent activities, how such activities have impacted the estate, and how the Debtor (independent of the Non-Debtor Ferder Parties' and Irrevocable Trusts' interests) may resolve the Prejudgment Lienholders' guaranty claims.

### 4. The Paramount Interests of the Creditors is for the Court to Deny the Motion.

The only parties who benefit from the Settlement are the Non-Debtor Ferder Parties, the Irrevocable Trusts, and the Prejudgment Lienholders. Frankly, it is unclear why the Non-Debtor Ferder Parties are included in the Settlement. The conduct of the Non-Debtor Ferder Parties, through Lugano, is the cause of the Debtor's alleged liabilities to the Prejudgment Lienholders. Under the proposed terms of the Settlement, the Non-Debtor Ferder Parties provide no consideration to the Prejudgment Lienholders other than a release, yet the Non-Debtor Ferder Parties and Irrevocable Trusts obtain a release based on the Debtor's allowance of millions of dollars of claims. *See* Settlement ¶¶ 9, 17. This settlement structure should not be approved without significant additional inquiry.

Moreover, the Settlement only benefits certain creditors. For example, the Settlement violates the absolute priority rule (*i.e.*, impaired class must be paid in full before any claim or interest junior gets any distribution) by having the Gadol Creditors gift a portion of their claim distribution to unsecured creditor Winters without all other unsecured creditors receiving the same recovery. *See, e.g.*, *In re DBSD North America, Inc.*, 634 F.3d 79, 97-101 (2d. Cir. 2011) (overruling approval of plan of reorganization that included a senior secured creditor gifting a portion of its distribution to a junior creditor); *see also* Settlement at ¶¶ 8(c)-8(e); 11 U.S.C. §

1129(a). Other than the interest of the three Prejudgment Lienholder creditors, the Settlement is not in the paramount interest of the estate's creditors.

Accordingly, the Court should deny the Motion because the Settlement does not satisfy any of the four factors under *A & C Props.*

### B.    The Settlement is an Impermissible *Sub Rosa* Plan.

A *sub rosa* plan objection arises in situations where a debtor proposes to sell a substantial portion of the estate's assets " either because: (i) the sale of substantially all of the debtor's assets in and of itself may be considered a *sub rosa* plan, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. N.Y. 1983), or (ii) the proposed transaction has the effect of dictating the terms of a plan and thereby will 'short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan.' *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983)." *See In re McClure*, 2015 WL 1607365, at *8 (Bankr. C.D. Cal. Apr. 2, 2015).

Here, the Motion raises the second of these issues because the Settlement will dictate the terms of a plan and "short circuit" the Bankruptcy Code plan confirmation process. Specifically, the Settlement proposes to (i) allow material creditor claims, (ii) liquidate the Debtor's assets, and (iii) earmark sale proceeds for two secured claimants and one unsecured claimant, with a carve out for the Chief Restructuring Officer for administrative expenses, without the Debtor filing, and receiving Court approval of, a disclosure statement, solicitation procedures order, plan of liquidation, or confirmation order. *See* Settlement at ¶¶ 3-8. Indeed, the Settlement even establishes percentage recoveries for the unpaid portion of the Prejudgment Lienholders' allowed unsecured claims to the extent other holders of general unsecured claims are paid at least 55% of their claims by the Debtors. *See id.* at ¶¶ 7-8.

As recognized by the Bankruptcy Court for the Central District of California, an order that seeks to "dictate the distributions to be made" on account of certain creditors' liens and claims and bind creditors to a particular distribution scheme is a classic example of an impermissible *sub rosa* plan. *See In re McClure*, 2015 WL 1607365, at *8; *see also In re AB Liquidation Corp.*, 2006 WL 6810956, at *8 (9th Cir. BAP Dec. 22, 2006) (plan proceeds to be distributed in accordance with the confirmed plan). Accordingly, notwithstanding that the Debtors cannot satisfy their burden under Bankruptcy Rule 9019, the Court should deny the Motion because it constitutes a *sub rosa* plan.

### C. The Settlement's Third-Party Releases are Impermissible.

A "third-party release" is a provision, traditionally in a debtor's plan of liquidation/reorganization, that releases a non-debtor third party from liabilities that a debtor's creditors could assert against the non-debtor third party. *See, e.g.*, *Smith v. Charter Comms., Inc.*, 2010 WL 11519549, at *1 (C.D. Cal. Apr. 29, 2010) (generally discussing a third-party release in a debtor's plan of reorganization). As discussed above, the Settlement includes a "third-party release" for the Non-Debtor Ferder Parties (and Irrevocable Trusts). Specifically, the three Prejudgment Lienholders (*i.e.*, the Debtor's creditors) have agreed to release the Irrevocable Trusts and Non-Debtor Ferder Parties (*i.e.*, non-debtor third-parties). *See* Settlement at ¶¶ 9, 17.[3]

As this Court is aware, such third-party releases should be granted sparingly and are only granted in certain circumstances in a chapter 11 plan. *See, e.g.*, *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 215 (2024) (plan releases are "usually reserved for debtors," not third-party non-debtors); *see also Blixseth v. Credit Suisse*, 961 F.3d 1074, 1081-85 (9th Cir. 2020) (third party releases may, in narrow, limited circumstances, be imposed in a plan). The Motion should

---

[3] Moreover, under the Settlement the Non-Debtor Ferder Parties are releasing a Prejudgment Lienholder and a non-party law firm – the Motion is silent as to why this is a component of the Settlement. *See* Settlement at ¶ 16.

be denied because it includes impermissible third-party releases for the benefit of the Irrevocable Trusts and the Non-Debtor Ferder Parties that are not included as a part of a solicited plan of liquidation.

### D. Before Approving Any Material Settlement, a Committee Should First Have the Opportunity to Review.

Given the significant, case-determinative steps proposed in the Settlement, before the Court considers the merits of the Motion, it may be in the best interest of all parties of interest for counsel for an official committee for unsecured creditors (if one is appointed) to review the Motion and Settlement before the Debtor seeks approval from the Court. Indeed, courts almost unanimously require a creditors' committee to be appointed (if one is appointed) before certain first-day pleadings, *e.g.*, postpetition financing and wages and benefits, are approved on a final basis. The Motion is the most significant relief requested by the Debtor in this case to date, thus warranting an opportunity for counsel for the creditors' committee to first review the pleading. Therefore, if the Court does not deny the Motion, which it should, the Court should at least continue the hearing on the Motion until it is determined whether a creditors' committee will be appointed in this case.

### IV. Conclusion

For the reasons set forth above, the Motion fails to demonstrate that the Settlement satisfies Bankruptcy Rule 9019 and should therefore be denied.

WHEREFORE, CODI respectfully requests that the Court enter an order denying the Motion and granting such other and further relief as this Court deems just and appropriate.

Date: November 4, 2025

                Respectfully Submitted,

                **SQUIRE PATTON BOGGS LLP**

                */s/ Karol Denniston*
                Karol Denniston
                Scott Kane (admitted *pro hac vice*)

                *Attorney for Compass Group Diversified Holdings LLC*

SQUIRE PATTON BOGGS (US) LLP
555 California Street, Suite 550
San Francisco, California 94104