Leonard M. Shulman – Bar No. 126349
James C. Bastian, Jr. – Bar No. 175415
Alan J. Friedman – Bar No.  132580
Max Casal – Bar No. 342716
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:  (949) 340-3400
Facsimile:   (949) 340-3000
Email:          lshulman@shulmanbastian.com
                    jbastian@shulmanbastian.com
                    afriedman@shulmanbastian.com
                    mcasal@shulmanbastian.com

General Counsel for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Case No. 8:25-bk-12616-MH |
|---|---|
| **SIMBA IL HOLDINGS, LLC., a Delaware limited liability company,**<br><br>                                   Debtor. | Chapter 11<br><br>**DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN OF LIQUIDATION** |

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................1

II.    DEFINED TERMS .................................................................1

     A.     Defined Terms ............................................................1

III.   THE PLAN ...........................................................................4

     A.     Summary of the Plan ..................................................4

     B.     Treatment of Claims Under the Plan ........................5

         1.      Administrative Claims .......................................5

         2.      Priority Tax Claims ...........................................6

         3.      Class 1 - Secured Claims ..................................6

         4.      Class 2 – Priority Non-Tax Claims ..................8

         5.      Class 3 – General Unsecured Claims ...............8

         6.      Class 4 – Equity Interests ................................8

IV.   BACKGROUND ....................................................................9

     A.     The Case .......................................................................9

     B.     The Debtor's Assets ...................................................9

         1.      The Real Property ..............................................9

         2.      The Alternative Investments ...........................10

         3.      Lugano Stock ...................................................10

         4.      Causes of Action .............................................11

     C.     Claims ........................................................................11

         1.      Filed Claims ....................................................11

         2.      Existing Actions and Prejudgment Liens ......11

V.     THE TRUST ..........................................................................13

     A.     Purpose of the Trust .................................................13

     B.     Execution of the Trust Agreement ..........................13

     C.     Creation and Governance of the Trust ....................13

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| | | | | |
|---|---|---|---|---|
| | D. | The Trust Agreement | ................................................................ | 14 |
| | E. | Trust Expenses | ................................................................ | 15 |
| | F. | Limitation of Liability | ................................................................ | 15 |
| VI. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | ................................ | 16 |
| | A. | Voting and Objections to Confirmation | ................................................. | 16 |
| | | 1. | Who May Vote | ................................................................ | 16 |
| | | 2. | Effect of Vote | ................................................................ | 17 |
| | | 3. | Voting Deadline | ................................................................ | 18 |
| | | 4. | Deadline for Objecting to Confirmation of the Plan | ................... | 18 |
| | | 5. | Risk Factors to Be Considered Prior to Voting | ......................... | 18 |
| | | | a. | The Plan May Not Be Accepted or Confirmed | ............... | 18 |
| | | | b. | Uncertain Values of Real Estate and Alternative Investments | ......... | 19 |
| | | | c. | Tax Implications | ................................................... | 20 |
| | B. | Liquidation Analysis and Best Interest of Creditors | ............................... | 20 |
| | C. | Feasibility | ................................................................ | 21 |
| | D. | The Plan is Proposed in Good Faith | ................................................ | 22 |

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## I.    INTRODUCTION

The Debtor hereby submits this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code. This Disclosure Statement accompanies the Plan and is intended to provide holders of Claims entitled to vote on the Plan with "adequate information" as defined in section 1125(a) of the Bankruptcy Code to make an informed decision whether to accept or reject the Plan.

This Disclosure Statement summarizes the Plan and certain relevant information but is not a substitute for review of the Plan itself. Creditors are encouraged to read the Plan in its entirety.

## II.    DEFINED TERMS

### A.    Defined Terms

1.    **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate pursuant to sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including Professional Fees and UST quarterly fees.

2.    **"Allowed"** means, with respect to a Claim, a Claim that (i) is listed in the Schedules and not scheduled as disputed, contingent, or unliquidated; (ii) has been Allowed by Final Order; (iii) is not the subject of a pending objection; or (iv) is expressly Allowed under the Plan.

3.    **"Alternative Investments"** means the investment accounts held by the Debtor.

4.    **"Assets"** means all property of the Estate within the meaning of section 541 of the Bankruptcy Code, including the Real Property and all Causes of Action and proceeds thereof.

5.    "**Ballot**" means the form of ballot approved by the Bankruptcy Court for use by holders of Claims entitled to vote on the Plan for the purpose of accepting or rejecting the Plan.

6.    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

7.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Santa Ana Division, or such other court having jurisdiction over the Case.

8.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

9.    **"Case"** means Case No. 8:25-bk-12616-MH, commenced on the Petition Date.

10.    **"Causes of Action"** means any and all claims, causes of action, rights, remedies, suits, proceedings, claims for relief, defenses, counterclaims, crossclaims, offsets, recoupments, rights of

recovery, and claims of every kind and character belonging to the Debtor or the Estate, including claims relating to the Guarantees and any claims filed in the Lugano bankruptcy cases.

11.    **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code.

12.    **"CRO"** means Richard Marshack, in his capacity as Chief Restructuring Officer of the Debtor.

13.    **"Debtor"** means Simba IL Holdings, LLC.

14.    **"Disclosure Statement"** means this Disclosure Statement filed pursuant to section 1125 of the Bankruptcy Code.

15.    **"Distribution"** means any payment or transfer made under the Plan from Trust Assets.

16.    **"Effective Date"** means the date on which all conditions precedent to effectiveness of the Plan have been satisfied or waived.

