Leonard M. Shulman – Bar No. 126349
James C. Bastian, Jr. – Bar No. 175415
Alan J. Friedman – Bar No. 132580
Max Casal – Bar No. 342716
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000
Email:        lshulman@shulmanbastian.com
                jbastian@shulmanbastian.com
                afriedman@shulmanbastian.com
                mcasal@shulmanbastian.com

General Counsel for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>**SIMBA IL HOLDINGS, LLC., a Delaware limited liability company,**<br>                              Debtor. | Case No. 8:25-bk-12616-MH<br><br>Chapter 11<br><br>**CHAPTER 11 PLAN OF LIQUIDATION** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................3

II.     DEFINED TERMS AND RULES OF INTERPRETATION ..............................3

    A.      Defined Terms ..............................................................................................3

    B.      Rules of Interpretation ..................................................................................6

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.......7

    A.      Unclassified Claims ......................................................................................7

        1.      Administrative Claims .......................................................................7

        2.      Priority Tax Claims ...........................................................................9

    B.      Classes of Claims and Equity Interests ........................................................9

        1.      Secured Claims ..................................................................................9

        2.      Priority Non-Tax Claims ..................................................................11

        3.      General Unsecured Claims ...............................................................11

        4.      Equity Interests ................................................................................11

IV.     MEANS FOR IMPLEMENTATION OF PLAN .............................................12

    B.      The Trust .....................................................................................................12

        1.      Purpose of the Trust .........................................................................12

        2.      Execution of the Trust Agreement ...................................................12

        3.      Creation and Governance of the Trust .............................................13

V.      CLAIMS ADMINISTRATION, CAUSES OF ACTION, AND DISTRIBUTIONS..........13

    A.      Resolution of Disputed Claims ...................................................................13

    B.      Preservation of Causes of Action ................................................................14

    C.      Distributions ................................................................................................15

VI.     OTHER PROVISIONS OF THE PLAN........................................................19

    A.      Executory Contracts and Unexpired Leases................................................19

    B.      Changes in Rates Subject to Regulatory Commission Approval .................19

    C.      Exculpation...................................................................................................19

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

D.    Retention of Jurisdiction ..........................................................................20

VII.    EFFECT OF CONFIRMATION OF THE PLAN .............................................21

A.    Conditions Precedent to Confirmation...................................................21

B.    Conditions Precedent to the Effective Date ...........................................22

C.    Modification of the Plan.........................................................................22

D.    Substantial Consummation.....................................................................22

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

## I.    INTRODUCTION

The Debtor hereby proposes this Plan pursuant to chapter 11 of the Bankruptcy Code. The Plan is a liquidating chapter 11 plan which provides for the orderly liquidation of the Debtor's Assets and the distribution of proceeds to Holders of Allowed Claims in accordance with the priority scheme established by the Bankruptcy Code.

On the Effective Date, the Trust will be established for the benefit of Holders of Allowed Claims, and the Debtor will transfer all Assets to the Trust. All Distributions on account of Allowed Claims will be paid from the Trust upon the disposition of Trust Assets.

This Plan is accompanied by the Debtor's disclosure statement which provides Holders of Claims entitled to vote on the Plan with "adequate information" as defined in section 1125(a) of the Bankruptcy Code so that such Holders may make an informed judgment regarding whether to accept or reject the Plan.

## II.    DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Defined Terms**

1.    **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate pursuant to sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including Professional Fees and UST quarterly fees.

2.    **"Allowed"** means, with respect to a Claim, a Claim that (i) is listed in the Schedules and not scheduled as disputed, contingent, or unliquidated; (ii) has been Allowed by Final Order; (iii) is not the subject of a pending objection; or (iv) is expressly Allowed under the Plan.

3.    **"Assets"** means all property of the Estate within the meaning of section 541 of the Bankruptcy Code, including the Real Property and all Causes of Action and proceeds thereof.

4.    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

5.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Santa Ana Division, or such other court having jurisdiction over the Case.

6.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

7.    **"Case"** means Case No. 8:25-bk-12616-MH, commenced on the Petition Date.

8. **"Cash"** means legal tender of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

9. **"Causes of Action"** means any and all claims, causes of action, rights, remedies, suits, proceedings, claims for relief, defenses, counterclaims, crossclaims, offsets, recoupments, rights of recovery, and claims of every kind and character belonging to the Debtor or the Estate.

