Leonard M. Shulman – Bar No. 126349
James C. Bastian, Jr. – Bar No. 175415
Alan J. Friedman – Bar No. 132580
Max Casal – Bar No. 342716
**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email:       lshulman@shulmanbastian.com
             jbastian@shulmanbastian.com
             afriedman@shulmanbastian.com
             mcasal@shulmanbastian.com

General Counsel for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>**SIMBA IL HOLDINGS, LLC., a Delaware limited liability company,**<br><br>                    Debtor. | Case No. 8:25-bk-12616-MH<br><br>Chapter 11<br><br>**DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED OR CONVERTED; AND DECLARATIONS OF MAX CASAL AND RICHARD A. MARSHACK IN SUPPORT THEREOF**<br><br>**<u>Hearing Date</u>:**<br>Date:   May 26, 2026<br>Time:   1:30 p.m.<br>Place:  6C<br>             411 West Fourth Street<br>             Santa Ana, CA 92701 |

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND .......................................................1

    A.    The Case ..................................................................................................1

    B.    The OSC and Procedural History Giving Rise Thereto ...........................2

        1.    Counsel Lodged an Order that Inadvertently Recharacterized Deadlines as Hearing Dates, Which the Court Entered Without Modification ................................................................2

        2.    The Debtor Files a Motion to Continue the Dates and Deadlines Related to Plan Confirmation Which is Denied by the Court ......................3

        3.    The Debtor Files the Plan and Disclosure Statement and Notices the Hearing on Adequacy of the Disclosure Statement in Compliance with the Original Scheduling Order ......................................4

        4.    The Debtor Files Two Stipulations to Continue the Disclosure Statement Hearing Which are Granted by the Court....................................4

        5.    The Court Enters the OSC Based, in Part, Upon the Mistake Leading to the Original Scheduling Order ................................................6

        6.    Pending Approval of the Disclosure Statement and Confirmation of the Plan, the Debtor Takes Other Actions to Resolve the Case ...................7

III.   ARGUMENT ......................................................................................................8

    A.    Legal Standard for Conversion or Dismissal ............................................8

    B.    Cause Does Not Exist to Dismiss or Convert the Case Under Section 1112(b)(1)..................................................................................................9

        1.    The Debtor's Failure to Comply with the Court's Ruling Was the Result of Excusable Neglect .................................................................9

        2.    The Other Factors Raised by the Court Do Not Amount to Sufficient Cause ................................................................................10

    C.    Conversion or Dismissal of the Case is Not Permissible Under Section 1112(b)(2)................................................................................................14

        1.    Neither Conversion nor Dismissal is in the Best Interest of Creditors ........14

        2.    The Other Requirements of Section 1112(b)(2) are Satisfied.....................16

IV.    CONCLUSION .................................................................................................18

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

TABLE OF AUTHORITIES

CASES                                                                                                    PAGE

**Cases**

*Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*,
 283 B.R. 549, 560 (B.A.P. 9th Cir. 2002) ................................................................. 13

*Baroni v. Seror (In re Baroni)*,
 36 F.4th 958, 965 (9th Cir. 2022) ............................................................................... 8

*Baroni*,
 36 F.4th at 968-969 .................................................................................................. 14

*In re Buckner*,
 218 B.R. 137, 149 (B.A.P. 10th Cir. 2012) ............................................................... 11

*In re Costa Bonita Beach Resort*,
 479 B.R. 14, 43 (Bankr. D. P.R. 2012) ..................................................................... 14

*In re Cwnevada LLC*,
 602 B.R. 717, n.29 (Bankr. D. Nev. 2019) ............................................................... 16

*In re Delta AG Grp, LLC*,
 596 B.R. 186, 198 (Bankr. W.D. La. 2019) ............................................................... 17

*In re Express Grain Terminals, LLC*,
 2022 Bankr. LEXIS 945, *38 (Bankr. N.D. Miss. 2022) ........................................... 17

*In re GPA Technical Consultants, Inc.*,
 106 B.R. 139, 142 (Bankr. S.D. Ohio 1989) ............................................................ 14

*In re International Wireless Communs. Holdings, Inc.*,
 1999 Bankr. LEXIS 1853 (Bankr. D. Del. 1999) ...................................................... 10

*In re Keeley & Grabanski Land P'ship*,
 460 B.R. 520, 536 (Bankr. D. N.D. 2011) ................................................................ 14

*In re Modern VideoFilm*, Inc.,
 2019 Bankr. LEXIS 3317, *14 (Bankr. C.D. Cal. 2019) ........................................... 10

*In re Plant Insulation*,
 469 B.R. 843, 863 (Bankr. N.D. Cal. 2012) ............................................................. 10

*In re Prods. Int'l Co.*,
 395 B.R. 101, 109 (Bankr. D. Ariz. 2008) ................................................................ 14

*In re St. Louis Globe-Democrat*,
 63 B.R. 131, 138 (Bankr. E.D. Mo. 1985) ................................................................ 10

*In re Sterling WH Co., LLC*,
 475 B.R. 481, 485 (Bankr. E.D. Va. 2012) ............................................................... 17

*In re W. J. Rewoldt Co.*,
 22 B.R. 459, 462 (Bankr. E.D. Mich. 1982) ............................................................. 10

*In re Woodbrook Assocs.*,
 19 F.3d 312, 322 (7th Cir. 1994) ............................................................................. 11

*Modern VideoFilm,*
 2019 Bankr. LEXIS 3317 ................................................................................... 14, 15

*Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem. Hosp. (In re Henry Mayo Newhall Mem. Hosp.)*,
 282 B.R. 444, 457 (B.A.P. 9th Cir. 2002) ................................................................. 11

*Sullivan v. Harnisch (In re Sullivan)*,
 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014) ................................................................. 14

**Statutes**

§ 1112(b)(4)(J) ................................................................................................................ 9
11 U.S.C. § 1112 ............................................................................................................. 8
11 U.S.C. § 1112(b)(2) .................................................................................................... 8
11 U.S.C. § 1112(b)(4)(E) ................................................................................................ 9
11 U.S.C. 1127(a) .......................................................................................................... 13

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

11 U.S.C. 326(a).................................................................................................................. 16
1112(b)(2)........................................................................................................................... 16
Section 1112(b)(1)................................................................................................................ 8
Section 1112(b)(2)........................................................................................................... 8, 14
Section 1112(b)(2)(A)......................................................................................................... 17
sections 1112(b)(4)(E) and (J)............................................................................................ 17

**Rules**
Federal Rule of Civil Procedure 60(b)(1) ............................................................................ 2

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Simba IL Holdings, LLC, the debtor and debtor in possession herein (the "Debtor"), hereby submits this response (the "Response") to the Order to Show Cause Why Case Should Not be Dismissed or Converted [Dkt. No. 299] (the "OSC"), and respectfully submits as follows:

## I.    INTRODUCTION

The Debtor respectfully submits that neither conversion nor dismissal is warranted. At all times during the Case,[1] the Debtor has acted in good faith and with the reasonable belief that it was proceeding in accordance with the Court's directives and with the Court's approval. Since inception, the Debtor has actively engaged with creditors and interested parties, filed its Plan and Disclosure Statement,  and continued its efforts to maximize the value of its assets for the benefit of creditors. While the Debtor's strategy has evolved as the Case has developed, such evolution reflects the Debtor's efforts to achieve a fair and consensual resolution of the Case – not cause for conversion or dismissal.

Even if the Court determines that cause exists, conversion or dismissal would not be in the best interests of creditors or the estate. The Debtor and its professionals are already familiar with the facts and circumstances surrounding the Case. Conversion or dismissal would risk duplicative expense, disruption of a pending settlement, and reduced recoveries for creditors. Accordingly, the Debtor respectfully requests that the Court discharge the OSC and permit the Case to proceed in chapter 11.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Case

On September 16, 2025, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing this chapter 11 case (the "Case").

The Debtor is a limited liability company organized under the laws of the State of Delaware. The Debtor is a holding company and its main assets are a portfolio of investments (the "Alternative Investments") and real property located at 1220 Red Butte Dr, Aspen, Colorado 81611 (the "Real

---

[1] All capitalized terms not otherwise defined in this section shall have the meaning set forth below.

Property"). The Debtor also owns an approximate 35% stake in an entity that owns the entirety of Lugano Diamonds & Jewelry Inc. ("Lugano").

**B.      The OSC and Procedural History Giving Rise Thereto**

On April 30, 2026, the Court entered the OSC based, at least in part, on the Debtor's failure to comply with the deadlines memorialized in the Amended Scheduling Order (defined below).

Prior to filing this Response, on May 5, 2026, the Debtor filed the Debtor's Motion for Order Granting Relief Pursuant to Federal Rule of Civil Procedure 60(b)(1), or, in the Alternative, Extending the Deadlines in the Amended Scheduling Order [Dkt. No. 306] (the "Motion for Relief"). The Motion for Relief seeks entry of an order granting the Debtor relief from the procedural consequences of its failure to comply with the deadlines set forth in the Amended Scheduling Order based on excusable neglect arising from an inadvertent mistake by Debtor's counsel. The Debtor expressly incorporates by reference the Motion for Relief and the evidence filed in support thereof.

As set forth in the Motion for Relief, the procedural history of the Case giving rise to the OSC is as follows (Motion for Relief, 7:4-12:27):

1.      **Counsel Lodged an Order that Inadvertently Recharacterized Deadlines as Hearing Dates, Which the Court Entered Without Modification**

On November 18, 2025, a case management conference was held before the Court (the "Case Management Conference"). A true and correct copy of a transcript of the Case Management Conference (the "CMC Transcript") is attached to the Declaration of Max Casal in support of the Motion for Relief as Exhibit A.

At the Case Management Conference, the Court: (i) stated that the parties would discuss the claims bar date to be set in the Case "as well as plan and disclosure statement, filing dates, and approval dates" (CMC Transcript, 19:8-14) and (ii) asked Debtor's counsel for "a scheduling order…by the end of [the] week with all of [the] dates that we're going to agree on right now" (CMC Transcript, 21:15-17).

Thereafter, the Court made the following oral ruling regarding dates related to plan confirmation: "…the plan and disclosure statement are to be filed by February 13th, '26. I'll set a

deadline of disclosure statement approval of February 13th. Let's go to March 31st. And a plan confirmation deadline of, let's go to May 26th." CMC Transcript, 23:16-21.

When asked if he had "all of those dates," counsel for the Debtor responded: "I'll reconfirm them right now, Your Honor. So  the deadline to file a plan is February 13th. The claims bar date will be December 19th. The deadline to file a disclosure statement is March 31st. And the deadline for plan confirmation is May 26th." CMC Transcript, 23:23-24:2. In response, the Court said "Right… The scheduling order has to be lodged by this Friday." CMC Transcript, 24:3-8.

As reflected by the CMC Transcript, Debtor's counsel misunderstood the manner in which the dates were to be reflected in the written order. Indeed, in translating the oral exchange from the Case Management Conference into a proposed scheduling order, Debtor's counsel mistakenly characterized the deadlines as hearing dates.

Notwithstanding the foregoing, the proposed scheduling order was subsequently entered by the Court without any modifications [Dkt. No. 141] (the "Original Scheduling Order").

In relevant part, the Original Scheduling Order provides the following dates and deadlines related to disclosure statement approval and plan confirmation:

"The Court hereby sets the following deadlines and hearing dates with respect to plan confirmation:

a. The deadline to file its chapter 11 plan and disclosure statement is February 13, 2026;

b. A hearing on a motion for approval of adequacy of the Debtor's disclosure statement shall be held on March 31, 2026 at 2:30 p.m.

c. A hearing on confirmation of the Debtor's chapter 11 plan shall be held on May 26, 2026 at 2:30 p.m."

Original Scheduling Order, 2:5-13

2.    **The Debtor Files a Motion to Continue the Dates and Deadlines Related to Plan Confirmation Which is Denied by the Court**

Following entry of the Original Scheduling Order, on February 5, 2026, the Debtor filed a Motion to Continue Deadlines Related to Plan Confirmation [Dkt. No. 222] (the "Motion to Continue"). The Motion to Continue was premised upon the Debtor's reliance on the Original

Scheduling Order, restated the hearing dates related to approval of the adequacy of the Debtor's disclosure statement and confirmation of the Debtor's chapter 11 plan set forth therein (Motion to Continue, 2:14-20), and requested that the Court continue such dates to allow the Debtor to market and sell the Real Property, investigate the Alternative Investments, and resolve outstanding disputes with creditors (Motion to Continue, 3:1-13).

On February 9, 2026, the Court entered an order denying the Motion to Continue without prejudice [Dkt. No. 223] ("Order Denying Motion to Continue") on the grounds that "the Court [found] the evidentiary support for the request to extend deadlines vague and conclusory… specifically as to reasons why plan and disclosure deadlines should be extended." Order Denying Motion to Continue, 1:24-2:1. The Order Denying Motion to Continue did not identify any issues with the characterization of the dates in the Original Scheduling Order.

3. **The Debtor Files the Plan and Disclosure Statement and Notices the Hearing on Adequacy of the Disclosure Statement in Compliance with the Original Scheduling Order**

After entry of the Order Denying Motion to Continue and in accordance with the Original Scheduling Order, the Debtor filed its Chapter 11 Plan of Liquidation [Dkt. No. 229] (the "Plan") and its Disclosure Statement in Support of Chapter 11 Plan of Liquidation [Dkt. No. 228] (the "Disclosure Statement") on February 13, 2026.

Thereafter, on February 17, 2026, the Debtor filed its Motion to Approve Adequacy of the Debtor's Disclosure Statement in Support of Chapter 11 Plan of Liquidation [Dkt. No. 230]  and noticed the hearing on approval of the Disclosure Statement (the "Disclosure Statement Hearing") for March 31, 2026 [Dkt. No. 231]. Based thereon, the Debtor not only complied with the Original Scheduling Order as entered but also within the timelines contemplated by the Court at the Case Management Conference.

4. **The Debtor Files Two Stipulations to Continue the Disclosure Statement Hearing Which are Granted by the Court**

Prior to the Disclosure Statement Hearing, the Debtor received informal comments to the Disclosure Statement from certain parties, including Lugano, Compass Group Diversified Holdings

LLC ("CODI"), and the Official Committee of Creditors of Lugano Diamonds & Jewelry Inc. (the "Lugano Committee").

In response to those comments, the Debtor agreed with the foregoing parties to continue the Disclosure Statement Hearing to allow the parties to attempt to reach a consensual resolution and filed the Stipulation for Order Continuing (1) the Hearing on the Motion to Approve Adequacy of the Debtor's Disclosure Statement in Support of Chapter 11 Plan of Liquidation and (2) Related Deadlines [Dkt. No. 270] (the "First Stipulation") on March 18, 2026. Given the existence of the Original Scheduling Order, Debtor's counsel had no reason to listen to or review the transcript of the Case Management Conference.

On that same day, the Court entered an order approving the First Stipulation [Dkt. No. 272] (the "First Stipulation Order") which continued the Disclosure Statement Hearing to "April 28, 2026 at 2:30 p.m." First Stipulation Order, ¶ 2.

After entry of the First Stipulation Order, the Debtor exchanged comments and drafts of a revised Disclosure Statement with the relevant parties, received further comments, and CitiMortgage Inc. filed an objection to approval of the Disclosure Statement [Dkt. No. 277]. Based on the foregoing, the Debtor filed a second Stipulation for Order Continuing (1) the Hearing on the Motion to Approve Adequacy of the Debtor's Disclosure Statement in Support of Chapter 11 Plan of Liquidation and (2) Related Deadlines [Dkt. No. 281] (the "Second Stipulation" and collectively with the First Stipulation, the "Stipulations to Continue") on April 24, 2026 to permit the Debtor to consensually resolve all of the issues raised by the objecting parties. Again, because of the existence of the Original Scheduling Order and now, the First Stipulation Order, Debtor's counsel never reviewed the transcript of the Case Management Conference.

On April 24, 2026, the Court entered an order approving the Second Stipulation [Dkt. No. 283] (the "Second Stipulation Order" and collectively with the First Order, the "Orders Approving the Stipulations") which continued the Disclosure Statement Hearing to "July 7, 2026 at 1:30 p.m." Second Stipulation Order, ¶ 2.

