MARISOL NAGATA, ESQ.
CA BAR NO. 221387
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
3990 E. CONCOURS STREET, SUITE 350
ONTARIO, CA 91764
Phone: (626) 371-7000, Fax: (972) 661-7726
E-mail: CDCAECF@BDFGROUP.COM
File No.  10792794

Attorneys for Movant
CITIMORTGAGE, INC.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>SIMBA IL HOLDINGS, LLC, A<br>DELAWARE LIMITED LIABILITY<br>COMPANY,<br><br><br>Debtor(s). | CASE NO.:    8:25-bk-12616-MH<br><br>CHAPTER:    11<br><br><br>NOTICE OF MOTION AND MOTION TO<br>ALLOW LATE-FILED CREDITOR'S PROOF<br>OF CLAIM; MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT THEREOF<br><br><br>DATE:      June 23, 2026<br>TIME:      1:30pm<br>PLACE:     U.S. Bankruptcy Court<br>            Courtroom 6C<br>            411 W. Fourth St.<br>            Santa Ana, CA 92701-4593<br>JUDGE:     Hon. Mark D. Houle |

COMES NOW, CITIMORTGAGE, INC. ("Movant" or "CitiMortgage"), by and through its undersigned counsel, and hereby respectfully moves the Court for an Order under the Federal Rules of Bankruptcy Procedure ("FRBP") extending the time for deeming CitiMortgage's Proof of Claim timely filed.

PLEASE TAKE NOTICE that this Motion is made on the grounds that CitiMortgage was not aware that the Debtor SIMBA IL HOLDINGS, LLC, A DELAWARE LIMITED LIABILITY COMPANY ("Debtor") claimed an interest in the real property located at **1220 RED BUTTE DR ASPEN, CO 81611** ("Property").  Debtor listed the original lender, Citibank, N.A., in its Schedules and in the Amended Verification of Master Mailing List of Creditors.  However, there was no way for Secured Creditor to link the bankruptcy case to the underlying mortgage loan obligation and property secured by said mortgage. The Note is in the name of individuals MORDECHAI HAIM FERDER AND EDIT FINTZI FERDER ("Borrowers") and the Deed of Trust is in the name of MORDECHAI HAIM FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009 AND EDIT FINTZI FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009.   Thus, Movant was not provided adequate notice of the commencement of this Chapter 11 bankruptcy by the Debtor.

CitiMortgage did not have notice of the Proof of Claim bar date until several months after its passage.  CitiMortgage only became aware of the Debtor's purported interest in the Property after it commenced foreclosure against the Property and the counsel for the junior lienholder provided notification of Debtor's purported interest in the Property and the pending Chapter 11 case.

The Motion is based upon this notice, the attached Memorandum of Points and Authorities and the Declaration and exhibits in support thereof filed concurrently herewith.

This Motion will be served upon all necessary parties, including the Debtor, the United States Trustee, and all creditors.

Pursuant to Local Bankruptcy Rule 9013-1(f)(1), any party wishing to respond to this Motion must file a written response with the Clerk of Court and serve it upon counsel named in the upper left-hand corner of this Notice and upon the United States Trustee not later than 14 days before the date designated for the hearing, if any.

### **INTRODUCTION**

Debtor in this bankruptcy proceeding is a stranger to CitiMortgage.  Debtor purportedly acquired ownership interest in the Property by way of a Statutory Warranty Deed dated September 11, 2025.  Five days later, on September 16, 2025, Debtor commenced the instant Chapter 11 case.

MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

Debtor failed to provide adequate notice of its interest in the Property and of the bankruptcy case filing. The deadline for filing claims was December 19, 2025.  As a result, CitiMortgage was unaware of this proceeding until after the bar date. CitiMortgage now seeks to file a Proof of Claim.

### FACTUAL BACKGROUND

Non-filing obligors MORDECHAI HAIM FERDER AND EDIT FINTZI FERDER (the "Borrowers") executed an Interest Only Period Adjustable Rate Note in the original sum of $11,537,500.00 in favor of CITIBANK, N.A. (the "Note").  *See* **Exhibit "1".**  Movant, directly or through an agent, has possession of the Note, which has been duly indorsed in blank.

The Note is secured by a first priority Deed of Trust against the real property commonly known as **1220 RED BUTTE DRIVE, ASPEN, CO 81611** (the "Property") and legally described in the attached Deed of Trust Property recorded on January 18, 2022 as Document No. 684382, Pitkin County Colorado (the "Deed of Trust").  *See* **Exhibit "2".**  The Deed of Trust was executed by MORDECHAI HAIM FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009 and EDIT FINTZI FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009.  Movant is the assignee of the Deed of Trust.  *See* **Exhibit "3".**

The original loan amount was payable with interest at the initial rate of 2.375% per annum in monthly principal and interest installments of $22,834.64 each, commencing March 1, 2022 and continuing thereafter each calendar month through February 1, 2052, at which time the entire unpaid principal balance plus accrued interest shall be due and payable. Borrowers defaulted on their loan obligation to Movant. A foreclosure was initiated and on March 13, 2026, Movant caused to be recorded a Notice of Election and Demand for Sale by Public Trustee. *See* **Exhibit "4".**  However, in an email communication, counsel for the junior lien holder White Mountain Capital Inc. ("WMCI") provided bankruptcy case filing notification regarding the instant case and the pre-petition transfer of interest in the Property by the Borrowers to the Debtor.[1]  Prior to this notification from WMCI's counsel, there was no notice from the Debtor, Borrowers, or their respective attorneys/agents linking the mortgage loan to this third-party bankruptcy case filing**.**

MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

The Statutory Warranty Deed was dated September 5, 2025 and recorded September 11, 2025. It reflects that Mordechai Haim Ferder and Edit Fintzi Ferder, as Trustees of The Haim Family Trust under trust instrument dated February 24, 2009 transferred their interest in the Property for no consideration to Simba IL Holdings, LLC. *See* **Exhibit "5".**

Five days later, on September 16, 2025, the transferee Simba IL Holdings, LLC commenced the within Chapter 11 Bankruptcy Case in the U.S. Bankruptcy Court, Central District, Santa Ana, Division as case number 8:25-bk-12616-MH. The deadline to file claims was scheduled for December 19, 2025.

## **ARGUMENT**

Movant was not aware of the Debtor's claimed interest in the Property until after the deadline for filing a proof of claim. Debtor listed the original lender, Citibank, N.A., in its Schedules and in the Amended Verification of Master Mailing List of Creditors. However, Debtor is neither a party to the Note or the Deed of Trust and if any copies of bankruptcy pleadings were mailed to Movant, this case was not linked to the underlying mortgage loan. Movant only became aware of the Debtor's case and asserted interest in the Property this month. Had Movant received timely notice of the Debtor's interest in the Property and the pending case, Movant would have taken the appropriate steps to participate in the Debtor's case sooner, including filing a timely claim.[2]

The Debtor has filed a Disclosure Statement (Dkt. No. 228) and Chapter 11 Plan of Reorganization (Dkt. No. 229). Debtor's Plan provides for Movant's secured claim in Class 1-A. Since Movant is already provided for in the Plan, it is in the best interests of the Debtor and Movant to allow Movant's claim to be deemed timely filed. There is no harm to unsecured creditors as the unsecured creditors were already served with a copy of the proposed Disclosure Statement and Plan, which include treatment for Movant's claim. As of April 9, 2026, Movant holds a secured claim in the amount of $11,735,320.32.

---

[1] Following receipt of the notification of bankruptcy case filing and Debtor's asserted interest in the Property, Movant recorded a Withdrawal of Notice of Election and Demand for Sale by Public Notice on April 6, 2026.

[2] Since becoming aware of the case, Movant, through its counsel, filed a Request for Courtesy Notice of Electronic Filing (Dkt. No. 276) on April 8, 2026. Additionally, an objection to the approval of Debtor's disclosure statement (Dkt. No. 277) was filed on April 14, 2026. Movant is also in the process of filing a Motion for Relief from the Automatic Stay.

MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

The failure to file a timely Proof of Claim constitutes excusable neglect pursuant to Federal Rules of Civil Procedure Rule 60, which is made applicable to the Bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 9024.

Federal Rules of Bankruptcy Procedure 3002(c)(6) allows the extension of time for a creditor to file a Proof of Claim for an additional sixty (60) days if the Court finds that "the notice was insufficient under the circumstances to give creditor a reasonable time to file a proof of claim." *See*, FRBP 3002(c)(6)(A).

Furthermore, to avoid additional delay, Movant has attached the proposed Proof of Claim to be filed on the claims register. *See* **Exhibit "6"**.

