**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
TRACI L. SHAFROTH (Cal. Bar No. 251673)
(tshafroth@kbkllp.com)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:   (415) 496-6723
Facsimile:   (650) 636-9251

*Attorneys for Lugano Diamonds & Jewelry Inc.*
*and Lugano Buyer, Inc.*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>SIMBA IL HOLDINGS, LLC, a Delaware limited liability company<br><br>Debtor. | Case No. 8:25-bk-12616-MH<br><br>Chapter 11<br><br>**LUGANO DIAMONDS & JEWELRY INC. AND LUGANO BUYER, INC.'S REPLY TO DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED OR CONVERTED**<br><br>Hearing Date:   May 26, 2026<br>Time:   1:30 p.m.<br>Courtroom:   6C |

KELLER BENVENUTTI KIM LLP
101 MONTGOMERY STREET, SUITE 1950
SAN FRANCISCO, CALIFORNIA 94104

**TO THE HONORABLE MARK D HOULE, UNITED STATES BANKRUPTCY JUDGE; THE DEBTOR; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**

Lugano Diamonds & Jewelry Inc. and Lugano Buyer, Inc. (collectively, "Lugano"),[1] through their undersigned counsel, submit this Reply to the *Debtor's Response to Order to Show Cause Why Case Should Not be Dismissed or Converted* [Docket No. 309] (the "Response").

Under 11 U.S.C. § 1112(b)(1), the Court may dismiss a chapter 11 case for cause. April 30, 2026 *Order to Show Cause Why the Case Should Not Be Converted or Dismissed* (the "OSC"), at 4. "Cause" includes the reasons enumerated in section 1112(b)(4), but that list is not exhaustive. *See, e.g.*, *In re Collab9, LLC*, 631 B.R. 255, 259 (Bankr. C.D. Cal. 2021). The factors listed in section 1112(b)(4) comprise "a nonexclusive list of factors that generally speak to a Debtor's failure to be proactive in a case or a Debtor's continued harm to the estate." *Id*. But "'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *Id*. (quoting *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000)) (cleaned up)).

As the Court emphasized, Simba IL Holdings, LLC ("Simba" or the "Debtor") commenced its chapter 11 case (the "Bankruptcy Case") roughly eight months ago. As the Court observed, Simba "is working towards a liquidation of assets that presumably could be best and most appropriately accomplished as a Chapter 7 proceeding." OSC at 2.

Lugano agrees. Simba is not making progress towards a liquidation.  Its principal asset, a house in Aspen, Colorado (the "Aspen House"), is now in foreclosure because Simba stipulated to stay relief and could not sell the house within the negotiated time frame. Simba's settlement with two of its favored creditors—Bryan Gadol ("Gadol") and Darren Testa ("Testa")—is not in the best interests of the estate or the creditors, several of whom, including Lugano, have objected to

---

[1]    On November 16, 2025, Lugano and certain of its affiliates, including Lugano Holding, Inc. filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  The cases are being jointly administered under Case No. 25-12055 (BLS) (the "Lugano Chapter 11 Cases").

KELLER BENVENUTTI KIM LLP
101 MONTGOMERY STREET, SUITE 1950
SAN FRANCISCO, CALIFORNIA 94104

KELLER BENVENUTTI KIM LLP
101 MONTGOMERY STREET, SUITE 1950
SAN FRANCISCO, CALIFORNIA 94104

the motion to approve the proposed settlement. Appointing a chapter 7 trustee as a new estate fiduciary is, in Lugano's view, the best path forward to bring this case to a conclusion.

Simba's only other material assets, the Alternative Investments (as defined in the Response), are financial instruments in a brokerage account.[2] There is no reason why the Chief Restructuring Officer (the "CRO") cannot share what he has learned about the Alternative Investments through his investigation—if he indeed conducted an investigation and learned anything of value—with the chapter 7 trustee so that the trustee can then determine the appropriate course of action to maximize the value of those assets.

Moreover, the Debtor's conduct with respect to its efforts to obtain approval of the proposed settlement raises troubling questions. As the Court noted, the Debtor asserted in its First Status Report [Docket No 17] that the CRO had "a straightforward plan to bring this case to a swift and fair conclusion[,]" which included taking steps to avoid liens and objecting to claims. *See* OSC 2:3–4.  Six weeks later, apparently without having conducted a meaningful investigation into any of the liens or claims, the Debtor proposed a settlement that would have given away the store. *See Motion for Order Approving Settlement; Declaration of Richard A. Marshack in Support Thereof* [Docket No. 98] (the "First Settlement Motion"). Under that deal, despite the significant issues with their liens and claims, Gadol and Testa would have received a secured claim in the aggregate amount of $9,999,999, payable from the proceeds of the Aspen House, the Alternative Investments, and the Lugano Stock, plus an additional unsecured claim of $1.5 million if other unsecured claims were paid more than 55 percent. *See id*. at 7.