17.    **"Estate"** means the estate created upon the commencement of the Case pursuant to section 541 of the Bankruptcy Code.

18.    **"Equity Interest"** means any equity security or ownership interest in the Debtor.

19.    **"Existing Actions"** means the actions commenced by the Prejudgment Lienholders against the Debtor and related parties as described in this Disclosure Statement.

20.    **"Guarantees"** means the guarantees provided by the Debtor relating to Lugano's obligations under certain agreements concerning the purchase of diamonds and creation of custom jewelry.

21.    **"Lugano"** means Lugano Diamonds & Jewelry Inc.

22.    **"Lugano Stock"** means the Debtor's approximate 35% ownership interest in the entity that owns Lugano.

23.    **"Petition Date"** means September 16, 2025.

24.    **"Plan"** means the Chapter 11 Plan of Liquidation filed by the Debtor, as amended or modified.

25.    **"Prejudgment Lienholders"** means Brian Gadol, Darren Testa, and Kristoffer Winters.

26. **"Priority Non-Tax Claim"** means a Claim entitled to priority under sections 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

27. **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

28. **"Professional"** means any person retained pursuant to section 327 of the Bankruptcy Code in the Case.

29. **"Professional Fees"** means compensation and reimbursement of expenses payable to Professionals under sections 327, 328, 330, or 331 of the Bankruptcy Code.

30. **"Real Property"** means the real property located at 1220 Red Butte Dr, Aspen, Colorado 81611.

31. **"Secured Claim"** means a Claim secured by a valid lien to the extent of the value of the collateral securing such Claim.

32. **"Trust"** means the liquidating trust established pursuant to the Plan.

33. **"Trust Assets"** means all Assets transferred to the Trust on the Effective Date.

34. "**Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Trustee in connection with carrying out the duties of the Trust, including the maintenance or disposition of the Trust Assets (including Trustee fees, indemnity reserves, attorneys' fees, the fees of other professionals, and other Entities retained by the Trust, personnel-related expenses, and any taxes imposed on the Trust or in respect of the Trust Assets), and any other expenses incurred in accordance with the Trust Agreement.

35. **"Trustee"** means the person appointed pursuant to the Plan and Confirmation Order to administer the Trust, in this case, Richard Marshack.

36. **"UST"** means the United States Trustee for Region 16.

III.    **THE PLAN**[1]

A.    **Summary of the Plan**

The Plan is a liquidating plan. The Plan provides for: (i) the establishment of the Trust as of the Effective Date; (ii) the transfer of the Trust Assets to the Trust, and (iii) the liquidation of Trust Assets to fund Distributions under the Plan.

The Plan proposes the following treatment for Allowed Claims:

(i)    Allowed Administrative Claims will be paid in full on the later of: (a) the Effective Date, or (b) five (5) business days after such Claim becomes Allowed, unless the Holder of such Administrative Claim agrees to different terms.

(ii)    Allowed Priority Tax Claims, if any, will be paid on account of such Claim regular installments: (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) over a period ending not later than five (5) years after the Petition Date; and (c) in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code).

(iii)    Allowed Secured Claims shall be paid upon the liquidation of the collateral securing each such Claim. To the extent that the proceeds from the sale of collateral is insufficient to pay an Allowed Secured Claim in full, the Holder of such Claim shall be granted an Allowed General Unsecured Claim for any deficiency.

(iv)    Allowed Priority Non-Tax Claims, if any, shall be paid in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(v)    Allowed General Unsecured Claims shall be paid from the proceeds of the liquidation of any Assets after payment of applicable Allowed Secured Claims,

---

[1] All capitalized terms in this Section not otherwise defined herein shall have the meaning set forth in the Plan.

1    Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Trust

2    Expenses.

3    (vi)    Equity Interests shall be cancelled upon the Effective Date.

4    **B.**    **Treatment of Claims Under the Plan**

5    1.    **Administrative Claims**

6    The following chart lists all of the estimated Administrative Claims and their treatment under

7    the Plan:

| Name | Code § | Estimated to Be Paid on the Effective Date | Treatment |
|------|--------|---------------------------------------------|-----------|
| Shulman Bastian Friedman Bui & O'Dea LLP, general counsel for the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Richard Marshack and Marshack Hays Wood LLP, Chief Restructuring Officer of the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Steven Shane of Compass Colorado, LLC, real estate broker of the Debtor | 507(a)(2) | $0.00 | This Professional will be paid upon the sale of the Real Property in accordance with the terms of the application and listing agreement approved by the Bankruptcy Court [Dkt. No. 131]. |
| Reeves & Weiss LLP, special litigation counsel to the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Grobstein Teeple LLP, financial advisors to the Debtor [2] | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Clerk, Bankruptcy Court Fees | 507(a)(2) | $500.00 | Paid in full on the Effective Date |

---

[2] The employment applications for Reeves & Weiss LLP [Dkt. No. 73] and Grobstein Teeple LLP [Dkt. No. 216] are still pending as of the date of this Disclosure Statement. In the event that either application is denied, this Section shall be amended accordingly.

| Name | Code § | Estimated to Be Paid on the Effective Date | Treatment |
|---|---|---|---|
| Unpaid UST Quarterly Fees, if any | 507(a)(2) | $1,000.00 | The UST quarterly fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date. In addition, post-confirmation quarterly fees of the UST will be paid to the extent they are due and owing until the Case is dismissed or a final decree has been entered, whichever occurs first. |
| **Total** | | **$1,500.00** | |

2.    **Priority Tax Claims**

The Debtor is not aware of any Priority Tax Claims against the Estate. In the event that it is determined there are Allowed Priority Tax Claims, such Claims shall either: (a) be paid in full on the Effective Date or (b) be paid in quarterly installments such that they: (i) are paid in full within five (5) years of the Petition Date, with payments to commence no earlier than ninety (90) days after the Effective Date; (ii) include annual interest at the rate published as of the Petition Date; (iii) be fully amortized in eighteen (18) equal quarterly payments.