10. **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code.

11. **"Claim Objection Deadline"** means the deadline by which objections to Claims must be Filed, which shall be 180 days after the Effective Date.

12. **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

13. **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court to consider confirmation of the Plan.

14. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

15. **"Creditor"** has the meaning set forth in section 101(10) of the Bankruptcy Code.

16. **"Debtor"** means Simba IL Holdings, LLC.

17. **"Disputed Claim"** means any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which the Debtor or the Trust has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Debtor or the Trust in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

18. **"Distribution"** means any payment or transfer made under the Plan.

19. **"Effective Date"** means the date on which all conditions precedent to effectiveness of the Plan have been satisfied or waived.

20. **"Entity"** has the meaning set forth in section 101(15) of the Bankruptcy Code.

21. **"Estate"** means the Debtor's bankruptcy estate created upon the commencement of the Case pursuant to section 541 of the Bankruptcy Code.

22. **"Equity Interest"** means any equity security or ownership interest in the Debtor.

23. **"Exculpated Parties"** means the Debtor, the CRO, the Trustee, and their respective professionals, agents, and representatives acting in their official capacities.

24. **"File" or "Filed"** means filed with the Bankruptcy Court.

25. **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, modified, or stayed and as to which the time to appeal has expired.

26. **"General Unsecured Claim"** means a Claim against the Debtor that is not a Secured Claim, Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, or Equity Interest.

27. **"Holder"** means a Person holding a Claim or Equity Interest, as applicable.

28. **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

29. **"Person"** has the meaning set forth in section 101(41) of the Bankruptcy Code.

30. **"Petition Date"** means September 16, 2025.

31. **"Plan"** means this Chapter 11 Plan of Liquidation, as it may be amended or modified.

32. **"Priority Non-Tax Claim"** means a Claim entitled to priority under sections 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

33. **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

34. **"Professional"** means any Person retained by the Estate pursuant to section 327 of the Bankruptcy Code.

35. **"Professional Fees"** means compensation and reimbursement of expenses payable to Professionals under sections 327, 328, 330, or 331 of the Bankruptcy Code.

36. **"Pro Rata"** means, with respect to any Distribution to Holders of Allowed Claims in a particular Class, the proportion that the amount of an Allowed Claim in such Class bears to the aggregate amount of all Allowed Claims in such Class.

37. **"Real Property"** means the real property owned by the Debtor located at 1220 Red Butte Dr, Aspen, Colorado 81611.

38. **"Schedules"** means the schedules of assets and liabilities and statements of financial affairs filed by the Debtor [Dkt. No. 42].

39.    **"Secured Claim"** means a Claim against the Debtor or its Assets secured by a valid, perfected Lien to the extent of the value of the collateral securing such Claim.

40.    **"Trust"** means the liquidating trust established pursuant to the Plan and the Trust Agreement.

41.    **"Trust Agreement"** means the agreement governing the creation and administration of the Trust.

42.    **"Trust Assets"** means all Assets transferred to the Trust on the Effective Date and any and all proceeds of the liquidation of the Assets.

43.    **"Trustee"** means the person appointed pursuant to the Plan and Confirmation Order to administer the Trust, in this case, Richard Marshack.

44.    **"UST"** means the United States Trustee for Region 16.

**B.    Rules of Interpretation**

Unless otherwise specified:

a.    Any term used herein that is not defined either in this Section II or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

b.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

c.    Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

d.    Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

e.    Any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

f.    Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections are references to Sections of the Plan.

g.    Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

h.    Captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

i.    Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

j.    All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Unclassified Claims

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the following types of Claims are not classified or entitled to vote because they are automatically entitled to specific treatment provided in the Bankruptcy Code: (1) Administrative Claims and (2) Priority Tax Claims. These Claims receive the treatment set forth below.

#### 1.    Administrative Claims

Except as otherwise agreed, each Holder of an Allowed Administrative Claim shall receive payment in Cash equal to the unpaid portion of such Claim on the later of: (i) the Effective Date, or (ii) five (5) business days after such Claim becomes Allowed.

Any Holder of an Administrative Claim is required to file a request for payment of its Administrative Claim by no later than thirty days after the Effective Date, and will be paid on or before the fifth business day after such Administrative Claim becomes Allowed. Any failure by the Holder of an Administrative Claim to file a request for payment within thirty days after the Effective Date shall be forever barred from asserting such Administrative Claim against the Estate.