In sum, the Debtor's current noncompliance with the deadlines imposed by the Court's oral ruling arose only as a result of the Stipulations to Continue and the Orders Approving the

Stipulations. Absent these continuances, the Debtor would have remained in a position to comply with the deadlines imposed by the Court's oral ruling, notwithstanding counsel's mistake.

5.     **The Court Enters the OSC Based, in Part, Upon the Mistake Leading to the Original Scheduling Order**

On April 27, 2026, the Court entered an Order Setting Hearing Re: Issuance of Scheduling Order [Dkt. No. 287] (the "Order Setting Hearing") and the hearing was held the following day (the "Scheduling Hearing").

At the Scheduling Hearing, the Court advised Debtor's counsel that the deadlines set at the Case Management Conference had been recharacterized in the Original Scheduling Order and that the Debtor was in default of those deadlines. The Order Setting Hearing and the Scheduling Hearing marked the first time that the Debtor and its counsel became aware that the Original Scheduling Order did not accurately reflect the Court's oral ruling.

On April 30, 2026, the Court entered the Scheduling Order Correcting Omitted Deadlines [Dkt. No. 296] (the "Amended Scheduling Order") which "formalized" the Court's oral ruling at the Case Management Conference by setting: (1) March 31, 2026 as the "deadline to approve a disclosure statement," and (2) May 26, 2026 as the "deadline to confirm a Chapter 11 plan." Amended Scheduling Order: 2:7-11.

In entering the Amended Scheduling Order, the Court noted that "Debtor's counsel lodged a proposed scheduling order that re-characterized the deadlines given at the case management conference as simply the dates of the hearings on approval of a disclosure statement and confirmation of a plan" and as "a result, there was no order on the docket that reflected the deadlines to approve a disclosure statement and confirm a plan, despite the Court having set such deadlines." Amended Scheduling Order, 1:26-2:2.

On April 30, 2026, the Court entered the OSC which provides that the Court "inadvertently entered" the Original Scheduling Order (OSC, 2:21) and "believes cause exists to convert the case to Chapter 7" (OSC, 4:5-6) based upon the Debtor's failure to comply with the deadlines memorialized in the Amended Scheduling Order and several other factors which are discussed below.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

6.    **Pending Approval of the Disclosure Statement and Confirmation of the Plan,**

**the Debtor Takes Other Actions to Resolve the Case**

The Plan is a liquidating plan which provides for the establishment of a liquidating trust as of the effective date of the Plan, the transfer of all remaining assets of the Debtor as of such date to the trust, and the liquidation of such assets to fund distributions under the Plan.

Pending approval of the Disclosure Statement and confirmation of the Plan, the Debtor filed a Motion for Order Approving Settlement [Dkt. No. 240] (the "9019 Motion") which seeks approval of a settlement agreement with Bryan Gadol and Darren Testa which substantially impacts the Plan and the Debtor's ability to effectuate the terms thereof. Specifically, the contemplated agreement resolves the complex issues pending between the Debtor and two of its largest creditors, provides for a substantial reduction of their asserted claims, creates sources of funds to support distributions to creditors of the Debtor's estate upon liquidation of the Real Property and Alternative Investments, and eliminates the risks, costs, and delays associated with litigation.

After the filing of the 9019 Motion, the Debtor received objections from CODI [Dkt. No. 252], Lugano [Dkt. No. 247], the Lugano Committee [Dkt. No. 250], White Mountain Capital Inc. [Dkt. No. 246], and Royal T. Diamonds Group Ltd. [Dkt. No. 251]. The Debtor has since filed two stipulations with the objecting parties [Dkt. Nos. 262, 278] to continue the hearing on the 9019 Motion to allow the parties to engage in targeted discovery and settlement negotiations which were subsequently approved by the Court [Dkt. Nos. 265, 279]. In accordance with such stipulations, the parties have engaged in substantive discovery, deposition practice, and negotiations in connection with the 9019 Motion. The hearing on the 9019 Motion is currently scheduled to go forward on July 7, 2026.

Importantly, the issues relevant to the 9019 Motion are also relevant to the Plan and Disclosure Statement and involve many of the same parties. For example, the contemplated settlement affects the feasibility and structure of the Plan, including the Debtor's ability to liquidate the Real Property and Alternative Investments and the manner in which the proceeds from such assets may be distributed to creditors. Therefore, the terms of any approved settlement agreement should be reflected in the Debtor's Disclosure Statement and Plan and the Debtor's efforts to resolve

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

the disputes raised in connection with the 9019 Motion are closely tied to approval of the adequacy of the Disclosure Statement and confirmation of the Plan. Candidly, if the 9019 Motion is not ultimately approved (whether it be for the existing settlement agreement or for a revised version which provides greater benefits for the estate), the Debtor believes it would be more difficult to confirm the Plan. However, assuming approval of the 9019 Motion, the Debtor believes it will be able to expeditiously move towards Plan confirmation.

## III.    ARGUMENT

### A.    Legal Standard for Conversion or Dismissal

As set forth by the Ninth Circuit, the standard for converting a chapter 11 case to chapter 7 is set out in 11 U.S.C. § 1112. *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 965 (9th Cir. 2022). "This statute provides that the bankruptcy court 'shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause.'" *Id.*

"However, even if cause is established, Section 1112(b)(2) prohibits a bankruptcy court from granting relief under Section 1112(b)(1) if the bankruptcy 'court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes'" that "(A) there is a reasonable likelihood that a plan will be confirmed within… a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A) – (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable time fixed by the court." *Id.*; 11 U.S.C. § 1112(b)(2).

Here, the Debtor requests that the Court discharge the OSC under both subsections (b)(1) and (b)(2) of section 1112 of the Bankruptcy Code.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

8

**B.    Cause Does Not Exist to Dismiss or Convert the Case Under Section 1112(b)(1)**

      1.    **The Debtor's Failure to Comply with the Court's Ruling Was the Result of Excusable Neglect**

As set forth in the OSC, "11 U.S.C. § 1112(b)(4)(E) provides that cause includes: 'failure to comply with an order of the court,' and § 1112(b)(4)(J) provides that cause includes: 'failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.'" OSC, 4:10-14.

By the Motion for Relief, the Debtor has requested entry of an order granting the Debtor relief from its failure to comply with an order of this Court and its failure to confirm a plan within the time fixed by the Court. As discussed in detail in the Motion for Relief, Debtor's counsel misunderstood how certain dates discussed at the Case Management Conference were to be reflected in the written scheduling order. As a result, certain deadlines were inadvertently described as hearing dates in the Original Scheduling Order, which was subsequently entered without modification.

Following entry of the Original Scheduling Order, the Debtor proceeded in good faith and in reliance on that order as entered. Importantly, notwithstanding counsel's mistake, the Debtor filed its Plan and Disclosure Statement and noticed the Disclosure Statement Hearing prior to the deadlines and dates imposed by both the Original Scheduling Order and the Court's oral ruling.

Only after the filing of the Stipulations to Continue and entry of the Orders Approving the Stipulations did the Debtor unknowingly violate the deadlines provided at the Case Management Conference. At that time, the Debtor reasonably believed that it was proceeding in accordance with the Court's scheduling and deadlines in light of the Orders Approving the Stipulations. As such, the Debtor made consistent efforts to comply with the Court's orders on the docket.

Under these circumstances, the procedural history giving rise to the OSC reflects an inadvertent mistake followed by reasonable reliance on the operative scheduling order in the Case – not bad faith or an intentional disregard of the Court's ruling. Accordingly, the Debtor submits that cause does not exist to convert the Case based on the Debtor's inadvertent failure to comply with the deadlines set by the Court.

2.      **The Other Factors Raised by the Court Do Not Amount to Sufficient Cause**

In addition to the Debtor's failure to comply with the oral ruling memorialized in the Amended Scheduling Order, the Court raises several other factors in support of the OSC.[2] The Debtor submits that those factors do not amount to sufficient cause to convert or dismiss the Case.

*First*, the Court notes that cause "potentially" exists "in part based on the [Debtor's] lack of business operations or revenue" (OSC, 4:8-9) and that liquidation of the Debtor's assets "presumably could be best and most appropriately accomplished as a Chapter 7 proceeding" (OSC, 2:11-12).

However, "[p]roper use of Chapter 11 is not limited to cases in which the Debtor preserves going-concern value" and the "Bankruptcy Code expressly authorizes the confirmation of a liquidating plan in a chapter 11 case." *In re Plant Insulation*, 469 B.R. 843, 863 (Bankr. N.D. Cal. 2012) (finding that a debtor that had not operated in over 10 years could confirm a liquidating plan); *see also*, *In re Modern VideoFilm*, Inc., 2019 Bankr. LEXIS 3317, *14 (Bankr. C.D. Cal. 2019) (holding that "rehabilitation" can "encompass a chapter 11 liquidating plan at least in situations where the bankruptcy court, exercising its discretion, determines that a chapter 11 liquidation makes more sense than a chapter 7 liquidation"); *In re International Wireless Communs. Holdings, Inc.*, 1999 Bankr. LEXIS 1853 (Bankr. D. Del. 1999) (confirming a plan of debtors which were holding companies with "no operations" or "operating income").

Further, courts have recognized that a debtor should be allowed to control the liquidation of their assets where the "liquidation would proceed more expeditiously and less expensively under the control of the debtor." *In re W. J. Rewoldt Co.*, 22 B.R. 459, 462 (Bankr. E.D. Mich. 1982). Indeed, there is a strong presumption that a debtor in possession "should be permitted to continue to control and manage its estate." *In re St. Louis Globe-Democrat*, 63 B.R. 131, 138 (Bankr. E.D. Mo. 1985).

---

[2] The OSC provides that the OSC is premised upon the reasons stated therein and "as stated on the record at the hearing on the Cash Collateral Motion." OSC, 4:14-15. The inclusion of a reference to a "Cash Collateral Motion" is likely inadvertent as the Debtor has not filed any motion relating to cash collateral, and accordingly, no such hearing has occurred.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Here, the Debtor submits that it should be permitted to continue to administer the Case in chapter 11. The Debtor has actively pursued a value-maximizing resolution of the Case, including through its efforts and negotiations relating to the 9019 Motion, Plan, and Disclosure Statement, and believe that conversion or dismissal would delay resolution of issues already being actively addressed in the Case.

*Second*, the Court notes that although the Debtor previously discussed a "straightforward plan to bring [the Case] to a swift and fair conclusion" which included "steps to avoid liens or object to claims" (OSC, 2:2-5), the Debtor has made no filings with the Court "to either challenge liens or object to claims" (OSC, 2:5-6).

While the Debtor acknowledges that the foregoing was its initial plan, its strategy evolved over the course of the Case based upon new facts, comments from interested parties, and opportunities for consensual resolution. As many courts have recognized, chapter 11 cases are fluid and constantly evolving. *See*, *In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994) ("A special aspect of the practice of bankruptcy is that it functions on a fluid set of facts"); *In re Buckner*, 218 B.R. 137, 149 (B.A.P. 10th Cir. 2012) ("Bankruptcy proceedings are not static; they are fluid and continuing"); *Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem. Hosp. (In re Henry Mayo Newhall Mem. Hosp.)*, 282 B.R. 444, 457 (B.A.P. 9th Cir. 2002) ("considering all of the fluid factors of an evolving chapter 11 case").

Accordingly, while the Debtor originally believed that it would need to challenge the liens and object to the claims of Gadol and Testa, the Debtor instead pursued a consensual resolution of those disputes which: (i) ultimately materialized in the form of the settlement contemplated by the 9019 Motion and (ii) is intended to obviate the need to challenge or object to Gadol's and Testa's liens and claims. The benefit of pursuing settlement as opposed to litigation is that it has enabled the Debtor to secure substantial concessions from Gadol and Testa which will enable distributions to unsecured creditors without facing the risk of litigating the claims and ending up with no available assets to distribute.

*Third*, the Court states that "to the extent that the estate may need to investigate any fraud between Mr. Ferder and [WMCI] regarding the lien granted to [WMCI] on the [Real Property],

presumably that would be more appropriately done by a Chapter 7 trustee, not the Debtor's Chief Restructuring Officer whose control over Debtor was authorized by Mr. Ferder on behalf of Debtor." OSC, 3:13-3:18.

As an initial matter, the Debtor submits that its chief restructuring officer ("CRO") is an independent fiduciary that is fully capable of conducting any investigation necessary on behalf of the estate notwithstanding that he was appointed by Mr. Ferder. In any event, the Debtor is informed that Lugano is already investigating the transaction with WMCI and intends to commence an adversary proceeding regarding any alleged fraud by WMCI. Therefore, there is no need for either the CRO or a chapter 7 trustee to conduct this investigation and incur any related administrative expenses to the estate.

*Fourth*, the Court notes that no "filings have been made to advance the sale of the Real Property." OSC, 3:21-22.

Since the inception of this Case, the Debtor has taken proactive steps to liquidate the Real Property. The Debtor's real estate broker has listed the Real Property for sale, marketed the Real Property online and in publications, and hosted multiple open houses for both brokers and individual purchasers. During the course of the Case, the Debtor has continued to work with its broker and adjust its sale strategy in response to the realities of the Aspen real estate market. For example, while the Debtor initially believed that the Real Property was worth approximately $30 million, the current listing price has been reduced to $22,950,000 to reflect current market conditions and maximize the likelihood of a sale.

The Debtor continues to market the Real Property. Unfortunately, to date, the Debtor has only received one offer to purchase the Real Property which the Debtor did not believe was in the best interest of the estate or could be approved by the Court. While the Debtor tried to negotiate in the form of a counteroffer, the prospective buyer declined to engage further. In sum, the delay in the sale of the Real Property is not due to inaction on part of the Debtor, but instead due to the unfavorable conditions of the Aspen real estate market.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

12

***Finally***, the Court notes that the Plan "is a 'bare bones' placeholder plan generally providing for payment of claims from the liquidation of assets, without any meaningful specificity in certain respects (for example, there are no deadlines for the liquidation of assets)." OSC, 3:27-4:2.

As a preliminary matter, the Debtor respectfully disputes the characterization of the Plan as a "bare bones placeholder plan." The Plan is a liquidating plan which provides for the orderly liquidation of the Debtor's assets and proposes the treatment of each class of allowed claims in accordance with the priority scheme established by the Bankruptcy Code. Specifically, the Plan provides for the establishment of a liquidating trust as of the effective date of the Plan which will thereafter liquidate any of the remaining Debtor's assets to fund disbursements to creditors in accordance with the terms of the Plan.

Moreover, the issue identified by the Court regarding the lack of specific deadlines with respect to liquidation of assets was expressly contemplated by the Debtor in the Motion to Continue. Specifically, the Debtor sought additional time to market and sell the Real Property, further investigate the Alternative Investments, and resolve creditor claims prior to finalizing the terms of the Plan and Disclosure Statement. Once the Motion to Continue was denied, the Debtor was required to proceed with filing the Plan and Disclosure Statement notwithstanding the existence of unresolved issues related to asset liquidation and creditor treatment, which is not improper. *See, Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 560 (B.A.P. 9th Cir. 2002) ("A plan may be proposed and confirmed relatively early in the case before much of the necessary bankruptcy business is accomplished…A plan confirmed early in the process necessarily must leave more to future resolution than a plan confirmed after most disputes have been resolved").

Indeed, "Chapter 11 is essentially a structured negotiation conducted under rules prescribed by the Bankruptcy Code." *Id.* Consistent with that process, a debtor's plan may be subsequently modified which is expressly permitted by the Bankruptcy Code. *Id;* 11 U.S.C. 1127(a) ("The proponent of a plan may modify such plan at any time before confirmation…").

The Debtor has continued to engage in negotiations with interested parties and pursue a settlement that materially impacts the structure and implementation of the Plan. Based on such efforts, the Debtor will amend the Plan and Disclosure Statement as necessary and appropriate.