## CONCLUSION

Movant requests an Order be entered extending the time for filing of Movant's secured claim pursuant FRPB 9024 and FRBP 3002(c)(6)(A) by sixty days.  As Movant was not aware of the Debtor's interest in the Property and the bankruptcy case, Movant contends the failure to file the Proof of Claim was excusable neglect and that is in the best interests of all parties that Movant's proposed claim be allowed to be filed as timely.

Wherefore, based on the foregoing, Movant respectfully requests the Court enter an Order extending the time for filing Movant's proof of claim, and for such relief as is just and equitable.

BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP

Date: May 19, 2026                    By:    /s/ Marisol Nagata
                                             Marisol Nagata, Esq.
                                             Attorney for Movant

MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

MARISOL NAGATA, ESQ.
CA BAR NO. 221387
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
3990 E. CONCOURS STREET, SUITE 350
ONTARIO, CA 91764
Phone: (626) 371-7000, Fax: (972) 661-7726
E-mail: CDCAECF@BDFGROUP.COM
File No. 10792794

Attorneys for Movant
CITIMORTGAGE, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>SIMBA IL HOLDINGS, LLC, A<br>DELAWARE LIMITED LIABILITY<br>COMPANY,<br><br><br><br>Debtor(s). | CASE NO.:    8:25-bk-12616-MH<br><br>CHAPTER:    11<br><br><br>DECLARATION IN SUPPORT MOTION TO<br>ALLOW LATE-FILED CREDITOR'S PROOF<br>OF CLAIM<br><br><br>DATE:<br>TIME:<br>PLACE: |

I, _Christopher Amann_____, declare under penalty of perjury as follows:

1.    I am authorized to sign this declaration as a(n) Vice President - Document Execution of Cenlar FSB ("Cenlar") as servicer for CITIMORTGAGE INC. ("Movant").  This declaration is provided in support of the Motion to Allow Late-Filed Creditor's Proof of Claim (the "Motion") filed contemporaneously herewith.

2.    Cenlar services and maintains records for the loan that is secured by the deed of trust described in paragraph 4 below, in its capacity as servicer for Movant.  As part of my job responsibilities for Cenlar, I am familiar with the type of records maintained by Cenlar in connection with the loan.

3.    I have personal knowledge of the facts in this affidavit based upon a review of Cenlar's business records, and the information is taken from Cenlar's business records.  I have personal knowledge of Cenlar's procedures for creating records maintained by Cenlar in connection with the loan.  They are:  (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) made and kept in the usual and ordinary course of Cenlar's regularly conducted business activities; and (c) created by Cenlar as regular practice.

4.    Non-filing obligors MORDECHAI HAIM FERDER AND EDIT FINTZI FERDER (the "Borrowers") executed an Interest Only Period Adjustable Rate Note in the original sum of $11,537,500.00 in favor of CITIBANK, N.A. (the "Note").  *See* **Exhibit "1"**.

5.    Movant, directly or through an agent, has possession of the Note, which has been duly indorsed in blank.

6.    The Note is secured by a first priority Deed of Trust against the real property commonly known as **1220 RED BUTTE DRIVE, ASPEN, CO 81611** (the "Property") and legally described in the attached Deed of Trust Property recorded on January 18, 2022 as Document No. 684382, Pitkin County Colorado (the "Deed of Trust").  *See* **Exhibit "2"**.

7.    The Deed of Trust was executed by MORDECHAI HAIM FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009 and EDIT FINTZI FERDER, Trustee of the Haim Family Trust, Under Trust Instrument Dated February 24, 2009.

8.    Movant is the assignee of the Deed of Trust.  *See* **Exhibit "3"**.

9.    The original loan amount was payable with interest at the initial rate of 2.375% per annum in monthly principal and interest installments of $22,834.64 each, commencing March 1, 2022 and continuing thereafter each calendar month through February 1, 2052, at which time the entire unpaid principal balance plus accrued interest shall be due and payable.

2

DECLARATION IN SUPPORT OF MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

10.   Borrowers defaulted on their loan obligation to Movant.

11.   A foreclosure was initiated and on March 13, 2026, Movant caused to be recorded a Notice of Election and Demand for Sale by Public Trustee. *See* **Exhibit "4".**

12.   However, in an email communication, counsel for the junior lien holder White Mountain Capital Inc. ("WMCI") provided bankruptcy case filing notification regarding the instant case and the pre-petition transfer of interest in the Property by the Borrowers to the Debtor.

13.   Prior to this notification from WMCI's counsel, there was no notice from the Debtor, Borrowers, or their respective attorneys/agents linking the mortgage loan to this third-party bankruptcy case filing.

14.   Following receipt of the notification of bankruptcy case filing and Debtor's asserted interest in the Property, Movant recorded a Withdrawal of Notice of Election and Demand for Sale by Public Notice on April 6, 2026.

15.   The Statutory Warranty Deed was dated September 5, 2025 and recorded September 11, 2025. *See* **Exhibit "5".**

16.   It reflects that Mordechai Haim Ferder and Edit Fintzi Ferder, as Trustees of The Haim Family Trust under trust instrument dated February 24, 2009 transferred their interest in the Property for no consideration to Simba IL Holdings, LLC.

17.   Five days later, on September 16, 2025, the transferee Simba IL Holdings, LLC commenced the within Chapter 11 Bankruptcy Case in the U.S. Bankruptcy Court, Central District, Santa Ana, Division as case number 8:25-bk-12616-MH.

18.   The deadline to file claims was scheduled for December 19, 2025.

19.   Movant was not aware of the Debtor's claimed interest in the Property until after the deadline for filing a proof of claim.

20.   Debtor listed the original lender, Citibank, N.A., in its Schedules and in the Amended Verification of Master Mailing List of Creditors.  However, Debtor is neither a party to the Note or the Deed of Trust and if any copies of bankruptcy pleadings were mailed to Movant, this case was not linked to the underlying mortgage loan.

3
DECLARATION IN SUPPORT OF MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

21. Had Movant received timely notice of the Debtor's interest in the Property and the pending case, Movant would have taken the appropriate steps to participate in the Debtor's case sooner, including filing a timely claim.

22. Since becoming aware of the case, Movant, through its counsel, filed a Request for Courtesy Notice of Electronic Filing (Dkt. No. 276) on April 8, 2026. Additionally, an objection to the approval of Debtor's disclosure statement (Dkt. No. 277) was filed on April 14, 2026. Movant is also in the process of filing a Motion for Relief from the Automatic Stay.

23. The Debtor has filed a Disclosure Statement (Dkt. No. 228) and Chapter 11 Plan of Reorganization (Dkt. No. 229).

24. Debtor's Plan provides for Movant's secured claim in Class 1-A.

25. As of April 9, 2026, Movant holds a secured claim in the amount of $11,735,320.32.

26. Furthermore, to avoid additional delay, Movant has attached the proposed Proof of Claim to be filed on the claims register. *See* **Exhibit "6"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _27th_ day of April 2026, at _Ewing_ . _NJ_ .

_____
Signature

Christopher Amann
Printed Name

Vice President - Document Execution
Title

4
DECLARATION IN SUPPORT OF MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM

# EXHIBIT 1

# Interest Only Period Adjustable Rate Note

### 30-day Average SOFR Index - Rate Caps - 120-month Interest Only Period

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| January 13, 2022 | Charlotte | North Carolina |
|---|---|---|
| [Date] | [City] | [State] |

1220 Red Butte Dr, Aspen, CO 81611
[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $11,537,500.00 (this amount is called *"Principal"*), plus interest, to the order of Lender. Lender is Citibank, N.A..

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 2.375%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. Payments.**

**(A) Time and Place of Payments.** I will make a payment on the first day of every month, beginning on March 1, 2022. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on February 1, 2052, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*.

I will make my monthly payments at Central Loan Administration and Reporting P.O. Box 11733, Newark, NJ 07101 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments.** Each of my initial monthly payments will be in the amount of U.S. $22,834.64 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes.** Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4. Adjustable Interest Rate and Monthly Payment Changes.**

Interest Only Period Adjustable Rate Note-Multistate
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

06/2020
Page 1 of 5

**EXHIBIT 1**

**(A) Change Dates.** The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of February, 2029, and the adjustable interest rate I will pay may change on that day every 6 months thereafter.

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a *"Change Date."*

**(B) The Index.** Beginning with the first Change Date, my adjustable interest rate will be based on an Index that is calculated and provided to the general public by an administrator (the *"Administrator"*). The *"Index"* is a benchmark, known as the 30-day Average SOFR index.

The most recent Index value available as of the date 45 days before each Change Date is called the *"Current Index,"* provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, it will be replaced in accordance with Section 4(G) below.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters percentage points (2.750%) (the *"Margin"*) to the Current Index. The Margin may change if the Index is replaced by the Note Holder in accordance with Section 4(G)(2) below. The Note Holder will then round the result of the Margin plus the Current Index to the nearest zero and one-eighth percentage point (.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than 7.375% or less than 2.750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 7.375% or less than 2.750%.