The Debtor withdrew the First Settlement Motion in the face of numerous objections and proposed a new deal. *See Stipulation Re Voluntary Dismissal of Debtor's Motion for Order Approving Settlement* [Docket No. 217]; *Order Approving Stipulation Re Voluntary Dismissal of Debtor's Motion for Order Approving Settlement* [Docket No. 218]; *Motion for Order Approving Settlement; Declaration of Richard A. Marshack in Support Thereof* [Docket No. 240] (the

---

[2] Simba also owns an approximate 35 percent stake in the indirect parent of Lugano Diamonds & Jewelry Inc. (the "Lugano Stock"), but it does not appear that such equity interests have any value.

LUGANO DIAMONDS & JEWELRY INC. AND LUGANO BUYER, INC.'S REPLY TO
DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED OR CONVERTED

3

KELLER BENVENUTTI KIM LLP
101 MONTGOMERY STREET, SUITE 1950
SAN FRANCISCO, CALIFORNIA 94104

"Second Settlement Motion"). The new agreement, among other things, would give Gadol and Testa claims in the amount of \$7,929,072.00 and \$6,377,794.84, respectively (totaling approximately \$14.3 million).[3] Second Settlement Motion at 5. These claims would be payable from proceeds of the sale of the Aspen House (after payment of, or placement of funds into escrow for, senior liens).[4] *Id.* at 5–6. Gadol and Testa would obtain allowed general unsecured claims for any deficiency. *Id.* at 6. Gadol and Testa would also receive 25 percent of the proceeds of the Alternative Investments under the new settlement. *Id.*

While the Debtor touts the "substantial concessions" it received from Gadol and Testa, those concessions are *de minimis*.  Gadol and Testa agreed to drop their vastly overstated claim to the (also inflated) amount of a default judgment allegedly entered on the petition date. They would also retain 25 percent of a garden variety preference. And the motion fails to adequately address a basic question—if Gadol and Testa's claims were so flawed, and they obtained a default judgment shortly before the Debtor commenced the Bankruptcy Case, why didn't Simba seek to vacate the default judgment?  A new estate fiduciary is needed to examine Gadol and Testa's claims, as well as the settlement.

Furthermore, Lugano agrees with the Court that, "to the extent the estate may need to investigate any fraud between Mr. Ferder and White Mountain regarding the lien granted to White Mountain on the [Aspen House], presumably that would be more appropriately done by a Chapter 7 trustee, not the Debtor's Chief Restructuring Officer. . . ." OSC at 3. The CRO, eight months into the Bankruptcy Case, apparently has not conducted a meaningful investigation, if any. The Debtor asserts that no investigation (whether by the CRO or a chapter 7 trustee) is needed because Lugano is investigating the transaction. *See* Response at 12.  An estate fiduciary cannot disclaim

---

[3]    Interestingly, these are the amounts of the default judgments Gadol and Testa obtained in Delaware Superior Court on the day Simba commenced the Bankruptcy Case.  *See Gadol* Proof of Claim (Claim No. 17, attachment page 11 (pdf page 14)); *Testa* Proof of Claim (Claim No. 18, attachment page 11 (pdf page 14)).

[4]    The \$250,000 carve out from the Aspen House proceeds is inapplicable in a foreclosure. *See* Docket No. 240, Exhibit A, Section 6(c)(i).

its duty to investigate estate assets simply because a creditor was forced to start an investigation *because* the fiduciary has failed to do so.

Finally, while the Debtor argues that it has taken steps to sell the Aspen House and to market the property (Response at 12), the Aspen House is now in foreclosure, where it will likely be sold absent relief from this Court's order or further litigation in Colorado. A chapter 7 trustee can oversee the estate's interests in a state foreclosure proceeding just as well as the Debtor and its CRO.

Lugano agrees that there is cause to convert the Bankruptcy Case to a chapter 7 proceeding and that conversion is in the best interests of Simba's creditors and the estate. Further, there are no unusual circumstances establishing that conversion is not in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(2). Lugano urges the Court to convert the case rather than dismiss it, because dismissal of the case would result in the loss of avoidance actions against Gadol and Testa, to the detriment of the Debtor's other creditors.

For these reasons, the Court should convert the Bankruptcy Case under chapter 7 of the Bankruptcy Code.

WHEREFORE, Lugano respectfully requests that the Court enter an order converting the Bankruptcy Case to one under chapter 7 of the Bankruptcy Code.

Dated: May 19, 2026

/s/ Traci L. Shafroth
Traci L. Shafroth

*Attorneys for Lugano Diamonds &
Jewelry Inc. & Lugano Buyer, Inc.*

**KELLER BENVENUTTI KIM LLP**
101 MONTGOMERY STREET, SUITE 1950
SAN FRANCISCO, CALIFORNIA 94104