3.    **Class 1 - Secured Claims**

For purposes of Distributions under the Plan, each Holder of a Secured Claim is considered to be in its own separate subclass within Class 1 and each such subclass is deemed to be a separate class for purposes of the Plan.

The following chart lists all classes of Secured Claims and their treatment under the Plan. The listing of any Creditor or Lien on the following chart does not constitute an admission or acknowledgment of the validity of any Claim or Lien against the Debtor's Estate or Assets. The Claim amounts are estimated, may include Disputed Claim amounts, and were based on: (a)  the amounts that were listed on the Debtor's Schedules; (b)  the amounts listed in documents filed in the Case; or (c) the amounts listed in the proof of Claim filed by the Creditors. During the Case, the amounts owed to Secured Creditors may have changed and may continue to change based on payments made and/or the accrual of interest or other charges.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1-A | Secured Claim of: Citibank, N.A.<br><br>Approx. Claim Amount (Basis): $11,537,500.00 (Schedules)<br><br>Nature of Lien and Collateral: First deed of trust on the Real Property | No.<br><br>This Creditor is not entitled to vote on the Plan. | This Creditor does not have a Claim against the Debtor, only against the Real Property. In the event that the sale of the Real Property does not result in the full payment of the amounts owed to this Creditor, this Creditor will not be entitled to any deficiency Claim against the Estate. |
| 1-B | Secured Claim of: White Mountain Capital, Inc.<br><br>Approx. Claim Amount (Basis): $7,185,291.07 (Dkt. No. 194)<br><br>Nature of Lien and Collateral: Second deed of trust on the Real Property | Yes.<br><br>This Creditor is entitled to vote on the Plan. | This Creditor does not have a Claim against the Debtor, only against the Real Property. This Creditor shall be paid in a manner consistent with the Order Granting Amended Motion for Approval of Amended Stipulation Resolving Creditor's Motion for Relief from the Automatic Stay by and between White Mountain Capital, Inc. and Debtor, Simba IL Holdings, LLC [Dkt. No. 194]. In the event that the sale of the Real Property does not result in the full payment of the amounts owed to this Creditor, this Creditor will not be entitled to any deficiency Claim against the Estate. |
| 1-C | Secured Claim of: Bryan Gadol<br><br>Approx. Claim Amount (Basis): $11,256,049.63 (Claims Dkt. No. 17)<br><br>Nature of Lien and Collateral: Prejudgment liens against the Assets | Yes.<br><br>This Creditor is entitled to vote on the Plan. | The Allowed Secured Claim of this Creditor will be paid from the proceeds of any liquidation of the Assets subject to priority. To the extent that the proceeds from the Assets are insufficient to pay the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency.<br><br>The Debtor is finalizing a settlement agreement with this Creditor subject to Court approval. If approved, this Creditor shall be paid in a manner consistent with such agreement and the Debtor shall amend the Plan accordingly. |
| 1-D | Secured Claim of: Darren Testa<br><br>Approx. Claim Amount (Basis): $8,146,481.53 (Claims Dkt. No. 18)<br><br>Nature of Lien and Collateral: Prejudgment liens against the Assets | Yes.<br><br>This Creditor is entitled to vote on the Plan. | The Allowed Secured Claim of this Creditor will be paid from the proceeds of any liquidation of the Assets subject to priority. To the extent that the proceeds from the Assets are insufficient to pay the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency.<br><br>The Debtor is finalizing a settlement agreement with this Creditor subject to Court approval. If approved, this Creditor shall be paid in a manner consistent with such agreement and the Debtor shall amend the Plan accordingly. |

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1-E | Secured Claim of: Lugano Buyer, Inc.<br><br>Approx. Claim Amount (Basis): Undetermined (Claims Dkt. No. 10)<br><br>Nature of Lien and Collateral: Pledge of 338,235 shares of Lugano Holding, Inc. pursuant to Pledge Agreement dated 9/3/2021. | No.<br><br>This Creditor is not entitled to vote on the Plan. | To the extent that this Claim is ultimately Allowed, this Creditor will be entitled to enforce its rights against the subject collateral. To the extent that the collateral is insufficient to satisfy the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency. |

4.    **Class 2 – Priority Non-Tax Claims**

The Debtor is not aware of any Priority Non-Tax Claims against the Estate. In the event that it is determined there are Allowed Priority Non-Tax Claims, such Claims shall be paid in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

5.    **Class 3 – General Unsecured Claims**

The following chart identifies the Plan's treatment for Class 3 General Unsecured Claims:

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims | Yes.<br><br>Claims in this class are entitled to vote on the Plan. | Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Distributions from the Trust. Distributions to Holders of Allowed General Unsecured Claims shall be paid from the proceeds of the liquidation of any Assets after payment of applicable Allowed Secured Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Trust Expenses. |

6.    **Class 4 – Equity Interests**

The following chart identifies the Plan's treatment of Holders of Equity Interests:

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | Holders of Equity Interests<br><br>Mordechai H. Ferder & Edit F. Ferder, as community property (99%)<br><br>Edit F. Ferder, Trustee of THE RF 2021 IRREVOCABLE TRUST, dated August 30, 2021 (1%) | Yes.<br><br>Deemed to reject. | Upon the Effective Date, all Equity Interests in the Debtor shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed discharged, released and/or satisfied as to the Debtor. Following the Effective Date, the Trustee will be authorized to execute and file on behalf of Holders of Equity Interests any documents or forms as may be necessary or appropriate to implement this provisions of the Plan. |

# IV.    BACKGROUND

**A.    The Case**

On September 16, 2025, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing this Case. The Debtor is continuing in possession of its property and operating and managing its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No committee or examiner has been appointed in the Case.