All Professional Fees must be approved by the Bankruptcy Court before they become an Allowed Administrative Claim. All Professionals must file an serve a properly noticed fee

application and the Bankruptcy Court must rule on the application. Only the amount of Professional Fees allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The following chart lists all of the estimated Administrative Claims and their treatment under the Plan:

| Name | Code § | Estimated to Be Paid on the Effective Date | Treatment |
|---|---|---|---|
| Shulman Bastian Friedman Bui & O'Dea LLP, general counsel for the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Richard Marshack and Marshack Hays Wood LLP, Chief Restructuring Officer of the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Steven Shane of Compass Colorado, LLC, real estate broker of the Debtor | 507(a)(2) | $0.00 | This Professional will be paid upon the sale of the Real Property in accordance with the terms of the application and listing agreement approved by the Bankruptcy Court [Dkt. No. 131]. |
| Reeves & Weiss LLP, special litigation counsel to the Debtor | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Grobstein Teeple LLP, financial advisors to the Debtor [1] | 507(a)(2) | $0.00 | All Professionals have agreed that any Allowed Professional Fees unpaid as of the Effective Date can be paid from the Trust after the Effective Date as and when proceeds become available upon liquidation of the Assets. |
| Clerk, Bankruptcy Court Fees | 507(a)(2) | $500.00 | Paid in full on the Effective Date |
| Unpaid UST Quarterly Fees, if any | 507(a)(2) | $1,000.00 | The UST quarterly fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date.

In addition, post-confirmation quarterly fees of the UST will be paid to the extent they are due and owing until the Case is dismissed or a final decree has been entered, whichever occurs first. |
| **Total** | | **$1,500.00** | |

---

[1] The employment applications for Reeves & Weiss LLP [Dkt. No. 73] and Grobstein Teeple LLP [Dkt. No. 216] are still pending as of the date of this Plan. In the event that either application is denied, this Section shall be amended accordingly.

2.     **Priority Tax Claims**

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a different treatment thereof, each Holder shall receive treatment consistent with section 1129(a)(9)(C) of the Bankruptcy Code. Specifically, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim regular installments: (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) over a period ending not later than five (5) years after the Petition Date; and (c) in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code).

The Debtor is not aware of any Priority Tax Claims against the Estate. In the event that it is determined there are Allowed Priority Tax Claims, such Claims shall either: (a) be paid in full on the Effective Date or (b) be paid in quarterly installments such that they: (i) are paid in full within five (5) years of the Petition Date, with payments to commence no earlier than ninety (90) days after the Effective Date; (ii) include annual interest at the rate published as of the Petition Date; (iii) be fully amortized in eighteen (18) equal quarterly payments.

B.     **Classes of Claims and Equity Interests**

1.     **Secured Claims**

Class 1 consists of Holders of Secured Claims. For purposes of Distributions under the Plan, each Holder of a Secured Claim is considered to be in its own separate subclass within Class 1 and each such subclass is deemed to be a separate class for purposes of the Plan.