Accordingly, to the extent that the Court believes that additional specificity or information is required in the Plan, the Debtor submits that those matters can be addressed through subsequent amendments to the Plan and/or Disclosure Statement.

**C.** **Conversion or Dismissal of the Case is Not Permissible Under Section 1112(b)(2)**

  1.      **Neither Conversion nor Dismissal is in the Best Interest of Creditors**

If this Court finds that cause exists – which it should not – "it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interest of the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014).

Courts "have significant discretion in determining whether there are unusual circumstances which weigh against conversion or dismissal." *In re Prods. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008). While the Bankruptcy Code does not define "unusual circumstances," unusual circumstances may be found where the facts of a case "demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 536 (Bankr. D. N.D. 2011).

The purposes of chapter 11 are better served by maintaining the case as a chapter 11 proceeding "where continuing the case in Chapter 11 will likely yield a higher recovery for creditors without the usual risks of failure associated with a Chapter 11 plan." *Baroni*, 36 F.4th at 968-969; *see also*, *In re Costa Bonita Beach Resort*, 479 B.R. 14, 43 (Bankr. D. P.R. 2012) (finding that unusual circumstances exist where chapter 11 will produce a better result for unsecured creditors).

Significantly, as set forth by a Central District of California Bankruptcy Court in *Modern Video Film*, conversion is not in the best interest of creditors where the debtor and its chapter 11 counsel "are already intensively familiar with the case and  [the debtor's] alternatives and options." *Modern VideoFilm,* 2019 Bankr. LEXIS 3317 at \*14; *see also*,  *In re GPA Technical Consultants, Inc.*, 106 B.R. 139, 142 (Bankr. S.D. Ohio 1989) (finding that a "debtor may have a comparative advantage over the trustee in liquidation with respect to collecting accounts receivable… because of the historic involvement with its affairs").  "If the case is converted to chapter 7, a chapter 7

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

14

trustee likely would find it necessary to retain new counsel and duplicate at least some of the research performed by [the debtor] and its existing counsel – all at the cost to creditors." *Id.*

Here, the Case has been pending for eight months during which time the Debtor and its professionals have become intensively familiar with the Debtor's assets and circumstances surrounding the Case. For example, the Debtor has subpoenaed, informally requested, received documents related to, and conducted significant analysis on the Alternative Investments, their value, their ability to be liquidated, and the consequences for doing so. Based on the Debtor's investigation and analysis, the Debtor has determined that the Alternative Investments are subject to significant liquidity restraints and potential penalties based on unfunded commitments. In the event of conversion, any trustee appointed along with their professionals will likely need to conduct their own analysis at significant expense while still confronting the same liquidity restrictions, unfunded commitments, and potential penalties. Therefore, conversion would not benefit the estate.

Moreover, the Debtor has reached a deal (subject to Court approval) that resolves the complex issues pending between the Debtor and two of its largest creditors, provides for a substantial reduction of their asserted claims, creates sources of funds to support distributions to creditors of the Debtor's estate upon liquidation of the Real Property and Alternative Investments, and eliminates the risks, costs, and delays associated with litigation. In the event of conversion or dismissal, it is unclear whether a chapter 7 trustee or the Debtor (outside of bankruptcy) could reach the same or similar deal. Further, in connection with the proposed settlement, the Debtor has engaged with parties to resolve issues related to the settlement and has become familiar with their respective positions. If the Case is converted, a chapter 7 trustee would be required to duplicate the Debtor's efforts and incur additional administrative expense to become familiar with the issues and negotiations underlying the proposed settlement.

Finally, even if a chapter 7 trustee were ultimately able to reach a similar settlement as the Debtor, conversion would still materially reduce distributions to creditors due to the statutory fee to be paid to any trustee pursuant to section 326(a) of the Bankruptcy Code. *See, Modern VideoFilm,* 2019 Bankr. LEXIS 3317 at *17 (finding that "a conversion to chapter 7 would end up reducing distributions to creditors below the amount" proposed in the plan based, in part, on "the chapter 7

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

trustee's fees and expenses "); 11 U.S.C. 326(a) (providing for trustee compensation for "all moneys disbursed or turned over in the case by the trustee to parties in interest… including holders of secured claims").

If the Case is converted, a trustee would be entitled to a percentage of any such distributions made upon the liquidation of the Debtor's assets, which would be in addition to any fees and expenses incurred by professionals retained by the trustee to administer and liquidate such assets. Given that the current listing price of the Real Property is $22,950,000 and that the Debtor believes that the value of the Alternative Investments is between $4 and $6 million, the resulting fees owed to the trustee would be substantial and would directly reduce the funds otherwise available for distribution to creditors.

Under these circumstances, the Debtor submits that continuing this Case in chapter 11 will produce a better result for the Debtor's creditors than converting or dismissing the Case. As such, there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.

2. **The Other Requirements of Section 1112(b)(2) are Satisfied**

Once unusual circumstances are found, a bankruptcy court is prohibited from converting or dismissing a chapter 11 case if "(A) there is a reasonable likelihood that a plan will be confirmed within… a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A) – (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable time fixed by the court." 11 U.S.C. § 1112(b)(2); *In re Cwnevada LLC*, 602 B.R. 717, n.29 (Bankr. D. Nev. 2019) ("If there are unusual circumstances establishing that conversion or dismissal of a Chapter 11 case is not in the best interests of creditors and the estate, such relief is prohibited if the debtor establishes a reasonable likelihood that a plan will be confirmed in a reasonable amount of time, and, *inter alia*, that any act constituting cause, including gross mismanagement, will be cured within a reasonable amount of time fixed by the court").

Each is satisfied here.

a.    **The Plan Will Be Confirmed in a Reasonable Amount of Time**

"Section 1112(b)(2)(A) only requires that there be a reasonable likelihood that a plan will be confirmed… It is an evaluation of the likelihood of achieving confirmation." *In re Sterling WH Co., LLC*, 475 B.R. 481, 485 (Bankr. E.D. Va. 2012).

Courts have found that this standard is satisfied where a "chapter 11 liquidating plan is on the horizon" or where confirmation of a plan is "plausible and not a 'mere financial pipe dream.'" *In re Express Grain Terminals, LLC*, 2022 Bankr. LEXIS 945, *38 (Bankr. N.D. Miss. 2022); *In re Delta AG Grp, LLC*, 596 B.R. 186, 198 (Bankr. W.D. La. 2019).

Here, the Debtor has already filed the Plan which provides for the establishment of a liquidating trust, the orderly liquidation of the Debtor's assets and distributions in accordance with the priority scheme established by the Bankruptcy Code. Because the Plan does not promise specific distributions to creditors and instead provides for distributions from the proceeds of liquidated trust assets, the Plan is plausible and does not constitute a "financial pipe dream."

Further, the Debtor submits that the Plan will be confirmed in a reasonable amount of time. The Disclosure Statement Hearing is set for July 7, 2026 and has been continued a couple of times to allow the Debtor to consensually resolve comments and objections received on both the Plan and Disclosure Statement and to coordinate with the hearing on the 9019 Motion. Because: (i) the 9019 Motion will be adjudicated on the same day as the Disclosure Statement Hearing and (ii) the Debtor anticipates that it will be able to consensually resolve all comments and objections received on both the Plan and Disclosure Statement prior to the Disclosure Statement Hearing, the Debtor believes that the Case can proceed expeditiously toward confirmation following approval of the Disclosure Statement.

b.    **There Was a Reasonable Justification for the Debtor's Failure to Comply with the Court's Deadlines**

As discussed above, the Court's grounds for dismissing or converting the Case include the Debtor's failure to comply with an order of the Court and to confirm a plan within the time fixed by the Court under sections 1112(b)(4)(E) and (J) of the Bankruptcy Code.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

17

However, a reasonable justification exists for the Debtor's failure to do so for the reasons set forth in section III.B.1 herein and in the Motion for Relief. Further, upon becoming aware of the issue, the Debtor promptly took action to cure its noncompliance by the filing of the Motion for Relief and submits that it will take any additional actions necessary to cure the Debtor's failure in accordance with any terms or deadlines set by the Court.

## IV. CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court discharge the OSC and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 12, 2026 **SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

　　　/s/　　_Max Casal_　　　　　　
Leonard M. Shulman
James C. Bastian, Jr.
Alan J. Friedman
Max Casal
General Counsel for the Debtor

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

18

## <u>DECLARATION OF MAX CASAL</u>

I, Max Casal, declare as follows:

1.    I am an attorney duly admitted to practice before this Court. I am an attorney with Shulman Bastian Friedman Bui & O'Dea LLP, general counsel for the Debtor. I am familiar with the Debtor's bankruptcy proceeding to date, have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto. I make this declaration in support of the *Debtor's Response to Order to Show Cause Why Case Should Not Be Dismissed or Converted* (the "<u>Response</u>"). All capitalized terms not otherwise defined herein shall have the meaning set forth in the Response.

2.    On November 18, 2025, I appeared on behalf of the Debtor at the Case Management Conference before the Court. Attached hereto as **Exhibit A** is a true and correct copy of the CMC Transcript.

3.    During the Case Management Conference, the Court set certain dates relating to the filing of the Debtor's disclosure statement and plan, approval of the disclosure statement, and confirmation of the plan. The discussion of those dates occurred in the context of an oral exchange during the Case Management Conference, and the Court directed me to lodge a proposed scheduling order reflecting the dates discussed.

4.    Following the Case Management Conference, I asked a paralegal from my office to prepare a proposed scheduling order based on my notes from the Case Management Conference. A true and correct copy of my email providing the relevant dates to the paralegal is attached hereto as **Exhibit B.**

5.    As set forth in such email, I mistakenly believed that the March 31 and May 26 dates provided by the Court relating to disclosure statement approval and plan confirmation were hearing dates, rather than deadlines.

6.    Thereafter, I reviewed and approved the proposed scheduling order which was subsequently lodged on behalf of the Debtor and entered by the Court without modification [Dkt. No. 141].

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7. After entry of the Original Scheduling Order, the Debtor and I proceeded in reliance on that order as entered:

    a. The Debtor filed the Motion to Continue which was premised upon the Debtor's reliance on the Original Scheduling Order, restated the hearing dates related to approval of the adequacy of the Debtor's disclosure statement and confirmation of the Debtor's chapter 11 plan set forth therein (Motion to Continue, 2:14-20), and requested that the Court continue such dates to allow the Debtor to market and sell the Real Property, investigate the Alternative Investments, and resolve outstanding disputes with creditors (Motion to Continue, 3:1-13).

    b. Upon denial of the Motion to Continue, the Debtor timely filed its Plan and Disclosure Statement and noticed the Disclosure Statement Hearing in accordance with the Original Scheduling Order and within the timeframes discussed at the Case Management Conference.

    c. After filing the Plan and Disclosure Statement, the Debtor filed the Stipulations to Continue the Disclosure Statement Hearing.

8. Based upon: (i) the Court entering the Original Scheduling Order without modification; (ii) the fact that the Order Denying Motion to Continue did not identify any issues with the characterization of the dates in the Original Scheduling Order; and (iii) entry of the Orders Approving the Stipulations, I was not aware that I made a mistake in converting the Court's oral ruling into the proposed Original Scheduling Order.

9. I first became aware that the Original Scheduling Order did not accurately reflect the Court's oral ruling at the Case Management Conference when the Court issued the Order Setting Hearing and conducted the Scheduling Hearing. Therefore, I did not request or review the transcript of the Case Management Conference until after the Scheduling Hearing.

10. Based on the Court's comments at the Scheduling Hearing, I respectfully acknowledge that I misunderstood the Court's ruling and that the proposed scheduling order did not accurately reflect the Court's oral ruling.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

2

11. In reviewing the CMC Transcript, I understand that I misunderstood certain of the dates and deadlines set by the Court (*see,* CMC Transcript, 23:14-24:6) and recognize that I should have confirmed the manner in which the dates and deadlines were to be reflected in the proposed scheduling order.

12. At the time the proposed scheduling order was lodged, I believed in good faith that it accurately reflected the Court's ruling. However, it is now apparent that I misunderstood how the dates outlined by the Court at the Case Management Conference were to be memorialized in the scheduling order. As a result, I inadvertently described the Court's deadlines as hearing dates.

13. I take responsibility for this mistake and submit that it was inadvertent. I did not intend to alter or misstate the Court's ruling, and any discrepancy between the Court's ruling and the proposed scheduling order was the result of my misunderstanding and mistake.

14. At all times during this Case, I have acted in good faith and with the intention of complying with the Court's orders.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 12, 2026, at Irvine, CA.

/s/ *Max Casal*_____

Max Casal

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF SANTA ANA

-oOo-

In Re:                              ) Case No. 8:25-bk-12616
                                    ) Chapter 11
SIMBA IL HOLDINGS, LLC, A           )
DELAWARE LIMITED LIABILITY          ) Santa Ana, California
COMPANY                             ) Tuesday, November 18, 2025
                                    ) 2:30 PM
            Debtor.                 )
_____ ) #8.00 MOTION FOR APPROVAL OF
                                      STIPULATION RESOLVING
                                      CREDITOR'S MOTION FOR RELIEF
                                      FROM THE AUTOMATIC STAY AND
                                      TREATMENT OF CREDITOR'S CLAIM
                                      BY AND BETWEEN WHITE MOUNTAIN
                                      CAPITAL, INC. AND DEBTOR,
                                      SIMBA IL HOLDINGS, LLC

                                      #9.00 MOTION FOR ORDER
                                      APPROVING SETTLEMENT

                                      #10.00 CONT. APPLICATION TO
                                      EMPLOY RICHARD
                                      MARSHACK/MARSHACK HAYS WOOD
                                      LLP AS CHIEF RESTRUCTURING
                                      OFFICER FOR THE DEBTOR NUNC
                                      PRO TUNC TO THE PETITION DATE

                                      #11.00 CONT. ORDER (1)
                                      SETTING SCHEDULING HEARING
                                      AND CASE MANAGEMENT
                                      CONFERENCE AND (2) REQUIRING
                                      STATUS REPORT

                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MARK D. HOULE
               UNITED STATES BANKRUPTCY JUDGE



EXHIBIT "A' - PAGE 1

APPEARANCES:

| For the Debtor: | MAX CASAL, ESQ. |
| | Shulman Bastian Friedman Bui |
| | & O'Dea LLP |
| | 100 Spectrum Center Drive |
| | Suite 600 |
| | Irvine, CA 92618 |
| | 949-340-3400 |

| For the Office of the United | QUEENIE K. NG, ESQ. |
| States Trustee: | Office of the United States |
| | Trustee |
| | 411 West Fourth Street |
| | Suite 7160 |
| | Santa Ana, CA 92701 |
| | 714-338-3403 |

| For Mr. Winters: | STEVE KATZMAN, ESQ. |
| | Bienert Katzman Littrell |
| | Williams |
| | 903 Calle Amanecer |
| | Suite 350 |
| | San Clemente, CA 92673 |
| | 949-369-3700 |

| For White Mountain Capital: | GREG CAMPBELL, ESQ. |
| | Aldridge Pite, LLP |
| | 3333 Camino del Rio South |
| | Suite 225 |
| | San Diego, CA 92108 |
| | 858-750-7600 |

| For Westport properties, | TIMOTHY J. SILVERMAN, ESQ. |
| Drew Hogan: | Scheer Law Group, LLP |
| | 85 Argonaut |
| | Suite 202 |
| | Aliso Viejo, CA 92656 |
| | 949-263-8757 |

| For Darren Testa and Bryan Gadol : | CHRISTOPHER HARNEY, ESQ. |
| | Theodora Oringher |
| | 535 Anton Boulevard |
| | Ninth Floor |
| | Costa Mesa, CA 92626 |
| | 714-549-6200 |



For Rusty Holser:                    TIM LYSTER, ESQ.
                                     Woods Oviatt Gilman LLP
                                     1900 Bausch & Lomb Place
                                     Rochester, NY 14604
                                     585-987-2894

Court Recorder:                      JAMES LE
                                     United States Bankruptcy Court
                                     411 W 4th Street
                                     Santa Ana, CA 92701

Transcriber:                         HANA COPPERMAN, CET 487
                                     eScribers, LLC
                                     7227 N. 16th Street
                                     Suite #207
                                     Phoenix, AZ 85020
                                     (800) 257-0885

Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

eScribers

EXHIBIT "A' - PAGE 3

Simba IL Holdings, LLC, a Delaware limited liability company

SANTA ANA, CALIFORNIA, TUESDAY, NOVEMBER 18, 2025 03:13 PM

-oOo-

(Call to order of the Court.)