**(E) Effective Date of Changes.** My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes.** Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Replacement Index and Replacement Margin.** The Index is deemed to be no longer available and will be replaced if any of the following events (each, a *"Replacement Event"*) occur: (i) the Administrator has permanently or indefinitely stopped providing the Index to the general public; or (ii) the Administrator or its regulator issues an official public statement that the Index is no longer reliable or representative.

If a Replacement Event occurs, the Note Holder will select a new index (the *"Replacement Index"*) and may also select a new margin (the *"Replacement Margin"*), as follows:

1. If a replacement index has been selected or recommended for use in consumer products, including residential adjustable-rate mortgages, by the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Board of Governors of the Federal Reserve System or the Federal Reserve Bank of New York at the time of a Replacement Event, the Note Holder will select that index as the Replacement Index.

2. If a replacement index has not been selected or recommended for use in consumer products under Section (G)(1) at the time of a Replacement Event, the Note Holder will make a reasonable, good faith effort to select a Replacement

Interest Only Period Adjustable Rate Note-Multistate
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

06/2020
Page 2 of 5

**EXHIBIT 1**

Index and a Replacement Margin that, when added together, the Note Holder reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Index and the Replacement Index.

The Replacement Index and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine my interest rate and monthly payments on Change Dates that are more than 45 days after a Replacement Event. The Index and Margin could be replaced more than once during the term of my Note, but only if another Replacement Event occurs. After a Replacement Event, all references to the "Index" and "Margin" shall be deemed to be references to the "Replacement Index" and "Replacement Margin."

The Note Holder will also give me notice of my Replacement Index and Replacement Margin, if any, and such other information required by applicable law and regulation.

**(H) Date of First Principal and Interest Payment.** The date of my first payment consisting of both principal and interest on this Note (the *"First Principal and Interest Payment Due Date"*) shall be March 1, 2032, as reflected in Section 3(A) of the Note.

**5. Borrower's Right to Prepay.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a *"Prepayment."* When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. Borrower's Failure to Pay as Required.**

**(A) Late Charges for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses

**EXHIBIT 1**

in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. Obligations of Persons Under this Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Borrower**

_____ Seal
**Mordechai Haim Ferder**

**Edit Fintzi Ferder** _____ Seal

Pay to the order of

_____
without recourse on us
Citibank, N.A.

_____
Harrison Luvai, Vice President
Citibank, N.A.

[Sign Original Only]

Interest Only Period Adjustable Rate Note-Multistate
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

06/2020
Page 4 of 5

**EXHIBIT 1**

Loan Origination Organization: Citibank, N.A.

NMLS ID: ████████

Loan Originator: Brittany Rosinski

NMLS ID: ███████

Interest Only Period Adjustable Rate Note-Multistate
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

████████

███████████████

06/2020
Page 5 of 5

**EXHIBIT 1**

## ADDENDUM TO NOTE

## INTEREST RATES AND INTEREST CHARGES

THIS INTEREST RATE AND INTEREST CHARGES ADDENDUM is made this 13th day of January, 2022, and is incorporated into and shall be deemed to amend and supplement the note (the Note) of the same date given by the undersigned (the Borrower) to Citibank, N.A. (the Lender).

In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**Interest Rates and Interest Charges.** Lender is a national bank. As authorized by 12 U.S.C. § 85, provisions related to interest rates and interest charges shall be governed by federal law and by the laws of the state of South Dakota, where Lender is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

**Borrower**

_____          _____
**Mordechai Haim** Ferder                 Edit Fintzi Ferder

[Sign Original Only]

(Settlement Agent: This Addendum to Note must be returned to Lender with the Note)

Interest Rate and Interest Charges Note Addendum
Wolters Kluwer Financial Services, Inc.

Rev. 08/2019

Page 1 of 1

## EXHIBIT 1

# EXHIBIT 2

RECEPTION#: 684382, R: $113.00, D: $0.00, 01/18/2022 at 02:09:49 PM, Pgs 1 of 21, Janice K. Vos Caudill, Pitkin County, CO

Case 8:25-bk-12616-MH   Doc 311   Filed 05/19/26   Entered 05/19/26 10:47:24   Desc
Main Document      Page 18 of 57

# Deed of Trust

MIN ██████████████

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** *"Security Instrument"* means this document, which is dated January 13, 2022, together with all Riders to this document.

**(B)** *"Borrower"* is The Haim Family Trust U/D/T February 24, 2009;. Borrower is the trustor under this Security Instrument.

**(C)** *"Lender"* is Citibank, N.A.. Lender is a corporation organized and existing under the laws of the United States of America. Lender's address is 1000 Technology Drive, O'Fallon, MO 63368-2240.

**(D)** *"Trustee"* is the Public Trustee of Pitkin County, Colorado.

**(E)** *"MERS"* is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** *"Note"* means the promissory note signed by Borrower and dated January 13, 2022. The Note states that Borrower owes Lender Eleven million five hundred thirty seven thousand five hundred and 00/100 Dollars (U.S. $11,537,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2052.

**(G)** *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Condominium Rider                  ☒ Second Home Rider
☐ Balloon Rider                   ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                          ☐ Biweekly Payment Rider           ☐ Other(s) [specify]

**(J)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 1 of 14

**EXHIBIT 2**

**(M)** *"Escrow Items"* means those items that are described in Section 3.

**(N)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** *"RESPA"* means the *Real Estate Settlement Procedures Act* (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Pitkin [Name of Recording Jurisdiction]: [See attached Exhibit A]

**Parcel ID Number:** _____ which currently has the address of 1220 Red Butte Dr [Street] Aspen [City], Colorado 81611 [Zip Code] (*"Property Address"*):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the *"Property."* Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 2 of 14

**EXHIBIT 2**

check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the *"Funds"*) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called *"Escrow Items"*. At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 3 of 14

**EXHIBIT 2**

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term *"extended coverage,"* and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 4 of 14

**EXHIBIT 2**

the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 5 of 14

**EXHIBIT 2**

deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 6 of 14

**EXHIBIT 2**



fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed *"captive reinsurance."* Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 7 of 14

**EXHIBIT 2**

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. *"Opposing Party"* means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 8 of 14

**EXHIBIT 2**

Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, *"Interest in the Property"* means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

---

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 9 of 14

# EXHIBIT 2

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the *"Loan Servicer"*) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) *"Hazardous Substances"* are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances:

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 10 of 14

**EXHIBIT 2**

gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) *"Environmental Law"* means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) *"Environmental Cleanup"* includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an *"Environmental Condition"* means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 11 of 14

**EXHIBIT 2**

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly canceled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____ Seal
**Mordechai Haim-Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

_____ Seal
**Edit Fintzi Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

**Acknowledgment**

State of North Carolina ~~C A~~

County of ~~Mecklenburg~~ Orange

I, ___Diana Nguyen___, a notary public, do hereby certify that Mordechai Haim Ferder, Trustee of the The Haim Family Trust, under trust instrument dated February 24, 2009 on behalf of the Trust personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and official stamp or seal on ___1.13.22___.

_____
*Notary Public*

___Diana Nguyen___
*(Print Name)*

My commission expires: ___1.7.24___

DIANA NGUYEN
Commission # 2315410
Notary Public - California
ORANGE County
My Comm. Expires JAN 7, 2024

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 12 of 14

**EXHIBIT 2**

**Acknowledgment**

State of North-Carolina C A

County of Mecklenburg Orange

I, Diana Nguyen , a notary public, do hereby certify that Edit Fintzi Ferder, Trustee of the The Haim Family Trust, under trust instrument dated February 24, 2009 on behalf of the Trust personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and official stamp or seal on 1.13.22 .

_____
*Notary Public*

Diana Nguyen
*(Print Name)*

My commission expires: 1.7.24

DIANA NGUYEN
Commission # 2315410
Notary Public - California
ORANGE County
My Comm. Expires JAN 7, 2024

Loan Origination Organization: Citibank, N.A.    Loan Originator: Brittany Rosinski

NMLS ID: ███    NMLS ID: ███

*er*

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 13 of 14

**EXHIBIT 2**

## EXHIBIT A
### Legal Description

Loan No ▮▮▮▮▮▮▮

See Attached Exhibit A

COLORADO-Single Family-Fannie·Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services, Inc.

Form 3006 1/01
08/2020
Page 14 of 14

**EXHIBIT 2**

# Second Home Rider

THIS SECOND HOME RIDER is made this 13th day of January, 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*) of the same date given by the undersigned (the *"Borrower"* whether there are one or more persons undersigned) to secure Borrower's Note to Citibank, N.A. (the *"Lender"*) of the same date and covering the Property described in the Security Instrument (the *"Property"*), which is located at: 1220 Red Butte Dr, Aspen, CO 81611 [Property Address].