As of the Petition Date, the managing member of the Debtor, Mordechai Ferder, irrevocably transferred all power to manage the Debtor and this Case to the CRO. *See*, Dkt. No. 18.

Since the Petition Date, the Bankruptcy Court has entered orders authorizing the employment of the following Professionals: (a) Shulman Bastian Friedman Bui & O'Dea LLP as the Debtor's   General Counsel on November 14, 2025 [Dkt. No. 132]; (b) Richard Marshack/Marshack Hays Wood LLP as the Debtor's Chief Restructuring Officer on November 25, 2025 [Dkt. No. 145]; and (c) Steven Shane of Compass Colorado, LLC as the Debtor's Real Estate Broker on November 14, 2025 [Dkt. No. 131]. The following employment applications remain pending: (a) Reeves & Weiss LLP as Special Litigation Counsel  [Dkt. No. 73] and (b) Grobstein Teeple LLP as Financial Advisors [Dkt. No. 216].

**B.    The Debtor's Assets**

The Debtor is a limited liability company organized under the laws of the State of Delaware. The Debtor is a holding company and its main assets are the Real Property and the Alternative Investments. The Debtor also owns the Lugano Stock.

    1.    **The Real Property**

The Real Property is a 5,872 square foot single-family residence in Aspen, Colorado with 4 beds and 4.5 baths. The Debtor became the owner of the Real Property on or about September 9, 2025 by special warranty deed. The Real Property will be liquidated to fund, in part, the Plan. In furtherance of such efforts, the Debtor has employed Steven Shane of Compass Colorado, LLC as the Debtor's real estate broker whom has listed the Real Property for sale, marketed the Real Property online and in publications, and hosted multiple open houses for both brokers and individual purchasers. The current listing price of the Real Property is $22,950,000.

1    The Real Property is encumbered as follows (in order of priority):

2    (a) Citibank, N.A. has a first deed of trust on the Real Property in the approximate amount

3    of $11,537,500.00.

4    (b) White Mountain Capital, Inc. has a second deed of trust on the Real Property in the

5    approximate amount of $7,185,291.07.

6    (c) Bryan Gadol and Darren Testa filed an action in the District Court for Pitkin County,

7    Colorado on June 18, 2025, Case No. 2025CV30067 (the "Colorado Action"). On or about June 23,

8    2025, an order was entered in the Colorado Action which granted Gadol and Testa a prejudgment

9    writ of attachment against the Real Property in the amount of $14,630,634.60.

10    2.    **The Alternative Investments**

11    The Alternative Investments are investment accounts held by the Debtor. Such investment

12    accounts are held with Blackstone, iCapital, Brevet, Brightstar, CWS Capital Partners, Fundamental

13    Advisors, HS Group, RCP Advisors, Redmile Group, Starwood Capital Group, Suvretta Capital

14    Management, Turning Rock Partners, and Charles Schwab & Co, Inc.

15    The Debtor has taken, and will continue to take, steps to liquidate the Alternative

16    Investments for the benefit of Creditors. Specifically, the Debtor has subpoenaed and received

17    documents related to the Alternative Investments, their value, their ability to be liquidated, and the

18    consequences for doing so.

19    Based on the Debtor's current estimation, the Alternative Investments may be worth up to

20    approximately $7.2 million, subject to significant liquidity constraints and potential penalties. Gadol

21    and Testa obtained certain prejudgment writs of attachments against the Alternative Investment.

22    3.    **Lugano Stock**

23    Mr. Ferder, the Debtor's former managing member who ceded all control to the CRO, served

24    as Lugano's chief executive officer until May 2025. Mr. Ferder founded Lugano, a luxury bespoke

25    jewelry business, in the U.S. in 2005, starting with a single Newport Beach salon. From there,

26    Lugano grew into a respected brand, and by 2021, Lugano was generating more than $30 million in

27    annual operating income. In September 2021, a majority share in Lugano was sold to Compass

28

1    Diversified Holdings (publicly traded: CODI) for $198 million, and the Lugano Stock was vested

2    in the Debtor.

3    　　　　On November 16, 2025, Lugano and certain affiliated entities filed voluntary petitions for

4    relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

5    District of Delaware on November 16, 2025 (Case No. 25-12055). In the Lugano bankruptcy cases,

6    most assets have been sold and the proceeds appear insufficient to pay all creditors in full.

7    Accordingly, the Debtor believes that the Lugano Stock has little to no value.

8    　　　　4.    **Causes of Action**

9    　　　　Causes of Action held by the Debtor include, but are not limited to: (i) defenses to actions

10   relating to the Guarantees; (ii) contribution claims or causes of action against Lugano or co-

11   guarantors for any amounts paid or to be paid pursuant to the Guarantees; and (iii) the proof of claim

12   filed in the Lugano bankruptcy cases as Claim No. 159.