The following chart lists all classes of Secured Claims and their treatment under the Plan. The listing of any Creditor or Lien on the following chart does not constitute an admission or acknowledgment of the validity of any Claim or Lien against the Debtor's Estate or Assets. The Claim amounts are estimated, may include Disputed Claim amounts, and were based on: (a)  the amounts that were listed on the Debtor's Schedules; (b)  the amounts listed in documents filed in the Case; or (c) the amounts listed in the proof of Claim filed by the Creditors. During the Case, the amounts owed to Secured Creditors may have changed and may continue to change based on payments made and/or the accrual of interest or other charges.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1-A | Secured Claim of: Citibank, N.A.<br><br>Approx. Claim Amount (Basis): $11,537,500.00 (Schedules)<br><br>Nature of Lien and Collateral: First deed of trust on the Real Property | No.<br><br>This Creditor is not entitled to vote on the Plan. | This Creditor does not have a Claim against the Debtor, only against the Real Property. In the event that the sale of the Real Property does not result in the full payment of the amounts owed to this Creditor, this Creditor will not be entitled to any deficiency Claim against the Estate. |
| 1-B | Secured Claim of: White Mountain Capital, Inc.<br><br>Approx. Claim Amount (Basis): $7,185,291.07 (Dkt. No. 194)<br><br>Nature of Lien and Collateral: Second deed of trust on the Real Property | Yes.<br><br>This Creditor is entitled to vote on the Plan. | This Creditor does not have a Claim against the Debtor, only against the Real Property. This Creditor shall be paid in a manner consistent with the Order Granting Amended Motion for Approval of Amended Stipulation Resolving Creditor's Motion for Relief from the Automatic Stay by and between White Mountain Capital, Inc. and Debtor, Simba IL Holdings, LLC [Dkt. No. 194]. In the event that the sale of the Real Property does not result in the full payment of the amounts owed to this Creditor, this Creditor will not be entitled to any deficiency Claim against the Estate. |
| 1-C | Secured Claim of: Bryan Gadol<br><br>Approx. Claim Amount (Basis): $11,256,049.63 (Claims Dkt. No. 17)<br><br>Nature of Lien and Collateral: Prejudgment liens against the Assets | Yes.<br><br>This Creditor is entitled to vote on the Plan. | The Allowed Secured Claim of this Creditor will be paid from the proceeds of any liquidation of the Assets subject to priority. To the extent that the proceeds from the Assets are insufficient to pay the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency.<br><br>The Debtor is finalizing a settlement agreement with this Creditor subject to Court approval. If approved, this Creditor shall be paid in a manner consistent with such agreement and the Debtor shall amend the Plan accordingly. |
| 1-D | Secured Claim of: Darren Testa<br><br>Approx. Claim Amount (Basis): $8,146,481.53 (Claims Dkt. No. 18)<br><br>Nature of Lien and Collateral: Prejudgment liens against the Assets | Yes.<br><br>This Creditor is entitled to vote on the Plan. | The Allowed Secured Claim of this Creditor will be paid from the proceeds of any liquidation of the Assets subject to priority. To the extent that the proceeds from the Assets are insufficient to pay the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency.<br><br>The Debtor is finalizing a settlement agreement with this Creditor subject to Court approval. If approved, this Creditor shall be paid in a manner consistent with such agreement and the Debtor shall amend the Plan accordingly. |

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1-E | Secured Claim of: Lugano Buyer, Inc.<br><br>Approx. Claim Amount (Basis): Undetermined (Claims Dkt. No. 10)<br><br>Nature of Lien and Collateral: Pledge of 338,235 shares of Lugano Holding, Inc. pursuant to Pledge Agreement dated 9/3/2021. | No.<br><br>This Creditor is not entitled to vote on the Plan. | To the extent that this Claim is ultimately Allowed, this Creditor will be entitled to enforce its rights against the subject collateral. To the extent that the collateral is insufficient to satisfy the Allowed Secured Claim in full, this Creditor shall be granted an Allowed General Unsecured Claim for any deficiency. |

## 2.    Priority Non-Tax Claims

Class 2 consists of Holders of Priority Non-Tax Claims. Priority Non-Tax Claims are claims that are referred to in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), and 507(a)(7) of the Bankruptcy Code which are required to be placed in classes.

The Debtor is not aware of any Priority Non-Tax Claims against the Estate. In the event that it is determined there are Allowed Priority Non-Tax Claims, such Claims shall be paid in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

## 3.    General Unsecured Claims

Class 3 consists of Holders of General Unsecured Claims. The following chart identifies the Plan's treatment for Class 3 General Unsecured Claims:

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims | Yes.<br><br>Holders of Allowed Claims in this class are entitled to vote on the Plan. | Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Distributions from the Trust. Distributions to Holders of Allowed General Unsecured Claims shall be paid from the proceeds of the liquidation of any Assets after payment of applicable Allowed Secured Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Trust Expenses. |

## 4.    Equity Interests

Class 4 consists of Holders of Equity Interests. The following chart identifies the Plan's treatment of Holders of Equity Interests:

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | Holders of Equity Interests<br><br>Mordechai H. Ferder & Edit F. Ferder, as community property (99%)<br><br>Edit F. Ferder, Trustee of THE RF 2021 IRREVOCABLE TRUST, dated August 30, 2021 (1%) | Yes.<br><br>Deemed to reject. | Upon the Effective Date, all Equity Interests in the Debtor shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed discharged, released and/or satisfied as to the Debtor. Following the Effective Date, the Trustee will be authorized to execute and file on behalf of Holders of Equity Interests any documents or forms as may be necessary or appropriate to implement this provisions of the Plan. |

## IV.    MEANS FOR IMPLEMENTATION OF PLAN

### A.    Implementation and Funding of the Plan

The Plan will be implemented by the Trust in a manner consistent with the terms and conditions set forth in this Plan, the Confirmation Order, and the Trust Agreement.