THE COURT:  So let's call all the Simba, and I want to say II, but it's really Simba IL Holdings.  We have matter 8.  That's the motion for approval of the relief from stay stipulation.  We have matter 9.  That's vacated.  That's the order approving another settlement.  That's continued to December 9.  10 is the application to employ Richard Marshack and Marshack Hays.  And 11 is the case management conference.  If I could get appearances on all of them.  Let's start off in court first.

MS. NG:  Good afternoon, Your Honor.  Queenie Ng for the U.S. Trustee in matter number 10 and 11.

THE COURT:  All right.  Thank you, ma'am.  And then I'll go down my list here.  Do we have Mr. Katzman on the line?

UNIDENTIFIED SPEAKER:  Yes.

MR. CASAL:  Good morning, Your Honor.  Good afternoon, Your Honor.  It's Max Casal.

THE COURT:  I'm sorry.  What was the name, sir, again?

MR. CASAL:  I didn't hear.  I didn't hear if you said my name or if this is somebody else's name.  But this is Max Casal for the debtor.

THE COURT:  Yeah.  No, I did not say your name.  I was asking if Mr. Katzman was there.  All right.

EXHIBIT "A" - PAGE 4

Simba IL Holdings, LLC, a Delaware limited liability company

MR. KATZMAN:  Yes, Your Honor.  Good afternoon, Your Honor.  Steve Katzman, Bienert Katzman Littrell Williams, on behalf of Mr. Winters.

THE COURT:  All right.  Thank you, sir.

You're a little faint, Mr. Katzman.  So when you talk later, if you could please speak up just a teeny bit louder.

Do we have Mr. Campbell on the line?

MR. CAMPBELL:  Good afternoon, Your Honor.  Greg Campbell on behalf of White Mountain Capital.

THE COURT:  Good afternoon.  Mr. Silverman.

MR. SILVERMAN:  Yes, Your Honor.  Tim Silverman appearing on behalf of the Westport properties, Drew Hogan (phonetic), creditors.

THE COURT:  All right.  Mr. Harney.

MR. HARNEY:  Good afternoon, Your Honor.  Chris Harney from Theodora Oringher on behalf of creditors Darren Testa and Bryan Gadol.

THE COURT:  Good afternoon.  And now, Mr. Casal, I think.

MR. CASAL:  Yes.  Apologies, Your Honor.  Max Casal, Shulman Bastian Friedman Bui & O'Dea, for the debtor.

THE COURT:  All right.  Good afternoon.  And then we have different appearances for each matter.  Let me make sure I'm wrapping up everyone.  Is there a Mr. Lyster?  Lyster? Timothy Lyster?

Simba IL Holdings, LLC, a Delaware limited liability company

MR. LYSTER:  Yes, Your Honor.  Good afternoon.  Tim Lyster, Woods Oviatt Gilman, for Rusty Holser (phonetic).

THE COURT:  All right.  Thank you.  Mr. Cimini.  Anthony Cimini.  No?

MR. CIMINI:  Good afternoon.  Good afternoon, Your Honor.  Anthony Cimini from Taft Stettinius & Hollister on behalf of Casey Kelsey (phonetic).  I'm just listening in, Your Honor.  Don't need to make a formal appearance, so thank you.

THE COURT:  All right.  Thank you.  I have everyone here on my list.  Is there anyone else appearing on these Simba IL matters that hasn't appeared?

Okay.  Let's start with matter 8.  That's the motion to approve the stipulation regarding the real property and relief from stay.  All right.  So and this is interesting.  I agree.

So Mr. Katzman, I agree with the objecting creditors as to the flaws in the stipulation, the issues with the stipulation.  There's things being approved here that are really more appropriately the subject of a 9019 motion, specifically, essentially, allowing White Mountain's claim, and then, as well, in addition to all of the releases, the fairly extensive releases, I understand why White Mountain would want it.  But again, in terms of a stipulation for relief from stay, I really have no idea what the estate is releasing, and there's no ANC properties analysis.  So we can have some more

Simba IL Holdings, LLC, a Delaware limited liability company

discussion, but I can't see how I'm going to approve the

stipulation on those grounds.

Now, let me add on to my introductory comments.  I

understand the objecting creditors.  They want this sale

process, in the big picture, as lengthy as possible, to receive

the highest value.  And so there's a victory, in essence, in

defeating this relief from stay stipulation in that the sale

will not happen, what I'll call in the midterm, because the

stipulation provides for about a four-month period for it to be

sold.  The problem is, though, then we default back to the

relief from stay hearing.  I think that's set sometime in early

December.  And that is not before me.  I have not extensively

reviewed those documents.  I don't know if there's still filing

to be done on that, a reply or potentially, even the

opposition.  But just from these papers, it looks like there

was an unauthorized transfer of interest in that property.

So given that relief from stay has a different

standard, it's just that there be a colorable claim, I might be

granting relief from stay under (d)(4), (d)(1) and (d)(4), in

December.  So that's, sort of, the -- this stipulation failing

may be somewhat of a Pyrrhic victory for the objecting

creditors, but that's just big picture thoughts.  Again, I have

not reviewed the relief from stay pleadings in detail, so I'm

not opining on those at all.  Those are just my comments.

So first I'll ask Mr. Katzman.  Did I miss anything in



EXHIBIT "A" - PAGE 7

Simba IL Holdings, LLC, a Delaware limited liability company

terms of the problems with the stipulation that you'd like to add for the record?

MR. KATZMAN:  Can you hear me okay now, Your Honor?

THE COURT:  Yeah, a little bit.  Yes.

MR. KATZMAN:  Okay.  No, you hit the point, and I think you also hit the big picture.  And it's not that -- and I also will say that Mr. Campbell's reply was very well done.  I don't think, it's not like we don't want to see a stipulation, and we don't want to see an agreement.  I mean, the two main factors for us is to ensure that we have enough time.  And I think, on retrospect, if the foreclosure notice is being removed, and we have the four months, I would hope that we would have enough time, and even if we were not at that point, that it would be reasonableness with respect to that.

The bigger concern I have is that, and maybe this can be fixed in the sense that the stipulation is a bit inconsistent in the sense that it is providing relief beyond just relief from stay.  And it's not to say that we are, per se, opposed to that.  It's just they say in one breath that we reserve the right to object to the claim, but in the other breath, there's a release by the debtor and an agreement as to the claim.  And we may be stuck, and particularly when they send the reply papers, that we don't have standing to pursue an objection or an adversary proceeding against the claim.  We may be stuck in a quandary, where later on we may have colorable

Simba IL Holdings, LLC, a Delaware limited liability company issues as to their claim ,but then we don't have the ability to contest it, because the debtor has waived it.  So we just don't want to be stuck in that position where there's being this release on a motion to approve a stipulation for relief from stay, and nobody's really done the, at least from our viewpoint, the analysis that's necessary to conclude that that's in the best interest of the estate.

THE COURT:  All right.  Thank you, sir.  And I do understand both parties' perspectives.  I understand why White Mountain would want to have certainty as to its claim amount.  But hopefully, for the reasons I've stated, it's understandable what the problems are with the stipulation.

Let me turn to -- I think it's Mr. Campbell, as movant's counsel.

MR. CAMPBELL:  Yes, Your Honor.  This is Greg Campbell on behalf of White Mountain Capital.  Your Honor, we understand your point.  And this property, as you stated, was transferred to this debtor on the eve of the bankruptcy filing, which is what prompted the motion for relief being filed.  We thought we reached what was a fair agreement with the debtor, which would give them 120 days from the date the Court approved the stipulation.  The property has already been listed for approximately sixty days.  That would give the debtor a full six months to sell this property.  We think, by setting a deadline, it actually motivates debtor to sell the property.

Simba IL Holdings, LLC, a Delaware limited liability company

It would require our client to rescind the foreclosure documents.  It would reduce the interest rate, which would benefit these pre-judgment junior lien holders.

With respect to the releases, our client may be amenable to removing that provision from the stipulation if we can move forward with it.  We didn't file under 9019.  We've gotten some feedback from other courts that creditors lack standing to file a motion under 9019 because I believe the rule says the debtor or trustee must file it under 9019, which is why we filed it under this Code provision.

THE COURT:  Well, the problem, and I apologize for interrupting, the problem is not the relief from stay part.  It's the release.  I can't recall seeing in this type of situation that type of release language.  And another thing to consider is even though you may prevail in getting a relief under (d)(1), (d)(4) in December, I can also condition that so that there's no foreclosure for a period of time, to allow the debtor to try and market and sell it in the interim.

So what I'm trying to say is I'm not trying to put too much pressure on either one of the parties.  I think an agreement makes the most sense, but I am sensitive to a property of this value being sold in a fire sale in a distressed asset type situation.  I don't have some of the same problems I would have in a typical Chapter 7 individual case, where there's (d)(4) grounds.  So I mean, there may well be a

eScribers

EXHIBIT "A' - PAGE 10

Simba IL Holdings, LLC, a Delaware limited liability company

basis for (d)(4) relief, but I'm not particularly worried that

the owner is going to be doing anything else.

And so now the question is in the big picture, if I

were to grant your motion for relief in December, do I make

that immediate, or do I condition the stay so that there's a

period of time for the debtor to try to sell it?  Just

something to keep in mind as the parties are hopefully working

together to try to reach some agreement.  That seems to make

the most sense.

MR. CAMPBELL:  Thank you, Your Honor.  This is Greg

Campbell again.  You know, our client has made it clear that

this was a deal that was contingent upon Court approval, and

they intend to proceed with their motion for relief in December

if the Court declines to approve this agreement today.  So we

reserve our right to pursue that motion.  And perhaps, as part

of the relief being granted, there would be a period of time

before that relief is effective, like Your Honor just

proffered.  But if the creditors do not want this motion

approved today, the stipulation is going to be void, and our

client's going to proceed with the motion in December.

THE COURT:  All right.  Thank you, sir.  So my

intention right now is to deny the motion for the reasons

stated on on the record as well as in the objecting creditor's

pleadings.  Anyone else wish to be heard?

MR. KATZMAN:  Your Honor, if I may respond?  Steve



EXHIBIT "A' - PAGE 11

Simba IL Holdings, LLC, a Delaware limited liability company

Katzman again. I thought I heard Mr. Campbell say that the release language may be something that they would consider withdrawing, and if that's the case, I think that that would address the gravamen of our concerns on the stipulation.

THE COURT: What about the allowance of the claim?

MR. KATZMAN: Well, the release and the ability for us to review the claims.

THE COURT: Right. So taking out the part of the stipulation that allows the claim.

MR. KATZMAN: Or making clear that we have the right to contest the claim, should we so choose. But again, there's an ambiguity there.

THE COURT: Right. Right. It's the two things. It's the one, the provision that allows the claim, and two, it's the global release.

Now, Mr. Katzman, are you raising that to see if movant's counsel is willing to amend that on the record, or are you just floating that for purposes of further discussions between the parties?

MR. KATZMAN: I'm proposing -- if moving counsel is proposing to amend that on the record, then that's something that we would be amenable to. Mr. Harney and his client had filed a joinder, so I don't know their position, but that would be our position.

THE COURT: Let me ask Mr. Campbell.



Simba IL Holdings, LLC, a Delaware limited liability company

Mr. Campbell, is that something you're willing to agree to on the record, to have that stipulation approved without those two parts. One, the part that allows your claim, and two, allows it for -- I believe it's for -- I don't want to say voting and treatment, but I believe it's treatment under a plan. And secondly, the global release, or is that something you'd need to go back and talk to your client?

MR. CAMPBELL: Yeah. I'd have to get permission from our client, Your Honor.

THE COURT: Okay. And so and Mr. Katzman, so I am going to, again, deny the motion for the reasons stated in the record and in the objecting creditor's papers. But certainly, to the extent Mr. Campbell speaks with his client, I think they know where you stand.

Mr. Harney, are you in alignment with Mr. Katzman as to what would be amenable?

MR. HARNEY: I am, Your Honor.

THE COURT: All right. So really, this could proceed in two ways that I can envision. Well, three. One, there's an amended stipulation agreed to, and it's filed with the Court. Two, the parties have reached an agreement in principle, and we can just discuss that at the time of the hearing on the relief from stay motion. Or three, there's no agreement between the parties, and Mr. Campbell goes forward with his request for relief from stay, and the objecting creditors can oppose,

Simba IL Holdings, LLC, a Delaware limited liability company indicating either it should be flat out denied or the stay should be conditioned to delay implementation of the order to allow for a more fulsome sale process.

Anyone have -- so again, that's just my thinking of how this will unfold. But for purposes of this hearing, again, it's denied.

Mr. Katzman, I'd ask that you lodge that order, please, sir.

MR. MARSHACK: I know I'm listen only, but this is Richard Marshack, CRO. What if the Court, instead, continued this hearing to the same date as the motion for relief from stay, so if Mr. Katzman -- my attorneys and the landlord and the secured creditor, if we all got on the same page, we could present it at the next hearing. So instead of denying it today, can we just continue it to the hearing on the relief from stay?

THE COURT: I believe that's December. I believe it's December 9. Can anyone confirm that for me?

MR. CASAL: Your Honor, this is Max Casal for the debtor. That's correct.

THE COURT: Okay. Mr. Katzman, do you have any problem if I continue it?

MR. KATZMAN: No. I think Mr. Marshack has tendered a very good suggestion.

THE COURT: All right. I'll go ahead and --

Simba IL Holdings, LLC, a Delaware limited liability company

MR. MARSHACK:  Your Honor, I apologize for having interrupted.  I know I'm a listen only status, and I've been texting this to my lawyers, at which point my son texted back and said you're texting the wrong person.  So I was giving you suggestions to my lawyers, I thought, but it turns out I was giving it to my son.  So I apologize for interrupting the Court.

THE COURT:  All right.  Not a problem.

I will advise Mr. Campbell, even if the parties agree to the stipulation as it is, I'm not going to approve it without a 9019 basis.  So if you're going to -- that's as to the releases, and probably the same thing as to the allowance of the claim.  So without some supplement, just keep in mind that that stipulation is still not going to get approved on December 9th.  But I'm happy to continue it, and on the record on December 9th, someone, Mr. Campbell, you, for example, could say yes, my client will back off on those two provisions, and then with that modification noted on the record, I could approve it, but otherwise, I would still deny it.  So just so everyone is clear.

All right.  So I'll continue that matter 8 to December 9th, 12/9/25, at 2:30.  Does anyone not waive notice of that continuance?  All right.  Hearing nothing, notice is deemed waived.

Matter 9.  Again, that motion is vacated.

Simba IL Holdings, LLC, a Delaware limited liability company

10.   This is the application to employ Mr. Marshack and Marshack Hays Wood as the firm.  Let me just quickly get that file.  All right.  So I have two -- there were no objections, I believe, to this filed, correct?  If anyone filed an objection, could you state so?  I didn't believe it.

Okay.  So there were two problems.  One is probably it's not that critical, but the service list for this motion, and this motion does need to be served on at least the twenty largest, the service list lists most of the service parties with the heading court mailing.  So for example, on the proof of service, you have the service by U.S. Mail, service information continued on attached pages.  And then there's one, two, three, four, five, six pages of addresses, and most of them have at the top, in bold caps, Court mailing.  I don't know what that means, but it seems to indicate that somehow the Court is mailing it, which is incorrect.  Does anyone want to clarify that for me?

MR. CASAL:  Your Honor, this is Max Casal for the debtor.  It's not correct.  I know that my office served the application.  I'm not sure why it's labeled that way.  But I do know that we did serve it.  We weren't directing the Court to serve it.