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

**Borrower**

_____  Seal
**Mordechai Haim Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

_____  Seal
**Edit Fintzi Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

MULTISTATE SECOND HOME RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services, Inc.

Form 3890 1/01 (rev. 4/19)
11/2019
Page 1 of 1

## EXHIBIT 2

# Interest Only Period Adjustable Rate Rider

## (30-day Average SOFR Index - Rate Caps - 120-month Interest Only Period)

This Adjustable Rate Rider is made this 13th day of January, 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*) of the same date given by the undersigned (*"Borrower"*) to secure Borrower's Adjustable Rate Note (the *"Note"*) to Citibank, N.A. (*"Lender"*) of the same date and covering the property described in the Security Instrument and located at: 1220 Red Butte Dr, Aspen, CO 81611 [Property Address].

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**Additional Covenants.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Adjustable Rate and Monthly Payment Changes.** The Note provides for an initial fixed interest rate of 2.375%. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. Adjustable Interest Rate and Monthly Payment Changes.**

**(A) Change Dates.** The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of February, 2029, and the adjustable interest rate I will pay may change on that day every 6 months thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a *"Change Date"*.

**(B) The Index.** Beginning with the first Change Date, my adjustable interest rate will be based on an Index that is calculated and provided to the general public by an administrator (the *"Administrator"*). The *"Index"* is a benchmark, known as the 30-day Average SOFR index.

The most recent Index value available as of the date 45 days before each Change Date is called the *"Current Index,"* provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, it will be replaced in accordance with Section 4(G) below.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters percentage points (2.750%) (the *"Margin"*) to the Current Index. The Margin may change if the Index is replaced by the Note Holder in accordance with Section 4(G)(2) below. The Note Holder will then round the result of the Margin plus the Current Index to the nearest zero and one-eighth percentage point (.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the first Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

## EXHIBIT 2

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than 7.375% or less than 2.750%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 7.375% or less than 2.750%.

**(E) Effective Date of Changes.** My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes.** Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Replacement Index and Replacement Margin.** The Index is deemed to be no longer available and will be replaced if any of the following events (each, a *"Replacement Event"*) occur: (i) the Administrator has permanently or indefinitely stopped providing the Index to the general public; or (ii) the Administrator or its regulator issues an official public statement that the Index is no longer reliable or representative.

If a Replacement Event occurs, the Note Holder will select a new index (the *"Replacement Index"*) and may also select a new margin (the *"Replacement Margin"*), as follows:

1. If a replacement index has been selected or recommended for use in consumer products, including residential adjustable-rate mortgages, by the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Board of Governors of the Federal Reserve System or the Federal Reserve Bank of New York at the time of a Replacement Event, the Note Holder will select that index as the Replacement Index.

2. If a replacement index has not been selected or recommended for use in consumer products under Section (G) (1) at the time of a Replacement Event, the Note Holder will make a reasonable, good faith effort to select a Replacement Index and a Replacement Margin that, when added together, the Note Holder reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Index and the Replacement Index.

The Replacement Index and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine my interest rate and monthly payments on Change Dates that are more than 45 days after a Replacement Event. The Index and Margin could be replaced more than once during the term of my Note, but only if another Replacement Event occurs. After a Replacement Event, all references to the "Index" and "Margin" shall be deemed to be references to the "Replacement Index" and "Replacement Margin."

The Note Holder will also give me notice of my Replacement Index and Replacement Margin, if any, and such other information required by applicable law and regulation.

**(H) Date of First Principal and Interest Payment.** The date of my first payment consisting of both principal and interest on this Note (the *"First Principal and Interest Payment Due Date"*) shall be March 1, 2032, as reflected in Section 3(A) of the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Period Adjustable Rate Rider.

Multistate Interest Only Period Adjustable Rate Rider - CO
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

**EXHIBIT 2**

RECEPTION#: 684382, 01/18/2022 at 02:09:49 PM, Pgs 18 of 21, Janice K. Vos Caudill, Pitkin County, CO

**Borrower**

_____ *Seal*
**Mordechai Haim Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

_____ *Seal*
**Edit Fintzi Ferder**
*Trustee of the The Haim Family Trust,*
*under trust instrument dated February*
*24, 2009*

Multistate Interest Only Period Adjustable Rate Rider - CO
© 2014-2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

06/2020
Page 3 of 3

# EXHIBIT 2

Escrow File No.

## EXHIBIT "A"

THE FOLLOWING REAL PROPERTY IN THE COUNTY OF PITKIN AND STATE OF COLORADO, TO WIT:

PARCEL 1:

LOT 4,
GAYLORD SUBDIVISION, ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20 AND THE FIRST AMENDED PLAT RECORDED OCTOBER 11, 2011 IN PLAT BOOK 98 AT PAGE 35
COUNTY OF PITKIN
STATE OF COLORADO.

PARCEL 2:

AN UNDIVIDED 1/5TH INTEREST IN THE OPEN SPACE PARCEL AS SHOWN ON THE FINAL PLAT OF GAYLORD SUBDIVISION RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20

COUNTY OF PITKIN, STATE OF COLORADO.

Tax ID: ▮▮▮▮▮▮

NOTE: The property address and tax parcel identification number listed are provided solely for informational purposes, without warranty as to accuracy or completeness and are not hereby insured.

Being that parcel of land conveyed to The Haim Family Trust U/D/T February 24, 2009 from AHN Aspen Holdings, LLC, a Delaware Limited Liability Company by that deed dated 9/17/2021 and recorded 9/20/2021 in deed Reception No. 680671 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to AHN Aspen Holdings, LLC from Sophie Harvey and Miles Butera Irrevocable IDG Trust and Miles Butera Irrevocable Trust dated March 24, 2008 by that deed dated 8/31/2020 and recorded 9/1/2020 in deed Reception No. 667645 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Sophie Harvey from Sophie Harvey Butera N/K/A Sophie Harvey by that deed dated 3/13/2020 and recorded 3/18/2020 in deed Reception No. 663552 of the Pitkin County, CO public registry.

NOTE: Deed is being recorded to correct the signature recorded on 3/18/2020, in Reception

## EXHIBIT 2

No. 663550 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Miles Butera Irrevocable Trust dated March 24, 2008 from Sophie Harvey Butera Residence Trust dated March 24, 2008, by and March 24, 2008, by and through its Trustees, Andrew V. Hecht and Peter Van Domelen, as to an undivided 25% interest by that deed dated 6/24/2015 and recorded 12/11/2015 in deed Reception No. 625541 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to The Miles Butera Irrevocable IDG Trust from T. Richard Butera by that deed dated 8/27/2008 and recorded 9/25/2008 in deed Reception No. 553114 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Sophie Harvey Butera Residence Trust from Sophie Harvey Butera by that deed dated 3/24/2008 and recorded 3/25/2008 in deed Reception No. 547777 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to T. Richard Butera, as to an undivided 25% interest and Sophie Harvey Butera, as to an undivided 75% interest from 1220 Red Butte LLC, a Colorado Limited Liability Company by that deed dated 1/16/2008 and recorded 1/17/2008 in deed Reception No. 545923 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to T. Richard Butera, as to an undivided 25% interest and Sophie Harvey Butera, as to an undivided 75% interest from 1220 Red Butte LLC, a Colorado Limited Liability Company by that deed dated 1/16/2008 and recorded 1/17/2008 in deed Reception No. 545922 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to 1220 Red Butte LLC, a Colorado Limited Liability Company from Casa Del Rio, LLC, a Florida Limited Liability Company by that deed dated 7/3/2006 and recorded 7/5/2006 in deed Reception No. 526130 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to 1220 Red Butte LLC, a Colorado Limited Liability Company from Casa Del Rio, LLC, a Florida Limited Liability Company by that deed dated 7/3/2006 and recorded 7/5/2006 in deed Reception No. 526129 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to 1220 Red Butte LLC, a Colorado Limited Liability from Casa Del Rio, LLC, a Florida Limited Liability Company by that deed dated 7/5/2006 and recorded 7/5/2006 in deed Reception No. 526128 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Casa Del Rio, LLC from George W. Hall by that deed dated 6/30/2006 and recorded 7/5/2006 in deed Reception No. 526126 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Casa Del Rio, LLC from George W. Hall, Jr. and

## EXHIBIT 2

George W. Hall, III by that deed dated 9/15/2005 and recorded 9/16/2005 in deed Reception No. 514930 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to George W. Hall a/k/a George W. Hall, Jr., as to an undivided 70% interest, as Tenant-in-common, and George W. Hall, III, as to an undivided 30% interest, as Tenant-in-common from George W. Hall a/k/a George W. Hall, Jr. by that deed dated 5/1/1995 and recorded 7/17/1997 in deed Reception No. 406405 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to Brenda B. Crain; Buddy Hackett; George W. Hall and Brian L. Hazen from Charles Gaylord by that deed dated 8/17/1993 and recorded 8/20/1993 in deed Reception No. 360261 of the Pitkin County, CO public registry.