13   **C.    Claims**

14   　　　　1.    **Filed Claims**

15   　　　　On November 11, 2025, a Notice of Bar Date for Filing Proofs of Claim in a Chapter 11

16   Case was filed with this Court [Dkt. No. 140], which set the deadline for all creditors to file a proof

17   of claim (except governmental units) as December 19, 2025 and the deadline for governmental units

18   to file a proof of claim as March 16, 2026.

19   　　　　As of the date of this Disclosure Statement, the Court's Claims Register for this Case reflects

20   26 filed claims in aggregate amount of $138,586,463.38, $26,528,394.70 of which is secured. The

21   Debtor disputes many of the filed claims and intends to file objections in advance of any claims

22   objection deadline set by the Bankruptcy Court. The Debtor's evaluation of filed claims is ongoing.

23   　　　　2.    **Existing Actions and Prejudgment Liens**

24   　　　　Prior to the Petition Date, the Debtor provided Guarantees to certain parties, including the

25   Prejudgment Lienholders, who had entered into agreements with Lugano regarding the purchase of

26   diamonds for the creation of custom jewelry. Each of the agreements with the Prejudgment

27   Lienholders contained: (i) a guaranty by the Debtor of Lugano's performance of its obligations and

28   (ii) "put right" clauses which allowed the Prejudgment Lienholders to request at any time that

1    Lugano purchase their interest in the diamonds and provided that Lugano would pay the

2    Prejudgment Lienholders with a specified return within five days of the request.

3    After the Prejudgment Lienholders exercised their put rights but Lugano failed to pay the

4    amounts provided for in the agreements, the Prejudgment Lienholders commenced the Existing

5    Actions against the Debtor and other parties: (i) *Gadol, et al. v. Ferder, et al.* (Orange County

6    Superior Court Case No. 30-2025 01488102-CU-BC-CJC) filed on June 6, 2025; (ii) *Gadol, et al.*

7    *v. Ferder, et al.* (Pitkin County Superior Court Case No. 2025CV30067) filed on June 18, 2025; (iii)

8    *Gadol, et al. v. Ferder, et al.* (Delaware Superior Court Case No. N25C-07-026 PAW) filed on July

9    2, 2025; (iv) *Gadol, et al. v. Simba IL Holdings, LLC* (Delaware Superior Court Case No. N25J-

10    01759) filed on July 2, 2025; (v) *Winters v. Ferder, et al*. (US Dist. Court, Central Dist. of CA Case

11    No. 8:25-cv-01202) filed on June 3, 2025; (vi) *Winters v. Ferder* (Delaware Superior Court Case

12    No. N25J-02464) filed on September 12, 2025; (vii) *Winters v. Simba IL Holdings, LLC* (Delaware

13    Superior Court Case No. N25J- 02463) filed on September 12, 2025; and (viii) *Winters v. Lugano*

14    *Diamonds and Jewelry*, (Delaware Superior Court Case No. N25J-02465) filed on September 12,

15    2025.

16    In the Existing Actions, Gadol and Testa obtained certain attachment orders which granted

17    them liens against the Debtor's Assets:[3]

18        i.    Ex Parte Right to Attach Order and Order for Issuance of Writ of Attachment

19            (Resident) dated June 12, 2025;

20        ii.    Order: Proposed Order re Plaintiffs' Immediate Disposition and Ex Parte Motion for

21            Prejudgment Writ of Attachment dated June 23, 2025;

22        iii.    Recording of the Aspen Writ of Attachment on June 23, 2025.

23        iv.    Writ of Attachment dated July 1, 2025;

24        v.    Delaware Domestication of California Writ, domesticated on July 2, 2025; and

25

26

27    [3] Winters also obtained prejudgment liens against certain of the Debtor's Assets. However, on the
Petition Date, such liens either: (i) lapsed or (ii) were automatically terminated pursuant to Cal.

28    Code Civ. Proc. § 493.030.

vi.    Order Granting Plaintiff's Ex Parte Motion for Mesne Writ of Attachment dated August 18, 2025 in the Delaware Action.

## V.    THE TRUST

### A.    Purpose of the Trust

The Trust shall be established to administer certain post-Effective Date responsibilities under the Plan including, but not limited to: (i) reviewing, reconciling, allowing, objecting to, and resolving all Claims, (ii) making Distributions to Holders of Allowed Claims, (iii) prosecuting, settling, and resolving Causes of Action, (iv) liquidating Trust Assets, and (v) otherwise administering Trust Assets.

### B.    Execution of the Trust Agreement

On the Effective Date, Richard Marshack shall be appointed as Trustee of the Trust. On the Effective Date, the Debtor and the Trustee shall execute the Trust Agreement and shall take all steps necessary to establish the Trust in accordance with the Plan and the beneficial interests therein. In the event of any conflicts between this Section and the terms of the Trust Agreement, the terms of the Trust Agreement shall control.

### C.    Creation and Governance of the Trust

On the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred all rights, title, and interest in and to all of the Trust Assets to the Trust. The Trust shall be governed by the Trust Agreement and administered by the Trustee. The Trust shall hold and distribute the Trust Assets in accordance with the provisions of this Plan and the Trust Agreement. After the Effective Date, the Debtor shall have no interest in the Trust Assets.

The Trustee shall be the exclusive Trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all Trust Assets. The appointment of the Trustee shall be approved in the Confirmation Order and effective as of the Effective Date.