Importantly, the Debtor anticipates that any payments required to be made on or before the Effective Date under the Plan are minimal (if any) and may be funded from available Cash on hand or upon the disposition of Assets. All Distributions to Holders of Allowed Claims after the Effective Date shall be funded exclusively from the proceeds from the disposition of Trust Assets.

### B.    The Trust

#### 1.    Purpose of the Trust

The Trust shall be established to administer certain post-Effective Date responsibilities under the Plan including, but not limited to: (i) reviewing, reconciling, allowing, objecting to, and resolving all Claims, (ii) making Distributions to Holders of Allowed Claims, (iii) prosecuting, settling, and resolving Causes of Action, (iv) liquidating Trust Assets, and (v) otherwise administering Trust Assets.

#### 2.    Execution of the Trust Agreement

On the Effective Date, Richard Marshack shall be appointed as Trustee of the Trust. On the Effective Date, the Debtor and the Trustee shall execute the Trust Agreement and shall take all steps necessary to establish the Trust in accordance with the Plan and the beneficial interests therein. In

the event of any conflicts between this Section IV(B) and the terms of the Trust Agreement, the terms of the Trust Agreement shall control.

### 3. **Creation and Governance of the Trust**

On the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred all rights, title, and interest in and to all of the Trust Assets to the Trust. The Trust shall be governed by the Trust Agreement and administered by the Trustee. The Trust shall hold and distribute the Trust Assets in accordance with the provisions of this Plan and the Trust Agreement. After the Effective Date, the Debtor shall have no interest in the Trust Assets.

The Trustee shall be the exclusive Trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all Trust Assets. The appointment of the Trustee shall be approved in the Confirmation Order and effective as of the Effective Date.

The powers, rights, and responsibilities of the Trustee shall be specified in the Trust Agreement and shall include, but are not limited to, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Trust Assets; (b) file tax returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Debtor, the Estate, and the Trust to the extent payable consistent with the Plan, the Bankruptcy Code or order of the Bankruptcy Court; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Trust Assets; (d) calculate and implement Distributions of Trust Assets; (e) investigate, prosecute, compromise, and settle all Causes of Action; (f) address and resolve issues involving objections, reconciliation and allowance of Claims in accordance with this Plan; and (g) undertake all administrative functions of the Plan and the Case, including the payment of fees payable to the UST and the ultimate closing of the Case.

### V. **CLAIMS ADMINISTRATION, CAUSES OF ACTION, AND DISTRIBUTIONS**

### A. **Resolution of Disputed Claims**

Notwithstanding anything to the contrary herein, except insofar as a Claim is Allowed under the Plan on or after the Effective Date, the Trustee will have the authority to do any of the following

with respect to any Claims: (1) file, withdraw or litigate to judgment objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

The Trustee shall be the successor to any pending objections to Claims filed by the Debtor prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.  For the avoidance of doubt, the Trustee shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Trustee's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the Holders of Allowed Claims.

All objections to Claims must be Filed and served on or before the expiration of the Claim Objection Deadline, as such deadline may be extended from time to time on motion of the Trust Filed before the expiration of the Claim Objection Deadline.

Pursuant to section 502(c) of the Bankruptcy Code, the Debtor or the Trust, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

**B.    Preservation of Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, and the Trust's rights to commence, prosecute, or settle such Causes of Action.

No Person or Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Trustee will not pursue any and all available Causes of Action. The Trust expressly reserves all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action of the Debtor are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Trust expressly preserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral

estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation of the Plan.

**C.    <u>Distributions</u>**

The Trust shall be responsible for making Distributions under the Plan. The Trust, by and through the Trustee, shall only be required to act and make Distributions in accordance with the terms of the Plan

(a) <u>No Liability</u>.  Except on account of gross negligence, fraud, illegality or willful misconduct, neither the Trust nor the Trustee shall have any (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim against the Debtor on any date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

(b) <u>Distributions on Account of Disputed Claims</u>.  Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Trust at such periodic intervals as the Trustee determines to be reasonably prudent.