THE COURT:  Okay.  So I would ask, Mr. Casal, not to ever do this again in any proof of service that you file with this court, unless somehow the court is doing the service, in

Simba IL Holdings, LLC, a Delaware limited liability company which case it should be on a different box on the proof of service. It's just confusing. I assumed what you were saying, that your office did serve it, but it shouldn't say court mailing. The Court isn't mailing anything.

MR. CASAL: Understood, Your Honor.

THE COURT: All right. The other thing is, I'm unwilling to grant the one percent compensation for the sale. I'm not, I mean, if somebody wants to make an argument on that, but I don't see any basis for it. There's no authority for it. I'll note, in the big picture, there would be no need for a CRO but for the fact that the debtor's principals believe they are perceived as being in bad faith. I'll be honest. I'm not a hundred percent comfortable with the CRO concept as it is, but I'll set that aside and just say there's no grounds for a one percent compensation.

Now, that being said, certainly, I'll entertain any request for a success fee in connection with a final fee app or something like that. I don't need to say that. Any counsel is always free to move for a success fee. I'm not opining on the chance of getting that, but I just, as a general rule, would never approve this kind of a kicker to any compensation application.

All right. Other than that, I'm fine with approving the application.

MR. MARSHACK: Your Honor, Richard Marshack. We



Simba IL Holdings, LLC, a Delaware limited liability company formally withdraw the request for the one percent.

THE COURT:  All right.  Thank you, sir.  And with Mr. Casal's clarification on the service, I believe that answers all my questions.

Ms. Ng, anything?

MS. NG:  Your Honor, the debtor filed a supplemental declaration of Richard Marshack in response to the U.S. Trustee informal inquiry to this motion.  I don't know if when the Court -- if the Court approves this motion, will -- the modification would also be approved as well?

THE COURT:  Okay.  Forgive me, Ms. Ng.  I'm looking at the supplemental declaration.  What was the modification specifically you were alluding to?

MS. NG:  I think they talk about the -- it would be paragraph 3, where they talk about the drawdown, and also if -- they're agreeing to provide supporting documentation to other creditors upon request of their fee statements.  I think that's one of them.

THE COURT:  Well, I took those modifications to be effective immediately.

MS. NG:  Okay.

THE COURT:  Correct, Mr. Casal?

MR. CASAL:  Yes, Your Honor.  We agreed to those modifications with the U.S. Trustee.

THE COURT:  Okay.  All right.



eScribers

EXHIBIT "A' - PAGE 18

Simba IL Holdings, LLC, a Delaware limited liability company

MS. NG:  Thank you, Your Honor.

THE COURT:  So I'll go ahead and approve that as modified on the record and per supplemental dec.

So if I could get an order on that, Mr. Casal, please.

And then last matter 11.  That's the case management conference.  Okay.  So this one's a little unusual, because it was originally a sub V, but the election was revoked.

I'm somewhat apologetic for this, but I'm going to want a new claims bar date.  I'm not comfortable with the form sub V claims bar date notice that is issued.  I would want a separate claims bar date to go out.  We can discuss that as well as plan and disclosure statement, filing dates, and approval dates.  Anyone have anything they wanted to add before we go into the detail on that?

MR. KATZMAN:  Your Honor, Steve Katzman here.

THE COURT:  Yes, sir.

MR. KATZMAN:  I'm just informing the Court.  I just spent the better part of the day attending first day hearing in the Lugano Diamonds bankruptcy that was filed on Sunday in front of Judge Shannon.  And you probably, it was public record, but it was mentioned a couple of times, the fact that this case was filed here first, and Judge Shannon did indicate on the record that he was going to reach out to you and discuss that.

THE COURT:  You said that those -- were those IDIs or

Simba IL Holdings, LLC, a Delaware limited liability company

341?  What was those meetings?

MR. KATZMAN:  They were first day hearings, Your Honor.

THE COURT:  Oh, first day hearings.  I'm sorry.  I have not heard.  Well, they were today, so but I have not heard anything.  I assume, and I apologize, Mr. Katzman.  Where were those cases filed?

MR. KATZMAN:  The cases were filed in the District of of Delaware before Judge Brendan Shannon.  And the Court may or may not recall that this debtor owns forty percent of the stock of Lugano.

THE COURT:  Was the discussion on the record a contemplation of switching venue?

MR. KATZMAN:  There was some discussion about the related nature, and the U.S. Trustee did raise the prospect of that possibility under I believe it's 1014.

THE COURT:  Well, I mean, all I can say is certainly there's a patent efficiency in having the cases together.  Other than that, somebody needs to put a request before someone, probably Judge Shannon, with my consent.  But thank you.  I was unaware.  I was unaware Lugano's had filed.

MR. KATZMAN:  Yeah.  No, Your Honor, I'm not taking a position on that today.  I'm just informing the Court of the development, since there is a relationship, and I thought it was a significant matter that the Court would want to know.

Simba IL Holdings, LLC, a Delaware limited liability company

THE COURT:  No.  Yeah.  Thank you.  Thank you.

Okay.  So we'll keep that where it is.

Anyone else have any comments on the case management before we get into setting dates?

All right.  Mr. Casal, when can you get a bar date notice out, sir?

MR. CASAL:  So currently, the bar date is 11/25.  We want to move it.  Not we.  The Court would like to change it.  We could get a bar date notice out by the end of this week.

THE COURT:  All right.

MR. CASAL:  Which would mean that we could do a bar date in December.

THE COURT:  Yes, sir.  Okay.  So let's set a -- if I can get the bar date notice out by 11/21 with a bar date of December 19th?  And as an aside, Mr. Casal, if I can get a scheduling order also by the end of this week with all of these dates that we're going to agree on right now?

MR. CASAL:  Understood, Your Honor.  Will do.

THE COURT:  Okay.  When can you get a plan and disclosure statement on file?  I mean, you'll still have your, I mean, hopefully, there would be no change to any of the proofs of claims.  That would mean that the sub V notice was sufficient.  Again, I think the revocation of the election may create some confusion in that it happened before the the claims bar date under the sub V, so there may be people who saw it,

Simba IL Holdings, LLC, a Delaware limited liability company but then when it was revoked, I don't know.  Probably not, but you never know.  So all right.  Let me -- I'm getting ahead of myself.

With a bar date of December 12th, when do you feel that you can get a plan and disclosure statement on file?

MR. MARSHACK:  If I may interrupt?  Your Honor, you remember Judge Wilson.

THE COURT:  Who's speaking?

MR. MARSHACK:  I'm sorry.  Richard Marshack.

THE COURT:  Okay.  Go ahead, sir.

MR. MARSHACK:  If you don't mind.  In the words of Judge John Wilson, I remember often appearing in front of him, and he would often say sometimes the case has to marinate a little bit.  Your Honor, we may have relief from stay denied. We may have --

THE COURT:  And Mr. Marshack, I understand where you're going.  I apologize for interrupting.  There's always the tension, right?  Sometimes you need the case to marinate. Other times, you give too much of a leash, and things will just linger.  And I hadn't imposed a deadline.  It was really, and I'll ask you the same question as I was asking Mr. Casal. Under these circumstances, what would you propose as a realistic deadline to file your plan and disclosure statement?

MR. MARSHACK:  Your Honor, my answer to that is I think by December 19th we'll be in a -- one month.  We'll be in

Simba IL Holdings, LLC, a Delaware limited liability company

a better position to answer that question.  So I would say, on December 19th, if we could set all these dates, we're going to be in a much better position to understand what's left or what's in our case.  I have three assets.

THE COURT:  Yeah.  I mean, let's see.  This case has already been pending for two months.  It's not an overly complicated case.  There's just a house in Colorado, and there's a few other things.  So I'm going to set dates today.  I'll be flexible, and we can always move them for cause.  That's always the case.

MR. MARSHACK:  I'd advocate for mid-February, Your Honor.

THE COURT:  I don't have a particular problem with that.  Let's see.  Instead of the 14th, we could have a February 13th deadline to file plan and disclosure statement.  Anyone have a problem with that?  All right.  Hearing none, the plan and disclosure statement are to be filed by February 13th, '26.

I'll set a deadline of disclosure statement approval of February 13th.  Let's go to March 31st.  And a plan confirmation deadline of, let's go to May 26th.

Do you have all those dates, Mr. Casal?

MR. CASAL:  I'll reconfirm them right now, Your Honor.  So the deadline to file a plan is February 13th.  The claims bar date will be December 19th.  The deadline to file a

Simba IL Holdings, LLC, a Delaware limited liability company disclosure statement is March 31st. And the deadline for plan confirmation is May 26th.

THE COURT: Right. And the only other dates are that the scheduling order and the bar date notice have to go out by this Friday. Or technically, the scheduling --

MR. CASAL: Understood.

THE COURT: The scheduling order has to be lodged by this Friday. The bar date notice has to be filed and served by this Friday.

MR. CASAL: Understood, Your Honor. Did we want to move the governmental claims bar data, or can we leave it as March 16th, 2026?

THE COURT: Oh. Let's move that. Let's move that out. Let's move that to -- well, that's, I mean, that's set by statute. So I would say whatever it is, whatever it needs to be, based on the date of the bar date notice.

MR. CASAL: Okay.

THE COURT: I think it's 180 days. Am I wrong? It's a great question, Mr. Casal. Forgive me. I haven't had it asked.

MR. CASAL: Your Honor, I thought it was 180 days from the filing of the case, not from the notice of the bar date.

THE COURT: And it may be.

MR. CASAL: Right. I think it would stay the same.

Simba IL Holdings, LLC, a Delaware limited liability company

THE COURT:  And it may be, sir.  And if it stays the same, you can include it in your bar date notice, but then it wouldn't change.

MR. CASAL:  Okay.

THE COURT:  But I leave that to you to confirm.

MR. CASAL:  Understood.  And will do, Your Honor.

THE COURT:  Okay.  And if there's a problem, Mr. Casal, with the mechanics of it, you can call chambers, and we can do a quick conference call.

MR. CASAL:  Okay.

THE COURT:  Go through my clerk first.  All right.  So with that schedule, let me see.  Today is November 18th.  Let's set a continued as -- well, let's continue this out to December 9 to coincide with the relief from stay.  No status report is due, because everybody will probably be here.  We'll go to December 9, '25 at 2:30.  And no notice of this continuance is required.

All right.  Does anyone have any questions on the Simba IL Holdings case or this case management conference or anything else?

All right.  Hearing nothing, thank you all for your time.  I think we'll see you all again on December 9th.  Thank you, everyone.

(Whereupon these proceedings were concluded at 3:51 PM)

I N D E X

RULINGS:                                                    PAGE LINE

Application To Employ Marshack Hays Wood is        19    2

Approved



EXHIBIT "A' - PAGE 26

C E R T I F I C A T I O N

I, Hana Copperman, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Hana Copperman*

_____

/s/ HANA COPPERMAN, CET-487

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:   December 5, 2025

eScribers

EXHIBIT "A' - PAGE 27

**1**

12Th (1): 22:5

13Th (4): 23:16, 23:18, 23:21, 23:25

14Th (1): 23:15

16Th (3): 3:12, 24:13, 27:6

18Th (1): 25:13

19Th (4): 21:16, 22:26, 23:3, 23:26

**2**

26Th (2): 23:22, 24:3

**3**

31St (2): 23:21, 24:2

**4**

4Th (1): 3:8

**9**

9Th (4): 15:16, 15:17, 15:23, 25:23

**A**

ANA (1): 4:2

ANC (1): 6:26

APPEARANCES (1): 2:1

AZ (2): 3:14, 27:7

Ability (2): 9:2, 12:7

Accurate (1): 27:3

Actually (1): 9:26

Add (3): 7:4, 8:3, 19:14

Addition (1): 6:22

Address (1): 12:5

Addresses (1): 16:14

Adversary (1): 8:25

Advise (1): 15:10

Advocate (1): 23:12

Afternoon (11): 4:14, 4:19, 5:2, 5:9, 5:11, 5:16, 5:19, 5:23, 6:2, 6:6, 6:6

Again (13): 4:21, 6:24, 7:23, 11:12, 12:2, 12:12, 13:12, 14:5, 14:6, 15:26, 16:25, 21:24, 25:23

Against (1): 8:25

Agree (5): 6:16, 6:17, 13:3, 15:10, 21:18

Agreed (2): 13:21, 18:24

Agreeing (1): 18:17

Agreement (8): 8:10, 8:22, 9:21, 10:22, 11:9, 11:15, 13:22, 13:24

Ahead (4): 14:26, 19:3, 22:3, 22:11

Aldridge (1): 2:24

Alignment (1): 13:16

Aliso (1): 2:33

Allow (2): 10:18, 14:4

Allowance (2): 12:6, 15:13

Allowing (1): 6:21

Allows (4): 12:10, 12:15, 13:4, 13:5

Alluding (1): 18:14

Always (4): 17:20, 22:18, 23:10, 23:11

Amanecer (1): 2:19

Ambiguity (1): 12:13

Amenable (3): 10:6, 12:23, 13:17

Amend (2): 12:18, 12:22

Amended (1): 13:21

Amount (1): 9:11

Ana (2): 2:14, 3:9

Analysis (2): 6:26, 9:7

Anthony (2): 6:5, 6:7

Anton (1): 2:37

Apologetic (1): 19:9

Apologies (1): 5:21

Apologize (5): 10:12, 15:2, 15:7, 20:7, 22:18

App (1): 17:18

Appearance (1): 6:9

Appearances (2): 4:12, 5:24

Appeared (1): 6:12

Appearing (3): 5:13, 6:11, 22:13

Application (6): 4:10, 16:2, 16:21, 17:23, 17:25, 26:3

Appropriately (1): 6:20

Approval (4): 4:7, 11:13, 19:14, 23:20

Approve (8): 6:14, 7:2, 9:5, 11:15, 15:11, 15:20, 17:22,

19:3

Approved (7): 6:19, 9:22, 11:20, 13:3, 15:15, 18:11, 26:4

Approves (1): 18:10

Approving (2): 4:9, 17:24

Approximately (1): 9:24

Argonaut (1): 2:31

Argument (1): 17:9

As (31): 6:18, 6:22, 7:6, 7:6, 8:22, 9:2, 9:11, 9:14, 9:18, 11:8, 11:16, 11:24, 11:24, 13:16, 14:12, 15:11, 15:12, 15:13, 16:3, 17:13, 17:14, 17:21, 18:11, 19:3, 19:12, 19:13, 21:16, 22:22, 22:23, 24:12, 25:14

Aside (2): 17:15, 21:16

Asset (1): 10:24

Assets (1): 23:5

Assume (1): 20:7

Assumed (1): 17:3

Attached (1): 16:13

Attending (1): 19:19

Attorneys (1): 14:13

Authority (1): 17:10

**B**

Back (4): 7:11, 13:8, 15:4, 15:18

Bad (1): 17:13

Bankruptcy (3): 3:7,

9:19, 19:20

Bar (18): 19:10, 19:11, 19:12, 21:6, 21:8, 21:10, 21:12, 21:15, 21:15, 21:26, 22:5, 23:26, 24:5, 24:9, 24:12, 24:17, 24:23, 25:3

Based (1): 24:17

Basis (3): 11:2, 15:12, 17:10

Bastian (2): 2:3, 5:22

Bausch (1): 3:3

Behalf (6): 5:4, 5:10, 5:13, 5:17, 6:8, 9:17

Benefit (1): 10:4

Best (1): 9:8

Better (3): 19:19, 23:2, 23:4

Beyond (1): 8:18

Bienert (2): 2:17, 5:3

Big (5): 7:6, 7:23, 8:7, 11:4, 17:11

Bigger (1): 8:16

Bit (4): 5:7, 8:5, 8:17, 22:15

Bold (1): 16:15

Both (1): 9:10

Boulevard (1): 2:37

Box (1): 17:2

Breath (2): 8:20, 8:22

Brendan (1): 20:10

Bryan (2): 2:35, 5:18

Bui (2): 2:3, 5:22

**C**

CA (7): 2:7, 2:14, 2:21, 2:27, 2:33, 2:39, 3:9

CALIFORNIA (1): 4:2

CAMPBELL (5): 2:23, 5:9, 9:16, 11:11, 13:9

CASAL (20): 2:2, 4:19, 4:22, 5:21, 14:20, 16:19, 17:6, 18:24, 21:8, 21:12, 21:19, 23:24, 24:7, 24:11, 24:18, 24:22, 24:26, 25:5, 25:7, 25:11