Being that parcel of land conveyed to George W. Hall from Charles Gaylord by that deed dated 10/1/1981 and recorded 10/6/1981 in deed Reception No. 236197 of the Pitkin County, CO public registry.

PARCEL NUMBER(S): ▮▮▮▮▮▮▮▮

**EXHIBIT 2**

# EXHIBIT 3

RECEPTION#: 713667, R: $43.00, D: $0.00, 12/10/2025 at 01:55:39 PM, Pgs 1 of 1, Ingrid K. Grueter, Pitkin County, CO

**WHEN RECORDED RETURN TO:**
**Cenlar FSB C/O Nationwide Title Clearing, LLC**
**2100 Alt. 19 North**
**Palm Harbor, FL 34683**

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Regarding this instrument, contact Cenlar FSB. 425 Phillips Blvd, Ewing, NJ 08618, telephone # 1-800-223-6527, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR CITIBANK, N.A., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DR, O'FALLON, MO 63368 (855)839-6253, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **THE HAIM FAMILY TRUST U/D/T FEBRUARY 24, 2009** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR CITIBANK, N.A., ITS SUCCESSORS AND ASSIGNS** dated 01/13/2022, and recorded in **Reception # 684382** in the office of the Recorder of **PITKIN** County, **Colorado**.

**Dated this 10th day of December in the year 2025**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR CITIBANK, N.A., ITS SUCCESSORS AND ASSIGNS**

**MONYAI JONES**
**VICE PRESIDENT**

STATE OF MICHIGAN
COUNTY OF OAKLAND
The foregoing instrument was acknowledged before me on this 10th day of December in the year 2025 by Monyai Jones as VICE PRESIDENT who is/are authorized to execute this instrument on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR CITIBANK, N.A., ITS SUCCESSORS AND ASSIGNS. He/she/they is (are) personally known to me.

**CIERRA GRIFFIN**
**COMM EXPIRES: 1/24/2031**

CIERRA GRIFFIN
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Jan 24, 2031
ACTING IN COUNTY OF Oakland

This notarization was performed using electronic technology by Nationwide Title Clearing, LLC.

**Document Prepared By: Jennifer Zak/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
CENAV ▪ ████████ MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT

# EXHIBIT 3

# EXHIBIT 4

RECEPTION#: 715313, R: $43.00, D: $0.00
DOC CODE: ELEC & DEMAND
Pg 1 of 2, 03/13/2026 at 12:13:05 PM
Ingrid K. Grueter, Pitkin County, CO

## NOTICE OF ELECTION AND DEMAND FOR SALE
## BY PUBLIC TRUSTEE

No. ___PT26-003___

TO THE PUBLIC TRUSTEE, PITKIN County, Colorado

Pursuant to the terms of the Deed of Trust described as follows:

Original Grantor(s): THE HAIM FAMILY TRUST U/D/T FEBRUARY 24, 2009
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIBANK, N.A.
Holder of Evidence of Debt: CITIMORTGAGE, INC.
Date of Deed of Trust: January 13, 2022
Recording Date of Deed of Trust:  January 18, 2022
Reception No. of Recorded Deed of Trust:  at Reception No. 684382
County of Recording: PITKIN
Original Principal Amount of Evidence of Debt: $11,537,500.00
Outstanding Principal Amount of Evidence of Debt as of the date hereof: $11,537,500.00

The real property to be foreclosed is described as:

**SEE ATTACHED LEGAL DESCRIPTION**

Which has the address of : 1220 RED BUTTE DR, ASPEN, CO 81611

**THE PROPERTY DESCRIBED HEREIN IS ALL OF THE PROPERTY ENCUMBERED BY THE LIEN OF THE DEED OF TRUST.**

**THE LIEN FORECLOSED MAY NOT BE A FIRST LIEN.**

The covenants of said Deed of Trust have been violated as follows:   Failure to pay principal and interest when due together with all other payments provided for in the Evidence of Debt secured by the Deed of Trust and other violations of the terms thereof.

The undersigned therefore declares a violation of the covenants of said Deed of Trust.   Demand is hereby made that you as Public Trustee named in said Deed of Trust, give notice, advertise for sale and sell said property for the purpose of paying all or part of the indebtedness thereby secured and the expense of making said sale, all as provided by law and the terms of said Deed of Trust.

**BARRETT FRAPPIER & WEISSERMAN, LLP MAY BE ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

CITIMORTGAGE, INC.
Holder of Evidence of Debt, as the term is defined in C.R.S. 38-38-100.3(10).

BARRETT FRAPPIER & WEISSERMAN, LLP
Attorneys for the Holder of the Evidence of Debt

By: /s/ Carly Imbrogno                                    Dated: March 2, 2026
☐ Ryan Bourgeois, Esq.      Reg. No. 51088        ☐ Israel S. Saucedo, Esq.      Reg. No. 61111
X Carly Imbrogno, Esq.      Reg. No. 59553

1391 Speer Boulevard, Suite 700
Denver, Colorado 80204
(303) 350-3711                                                        00000010742641

CO - PT Docs EFILE - 00000010742641

# EXHIBIT 4

PT26-003

## LEGAL DESCRIPTION

THE FOLLOWING REAL PROPERTY IN THE COUNTY OF PITKIN AND STATE OF COLORADO, TO WIT:

PARCEL 1:

LOT 4,
GAYLORD SUBDIVISION, ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20 AND THE FIRST AMENDED PLAT RECORDED OCTOBER 11, 2011 IN PLAT BOOK 98 AT PAGE 35
COUNTY OF PITKIN
STATE OF COLORADO.

PARCEL 2:

AN UNDIVIDED 1/5TH INTEREST IN THE OPEN SPACE PARCEL AS SHOWN ON THE FINAL PLAT OF GAYLORD SUBDIVISION RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20

COUNTY OF PITKIN, STATE OF COLORADO.

**EXHIBIT 4**

# EXHIBIT 5

Recording Requested by and
WHEN RECORDED MAIL TO:

Nina Whitehurst, Esq.
CUMBERLAND LEGACY LAW
330 Ridgeline Drive
Crossville, TN 38571

MAIL TAX STATEMENTS TO:

SIMBA IL HOLDINGS, LLC
1012 College Road, Suite 201
Dover, DE 19904

---

APN 273501316004          Space above this line for recorder's use

**Special Warranty Deed**

(Pursuant to 38-30-115 C.R.S.)

| State Documentary Fee |
| --- |
| Date: 9/8/2025 |
| $ 0.00 |

The undersigned grantor(s) declare(s) no Documentary Transfer Tax is due as the conveyance is an *inter vivos* gift for no consideration. C.R.S. Section 39-13-104(b).

The undersigned grantor(s) further declare(s) that no City of Aspen Real Estate Transfer Tax is due as the conveyance is an *inter vivos* gift for no consideration. Aspen Municipal Code Section 23.48.040(c).

This DEED, made on September 5, 2025 by Mordechai H. Ferder and Edit F. Ferder, as Trustees of THE HAIM FAMILY TRUST dated February 24, 2009 ("Grantors"), whose street address 1220 Red Butte Drive, City of Aspen, County of Pitkin and State of Colorado, for NO CONSIDERATION, hereby sells and conveys to SIMBA IL HOLDINGS, LLC, a Delaware limited liability company ("Grantee"), whose street address is 1012 College Road, Suite 201, City of Dover, County of Kent and State of Delaware, the following real property (the "Land") in the County of Pitkin, and State of Colorado, to wit:

PARCEL 1:

LOT 4, GAYLORD SUBDIVISION, ACCORDING TO THE PLAT THEREOF RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20 AND THE FIRST AMENDED PLAT RECORDED OCTOBER 11, 2011 IN PLAT BOOK 98 AT PAGE 35, COUNTY OF PITKIN, STATE OF COLORADO.

CITY OF ASPEN
EXEMPT FROM WRETT
DATE    REP.    NO.
9-11-25    NW    9874

Special Warranty Deed      Page 1

CITY OF ASPEN
EXEMPT FROM HRETT
DATE    REP    NO.
9-11-25    NW    9874

**EXHIBIT 5**

PARCEL II:

AN UNDIVIDED 115TH INTEREST IN THE OPEN SPACE PARCEL AS SHOWN ON THE FINAL PLAT OF GAYLORD SUBDIVISION RECORDED JULY 28, 1976 IN PLAT BOOK 5 AT PAGE 20, COUNTY OF PITKIN, STATE OF COLORADO.