The powers, rights, and responsibilities of the Trustee shall be specified in the Trust Agreement and shall include, but are not limited to, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Trust Assets; (b) file tax returns or other reports required

by governmental entities and pay taxes or other obligations incurred by the Debtor, the Estate, and the Trust to the extent payable consistent with the Plan, the Bankruptcy Code or order of the Bankruptcy Court; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Trust Assets; (d) calculate and implement Distributions of Trust Assets; (e) investigate, prosecute, compromise, and settle all Causes of Action; (f) address and resolve issues involving objections, reconciliation and allowance of Claims in accordance with this Plan; and (g) undertake all administrative functions of the Plan and the Case, including the payment of fees payable to the UST and the ultimate closing of the Case.

## D.    **The Trust Agreement**

The Trust Agreement generally will provide for, among other things:

    i.    the payment of Trust Expenses;

    ii.    the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation, all without Bankruptcy Court approval or further order;

    iii.    the sale, liquidation, transfer, assignment, distribution, abandonment or other disposition of Trust Assets or any part thereof or any interest therein upon such terms as the Trustee determines to be necessary, appropriate or desirable in its sole discretion;

    iv.    litigation of any Causes of Action, which may include the pursuit, commencement, prosecution, settlement, release, waiver, abandonment, or dismissal of any such Causes of Action;

    v.    the making of distributions under this Plan and under the Trust Agreement to Holders of Allowed Claims;

    vi.    the pursuit of objections to, and estimations and settlements of, Disputed Claims;

    vii.    reasonable and customary limitation of liability and indemnification provisions; and

    viii.    the exercise of such other powers as deemed by the Trustee to be necessary and proper to implement the provisions of the Plan.

1  **E.**    **Trust Expenses**

2         From and after the Effective Date, the Trust shall, in the ordinary course of business and

3  without the necessity of any approval by the Bankruptcy Court, pay the Trust Expenses. The Trust

4  Expenses shall be payable solely from Trust Assets in accordance with the Plan and Trust

5  Agreement. The Trustee may, but shall not be obligated to, physically segregate and maintain

6  separate accounts or sub-accounts for Trust Expenses.  Reserves may be merely bookkeeping entries

7  or accounting methodologies, which may be revised from time to time, to enable the Trustee to

8  determine reserves and amounts to be paid to Holders of Allowed Claims.  For the avoidance of

9  doubt, the Trust shall pay or reserve for all Trust Expenses before a Distribution may be made to

10 Holders of General Unsecured Claims.

11 **F.**    **Limitation of Liability**

12        Neither the Trust nor the Trustee, nor their respective firms, companies, affiliates, partners,

13 officers, directors, members, employees, designees, professionals, advisors, attorneys,

14 representatives, disbursing agents or agents, and any of such Entity's successors and assigns, shall

15 incur any responsibility or liability by reason of any error of law or fact or of any matter or thing

16 done or suffered or omitted to be done under or in connection with the Plan or Trust Agreement,

17 other than for specific actions or omissions resulting from its willful misconduct, gross negligence

18 or fraud found by a Final Order (not subject to further appeal or review) of a court of competent

19 jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the

20 Trust. In no event shall the Trust or Trustee be liable for indirect, punitive, special, incidental or

21 consequential damage or loss (including but not limited to lost profits) whatsoever, even if the

22 Trustee has been informed of the likelihood of such loss or damages and regardless of the form of

23 action. The Trustee may, in connection with the performance of his functions, in the Trustee's sole

24 and absolute discretion, consult with his and the Trust's attorneys, accountants, advisors, and agents,

25 and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance

26 with advice or opinions rendered by such persons, regardless of whether such advice or opinions are

27 in writing.  Notwithstanding such authority, the Trustee shall be under no obligation to consult with

28 any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not

1  result in the imposition of liability on the Trustee or its members unless such determination is based

2  on willful misconduct, gross negligence, or fraud.  Entities dealing with the Trustee shall look only

3  to the Trust Assets to satisfy any liability incurred by the Trustee to such Entity in carrying out the

4  terms of the Plan or the Trust Agreement, and the Trustee shall have no personal obligation to satisfy

5  such liability.

6  ### VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES

7  Many requirements must be met before the Bankruptcy Court can confirm a Plan.  Some of

8  the requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

9  whether the Plan pays Creditors at least as much as Creditors would receive in a Chapter 7

10 liquidation, and whether the Plan is feasible.

11 **A.    Voting and Objections to Confirmation**

12 **1.    Who May Vote**

13 A Creditor has a right to vote for or against the Plan if that Creditor has a Claim which is

14 both: (i) Allowed or Allowed for voting purposes and (ii) classified in an impaired class. Creditors

15 with Claims in unimpaired classes are not entitled to vote because such classes are deemed to have

16 accepted the Plan. Creditors  entitled to priority pursuant to sections 507(a)(2), 507(a)(3), and 507

17 (a)(8) of the Bankruptcy Code are not entitled to vote because such Claims are not placed in classes

18 and they are required to receive certain treatment specified by the Bankruptcy Code.   Claims in

19 classes that do not receive or retain any value under the Plan do not vote because such classes are

20 deemed to have rejected the Plan.