(c) <u>No Distributions Pending Allowance</u>.  Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Trustee, no Distribution shall be made to any Entity that holds both an Allowed Claim and a Disputed Claim until such Entity's Disputed Claim becomes an Allowed Claim.

(d) <u>Distribution Reserve</u>.  On and after the Effective Date, the Trust shall maintain in reserve such Cash from the applicable distributable Trust Assets as the Trustee deems reasonably necessary to satisfy Disputed Claims, which reserves may be merely bookkeeping entries.

(e) <u>Distributions in Cash</u>.  Any required Cash payments to the Holders of Allowed Claims shall be made by the Trust: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic

1    bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other

2    equivalent or superior means as determined by the Trustee).

3    (f) <u>Timing of Distributions</u>.  Except as specifically set forth in the Plan, the Trustee may

4    determine, in its discretion, the appropriate timing, amount, and cadence for Distributions.

5    (g) <u>Unclaimed Distributions</u>. Any Entity which fails to claim any Cash within ninety (90) days

6    from the date upon which a Distribution is first made to such Entity shall forfeit all rights to

7    any Distribution under the Plan, and the Trust shall be authorized to cancel any Distribution

8    that is not timely claimed.  Pursuant to section 347(b) of the Bankruptcy Code, upon

9    cancellation, such Cash (including interest thereon, if any) shall revert to the source of such

10    Distribution free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy

11    Rules.  Upon cancellation, (i) the claim of any Creditor or Equity Interest Holder with respect

12    to such funds shall be irrevocably waived and forever barred against the Debtor and the

13    Estate, notwithstanding any federal or state escheat laws to the contrary; and (ii) such

14    Distribution shall revert to the Trust for Distribution on account of other Allowed Claims.

15    (h) <u>Delivery of Distributions</u>: Except as otherwise provided in the Plan, Distributions to Holders

16    of Allowed Claims shall be made to Holders of record as of the Confirmation Date by the

17    Trust, as set forth on the latest date of the following documents: (a) the address of payment

18    set forth on the applicable proof of Claim Filed by such Holder; (b) the address reflected in

19    the Schedules if no proof of Claim has been Filed, and (c) the address set forth in any written

20    notices of address changes delivered to the Debtor or the Trustee, as applicable.

21    (i) <u>Undeliverable Distributions</u>.  The Trustee shall make one attempt to make the Distributions

22    contemplated hereunder in accordance with the procedures set forth herein.  The Trustee, in

23    its sole discretion may, but shall have no obligation to, attempt to locate Holders of

24    undeliverable or unclaimed Distributions. Any Distributions returned to the Trust as

25    undeliverable or are otherwise unclaimed shall remain in the possession of the Trust until

26    such time as a Distribution becomes deliverable or claimed, and no further Distributions

27    shall be made to such Holder unless such Holder notifies the Trustee of its then current

28    address.  Any Holder of an Allowed Claim entitled to a Distribution of property under this

Plan that does not assert a claim pursuant to the Plan for an undeliverable Distribution, or notify the Trustee of such Holder's then current address, within ninety (90) days of such Distribution shall have its claim for such undeliverable Distribution irrevocably waived and shall be forever barred from asserting any such claim against the Debtor or their respective property, and such Distribution shall be deemed unclaimed Distributions. After final Distributions have been made in accordance with the terms of the Plan, if the Trustee determines that the aggregate amount of unclaimed Distributions is too impracticable to redistribute to Holders of Allowed Claims, the Trust shall be authorized to donate such Cash to a charitable organization of its choosing.

(j) <u>Transfer of Claims</u>.  As of 5:00 p.m. (prevailing Pacific Time) on the Confirmation Date, the Trust shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (prevailing Pacific time) on the Confirmation Date.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Pacific time) on the Confirmation Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Confirmation Date.

(k) <u>Defenses and Setoff</u>.  Nothing contained in this Plan shall constitute a waiver or release by the Debtor or the Trust of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment.  To the extent permitted by applicable law, the Trust may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, against claims of any nature whatsoever that arose before the Petition Date that the Estate or the Debtor may have against the Holder of such Claim.