CET (1): 3:10

CHRISTOPHER (1): 2:35

CIMINI (1): 6:6

COPPERMAN (2): 3:10, 27:4

COURT (56): 4:5, 4:16, 4:21, 4:25, 5:5, 5:11, 5:15, 5:19, 5:23, 6:4, 6:10, 8:5, 9:9, 10:12, 11:22, 12:6, 12:9, 12:14, 12:26, 13:11, 13:19, 14:18, 14:22, 14:26, 15:9, 16:24, 17:7, 18:3, 18:12, 18:20, 18:23, 18:26, 19:3, 19:17, 19:26, 20:5, 20:13, 20:18, 21:2, 21:11, 21:14, 21:20, 22:9, 22:11, 22:17, 23:6, 23:14, 24:4, 24:8, 24:14, 24:19, 24:25, 25:2, 25:6, 25:8, 25:12

CRO (3): 14:11, 17:11, 17:14

Call (5): 4:4, 4:5, 7:9, 25:9, 25:10

Calle (1): 2:19

Camino (1): 2:25

Campbell (12): 5:8, 5:10, 9:14, 9:16, 11:12, 12:2, 12:26, 13:2, 13:14, 13:25, 15:10, 15:17

Campbells (1): 8:8

Can (22): 6:26, 8:4, 8:16, 10:7, 10:17, 13:20, 13:23, 13:26, 14:16, 14:19, 19:12, 20:18, 21:6, 21:15, 21:16, 21:20, 22:6, 23:10, 24:12, 25:3, 25:9, 25:10

Cant (2): 7:2, 10:14

Capital (2): 5:10, 9:17

Capitalgreg (1): 2:23

Caps (1): 16:15

Casal (15): 4:20, 4:24, 5:19, 5:21, 14:20, 16:19, 16:24, 18:23, 19:5, 21:6, 21:16, 22:22, 23:23, 24:20, 25:9

Casals (1): 18:4

Case (16): 4:11, 10:25, 12:4, 17:2, 19:6, 19:23, 21:4, 22:14, 22:19, 23:5, 23:6, 23:8, 23:11, 24:23, 25:20, 25:20

Cases (3): 20:8, 20:9, 20:19

Casey (1): 6:8

Cause (1): 23:10

Center (1): 2:5

Certainly (3): 13:13, 17:17, 20:18

Certainty (1): 9:11

Certify (1): 27:2

Chambers (1): 25:9

Chance (1): 17:21

Change (3): 21:9, 21:22, 25:4

Chapter (1): 10:25

Choose (1): 12:12

Chris (1): 5:16

Cimini (3): 6:4, 6:5, 6:7

Circumstances (1): 22:23

Claim (13): 6:21, 7:19, 8:21, 8:23, 8:25, 9:2, 9:11, 12:6, 12:10, 12:12, 12:15, 13:4, 15:14

Claims (8): 12:8, 19:10, 19:11, 19:12, 21:23, 21:25, 23:25, 24:12

Clarification (1): 18:4

Clarify (1): 16:18

Clear (3): 11:12, 12:11, 15:21

Clemente (1): 2:21

Clerk (1): 25:12

Client (8): 10:2, 10:5, 11:12, 12:23, 13:8, 13:10, 13:14, 15:18

Clients (1): 11:21

Code (1): 10:11

Coincide (1): 25:15

Colorable (2): 7:19, 8:26

Colorado (1): 23:8

Comfortable (2): 17:14, 19:10

Comments (3): 7:4, 7:25, 21:4

Company (22): 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1

Compensation (3): 17:8, 17:16, 17:22

Complicated (1): 23:8

Concept (1): 17:14

Concern (1): 8:16

Concerns (1): 12:5

Conclude (1): 9:7

Concluded (1): 25:25

Condition (2): 10:17, 11:6

Conditioned (1): 14:3

Conference (4): 4:11, 19:7, 25:10, 25:20

Confirm (2): 14:19, 25:6

Confirmation (2): 23:22, 24:3

Confusing (1): 17:3

Confusion (1): 21:25

Connection (1): 17:18

Consent (1): 20:21

Consider (2): 10:16, 12:3

Contemplation (1): 20:14

Contest (2): 9:3, 12:12

Contingent (1): 11:13

Continuance (2): 15:24, 25:17

Continue (5): 14:16, 14:23, 15:16, 15:22, 25:14

Continued (4): 4:9, 14:11, 16:13, 25:14

Copperman (1): 27:2

Costa (1): 2:39

Counsel (4): 9:15, 12:18, 12:21, 17:19

Couple (1): 19:22

Court (25): 3:6, 3:7, 4:4, 4:13, 9:22, 11:13, 11:15, 13:21, 14:11, 15:8, 16:11, 16:15, 16:17, 16:22, 16:26, 16:26, 17:4, 17:5, 18:10, 18:10,

19:18, 20:10, 20:24, 20:26, 21:9

Courts (1): 10:8

Create (1): 21:25

Creditor (1): 14:14

Creditors (11): 5:14, 5:17, 6:17, 7:5, 7:23, 10:8, 11:19, 11:24, 13:13, 13:26, 18:18

Critical (1): 16:8

Currently (1): 21:8

**D**

Darren (2): 2:35, 5:17

Data (1): 24:12

Date (21): 9:22, 14:12, 19:10, 19:11, 19:12, 21:6, 21:8, 21:10, 21:13, 21:15, 21:15, 21:26, 22:5, 23:26, 24:5, 24:9, 24:17, 24:17, 24:24, 25:3, 27:8

Dates (8): 19:13, 19:14, 21:5, 21:18, 23:3, 23:9, 23:23, 24:4

Day (4): 19:19, 19:19, 20:3, 20:5

Days (4): 9:22, 9:24, 24:19, 24:22

Deadline (9): 9:26, 22:21, 22:24, 23:16, 23:20, 23:22, 23:25, 23:26, 24:2

Deal (1): 11:13

Debtor (16): 2:2,

4:24, 5:22, 8:22, 9:3, 9:19, 9:21, 9:24, 9:26, 10:10, 10:19, 11:7, 14:21, 16:20, 18:7, 20:11

Debtors (1): 17:12

Dec (1): 19:4

December (22): 4:10, 7:13, 7:21, 10:17, 11:5, 11:14, 11:21, 14:18, 14:19, 15:16, 15:17, 15:22, 21:13, 21:16, 22:5, 22:26, 23:3, 23:26, 25:14, 25:17, 25:23, 27:8

Declaration (2): 18:8, 18:13

Declines (1): 11:15

Deemed (1): 15:24

Default (1): 7:11

Defeating (1): 7:8

Del (1): 2:25

Delaware (23): 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 20:10, 21:1, 22:1, 23:1, 24:1, 25:1

Delay (1): 14:3

Denied (3): 14:2, 14:7, 22:15

Deny (3): 11:23, 13:12, 15:20

Denying (1): 14:15

Detail (2): 7:24, 19:15

Development (1): 20:25

Diamonds (1): 19:20

Didnt (4): 4:22, 4:22, 10:7, 16:6

Diego (1): 2:27

Different (3): 5:24, 7:18, 17:2

Directing (1): 16:22

Disclosure (8): 19:13, 21:21, 22:6, 22:24, 23:16, 23:18, 23:20, 24:2

Discuss (3): 13:23, 19:12, 19:24

Discussion (3): 7:2, 20:13, 20:15

Discussions (1): 12:19

Distressed (1): 10:24

District (1): 20:9

Documentation (1): 18:17

Documents (2): 7:14, 10:3

Done (3): 7:15, 8:8, 9:6

Dont (18): 6:9, 7:14, 8:9, 8:9, 8:10, 8:24, 9:2, 9:3, 10:24, 12:24, 13:5, 16:15, 17:10, 17:19, 18:9, 22:2, 22:12, 23:14

Down (1): 4:17

Drawdown (1): 18:16

Drew (2): 2:30, 5:13

Drive (1): 2:5

Due (1): 25:16

**E**

ESQ (7): 2:2, 2:9, 2:16, 2:23, 2:29, 2:35, 3:1

Early (1): 7:12

Effective (2): 11:18, 18:21

Efficiency (1): 20:19

Either (2): 10:21, 14:2

Election (2): 19:8, 21:24

Electronic (1): 3:16

Else (5): 6:11, 11:3, 11:25, 21:4, 25:21

Elses (1): 4:23

Employ (3): 4:10, 16:2, 26:3

End (2): 21:10, 21:17

Enough (2): 8:11, 8:14

Ensure (1): 8:11

Entertain (1): 17:17

Envision (1): 13:20

Escribers (2): 3:11, 27:5

Essence (1): 7:7

Essentially (1): 6:21

Estate (2): 6:25, 9:8

Eve (1): 9:19

Even (4): 7:15, 8:14, 10:16, 15:10

Everybody (1): 25:16

Everyone (4): 5:25, 6:10, 15:21, 25:24

Example (2): 15:17, 16:11

Extensive (1): 6:23

Extensively (1): 7:13

Extent (1): 13:14

**F**

Fact (2): 17:12, 19:22

Factors (1): 8:11

Failing (1): 7:21

Faint (1): 5:6

Fair (1): 9:21

Fairly (1): 6:22

Faith (1): 17:13

February (4): 23:16, 23:18, 23:21, 23:25

Fee (4): 17:18, 17:18, 17:20, 18:18

Feedback (1): 10:8

Feel (1): 22:5

Few (1): 23:9

File (11): 10:7, 10:9, 10:10, 16:4, 16:25, 21:21, 22:6, 22:24, 23:16, 23:25, 23:26

Filed (14): 9:20, 10:11, 12:24, 13:21, 16:5, 16:5, 18:7, 19:20, 19:23, 20:8, 20:9, 20:22, 23:18, 24:9

Filing (4): 7:14, 9:19, 19:13, 24:23

Final (1): 17:18

Fine (1): 17:24

Fire (1): 10:23
Firm (1): 16:3
First (7): 4:13, 7:26, 19:19, 19:23, 20:3, 20:5, 25:12
Five (1): 16:14
Fixed (1): 8:17
Flat (1): 14:2
Flaws (1): 6:18
Flexible (1): 23:10
Floating (1): 12:19
Floor (1): 2:38
Foreclosure (3): 8:12, 10:2, 10:18
Foregoing (1): 27:2
Forgive (2): 18:12, 24:20
Form (1): 19:10
Formal (1): 6:9
Formally (1): 18:2
Forty (1): 20:11
Forward (2): 10:7, 13:25
Four (2): 8:13, 16:14
Fourth (1): 2:12
Free (1): 17:20
Friday (3): 24:6, 24:9, 24:10
Friedman (2): 2:3, 5:22
Front (2): 19:21, 22:13
Full (1): 9:24
Fulsome (1): 14:4
Further (1): 12:19

G

Gadol (2): 2:35, 5:18
General (1): 17:21
Gilman (2): 3:2, 6:3
Given (1): 7:18
Giving (2): 15:5, 15:7
Global (2): 12:16, 13:7
Goes (1): 13:25
Good (13): 4:14, 4:19, 4:19, 5:2, 5:9, 5:11, 5:16, 5:19, 5:23, 6:2, 6:6, 6:6, 14:25
Governmental (1): 24:12
Grant (2): 11:5, 17:8
Granted (1): 11:17
Granting (1): 7:20
Gravamen (1): 12:5
Great (1): 24:20
Greg (3): 5:9, 9:16, 11:11
Grounds (3): 7:3, 10:26, 17:15
Group (1): 2:30

H

HANA (2): 3:10, 27:4
HARNEY (3): 2:35, 5:16, 13:18
Hadnt (1): 22:21
Hana (1): 27:2
Happen (1): 7:9
Happened (1): 21:25

Happy (1): 15:16
Harney (4): 5:15, 5:16, 12:23, 13:16
Hasnt (1): 6:12
Havent (1): 24:20
Hays (3): 4:11, 16:3, 26:3
Heading (1): 16:11
Hear (3): 4:22, 4:22, 8:4
Heard (4): 11:25, 12:2, 20:6, 20:6
Hearing (10): 7:12, 13:23, 14:6, 14:12, 14:15, 14:16, 15:24, 19:19, 23:17, 25:22
Hearings (2): 20:3, 20:5
Highest (1): 7:7
Hit (2): 8:6, 8:7
Hogan (1): 5:13
Hoganscheer (1): 2:30
Holders (1): 10:4
Holdings (24): 4:1, 4:6, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1, 25:20
Hollister (1): 6:7
Holser (1): 6:3
Holsertim (1): 3:1
Honest (1): 17:13
Honor (40): 4:14, 4:19, 4:20, 5:2, 5:3, 5:9, 5:12, 5:16,

5:21, 6:2, 6:7, 6:9, 8:4, 9:16, 9:17, 11:11, 11:18, 11:26, 13:10, 13:18, 14:20, 15:2, 16:19, 17:6, 17:26, 18:7, 18:24, 19:2, 19:16, 20:4, 20:23, 21:19, 22:7, 22:15, 22:25, 23:13, 23:24, 24:11, 24:22, 25:7
Hope (1): 8:13
Hopefully (3): 9:12, 11:8, 21:22
House (1): 23:8
Hundred (1): 17:14

I

II (1): 4:6
IL (25): 4:1, 4:6, 5:1, 6:1, 6:12, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1, 25:20
Id (3): 13:9, 14:8, 23:12
Idea (1): 6:25
Idis (1): 19:26
Ill (14): 4:17, 7:9, 7:26, 14:26, 15:22, 17:11, 17:13, 17:15, 17:17, 19:3, 22:22, 23:10, 23:20, 23:24
Im (30): 4:21, 5:25, 6:8, 7:2, 7:24, 10:20, 10:20, 11:2,

12:21, 14:10, 15:3, 15:11, 15:16, 16:21, 17:7, 17:9, 17:13, 17:20, 17:24, 18:12, 19:9, 19:9, 19:10, 19:18, 20:5, 20:23, 20:24, 22:3, 22:10, 23:9
Immediate (1): 11:6
Immediately (1): 18:21
Implementation (1): 14:3
Imposed (1): 22:21
Include (1): 25:3
Inconsistent (1): 8:18
Incorrect (1): 16:17
Indicate (2): 16:16, 19:23
Indicating (1): 14:2
Individual (1): 10:25
Informal (1): 18:9
Information (1): 16:13
Informing (2): 19:18, 20:24
Inquiry (1): 18:9
Instead (3): 14:11, 14:15, 23:15
Intend (1): 11:14
Intention (1): 11:23
Interest (3): 7:17, 9:8, 10:3
Interesting (1): 6:15
Interim (1): 10:19
Interrupt (1): 22:7
Interrupted (1):

15:3

Interrupting (3): 10:13, 15:7, 22:18

Into (2): 19:15, 21:5

Introductory (1): 7:4

Irvine (1): 2:7

Is (62): 4:10, 4:11, 4:23, 4:23, 5:25, 6:11, 6:15, 6:25, 7:11, 7:13, 8:11, 8:12, 8:16, 8:17, 8:18, 9:16, 9:19, 10:10, 10:13, 10:16, 10:20, 11:3, 11:4, 11:11, 11:18, 11:20, 11:23, 12:18, 12:21, 13:2, 13:7, 14:10, 14:20, 15:11, 15:15, 15:21, 15:24, 15:26, 16:2, 16:7, 16:17, 16:17, 16:19, 16:26, 17:7, 17:14, 17:19, 19:11, 20:18, 20:25, 21:3, 21:8, 22:25, 23:25, 24:2, 24:3, 24:16, 25:13, 25:15, 25:17, 26:3, 27:2