Commonly known as: 1220 Red Butte Drive, Aspen, CO 81611

TOGETHER WITH all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the Grantors, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances;

Grantors and Grantee acknowledge that this deed was prepared from information furnished by them. No title examination has been made and Nina Whitehurst and Cumberland Legacy Law, attorneys, shall not be liable for the status of title to the property or the accuracy of such information. This property has not been surveyed for this conveyance, and the description contained herein is being taken from the previous and last deed, and the preparer of this instrument accepts no responsibility and/or liability for the accuracy of acreage, boundaries, or other such matters that would be disclosed by a survey.

TO HAVE AND TO HOLD the said premises above bargained and described with the appurtenances, unto the Grantee, and the Grantee's successor and assigns forever. The Grantors, for themselves and their successors and assigns, does covenant and agree that they shall and will WARRANT AND FOREVER DEFEND the above bargained premises in the quiet and peaceable possession of the Grantee, and its successors and assigns, against all and every person claiming the whole or any part thereof, by, through or under the Grantors, subject to statutory exceptions.

| | |
|---|---|
| Mordechai H. Ferder, as Trustee of THE HAIM FAMILY TRUST dated February 24, 2009 | Edit F. Ferder, as Trustees of THE HAIM FAMILY TRUST dated February 24, 2009 |

APOSTILLE APPEARS ON THE FOLLOWING PAGE.

Special Warranty Deed                    Page 2

**EXHIBIT 5**

RECEPTION#: 711806, 09/11/2025 at 03:34:57 PM, Pgs 5 of 5, Ingrid K. Grueter, Pitkin County, CO

APOSTILLE

_____    )
                               ) ss.
_____    )

I, Consul of the United States of America at _____, duly
commissioned and qualified, do hereby certify that on this \_\_\_\_\_ day of September, 2025, before
me personally appeared Mordechai H. Ferder and Edit F. Ferder, as Trustees of THE HAIM
FAMILY TRUST dated February 24, 2009, known to me to be the individuals described herein,
whose names are subscribed to, and who executed the annexed instrument, such persons duly
acknowledged to me that such persons executed the same freely and voluntarily for the uses and
purposes therein mentioned.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND OFFICIAL SEAL
THE DATE AND YEAR LAST ABOVFE WRITTEN.


_____
CONSUL OF THE UNITED STATES OF AMERICA



Special Warranty Deed                    Page 3

**EXHIBIT 5**

# EXHIBIT 6

**Fill in this information to identify the case:**

Debtor 1 _____SIMBA IL HOLDINGS LLC_____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: __Central__    District of __California__

Case number __8:25-bk-12616-MH__

## Official Form 410

# Proof of Claim                                                                04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

CITIMORTGAGE, INC.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No.
☐ Yes.    From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| CENLAR FSB | CENLAR FSB |
| Name | Name |
| ATTN: BK DEPT 425 PHILLIPS BLVD | ATTN: PAYMENT PROCESSING 425 PHILLIPS BLVD |
| Number          Street | Number          Street |
| EWING, NJ 08618 | EWING, NJ 08618 |
| City          State          ZIP Code | City          State          ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email bkelectronicnotices@cenlar.com | Contact email bkelectronicnotices@cenlar.com |

Uniform claim identifier (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☒ No.
☐ Yes.    Claim number on court claims registry (if known) _____

Filed on _____
                        MM   / DD      / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No.
☐ Yes.    Who made the earlier filing? _____

**EXHIBIT 6**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | **Do you have any number you use to identify the debtor?** | ☐ No.<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1  0  7  1 |

| | | |
|---|---|---|
| 7. | **How much is the claim?** | $ 11,571,751.92 .    **Does this amount include interest or other charges?**<br>☐ No.<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
|---|---|---|
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Mortgage Note |

| | | |
|---|---|---|
| 9. | **Is all or part of the claim secured?** | ☐ No.<br>☒ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:    1220 RED BUTTE DR, ASPEN, CO  81611<br><br>**Basis for perfection:**    Deed of Trust<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                    $<br>**Amount of the claim that is secured:**  $ 11,571,751.92<br>**Amount of the claim that is unsecured:**  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ 22,834.64<br><br>**Annual Interest Rate** (when case was filed) 2.375 %<br>☒ Fixed<br>☐ Variable |

| | | |
|---|---|---|
| 10. | **Is this claim based on a lease?** | ☒ No.<br>☐ Yes.  **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | | |
|---|---|---|
| 11. | **Is this claim subject to a right of setoff?** | ☒ No.<br>☐ Yes. Identify the property: _____ |

Official Form 410                                        **Proof of Claim**                                        page 2

**EXHIBIT 6**

| | | Amount entitled to priority |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No.<br>❑ Yes. *Check one:* | |
| | ❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ❑ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ❑ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ❑ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

❑   I am the creditor.

☒   I am the creditor's attorney or authorized agent.

❑   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

❑   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
           MM / DD / YYYY

_____
       Signature

**Print the name of the person who is completing and signing this claim:**

| Name | _____ |
|---|---|
| | First name          Middle name          Last name |
| Title | ATTORNEY FOR CREDITOR |
| Company | BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 3990 E. CONCOURS STREET SUITE 350 |
| | Number      Street |
| | ONTARIO, CA  91764 |
| | City                          State      ZIP Code |
| Contact phone | (623) 371-7023 |
| Email | CDCAECF@BDFGROUP.COM |

# EXHIBIT 6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3990 E. CONCOURS STREET, SUITE 350, ONTARIO, CA 91764**

   A true and correct copy of the foregoing document entitled (*specify*): <u>NOTICE OF MOTION AND MOTION TO ALLOW LATE-FILED CREDITOR'S PROOF OF CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>05/19/2026</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>5/19/2026</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.
DEBTOR: SIMBA IL HOLDINGS, LLC ATTN: RICHARD MARSHACK, CRO 870 ROOSEVELT IRVINE, CA 92618
DEBTOR SIMBA IL HOLDINGS, LLC 610 NEWPORT CENTER DR., STE. 950 NEWPORT BEACH, CA 92660-6473
BORROWER: MORDECHAI HAIM FERDER 3333 MICHELSON DRIVE, SUITE 300 IRVINE, CA 92612
BORROWER: EDIT FINTZIFERDER 3333 MICHELSON DRIVE, SUITE 300 IRVINE, CA 92612
BORROWER: THE HAIM FAMILY TRUST U/D/T FEBRUARY 24, 2009, 3333 MICHELSON DRIVE, SUITE 300 IRVINE, CA 92612
BORROWER: MORDECHAI FERDER, 1501 SERENADE TER, CORONA DEL MAR CA 92625 BORROWER: EDIT FINTZI FERDER, 1501 SERENADE TER, CORONA DEL MAR CA 92625 JUDGE: HON. MARK D. HOULE – U.S. BANKRUPTCY COURT, 3420 TWELFTH STREET, SUITE 325, RIVERSIDE, CA 92501
**UST** - QUEENIE K. NG 411 WEST FOURTH STREET, SUITE 7160 SANTA ANA, CA 92701

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/19/2026 | Marisol Nagata | /s/ Marisol Nagata |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")
• Anthony Bisconti tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
• Greg P Campbell ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
•Max Casal mcasal@shulmanbastian.com, avernon@shulmanbastian.com
• John B Connor jack@johnbconnor.com • Matthew Tyler Davis tdavis@kbkllp.com
• Karol K Denniston karol.denniston@squirepb.com,
travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston9025@ecf.pacerpro.com
• Don Fisher dfisher@ptwww.com, tblack@ptwww.com
• Alan J Friedman afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
• George Gerro george@gerrolaw.com
• Michael D Good mgood@southbaylawfirm.com
• Christopher J Harney charney@tocounsel.com, kmanson@tocounsel.com
• Paul Jasper pjasper@perkinscoie.com, david.kline@rimonlaw.com
• Steven J. Katzman skatzman@bklwlaw.com,
1193516420@filings.docketbird.com,docket@bklwlaw.com
• Tobias S Keller tkeller@kellerbenvenutti.com • Jordan A Kroop jkroop@pszjlaw.com,
rleibowitz@perkinscoie.com
• Mette H Kurth mette.kurth@pierferd.com, mette-kurth-7580@ecf.pacerpro.com
• Wendy A Locke ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
• Richard A Marshack rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;
rmarshack@ecf.courtdrive.com; alinares@ecf.courtdrive.com
• Ali M. Mojdehi ali.mojdehi@mgr-legal.com
• John Morris jmorris@pszjlaw.com
• Marisol A Nagata CDCAECF@BDFGROUP.COM
• Dakota Pearce dpearce@buchalter.com, pjolley@buchalter.com;docket@buchalter.com
• Matthew D Pham mpham@allenmatkins.com, mdiaz@allenmatkins.com
• Jeffrey N Pomerantz jpomerantz@pszjlaw.com
• Allison M. Rego allison.rego@mgr-legal.com
• Stacy H Rubin rubins@ballardspahr.com, DocketClerk_LasVegas@ballardspahr.com;
LitDocket_West@ballardspahr.com
• Traci L Shafroth tshafroth@kbkllp.com, jminga@kbkllp.com
• Leonard M. Shulman lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;
yrivera@shulmanbastian.com
• Timothy J Silverman tsilverman@scheerlawgroup.com, tsilverman1@ecf.courtdrive.com
• Edward A Treder cdcaecf@bdfgroup.com
• United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov


2. SERVED BY U.S. MAIL
**COUNSEL FOR CREDITOR**
WHITE MOUNTAIN CAPITAL INC. GREG P. CAMPBEL ALDRIDGE PITE, LLP 3333 CAMINO DEL RIO SOUTH,
STE. 225 SAN DIEGO, CA 92108
**REQUEST FOR NOTICE (RFN)**
LUGANO DIAMONDS & JEWELRY C/O TOBIAS S. KELLER - KELLER BENEVENUTTI 101 MONTGOMERY
STREET, SUITE 1950 SAN FRANCISCO, CA 94104
LUGANO DIAMONDS & JEWELRY C/O TRACI SHAFROTH - KELLER BENEVENUTTI 101 MONTGOMERY
STREET, SUITE 1950 SAN FRANCISCO, CA 9410
LUGANO DIAMONDS & JEWELRY C/O JAY R. MINGA - KELLER BENVENUTTI 101 MONTGOMERY STREET,
SUITE 1950 SAN FRANCISCO, CA 94104

LUGANO DIAMONDS & JEWELRY C/O SCOTT FRIEDMAN - KELLER BENVENUTTI 101 MONTGOMERY STREET, SUITE 1950 SAN FRANCISCO, CA 94104

COMPASS GROUP DIVERSIFIED C/O KAROL DENNISTON-SQUARE PATTON 555 CALIFORNIA STREET, SUITE 550 SAN FRANCISCO, CA 94104

ATTY FOR GADOL & TESTA C/O PAUL S. JASPER, ESQ.-PERKINS COIE 505 HOWARD STREET, SUITE 1000 SAN FRANCISCO, CA 94105-320

ATTY FOR GADOL & TESTA C/O REBECA J. MARSTON, ESQ.- PERKINS COIE 110 NORTH WACKER DR., SUITE 3400 CHICAGO, ILLINOIS 60606

ATTY FOR GADOL & TESTA C/O HAMID RAFATJOO-RAINES FELDMAN 4675 MACARTHUR COURT, SUITE 1550 NEWPORT BEACH, CA 92660

COMPASS GROUP DIVERSIFIED C/O PETER MORRISON, ESQ. 100 KEY TOWER, 127 PUBLIC SQUARE CLEVELAND, OH 44114

COMPASS GROUP DIVERSIFIED C/O S. LERNER & K. ARENDSEN 201 E. FOURTH ST., SUITE 1900 CINCINATI, OH 45202

J. POMERANTZ/J. KROOP PACHULSKI STANG ZIEHL & JONES LLP 10100 SANTA MONICA BLVD, 13TH FL LOS ANGELES, CA 90067

JOHN A. MORRIS PACHULSKI STANG ZIEHL & JONES LLP 1700 BROADWAY, 36TH FLOOR NEW YORK, NY 10019

**NOTICE PARTIES**

EMPLOYMENT DEVELOPMENT DEPT. BANKRUPTCY GROUP MIC 92E P.O. BOX 826880 SACRAMENTO, CA 94280-0001

FRANCHISE TAX BOARD BANKRUPTCY SECTION MS: A-340 P.O. BOX 2952 SACRAMENTO, CA 95812-2952

ARVIELO FAMILY TRUST, THE C/O DAKOTA PIERCE 1420 5TH AVENUE, SUITE 3100 SEATTLE, WA 9810

AVINA LLC & GLOBAL INNOVATIONS C/O DAVID B. ZOLKIN 11766 WILSHIRE BLVD, SUITE 730 LOS ANGELES, CA 90025

AVINA LLC C/O D. ENENSTEIN-ENENSTEN PHAM 3200 BRISTOL ST SUITE 500 COSTA MESA, CA 92626

BACLET, CHARLES 1600 S OCEAN BLVD APT 2101 POMPANO BEACH, FL 33062-7710

CHARLES J. BACLET, III C/O ERIC A. BROWNDORF, ESQ. COOPER LEVENSON, P.A. 1125 ATLANTIC AVENUE ATLANTIC CITY, NJ 08402

BELGIUM NEW YORK LLC C/O PATRICK PAPALIA/ARCHER & GREINER PC 1211 AVENUE OF THE AMERICAS #2750 NEW YORK, NY 10036-8789

BENSON, JULIANNE 389 SOUTH LAKE DRIVE #4G PALM BEACH, FL 33480-4540

BRANDES, ADRIENNE C/O FISHBACK LAW CORP 4590 MACARTHUR BLVD, STE 500 NEWPORT BEACH, CA 92660

BRANDES, ADRIENNE 919 GARDENIA WAY CORONA DEL MAR, CA 92625-1547

BUCKSBAUM, GLENN 303 WHITEFISH HILLS LOOP WHITEFISH, MT 59937-2256

CAMPF, ANNE AND DARREN 4428 IRISH HEIGHTS DRIVE SUMMERSVILLE, WV 26651-1971

CAVE, DERYK 1195 E COOPER AVENUE ASPEN, CO 81611

CHAMPION FORCE C/O LEIB M LERNER/ALSTON & BIRD LLP 350 SOUTH GRAND AVE 51ST FLOOR LOS CHANNELS, CEDRIC 402 ESTHER ST COSTA MESA, CA 92627-2323

CITIBANK, N.A. 1000 TECHNOLOGY DRIVE O'FALLON, MO 63368-2240

COHEN, RAYMOND C/O JONATHAN HERSEY/K&L GATES 1 PARK PLAZA TWELFTH FLOOR IRVINE, CA 92614-5910

CONWAY, MARK 1221 W COAST HWY APT 114 NEWPORT BEACH, CA 92663-5051

COYNE, KAREN BEDROSIAN PROPERTY TRUST 2934 N BEVERLY GLEN CIRCLE, UNIT 347 LOS ANGELES, CA 90077-1724

DACUS, DEBBIE 5444 CANDLEWOOD DRIVE HOUSTON, TX 77056-1603

DIAMONDS & JEWELRY INC C/O A KHAN BROWN, NERI, SMITH & KHAN LLP 11601 WILSHIRE BLVD SUITE 2080 LOS ANGELES, CA 90025-0389