21 In this case:

| Class | Description | Impaired (Y/N) and/or Entitled to Vote? |
|---|---|---|
| 1-A | Secured Claim of: Citibank, N.A. | No. This Creditor is not entitled to vote on the Plan. |
| 1-B | Secured Claim of: White Mountain Capital, Inc. | Yes. This Creditor is entitled to vote on the Plan. |

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| Class | Description | Impaired (Y/N) and/or Entitled to Vote? |
|-------|-------------|------------------------------------------|
| 1-C | Secured Claim of: Bryan Gadol | Yes. This Creditor is entitled to vote on the Plan. |
| 1-D | Secured Claim of: Darren Testa | Yes. This Creditor is entitled to vote on the Plan. |
| 1-E | Secured Claim of: Lugano Buyer, Inc. | No. This Creditor is not entitled to vote on the Plan. |
| 2 | Priority Non-Tax Claims | No. Creditors in this Class (if any) are not entitled to vote on the Plan. |
| 3 | General Unsecured Claims | Yes. Holders of Allowed Claims in this class are entitled to vote on the Plan. |
| 4 | Holders of Equity Interests | Yes. Deemed to reject. |

Parties who dispute the Debtor's characterization of their Claim as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized their Claim. A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as a General Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the Secured Claim and another ballot for the General Unsecured Claim.

2.    **Effect of Vote**

The Plan will be confirmed only if: (i) it is accepted by each impaired class, or (ii) it is accepted by at least one impaired class (without counting the votes of "insiders," as defined in section 101(31) of the Bankruptcy Code) and the Bankruptcy Court determines that the Plan is "fair and equitable" (as defined by section 1129(b) of the Bankruptcy Code) to all rejecting classes of

Creditors, and (iii) it meets all of the other legal requirements for confirmation.  A class of Creditors accepts the Plan if a majority in number and at least two-thirds in dollar amount of the Claims in that class timely voted in favor of the Plan pursuant to section 1126(c) of the Bankruptcy Code.

3.    **Voting Deadline**

All Ballots must be received on or before the Voting Deadline of  **\*\*\*\*\*\***, 2026, at 5:00 p.m. Service of the Ballot may be made as follows:

| | |
|---|---|
| **If by mail:** | **If by email:** |
| Shulman Bastian Friedman Bui & O'Dea LLP | mcasal@shulmanbastian.com |
| 100 Spectrum Center Drive, Suite 600 | lgauthier@shulmanbastian.com |
| Irvine, CA 92618 | |
| (Attn: Max Casal) | |

Failure to deliver a properly completed ballot by the Voting Deadline will result in the Ballot not being counted as an acceptance or a rejection.  Any improperly completed or late Ballot will not be counted.

4.    **Deadline for Objecting to Confirmation of the Plan**

Any party in interest of the Case can file an objection to Confirmation of the Plan.

Objections to confirmation of the Plan must be filed with the Bankruptcy Court and served upon the Debtor by no later than \*\*\*\*\*\*, 2026.

5.    **Risk Factors to Be Considered Prior to Voting**

The Plan and its implementation are subject to certain risks, including, but not limited to, the risk factors set forth below:

a.    The Plan May Not Be Accepted or Confirmed

The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan of liquidation for the Debtor or be required to liquidate the Estate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative plan would be similar to the Plan.

If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under section 1129(a) of the Bankruptcy Code, the Case may be converted to chapter 7 of the Bankruptcy Code, in which event a chapter 7 trustee would be elected or appointed to liquidate any remaining Assets

of the Debtor for distribution to Creditors pursuant to chapter 7 of the Bankruptcy Code. If a chapter 7 trustee is appointed and the remaining Assets of the Debtor are liquidated under chapter 7 of the Bankruptcy Code, all Creditors may receive Distributions of a lesser value on account of their Allowed Claims and likely would have to wait a longer period of time to receive such distributions than they would under the Plan.   A liquidation under chapter 7 likely would result in smaller distributions made to Creditors than that provided for in the Plan because of (i) additional administrative expenses involved in the appointment of a chapter 7 trustee and (ii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the chapter 7 liquidation.

Even if the Debtor receives the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determined that the Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes.

b.   <u>Uncertain Values of Real Estate and Alternative Investments</u>

The real estate market is volatile and it is currently unclear what price the Real Property will be sold for. If the real estate market in Aspen takes a down turn, the ultimate sale price of the Real Property may be lower than anticipated. In turn, the proceeds to be obtained from liquidation of the Alternative Investments are uncertain as, among other things, (i) the value of individual interests varies depending on the changing security pricing; (ii) the investments may require additional capital contributions or be subject to penalties if the capital contributions are not made; (iii) the investments may be illiquid; or (iv) the investments may require a substantial discount to liquidate.

As a result, there can be no assurance that any particular distribution will be made upon liquidation of the Real Property or Alternative Investments.

c.    Tax Implications

There are a number of material income tax considerations, risks and uncertainties associated with the liquidation described in this Plan. The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Plan. Accordingly, Holders are urged to consult their tax advisors about the federal, state and local, and applicable foreign income and other tax consequences of the Plan.

**B.    Liquidation Analysis and Best Interest of Creditors**

Even if the Plan is accepted by the Holders of each class of Claims and Equity Interests, the Bankruptcy Code requires a court to determine that the Plan is in the best interests of all holders of Claims or Equity Interests that are impaired by the Plan and that have not accepted the Plan.

The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To determine if a plan is in the best interests of each impaired class, the present value of the Distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the values of the chapter 11 liquidation contemplated by the Plan. However, the Debtor believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of liquidating the Estate in a chapter 7 case.

1    The costs of liquidation under chapter 7 of the Bankruptcy Code would include the costs of

2    counsel and other professionals retained by the chapter 7 trustee. The Debtor believes such amount

3    would be equal to or exceed the amount of expenses that would be incurred in implementing the

4    Plan through the Trust. The most significant expense incurred in a chapter 7 would be the statutory

5    compensation of a chapter 7 trustee upon liquidation of the Debtor's assets – an expense not

6    applicable under the Plan. Conversion also would likely delay the liquidation process and ultimate

7    distribution of the Debtor's Assets.