(l) <u>Compliance with Tax Requirements</u>.  Notwithstanding anything to the contrary in this Plan, the Trust shall be entitled to deduct any federal, state or local withholding taxes from any

Distributions made with respect to Allowed Claims, as appropriate. The Trust shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any Distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence will be deemed to have been distributed and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental entity, including income, withholding and other tax obligation, on account of such Distribution. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest on such Claim after the Petition Date. The Trust shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Trust as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Trust with an executed Form W-9, Form W-8 or other requested tax form within ninety (90) days after the date of the initial request, the Trust may, in its sole discretion (a) make such Distribution net of applicable withholding or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution, for distribution on account of other Allowed Claims and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Trust reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

1    (m) <u>De Minimis Distributions</u>.  If any Distribution under the Plan to the Holder of an Allowed

2    Claim would be less than $50.00, the Trust may hold such Distribution until the time of a

3    subsequent or final Distribution.

### VI.    OTHER PROVISIONS OF THE PLAN

**A.    Executory Contracts and Unexpired Leases**

The Debtor is not aware of any unexpired leases or executory contracts. For the avoidance of doubt, any unexpired leases or executory contracts to which the Debtor is a party will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. For the further avoidance of doubt, in the event any of the agreements related to the Debtor's investment accounts are deemed to be an executory contract or unexpired lease, the Debtor shall not be deemed to reject such agreement(s) by virtue of this Plan.

**B.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of rates.  The Debtor is not regulated by a governmental commission.

**C.    Exculpation**

The Exculpated Parties shall neither have, nor incur, any liability[2] to any Person or Entity for any act taken or omitted to be taken in connection with, relating to, or arising out of, the Debtor's Case, formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, the disclosure statement, the administration of the Plan or the property to be distributed under the Plan or related to the issuance, distribution, and/or sale of any security, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; provided, however, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or

---

[2]  Including liability arising under the Bankruptcy Code and non-bankruptcy law, and any subordination, alter ego, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties.

1  omission is determined by a Final Order to have constituted fraud, willful misconduct, gross

2  negligence, bad faith, self-dealing or breach of duty of loyalty.

3  **D.    Retention of Jurisdiction**

4  Until this Plan has been fully consummated, the Bankruptcy Court shall retain jurisdiction

5  to the extent provided by law, including, but not limited to, the following purposes:

6  1.    The classification, allowance, disallowance, or estimation of any Claim and the re-

7  examination of Claims which have been Allowed for the purposes of determining acceptance of the

8  Plan at the time of the Confirmation Hearing and the determination of such objections as may be

9  filed to Claims.  The failure by the Debtor to object to or to examine any Claim for the purpose of

10  determining acceptance of this Plan shall not be deemed to be a waiver of the right of the Trustee to

11  object to or to re-examine the Claim, in whole or in part, at a later date.

12  2.    Except as otherwise provided herein, the determination of all questions and disputes

13  regarding title to the assets of Debtor or the Estate and the determination of all Causes of Action,

14  controversies, disputes, or conflicts, whether or not subject to any action pending as of the

15  Confirmation Date, in which the Debtor or the Trust are a party.

16  3.    The correction of any defect, the curing of any omission, or the reconciliation of any

17  inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes

18  and intent of the Plan.

19  4.    The resolution of any motions, adversary proceedings, contested or litigated matters

20  and any other matters and grant or deny any applications involving the Debtor or the Estate that may

21  be pending on the Effective Date.

22  5.    The modification of the Plan after confirmation pursuant to the Bankruptcy Code and

23  the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this

24  Plan even after the Plan has been substantially consummated.

25  6.    The enforcement and interpretation of the terms and conditions of the Plan or the

26  Confirmation Order, and the determination of such matters, and the making of such orders consistent

27  with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

28

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7.      The determination, either before or after the closing of this Case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtor's, or the Estate's entitlement, if any, to tax attributes which may have been property of the Estate, either before or after the closing of this Case.

8.      The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

9.      The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Trust or Trustee and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.      The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the Case.

11.      The determination of the validity, extent, or priority of any Liens and security interests against property of the Debtor, the Estate, or the Trust.

12.      The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtor or the Estate, whether such action or proceeding is brought before or after the Effective Date.