Isnt (1): 17:5

Issued (1): 19:11

Issues (2): 6:18, 9:2

Ive (2): 9:12, 15:3

**J**

JAMES (1): 3:6

John (1): 22:13

Joinder (1): 12:24

Judge (6): 19:21, 19:23, 20:10, 20:21,

22:8, 22:13

Junior (1): 10:4

**K**

KATZMAN (15): 2:16, 5:2, 8:4, 8:6, 11:26, 12:7, 12:11, 12:21, 14:24, 19:16, 19:18, 20:3, 20:9, 20:15, 20:23

Katzman (17): 2:17, 4:17, 4:26, 5:3, 5:3, 5:6, 6:17, 7:26, 12:2, 12:17, 13:11, 13:16, 14:8, 14:13, 14:22, 19:16, 20:7

Keep (3): 11:8, 15:14, 21:3

Kelsey (1): 6:8

Kicker (1): 17:22

Kind (1): 17:22

**L**

LE (1): 3:6

LLC (23): 3:11, 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1

LLP (4): 2:4, 2:24, 2:30, 3:2

LYSTER (2): 3:1, 6:2

Labeled (1): 16:21

Lack (1): 10:8

Landlord (1): 14:13

Language (2): 10:15, 12:3

Largest (1): 16:10

Last (1): 19:6

Later (2): 5:7, 8:26

Law (1): 2:30

Lawyers (2): 15:4, 15:6

Leash (1): 22:20

Least (2): 9:6, 16:9

Leave (2): 24:12, 25:6

Left (1): 23:4

Lengthy (1): 7:6

Lets (13): 4:5, 4:12, 6:13, 21:14, 23:6, 23:15, 23:21, 23:22, 24:14, 24:14, 24:15, 25:13, 25:14

Liability (22): 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1

Lien (1): 10:4

Limited (22): 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1

Line (2): 4:17, 5:8

Linger (1): 22:21

List (4): 4:17, 6:11,

16:8, 16:10

Listed (1): 9:23

Listen (2): 14:10, 15:3

Listening (1): 6:8

Lists (1): 16:10

Little (4): 5:6, 8:5, 19:7, 22:15

Littrell (2): 2:17, 5:3

Lodge (1): 14:8

Lodged (1): 24:8

Lomb (1): 3:3

Looking (1): 18:12

Looks (1): 7:16

Louder (1): 5:7

Lugano (2): 19:20, 20:12

Luganos (1): 20:22

Lyster (4): 5:25, 5:25, 5:26, 6:3

**M**

MARSHACK (8): 14:10, 15:2, 17:26, 22:7, 22:10, 22:12, 22:25, 23:12

MAX (1): 2:2

Maam (1): 4:16

Mail (1): 16:12

Mailing (5): 16:11, 16:15, 16:17, 17:5, 17:5

Main (1): 8:10

Makes (1): 10:22

Making (1): 12:11

Management (4): 4:11, 19:6, 21:4, 25:20

March (3): 23:21,

24:2, 24:13

Marinate (2): 22:14, 22:19

Market (1): 10:19

Marshack (11): 4:10, 4:11, 14:11, 14:24, 16:2, 16:3, 17:26, 18:8, 22:10, 22:17, 26:3

Matter (9): 4:6, 4:8, 4:15, 5:24, 6:13, 15:22, 15:26, 19:6, 20:26

Matters (1): 6:12

Max (5): 4:20, 4:23, 5:21, 14:20, 16:19

May (20): 7:22, 8:23, 8:25, 8:26, 10:5, 10:16, 10:26, 11:26, 12:3, 20:10, 20:11, 21:24, 21:26, 22:7, 22:15, 22:16, 23:22, 24:3, 24:25, 25:2

Maybe (1): 8:16

Mean (10): 8:10, 10:26, 17:9, 20:18, 21:12, 21:21, 21:22, 21:23, 23:6, 24:15

Means (1): 16:16

Mechanics (1): 25:9

Meetings (1): 20:2

Mentioned (1): 19:22

Mesa (1): 2:39

Midfebruary (1): 23:12

Midterm (1): 7:9

Might (1): 7:19

Mind (3): 11:8, 15:14, 22:12

Miss (1): 7:26

Modification (3): 15:19, 18:11, 18:13

Modifications (2): 18:20, 18:25

Modified (1): 19:4

Month (1): 22:26

Months (3): 8:13, 9:25, 23:7

More (3): 6:20, 6:26, 14:4

Morning (1): 4:19

Most (4): 10:22, 11:10, 16:10, 16:14

Motion (20): 4:7, 6:13, 6:20, 9:5, 9:20, 10:9, 11:5, 11:14, 11:16, 11:19, 11:21, 11:23, 13:12, 13:24, 14:12, 15:26, 16:8, 16:9, 18:9, 18:10

Motivates (1): 9:26

Mountain (5): 2:23, 5:10, 6:23, 9:11, 9:17

Mountains (1): 6:21

Movants (2): 9:15, 12:18

Move (8): 10:7, 17:20, 21:9, 23:10, 24:12, 24:14, 24:14, 24:15

Moving (1): 12:21

Much (3): 10:21, 22:20, 23:4

Must (1): 10:10

Myself (1): 22:4

**N**

NG (6): 2:9, 4:14, 18:7, 18:15, 18:22, 19:2

NOVEMBER (1): 4:2

NY (1): 3:4

Name (4): 4:21, 4:23, 4:23, 4:25

Nature (1): 20:16

Necessary (1): 9:7

Need (6): 6:9, 13:8, 16:9, 17:11, 17:19, 22:19

Needs (2): 20:20, 24:16

New (1): 19:10

Next (1): 14:15

Ng (3): 4:14, 18:6, 18:12

Ninth (1): 2:38

Nobodys (1): 9:6

None (1): 23:17

Note (1): 17:11

Noted (1): 15:19

Notice (14): 8:12, 15:23, 15:24, 19:11, 21:7, 21:10, 21:15, 21:23, 24:5, 24:9, 24:17, 24:23, 25:3, 25:17

November (1): 25:13

Number (1): 4:15

**O**

Object (1): 8:21

Objecting (6): 6:17, 7:5, 7:22, 11:24, 13:13, 13:26

Objection (2): 8:25, 16:6

Objections (1): 16:5

Odea (2): 2:4, 5:22

Off (2): 4:12, 15:18

Office (3): 2:9, 16:20, 17:4

Often (2): 22:13, 22:14

One (12): 8:20, 10:21, 12:15, 13:4, 13:20, 16:7, 16:13, 17:8, 17:15, 18:2, 18:19, 22:26

Ones (1): 19:7

Only (3): 14:10, 15:3, 24:4

Ooo (1): 4:3

Opining (2): 7:25, 17:20

Oppose (1): 13:26

Opposed (1): 8:20

Opposition (1): 7:16

Order (8): 4:4, 4:9, 14:3, 14:8, 19:5, 21:17, 24:5, 24:8

Originally (1): 19:8

Oringher (2): 2:36, 5:17

Otherwise (1): 15:20

Out (11): 12:9, 14:2, 15:6, 19:12, 19:24, 21:7, 21:10, 21:15, 24:5, 24:15, 25:14

Overly (1): 23:7

Oviatt (2): 3:2, 6:3

Owner (1): 11:3

Owns (1): 20:11

**P**

PM (2): 4:2, 25:26

Page (1): 14:14

Pages (2): 16:13, 16:14

Papers (3): 7:16, 8:24, 13:13

Paragraph (1): 18:16

Part (5): 10:13, 11:16, 12:9, 13:4, 19:19

Particular (1): 23:14

Particularly (2): 8:23, 11:2

Parties (8): 9:10, 10:21, 11:8, 12:20, 13:22, 13:25, 15:10, 16:10

Parts (1): 13:4

Patent (1): 20:19

Pending (1): 23:7

People (1): 21:26

Per (2): 8:19, 19:4

Perceived (1): 17:13

Percent (5): 17:8, 17:14, 17:16, 18:2, 20:11

Perhaps (1): 11:16

Period (4): 7:10, 10:18, 11:7, 11:17

Permission (1): 13:9

Person (1): 15:5

Perspectives (1): 9:10

Phoenix (2): 3:14, 27:7

Phonetic (3): 5:14, 6:3, 6:8

Picture (5): 7:6, 7:23, 8:7, 11:4, 17:11

Pite (1): 2:24

Place (1): 3:3

Plan (10): 13:7, 19:13, 21:20, 22:6, 22:24, 23:16, 23:18, 23:21, 23:25, 24:2

Pleadings (2): 7:24, 11:25

Please (3): 5:7, 14:9, 19:5

Point (4): 8:6, 8:14, 9:18, 15:4

Position (6): 9:4, 12:24, 12:25, 20:24, 23:2, 23:4

Possibility (1): 20:17

Possible (1): 7:6

Potentially (1): 7:15

Present (1): 14:15

Pressure (1): 10:21

Prevail (1): 10:16

Principals (1): 17:12

Principle (1): 13:22

Probably (6): 15:13, 16:7, 19:21, 20:21, 22:2, 25:16

Problem (8): 7:11, 10:12, 10:13, 14:23, 15:9, 23:14, 23:17,

25:8

Problems (4): 8:2, 9:13, 10:25, 16:7

Proceed (3): 11:14, 11:21, 13:19

Proceeding (1): 8:25

Proceedings (3): 3:16, 25:25, 27:3

Process (2): 7:6, 14:4

Proffered (1): 11:19

Prompted (1): 9:20

Proof (3): 16:11, 16:25, 17:2

Proofs (1): 21:23

Properties (3): 2:29, 5:13, 6:26

Property (7): 6:14, 7:17, 9:18, 9:23, 9:25, 9:26, 10:23

Propose (1): 22:23

Proposing (2): 12:21, 12:22

Prospect (1): 20:16

Provide (1): 18:17

Provided (1): 3:17

Provides (1): 7:10

Providing (1): 8:18

Provision (3): 10:6, 10:11, 12:15

Provisions (1): 15:18

Public (1): 19:21

Purposes (2): 12:19, 14:6

Pursue (2): 8:24, 11:16

Put (2): 10:20, 20:20

Pyrrhic (1): 7:22

**Q**

QUEENIE (1): 2:9

Quandary (1): 8:26

Queenie (1): 4:14

Quick (1): 25:10

Quickly (1): 16:3

**R**

RULINGSPAGEL INE (1): 26:2

Raise (1): 20:16

Raising (1): 12:17

Rate (1): 10:3

Reach (2): 11:9, 19:24

Reached (2): 9:21, 13:22

Real (1): 6:14

Realistic (1): 22:24

Really (6): 4:6, 6:20, 6:25, 9:6, 13:19, 22:21

Reasonableness (1): 8:15

Reasons (3): 9:12, 11:23, 13:12

Recall (2): 10:14, 20:11

Receive (1): 7:6

Reconfirm (1): 23:24

Record (13): 8:3, 11:24, 12:18, 12:22, 13:3, 13:13, 15:16, 15:19, 19:4, 19:22, 19:24, 20:13, 27:3

Recorded (1): 3:16

Recorder (1): 3:6

Recording (1): 3:16

Reduce (1): 10:3

Regarding (1): 6:14

Related (1): 20:16

Relationship (1): 20:25

Release (8): 8:22, 9:5, 10:14, 10:15, 12:3, 12:7, 12:16, 13:7

Releases (4): 6:22, 6:23, 10:5, 15:13

Releasing (1): 6:25

Relief (25): 4:7, 6:15, 6:24, 7:8, 7:12, 7:18, 7:20, 7:24, 8:18, 8:19, 9:5, 9:20, 10:13, 10:16, 11:2, 11:5, 11:14, 11:17, 11:18, 13:23, 13:26, 14:12, 14:16, 22:15, 25:15

Remember (2): 22:8, 22:13

Removed (1): 8:13

Removing (1): 10:6

Reply (3): 7:15, 8:8, 8:24

Report (1): 25:15

Request (5): 13:25, 17:18, 18:2, 18:18, 20:20

Require (1): 10:2

Required (1): 25:18

Rescind (1): 10:2

Reserve (2): 8:21, 11:16

Respect (2): 8:15,

10:5

Respond (1): 11:26

Response (1): 18:8

Retrospect (1): 8:12

Review (1): 12:8

Reviewed (2): 7:14, 7:24

Revocation (1): 21:24

Revoked (2): 19:8, 22:2

Richard (5): 4:10, 14:11, 17:26, 18:8, 22:10

Right (39): 4:16, 4:26, 5:5, 5:15, 5:23, 6:4, 6:10, 6:15, 8:21, 9:9, 11:16, 11:22, 11:23, 12:9, 12:11, 12:14, 12:14, 13:19, 14:26, 15:9, 15:22, 15:24, 16:4, 17:7, 17:24, 18:3, 18:26, 21:6, 21:11, 21:18, 22:3, 22:19, 23:17, 23:24, 24:4, 24:26, 25:12, 25:19, 25:22

Rio (1): 2:25

Rochester (1): 3:4

Rule (2): 10:9, 17:21

Rusty (2): 3:1, 6:3

**S**

SANTA (1): 4:2

SILVERMAN (2): 2:29, 5:12

SPEAKER (1): 4:18

Sale (5): 7:5, 7:8, 10:23, 14:4, 17:8

Same (7): 10:24, 14:12, 14:14, 15:13, 22:22, 24:26, 25:3

San (2): 2:21, 2:27

Santa (2): 2:14, 3:9

Saw (1): 21:26

Saying (1): 17:3

Schedule (1): 25:13

Scheduling (4): 21:17, 24:5, 24:6, 24:8

Se (1): 8:20

Secondly (1): 13:7

Secured (1): 14:14

Seeing (1): 10:14

Seems (2): 11:9, 16:16

Sell (4): 9:25, 9:26, 10:19, 11:7

Send (1): 8:24

Sense (4): 8:17, 8:18, 10:22, 11:10

Sensitive (1): 10:22

Separate (1): 19:12

Serve (3): 16:22, 16:23, 17:4

Served (3): 16:9, 16:20, 24:9

Service (11): 3:17, 16:8, 16:10, 16:10, 16:12, 16:12, 16:12, 16:25, 16:26, 17:3, 18:4

Set (8): 7:12, 17:15, 21:14, 23:3, 23:9, 23:20, 24:15, 25:14

Setting (2): 9:25,

21:5

Settlement (1): 4:9

Shannon (4): 19:21, 19:23, 20:10, 20:21

Shouldnt (1): 17:4

Shulman (2): 2:3, 5:22

Significant (1): 20:26

Silverman (2): 5:11, 5:12

Simba (26): 4:1, 4:5, 4:6, 5:1, 6:1, 6:11, 7:1, 8:1, 9:1, 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1, 25:20

Situation (2): 10:15, 10:24

Six (2): 9:25, 16:14

Sixty (1): 9:24

Sold (2): 7:11, 10:23

Somebody (3): 4:23, 17:9, 20:20

Somehow (2): 16:16, 16:26

Someone (2): 15:17, 20:21

Sometime (1): 7:12

Sometimes (2): 22:14, 22:19

Somewhat (2): 7:22, 19:9

Son (2): 15:4, 15:7

Sorry (3): 4:21, 20:5, 22:10

Sort (1): 7:21

Sound (1): 3:16

South (1): 2:25

Speak (1): 5:7

Speaking (1): 22:9

Speaks (1): 13:14

Specifically (2): 6:21, 18:14

Spectrum (1): 2:5

Spent (1): 19:19

Stand (1): 13:15

Standard (1): 7:19

Standing (2): 8:24, 10:9

Start (2): 4:12, 6:13

State (1): 16:6

Stated (4): 9:12, 9:18, 11:24, 13:12

Statement (8): 19:13, 21:21, 22:6, 22:24, 23:16, 23:18, 23:20, 24:2

Statements (1): 18:18

States (3): 2:10, 2:10, 3:7

Status (2): 15:3, 25:15

Statute (1): 24:16

Stay (20): 4:7, 6:15, 6:24, 7:8, 7:12, 7:18, 7:20, 7:24, 8:19, 9:6, 10:13, 11:6, 13:24, 13:26, 14:2, 14:13, 14:17, 22:15, 24:26, 25:15

Stays (1): 25:2

Stettinius (1): 6:7

Steve (3): 5:3,

11:26, 19:16

Still (4): 7:14, 15:15, 15:20, 21:21

Stipulation (23): 4:8, 6:14, 6:18, 6:19, 6:24, 7:3, 7:8, 7:10, 7:21, 8:2, 8:9, 8:17, 9:5, 9:13, 9:23, 10:6, 11:20, 12:5, 12:10, 13:3, 13:21, 15:11, 15:15