EMMES, DAVID 655 TOWN CENTER DRIVE COSTA MESA, CA 92626-1918

FERDER, MORDECHAI AND EDIT 1501 SERENADE TER CORONA DEL MAR, CA 92625-1753

FERRY, ANTHONY 20 PACIFICA STE 1000 IRVINE, CA 92618-7462

FIRST CIRCLE LLC C/O RANDALL COFFEE HUMPHREY LLP 3200 PARK CENTER DR., SUITE 950 COSTA MESA, CA 92626

FLANDERS, SCOTT 1425 SANTA BARBARA DRIVE NEWPORT BEACH, CA 92660-6373

FLANDERS, SCOTT PO BOX 7859 AVON, CO 81620-7859

FREEDMAN, JAMES 11755 WILSHIRE BLVD LOS ANGELES, CA 90025-1501

GADOL, BRYAN C/O MARK ECKARD RAINES FELDMAN LITTRELL LLP 1900 AVENUE OF THE STARS 19TH FLOOR LOS ANGELES, CA 90067-4410

GADOL, BRYAN C/O MARK ECKARD RAINES  824 N MARKET STREET SUITE 805 WILMINGTON, DE 19801-4918

GADOL, BRYAN C/O MICHELLE SCHINDLER FERGUSON SCHINDLER LAW FIRM 119 SOUTH SPRING STREET SUITE 201 ASPEN, CO 81611-2082

GADOL, BRYAN-C/O TODD C THEODORA THEODORA ORINGHER PC 535 ANTON BLVD NINTH FLOOR COSTA MESA, CA 92626-7109

GADOL, BRYAN C/O PAUL JASPER, PERKINS COIE LLP 505 HOWARD STREET, SUITE 1000 SAN FRANCISCO, CA 94105

GOLDSTEIN, ALON 22287 MULHOLLAND HWY, UNIT 254 CALABASAS, CA 91302-5157

HAZEN, CASSANDRA AND PAUL PO BOX 7070 CARMEL, CA 93921

HOEVEN, DREW 660 NEWPORT CENTTER DRIVE, STE 1450 NEWPORT BEACH, CA 92660

HOEVEN, DREW 3 CAPE ANDOVER NEWPORT BEACH, CA 92660-8401

HOLZER, RUSTY - C/O B CAPITUMMINO WOODS OVIATT GILMAN LLP 1900 BAUSCH & LOMB PLACE ROCHESTER, NY 14604-2714

KAREN BEDROSIAN 2934 N BEVERLY GLEN CIRCLE, UNIT 347 LOS ANGLES, CA 90077

KELSEY, KACI 110 WESTMINSTER ROAD WEST PALM BEACH, FL 33405-1649

KLEIN, BILL 60 LINDA ISLE NEWPORT BEACH, CA 92660-7207

KRAUS, KEN, MD C/O MICHAEL D. GOOD 3655 TORRANCE BLVD., STE 300 TORANCE, CA 90503

KRAUS, KEN C/O JEFF AUGUSTINI LAW OFFICE OF JEFF AUGUSTINI 100 BAYVIEW CIRCLE SUITE 210 NEWPORT BEACH, CA 92660-8901

LEE, ROBERT BBD 2012 GIFT TRUST 72-2763 ULUWEUWEU AKSUM PLACE KAILUA KONA, HI 96740

LEVASQUE, MATT 5893 LAKEVIEW YORBA LINDA, CA 92886-5367

LEVESQUE, MATTHEW C/O RANDALL COFFEE HUMPHREY LLP 3200 PARK CENTER DR., SUITE 9000 COSTA MESA, CA 92626

LI, PETER 19211 CROYDEN TER IRVINE, CA 92603-3537

LOCKSLEY, JOHN 185 WEST END AVENUE UNIT 9A NEW YORK, NY 10023-5543

LOOK-MAZZA, MONA 344 WEST REDS ROAD ASPEN, CO 81611

LUGANO DIAMONDS & JEWELRY C/O CHRISTOPH PACHLER 620 NEWPORT CENTER DRIVE SUITE 100 NEWPORT BEACH, CA 9266

LUGANO BUYER, INC. C/O CHRISTOPH PACHLER 620 NEWPORT CENTER DRIVE SUITE 100 NEWPORT BEACH, CA 92660

LUGANO BUYER, INC. 301 RIVERSIDE AVENUE, SECOND FLOOR WESTPORT, CT 06880-4806

MCCALL, MARIANNE 188 LUDLOW STREET APT 21J NEW YORK, NY 10002-1690

MCHENRY, TROY 10917 EARTH HUES LAS VEGAS, NV 89135-9132

MCMACKEN, RON 1660 SOUTH OCEAN BLVD MANALAPAN, FL 33462-6210

MOENS, LAWRENCE 2335 S OCEAN BLVD PALM BEACH, FL 33480-5368

MOLER, BILL 10342 MOHAWK ROAD LEAWOOD, KS 66206-2587

N.B.S. DIAMONDS C/O GERALD L. KROLL KROLL LAW 970 W. BROADWAY, SUITE E-200 JACKSON, WY 83001-6402

N.B.S. DIAMONDS C/O JOSEPH M. KAR LAW OFFICE OF JOSEPH M. KAR PC 15250 VENTURA BLVD SUITE PH1220 SHERMAN OAKS, CA 91403-3201

N.B.S. DIAMONDS C/O SHARON WEISS, BRYAN CAVE ET AL 120 BROADWAY, SUITE 300 SANTA MONICA, CA 90401

OCONNELL, KEVIN 1714 STARLIGHT CIR NEWPORT BEACH, CA 92660-4340

PERL, DANIEL C/O OMAR J. YASSIN YASSIN LAW APC 1010 E. UNION STREET SUITE 201 PASADENA, CA 91106-1756

PHILLIPS, ANDY 2900 BRISTOL STREET COSTA MESA, CA 92626-5981

PRESUTTI, DANA 424 PARK CIRCLE ASPEN, CO 81611-3400

RUBERTI, LISA C/O GOGO & MOORE LLC 505 E HYMAN AVENUE ASPEN, CO 81611

RODAN, AMMON 21 ORINDA WAY, SUITE C-381 ORINDA, CA 94563-2530

ROTHSTEIN, ADAM 17 COVLEE DRIVE WESTPORT, CT 06880-6407

ROYAL T. DIAMONDS GROUP LTD C/O ALI MOJDEHI, MOJDEHI GALVIN 2550 FIFTH AVENUE, SUITE 910 SAN DIEGO, CA 92103

SHELLY, DAMON 9881 RESEARCH DRIVE IRVINE, CA 92618-4304

SHERWOOD, STEVE 54 GOLDEN EAGLE IRVINE, CA 92603-0309

SIMON, RON 620 NEWPORT CENTER DRIVE NEWPORT BEACH, CA 92660-6420

SIMON, SCOTT 641 ST JAMES ROAD NEWPORT BEACH, CA 92663-5854

SIMON, VONDA & SCOTT 29230 PASEO CARMONA SAN JUAN CAPISTRANO, CA 92675- 3654

SMITH, MIKE 1585 ATTOKA ROAD MARSHALL, VA 20115-3505

SONI, ASHISH 1908 N FREMONT STREET CHICAGO, IL 60614-5017

STACK, GEOFFREY & NANCY C/O MATTHEW D. PHAM-ALLEN MATKINS 865 S. FIGUEROA STREET, SUITE 2800 LOS ANGELES, CA 90017

STACK, JEFF 3501 JAMBOREE ROAD, SUITE 6000 NEWPORT BEACH, CA 92660-2960

STRAWBRIDGE, GEORGE 3801 KENNET PIKE WILMINGTON, DE 19807-2300

SUMMERS, JIM 282 LOCHA DRIVE JUPITER, FL 33458-7733

SUTHERLAND, ANNE & GRANT 151 RANCH CREEK LANE CARBONDALE, CO 91623

SYDNEY HOLDINGS LIMITED C/O B. CAPITUMMINO - WOODS OVIATT 1900 BAUSCH & LOMB PLACE ROCHESTER, NY 14604-2714

SYDNEY HOLDINGS LIMITED C/O J LEVIN GLASER WEIL FINK HOWARD JORDAN ET AL 10250 CONSTELLATION BLVD 19TH FLOOR LOS ANGELES, CA 90067-6219

TEDORI, FRED 48 RITZ COVE DRIVE DANA POINT, CA 92629-4228

TESTA, DARREN C/O M. SCHINDLER FERGUSON SCHINDLER LAW FIRM 119 SOUTH SPRING STREET SUITE 201 ASPEN, CO 81611-2082

TESTA, DARREN C/O MARK ECKARD RAINES FELDMAN LITTRELL LLP 1900 AVENUE OF THE STARS 19TH FLOOR LOS ANGELES, CA 90067-4410

TESTA, DARREN C/O MARK ECKARD RAINES FELDMAN LITTRELL LLP 824 N. MARKET STREET, SUITE 805 WILMINGTON, DE 19801-4918

TESTA, DARREN C/O TODD C THEODORA & C. HARNEY THEODORA ORINGHER PC 535 ANTON BLVD NINTH FLOOR COSTA MESA, CA 92626-7109

TESTA, DARREN C/O PAUL JASPER, PERKINS COIE LLP 505 HOWARD STREET, SUITE 1000 SAN FRANCISCO, CA 94105

US BANK PO BOX 5229 CINCINNATI OH 45201-5229

WANG, ANGI C/O GOGO & MOORE LLC 505 E HYMAN AVENUE ASPEN, CO 81611

WAZANA, AVI C/O DARREN ENENSTEIN ENENSTEIN PHAM GLASS & RABBAT 8439 W SUNSET BLVD SUITE 300 LOS ANGELES, CA 90069-1925

WHITE MOUNTAIN CAPITAL 3447 HIGH RIDGE ROAD BOYNTON BEACH, FL 33426

WINTERS, KRISTOPHER C/O S. KATZMAN BIENERT KATZMAN LITTRELL WILLIAMS LLP 903 CALLE AMANECER STE 350 SAN CLEMENTE, CA 92673-6253

WINTERS, KRISTOFFER C/O STEVEN KATZMAN 903 CALLE AMANECER STE 350 SAN CLEMENTE, CA 92673

WOLFE, BILL 525 S FLAGLER DRIVE PH2 C/D WEST PALM BEACH, FL 33401-5922

CAVE, DERYK 50 BIG SKY RESORT RD BIG SKY, MT 59716

SUTHERLAND, ANNE & GRANT 61070 MINARET CIRCLE BEND, OREGON 97702-1903

HAZEN, CASSANDRA AND PAUL C/O JOANNA MARIE MYERS 9465 WILSHIRE BLVD SUITE 300 BEVERLY HILLS, CA 90212-2624

SHERLOCK, TINA & RUSS 1416 W MAIN STREET CARMEL, IN 46032