8    Ultimately, a conversion to chapter 7 would serve only to reduce the recovery to Allowed

9    General Unsecured Claims due to the compensation of a chapter 7 trustee. Accordingly, the Debtor

10   believes that Holders of Allowed Claims would receive less than anticipated under the Plan if the

11   Case was converted to chapter 7, and therefore, the classification and treatment of Claims and Equity

12   Interests in the Plan complies with section 1129(a)(7).  Importantly, the Debtor has reached a

13   settlement agreement with Gadol and Testa (subject to approval by the Bankruptcy Court) which

14   will, among other things provide for carve-outs upon the sale of Assets to fund Administrative

15   Claims and Distributions to General Unsecured Creditors.

16   **C.     Feasibility**

17   Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be

18   likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor

19   or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan).

20   Because the Plan is a liquidating plan, feasibility depends on whether the Trust can

21   implement liquidation and the Distributions under the Plan. Because all payments after the Effective

22   Date to Holders of Allowed Claims will be paid by the Trust upon the liquidation of Trust Assets,

23   the payments proposed to Holders of Allowed Claims are feasible. Moreover, because the Debtor

24   anticipates that any payments required to be made on or before the Effective Date under the Plan

25   are minimal, the Debtor believes it will be able to make any required payments from available Cash

26   on hand or upon the disposition of Assets prior to the Effective Date. Therefore, the Debtor believes

27   that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy

28   Code.

**D.**      **The Plan is Proposed in Good Faith**

The Debtor has determined that the Plan is the most practical means of providing maximum recovery for Creditors. Alternatives to the Plan which have been considered and evaluated by the Debtor during the course of the Case include (i) liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code; (ii) structured dismissal of the Case; and (iii) alternative chapter 11 plans.

The Debtor's thorough consideration of these alternatives have led it to conclude that the proposed Plan, in comparison, provides a greater recovery to Creditors on a more expeditious timetable and in a manner which minimizes inherent risks than any other course of action available to the Debtor.

IT IS THE OPINION OF THE DEBTOR THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND CREDITORS.    THEREFORE, THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

Respectfully submitted,

Dated:  February 13, 2026          **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

_/s/ Max Casal_____
Leonard M. Shulman
James C. Bastian, Jr.
Alan J. Friedman
Max Casal
General Counsel for the Debtor

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled **DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN OF LIQUIDATION**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 13, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On February 13, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Mark M. Houle
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C
Santa Ana, CA 92701-4593

☒ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2026 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):**

## NEF SERVICE LIST

- Anthony Bisconti    tbisconti@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- Greg P Campbell    ch11ecf@aldridgepite.com,
  gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Max Casal    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- John B Connor    jack@johnbconnor.com
- Matthew Tyler Davis    tdavis@kbkllp.com
- Karol K Denniston    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-
  9025@ecf.pacerpro.com
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Alan J Friedman    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- George Gerro    george@gerrolaw.com
- Michael D Good    mgood@southbaylawfirm.com
- Christopher J Harney    charney@tocounsel.com, kmanson@tocounsel.com
- Paul Jasper    pjasper@perkinscoie.com, david.kline@rimonlaw.com
- Steven J. Katzman    skatzman@bklwlaw.com,
  1193516420@filings.docketbird.com,docket@bklwlaw.com
- Tobias S Keller    tkeller@kellerbenvenutti.com
- Jordan A Kroop    jkroop@pszjlaw.com, rleibowitz@perkinscoie.com
- Mette H Kurth    mette.kurth@pierferd.com, mette-kurth-7580@ecf.pacerpro.com
- Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Richard A Marshack    rmarshack@marshackhays.com,
  lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com;alinares@ecf.courtdriv
  e.com
- Ali M. Mojdehi    ali.mojdehi@mgr-legal.com
- John Morris    jmorris@pszjlaw.com
- Dakota Pearce    dpearce@buchalter.com,
  pjolley@buchalter.com;smartin@buchalter.com;docket@buchalter.com
- Matthew D Pham    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Allison M. Rego    allison.rego@mgr-legal.com
- Stacy H Rubin    shr@h2law.com, kmcgee@howardandhoward.com
- Traci L Shafroth    tshafroth@kbkllp.com, jminga@kbkllp.com
- Leonard M. Shulman    lshulman@shulmanbastian.com,
  bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- Timothy J Silverman    tsilverman@scheerlawgroup.com,
  tsilverman1@ecf.courtdrive.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

## UNITED STATES MAIL SERVICE LIST

**Debtor**
**Simba IL Holdings, LLC**
**610 Newport Center Drive, Suite 950**
**Newport Beach, CA 92660-6473**

1  **Simba IL Holdings, LLC**
   **Attn: Richard Marshack, CRO**
2  **870 Roosevelt**
   **Irvine, CA 92618**
3
   **Office of the U.S. Trustee**
4  **Attn: Queenie K. Ng**
   **411 West Fourth Street, Suite 7160**
5  **Santa Ana, CA 92701**
6  **Securities & Exchange Commission**
   **444 South Flower St., Suite 900**
7  **Los Angeles, CA 90071-2934**
8  **U.S. Securities and Exchange Commission**
   **Attn: Nishchay Maskay**
9  **Senior Counsel, Division of Enforcement**
   **100 F Street, NE**
10 **Washington, DC 20549**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28