13.      The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate.

14.      The determination of all questions and disputes regarding collection of assets of Debtor or the Estate as of the Confirmation Date.

15.      The entry of an order concluding and terminating the Case.

16.      Such other matters to the extent provided by law.

## VII.    EFFECT OF CONFIRMATION OF THE PLAN

### A.    Conditions Precedent to Confirmation

Unless otherwise waived by the Debtor, conditions to confirmation of the Plan include entry of the Confirmation Order in a form acceptable to the Debtor that provides for, among other things, the following:  (i) approval of all transactions, agreements and documents to be effected pursuant to

the Plan; (ii) authorization of the Debtor to execute all documents reasonably necessary to effectuate the terms of the Plan; (iii) approval of the injunctions, and exculpations granted in the Plan; (iv) a finding that the Plan complies with all applicable provisions of the Bankruptcy Code including that the Plan was proposed in good faith.

**B.**     **Conditions Precedent to the Effective Date**

Unless otherwise waived by the Debtor, conditions precedent to the Effective Date that must be satisfied include: (i) the Confirmation Order is entered and not stayed; (ii) all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained; (iii) the Trust Agreement is executed; (iv) the Trustee is appointed; and (v) the Trust Assets are transferred.

**C.**     **Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan.

The Debtor, and/or the Trustee may also seek to modify the Plan at any time after confirmation only if (i) the Plan has not been substantially consummated <u>and</u> (ii) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**D.**     **Substantial Consummation**

Upon the Effective Date, the Plan will be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

Respectfully submitted,

Dated:  February 13, 2026          **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**


 /s/ Max Casal
Leonard M. Shulman
James C. Bastian, Jr.
Alan J. Friedman
Max Casal
General Counsel for the Debtor

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled **CHAPTER 11 PLAN OF LIQUIDATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 13, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On February 13, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Mark M. Houle
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C
Santa Ana, CA 92701-4593

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2026 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| Date | Printed Name | Signature |

**ADDITIONAL SERVICE INFORMATION (if needed):**

## NEF SERVICE LIST

- Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- Greg P Campbell    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Max Casal    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- John B Connor    jack@johnbconnor.com
- Matthew Tyler Davis    tdavis@kbkllp.com
- Karol K Denniston    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Alan J Friedman    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- George Gerro    george@gerrolaw.com
- Michael D Good    mgood@southbaylawfirm.com
- Christopher J Harney    charney@tocounsel.com, kmanson@tocounsel.com
- Paul Jasper    pjasper@perkinscoie.com, david.kline@rimonlaw.com
- Steven J. Katzman    skatzman@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- Tobias S Keller    tkeller@kellerbenvenutti.com
- Jordan A Kroop    jkroop@pszjlaw.com, rleibowitz@perkinscoie.com
- Mette H Kurth    mette.kurth@pierferd.com, mette-kurth-7580@ecf.pacerpro.com
- Wendy A Locke    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Richard A Marshack    rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- Ali M. Mojdehi    ali.mojdehi@mgr-legal.com
- John Morris    jmorris@pszjlaw.com
- Dakota Pearce    dpearce@buchalter.com, pjolley@buchalter.com;smartin@buchalter.com;docket@buchalter.com
- Matthew D Pham    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Allison M. Rego    allison.rego@mgr-legal.com
- Stacy H Rubin    shr@h2law.com, kmcgee@howardandhoward.com
- Traci L Shafroth    tshafroth@kbkllp.com, jminga@kbkllp.com
- Leonard M. Shulman    lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- Timothy J Silverman    tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

## UNITED STATES MAIL SERVICE LIST

**Debtor**
**Simba IL Holdings, LLC**
**610 Newport Center Drive, Suite 950**
**Newport Beach, CA 92660-6473**

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**Simba IL Holdings, LLC**
**Attn: Richard Marshack, CRO**
**870 Roosevelt**
**Irvine, CA 92618**

**Office of the U.S. Trustee**
**Attn: Queenie K. Ng**
**411 West Fourth Street, Suite 7160**
**Santa Ana, CA 92701**

**Securities & Exchange Commission**
**444 South Flower St., Suite 900**
**Los Angeles, CA 90071-2934**

**U.S. Securities and Exchange Commission**
**Attn: Nishchay Maskay**
**Senior Counsel, Division of Enforcement**
**100 F Street, NE**
**Washington, DC 20549**