Stock (1): 20:11

Street (4): 2:12, 3:8, 3:12, 27:6

Stuck (3): 8:23, 8:26, 9:4

Sub (4): 19:8, 19:11, 21:23, 21:26

Subject (1): 6:20

Success (2): 17:18, 17:20

Sufficient (1): 21:24

Suggestion (1): 14:25

Suggestions (1): 15:6

Suite (7): 2:6, 2:13, 2:20, 2:26, 2:32, 3:13, 27:6

Sunday (1): 19:20

Supplement (1): 15:14

Supplemental (3): 18:7, 18:13, 19:4

Supporting (1): 18:17

Sure (2): 5:24, 16:21

Switching (1):

20:14

**T**

TIMOTHY (1): 2:29

TUESDAY (1): 4:2

Taft (1): 6:7

Talk (4): 5:6, 13:8, 18:15, 18:16

Technically (1): 24:6

Teeny (1): 5:7

Tendered (1): 14:24

Tension (1): 22:19

Terms (2): 6:24, 8:2

Testa (2): 2:35, 5:17

Texted (1): 15:4

Texting (2): 15:4, 15:5

Thats (21): 4:7, 4:8, 4:8, 4:9, 6:13, 7:12, 7:21, 7:23, 9:7, 9:8, 12:4, 12:22, 14:5, 14:18, 14:21, 15:12, 18:8, 19:6, 23:11, 24:15, 24:15

Theodora (2): 2:36, 5:17

Theres (20): 6:19, 6:25, 7:7, 7:14, 8:22, 9:4, 10:18, 10:26, 11:6, 12:12, 13:20, 13:24, 16:13, 17:10, 17:15, 20:19, 22:18, 23:8, 23:9, 25:8

Theyre (1): 18:17

Thinking (1): 14:5

Though (2): 7:11,

10:16

Thought (5): 9:20, 12:2, 15:6, 20:25, 24:22

Thoughts (1): 7:23

Three (4): 13:20, 13:24, 16:14, 23:5

Tim (2): 5:12, 6:2

Times (2): 19:22, 22:20

Timothy (1): 5:26

Today (7): 11:15, 11:20, 14:16, 20:6, 20:24, 23:9, 25:13

Together (2): 11:9, 20:19

Took (1): 18:20

Top (1): 16:15

Transcriber (1): 3:10

Transcript (2): 3:17, 27:2

Transcription (1): 3:17

Transfer (1): 7:17

Transferred (1): 9:18

Treatment (2): 13:6, 13:6

True (1): 27:3

Trustee (6): 2:11, 4:15, 10:10, 18:8, 18:25, 20:16

Trusteeoffice (1): 2:10

Try (3): 10:19, 11:7, 11:9

Trying (2): 10:20, 10:20

Turn (1): 9:14
Turns (1): 15:6
Twenty (1): 16:9
Two (12): 8:10, 12:14, 12:15, 13:4, 13:5, 13:20, 13:22, 15:18, 16:4, 16:7, 16:14, 23:7
Type (3): 10:14, 10:15, 10:24
Typical (1): 10:25

**U**

UNIDENTIFIED (1): 4:18
Unauthorized (1): 7:17
Unaware (2): 20:22, 20:22
Under (10): 7:20, 10:7, 10:9, 10:10, 10:11, 10:17, 13:6, 20:17, 21:26, 22:23
Understandable (1): 9:12
Understood (5): 17:6, 21:19, 24:7, 24:11, 25:7
Unfold (1): 14:6
United (3): 2:9, 2:10, 3:7
Unless (1): 16:26
Unusual (1): 19:7
Unwilling (1): 17:8
Up (2): 5:7, 5:25
Upon (2): 11:13, 18:18

**V**

Vacated (2): 4:8, 15:26
Value (2): 7:7, 10:23
Venue (1): 20:14
Victory (2): 7:7, 7:22
Viejo (1): 2:33
Viewpoint (1): 9:7
Void (1): 11:20
Voting (1): 13:6

**W**

Waive (1): 15:23
Waived (2): 9:3, 15:25
Wants (1): 17:9
Way (1): 16:21
Ways (1): 13:20
Week (2): 21:10, 21:17
Werent (1): 16:22
West (1): 2:12
Westport (2): 2:29, 5:13
Weve (1): 10:7
Whats (2): 23:4, 23:5
Whereupon (1): 25:25
White (6): 2:23, 5:10, 6:21, 6:23, 9:10, 9:17
Whos (1): 22:9
Williams (2): 2:18, 5:3
Willing (2): 12:18, 13:2
Wilson (2): 22:8,

22:13
Winters (1): 5:4
Winterssteve (1): 2:16
Wish (1): 11:25
Withdraw (1): 18:2
Withdrawing (1): 12:4
Without (3): 13:4, 15:12, 15:14
Wood (2): 16:3, 26:3
Woods (2): 3:2, 6:3
Words (1): 22:12
Working (1): 11:8
Worried (1): 11:2
Wouldnt (1): 25:4
Wrapping (1): 5:25
Wrong (2): 15:5, 24:19

**Y**

Youd (2): 8:2, 13:8
Youll (1): 21:21
Youre (5): 5:6, 13:2, 15:5, 15:12, 22:18

# EXHIBIT "B"

| | |
|---|---|
| **From:** | Max Casal |
| **To:** | Lori Gauthier |
| **Cc:** | Leonard M. Shulman; Alan J. Friedman; Anne Marie Vernon |
| **Subject:** | Simba - Scheduling Order and Claims Bar Date Notice |
| **Date:** | Tuesday, November 18, 2025 4:09:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

Status conference just ended. By this Friday, we need to serve: (i) a new claims bar date notice and (ii) lodge a scheduling order based on the below dates:

Claims Bar Date → December 19, 2025

Deadline to file plan and disclosure statement → February 13, 2025

Hearing on adequacy of disclosure statement → March 31, 2025

Hearing on plan confirmation → May 26, 2025

Continued status conference → December 9, 2025 at 2:30

Max Casal
*Associate*
mcasal@shulmanbastian.com
http://www.shulmanbastian.com



**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400  Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300  Fax: 951-275-9303



**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

EXHIBIT "B" - PAGE 1

## DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare and state as follows:

1. I am the chief restructuring officer of the Simba IL Holdings, LLC, the debtor and debtor in possession herein (the "Debtor"), an attorney and the managing partner of Marshack Hays Wood LLP. I make this declaration in support of the *Debtor's Response to Order to Show Cause Why Case Should Not Be Dismissed or Converted* (the "Response"). All capitalized terms not otherwise defined herein shall have the meaning set forth in the Response.

2. I am familiar with the Debtor's bankruptcy proceeding to date and have personal knowledge of the facts set forth herein. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

3. On September 16, 2025 (the "Petition Date"), the Debtor filed its voluntary petition for relief under the Bankruptcy Code, commencing this Case.

4. The Debtor is a limited liability company organized under the laws of the State of Delaware. The Debtor is a holding company and its main assets are the Alternative Investments and the Real Property. The Debtor also owns an approximate 35% stake in an entity that owns the entirety of Lugano Diamonds & Jewelry Inc.

5. At all times during the Case, the Debtor has acted in good faith and in furtherance of advancing the Case toward a value-maximizing resolution by, *inter alia*:

   a. timely filing its Plan and Disclosure Statement on February 13, 2026;

   b. originally noticing the Disclosure Statement Hearing for March 31, 2026;

   c. seeking Court approval of the continuance of the Disclosure Statement Hearing pursuant to the Stipulations to Continue;

   d. filing the 9019 Motion which seeks approval of a settlement agreement which I believe resolves the complex issues pending between the Debtor and two of its largest creditors, provides for a substantial reduction of their asserted claims, creates sources of funds to support distributions to creditors of the Debtor's estate upon liquidation of the Real Property and Alternative Investments, and eliminates the risks, costs, and delays associated with litigation; and

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

e.  actively engaging with multiple parties-in-interest to consensually resolve issues related to the Disclosure Statement and 9019 Motion, including by exchanging comments and drafts of the Disclosure Statement with relevant parties and by engaging in substantive discovery, deposition practice, and negotiations in connection with the 9019 Motion.

6.    I believe that the Debtor's efforts to resolve the disputes raised in connection with the 9019 Motion are closely tied to approval of the adequacy of the Disclosure Statement and confirmation of the Plan. For example, the contemplated settlement with Bryan Gadol and Darren Testa affects the feasibility and structure of the Debtor's Plan, including the Debtor's ability to liquidate the Real Property and Alternative Investments and the manner in which the proceeds from such assets may be distributed to creditors. Absent approval of the 9019 Motion (whether it be for the existing settlement agreement or for a revised version which provides greater benefits for the estate), I believe it would be more difficult to confirm a Plan.

7.    While I initially believed that the Debtor would challenge the liens and object to the claims of Gadol and Testa, the Debtor's strategy evolved over the course of the Case based upon new facts, comments from interested parties, and opportunities for consensual resolution. Therefore, the Debtor pursued a consensual resolution of those disputes which (i) ultimately materialized in the form of the settlement contemplated by the 9019 Motion and (ii) is intended to obviate the need to challenge or object to Gadol's and Testa's liens and claims.

8.    As of the Petition Date, I was appointed as the Debtor's chief restructuring officer and was irrevocably delegated all power and authority to manage the Debtor's business and this Case.

9.    Notwithstanding that Mr. Ferder authorized my appointment, I am an independent fiduciary of the Debtor's estate. In my role as chief restructuring officer, I have rarely spoken to Mr. Ferder and have not required any information from him other than information about the furniture in the Real Property and to have the Debtor's professionals try to understand the Alternative Investments. Mr. Ferder was not significantly or materially helpful in assessing the Alternative Investments, requiring the Debtor to seek information from other sources.

10. While I am fully capable of conducting any investigation necessary on behalf of the estate, I am informed that Lugano is already investigating the transaction with WMCI and intends to commence an adversary proceeding regarding any alleged fraud by WMCI.

11. Since the inception of this Case, the Debtor has taken proactive steps to liquidate the Real Property. The Debtor's real estate broker has listed the Real Property for sale, marketed the Real Property online and in publications, and hosted multiple open houses for both brokers and individual purchasers. During the course of the Case, the Debtor has continued to work with its broker and adjust its sale strategy in response to the realities of the Aspen real estate market. For example, while the Debtor initially believed that the Real Property was worth approximately $30 million, the current listing price has been reduced to $22,950,000 to reflect current market conditions and maximize the likelihood of a sale. Unfortunately, to date, the Debtor has only received one offer to purchase the Real Property which the Debtor did not believe was in the best interest of the estate or could be approved by the Court. While the Debtor tried to negotiate in the form of a counteroffer, the prospective buyer declined to engage further.

12. The Debtor has continued to engage in negotiations with interested parties and pursue a settlement that materially impacts the structure and implementation of the Plan. Based on such efforts, the Debtor will amend the Plan and Disclosure Statement as necessary and appropriate.

13. I do not believe that conversion or dismissal is in the best interest of the Debtor's estate.

14. The Case has been pending for eight months during which time the Debtor and its professionals have become intensively familiar with the Debtor's assets and circumstances surrounding the Case.

15. The Debtor has subpoenaed, informally requested, received documents related to, and conducted significant analysis on the Alternative Investments, their value, their ability to be liquidated, and the consequences for doing so. Based on the Debtor's investigation and analysis, the Debtor has determined that the Alternative Investments are subject to significant liquidity restraints and potential penalties based on unfunded commitments. I believe that any chapter 7 trustee and its

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

professionals would likely need to conduct their own analysis at the expense of the estate while being confronted with the same complexities and issues with the Alternative Investments.

16.    In connection with the proposed settlement with Gadol and Testa, the Debtor and its professionals have conducted significant analysis of the subject liens, the underlying actions, and applicable law and have determined that the proposed settlement is in the best interest of the Debtor's estate in light of the substantial legal, factual, and practical challenges the Debtor would face in litigation. The benefit of pursuing settlement as opposed to litigation is that it has enabled the Debtor to secure substantial concessions from Gadol and Testa which will enable distributions to unsecured creditors without facing the risk of litigating the claims and ending up with no available assets to distribute. Moreover, the Debtor engaged with interested parties to resolve issues related to the settlement and has become familiar with their respective positions. In the event that the Case is converted, a trustee would be required to duplicate these efforts at the expense of the estate.

17.    Further, I believe that the statutory fees owed to a chapter 7 trustee upon disbursement of proceeds from liquidation of the Debtor's assets would be substantial. Given that the current listing price of the Real Property is $22,950,000 and that the Debtor believes that the value of the Alternative Investments is between $4 and $6 million, I believe that the resulting fees owed to a trustee could exceed $800,000. If this Case remains in chapter 11, such amounts could instead be paid to creditors.

18.    Because: (i) the 9019 Motion will be adjudicated on the same day as the Disclosure Statement Hearing and (ii) the Debtor anticipates that it will be able to consensually resolve all comments and objections received on both the Plan and Disclosure Statement prior to the Disclosure Statement Hearing, I believe that the Case can proceed expeditiously toward confirmation following approval of the Disclosure Statement.

19.    I believe that the Debtor's failure to comply with the deadlines set by the Court at the Case Management Conference was the result of a counsel's inadvertent misprocessing of the Court's oral ruling.

SHULMAN BASTIAN
FRIEDMAN BUI & O'DEA LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

20. In addition to the filing of the Motion for Relief, the Debtor will take any additional actions necessary to cure the Debtor's noncompliance in accordance with any terms or deadlines set by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 12, 2026.

_____
Richard A. Marshack

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED OR CONVERTED; AND DECLARATIONS OF MAX CASAL AND RICHARD A. MARSHACK IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 12, 2026  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) May 12, 2026 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 12, 2026 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Anthony Bisconti**    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Greg P Campbell**    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Max Casal**    mcasal@shulmanbastian.com, avernon@shulmanbastian.com
- **John B Connor**    jack@johnbconnor.com
- **Matthew Tyler Davis**    tdavis@kbkllp.com
- **Karol K Denniston**    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- **Don Fisher**    dfisher@ptwww.com, tblack@ptwww.com
- **Alan J Friedman**    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **George Gerro**    george@gerrolaw.com
- **Michael D Good**    mgood@southbaylawfirm.com
- **Christopher J Harney**    charney@tocounsel.com, kmanson@tocounsel.com
- **Paul Jasper**    pjasper@perkinscoie.com, david.kline@rimonlaw.com
- **Steven J. Katzman**    skatzman@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Tobias S Keller**    tkeller@kellerbenvenutti.com
- **Jordan A Kroop**    jkroop@pszjlaw.com, rleibowitz@perkinscoie.com
- **Mette H Kurth**    mette.kurth@pierferd.com, mette-kurth-7580@ecf.pacerpro.com
- **Wendy A Locke**    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- **Richard A Marshack**    rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com;alinares@ecf.courtdrive.com
- **Ali M. Mojdehi**    ali.mojdehi@mgr-legal.com
- **John Morris**    jmorris@pszjlaw.com
- **Marisol A Nagata**    CDCAECF@BDFGROUP.COM
- **Dakota Pearce**    dpearce@buchalter.com, pjolley@buchalter.com;docket@buchalter.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Jeffrey N Pomerantz**    jpomerantz@pszjlaw.com
- **Allison M. Rego**    allison.rego@mgr-legal.com
- **Stacy H Rubin**    rubins@ballardspahr.com, DocketClerk_LasVegas@ballardspahr.com;LitDocket_West@ballardspahr.com
- **Traci L Shafroth**    tshafroth@kbkllp.com, jminga@kbkllp.com
- **Leonard M. Shulman**    lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- **Timothy J Silverman**    tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

## 2. SERVED BY U.S. MAIL

The Honorable Mark Houle
U.S. Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C
Santa Ana, CA 92701-4593

**Queenie K Ng**
411 West Fourth St.
Suite 7160
Santa Ana, CA 92701

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**